IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

JIM BAUGH, *et al.*

No.  20-cr-10263-PBS

### DEFENDANT JIM BAUGH'S MOTION TO COMPEL DISCOVERY

Defendant, Jim Baugh, moves to compel discovery pursuant to Fed. R. Crim. P. 16, Local Rule 16.2, *Brady v. Maryland,* 373 U.S. 83 (1963), and the inherent power of the Court to order discovery as appropriate. Specifically, the Court should order the prosecution to produce requested materials concerning Mr. Baugh's work, while in the private sector, assisting U.S. government intelligence and/or law enforcement agencies with various undercover operations from 2014 to 2018. The requested materials are relevant and exculpatory as to the *mens rea* elements of the charged offenses and a potential defense of necessity.

### BACKGROUND[1]

ABranch The Charges

The prosecution alleges that Defendant, Jim Baugh, along with other eBay employees and contractors, harassed, intimidated, and surveilled a couple ("Victims 1 and 2"), who published an online newsletter ("Newsletter") about eBay and other ecommerce companies. The alleged objectives of the charged conspiracy, according to the Indictment, were "to distract the Victims from publishing the Newsletter, to alter the Newsletter's coverage of eBay, and to gather

---

[1] This background narrative is presented for the purpose of this Motion only. It is substantially based on the charging documents and materials produced by the government in discovery. Mr. Baugh does not concede that any particular facts or allegations, many of which are outside his personal knowledge, are true or accurate.

1

information that the defendants and their co-conspirators could use to discredit the Victims and the Newsletter." D.E. 33 (Indictment) ¶ 12.

Specifically, the fifteen-count Indictment charges that, in violation of 18 U.S.C. § 371, Mr. Baugh conspired (i) to travel in interstate commerce to stalk the Victims and (ii) to use the facilities of interstates commerce to cyber-stalk them (Count I). D.E. 33. It also charges the substantive offense of stalking in violation of 18 U.S.C. § 2261(A)(1)(B) (Counts II and III) and cyber-stalking in violation of 18 U.S.C. § 2261(A)(2)(B) (Counts VI and VII). Further, the Indictment charges that, in violation of 18 U.S.C. § 1512(b)(3), Mr. Baugh committed witness tampering against a Natick Police Department ("NPD") detective (Count X) and eBay investigators (Count XI). Finally, it charges that, in violation of 18 U.S.C. § 1519, Mr. Baugh obstructed a federal investigation into the charged conspiracy by directing a colleague to falsify a document (Count XIII) and by destroying data on his cellphone (Count XIV).[2]

At the time of the alleged conspiracy, in August and September 2019, Mr. Baugh served as eBay's Director of Safety and Security and, in that capacity, oversaw Global Security and Resiliency ("GSR"), a division responsible for the physical security of eBay's employees and facilities. D.E. 33 ¶ 1. He also worked with other employees and contractors, including co-defendant David Harville (eBay's Director of Global Resiliency) and separately charged defendants Brian Gilbert, Philip Cooke, Stephanie Popp, Stephanie Stockwell, and Veronica Zea. Gilbert and Cooke were retired police captains working in GSR who were responsible for various security operations. *Id*. ¶¶ 6-7. Popp, Stockwell, and Zea operated eBay's Global Intelligence

---

[2] The Superseding Indictment includes parallel counts against co-Defendant, David Harville, for all but two of the substantive charges (Counts IV, V, VIII, IX, XII, and XV).

Center ("GIC"), an intelligence and analytics group within GSR that supported the company's overall security operations. *Id.* ¶¶ 3-5.

eBay's senior corporate leadership, including CEO Devin Wenig and SVP Steve Wymer, believed the Victims and their Newsletter posed an existential threat to the company as well as a personal safety threat to executives and their families because of the Newsletter's contents, the comments that its readers posted online, and the hostility toward the company and its executives the Newsletter and comments provoked. D.E. 33 ¶ 10.

Concerns that false, misleading, personal, and inflammatory content in the Newsletter could incite actual physical violence preoccupied eBay's executives—and, as a result, Mr. Baugh and his eBay security team, too. In the wake of the April 2018 mass shooting at YouTube headquarters, the large, open eBay "campus" comprised of multiple buildings in San Jose was viewed as particularly vulnerable. And the eBay "Open" conference, which draws a large, often-fractious collection of eBay sellers to Las Vegas every year, was also viewed as high-risk. Indeed, the 2019 conference was held at the Mandalay Bay, the same site where one of the nation's worst mass shooting incidents had taken place in 2017.

In an effort to distract the Victims from publishing the Newsletter, to alter its coverage, and to gather information that might discredit the Victims, Mr. Baugh allegedly conspired with eBay colleagues to "harass and intimidate the Victims" by sending "repeated and hostile Twitter messages" to the Victims and "deliveries of unwanted – and in some instances disturbing – items" to their home. *Id.* ¶¶ 11-12. In addition, Mr. Baugh allegedly conspired with his co-defendants to place the Victims "under surveillance" by travelling from California to Massachusetts to "conduct physical surveillance." *Id.*

3

On or about August 15, 2019, Mr. Baugh travelled from California to Massachusetts with Harville and Zea. *Id.* ¶ 16z. Later that same day, all three drove to Natick in a rental car. The plan was to install a GPS tracking device on the Victims' car, but the car was locked in their garage. *Id.* ¶ 16bb. Then, on August 16, 2019, Mr. Baugh, Harville, and Zea returned to Natick, repeatedly drove past the Victims' home, and followed Victim 2 as he drove around town. *Id.* ¶ 16ff, 16hh. On or about August 18, 2019, Mr. Baugh, Popp (who had travelled to Boston on August 17, 2019, and replaced Harville on the "surveillance team"), and Zea drove to Natick and, again, followed Victim 2 in his car. Mr. Baugh and the others were spotted again, and Victim 2 was able "to take a photograph of the surveillance team's license plate." *Id.* ¶ 16qq. Shortly thereafter, on August 20, 2019, Mr. Baugh texted Popp, Cooke, and Brian Gilbert to report that two different rental cars had been "burned." *Id.* ¶ 16rr.

On or about August 21, 2019, an NPD detective came to the Boston hotel where Mr. Baugh, Popp, and Zea were staying, "to investigate Zea and Harville's connection" to the alleged "cyberstalking campaign." *Id.* ¶ 16vv.  Mr. Baugh also learned that the NPD detective was looking into the purchase of prepaid debit cards in Santa Clara, California, to order pizzas for delivery to the Victims. *Id.* ¶ 16ddd. Mr. Baugh and Popp then "directed" Stockwell to create "a list of eBay 'Persons of Interest' in the San Francisco Bay Area" that Gilbert could use in talking with the NPD to "deflect attention from Zea." *Id.* ¶ 16eee.

The charged conspiracy failed to accomplish its alleged objectives. Rather than distract the Victims or change the content of their Newsletter, it prompted a local police investigation in Massachusetts. After an NPD detective followed several clues back to eBay's headquarters in California, Mr. Baugh and other eBay employees and contractors allegedly lied to "eBay

4

investigators," destroyed records on "eBay-issued cellphones," and removed computers from eBay's offices. *Id.* ¶¶ 13, 16jjj, 16lll, 16mmm, 16ooo.

Mr. Baugh's Prior Covert Operations as a Security Contractor

As the prosecution knows, earlier in his career, Mr. Baugh was a U.S. government agent involved in national security activities. Later, while working as a private sector security contractor, Mr. Baugh was enlisted from time to time by U.S. government agencies, via a "handler" from the FBI, to conduct and assist those agencies with certain covert operations. These activities involved conducting physical and electronic surveillance, engaging in physical trespass, using false pretenses and fake identities, and gaining unauthorized access to private corporate computer systems, documentation, and resources, all in support of certain national security objectives.

For example, in one covert government operation, Mr. Baugh used private corporate resources to facilitate installation of surveillance devices at a hotel to monitor a visiting head of state and accompanying delegation from a hostile foreign power; he then secretly funneled the government-provided cash back into the corporation's finance system to reimburse the costs. In another operation, Mr. Baugh surreptitiously obtained falsified corporate credentials, without the company's consent, to permit a government agent to attend meetings between corporate employees and a visiting foreign delegation. In yet another operation, Mr. Baugh used false pretenses to help arrange meetings between a suspected foreign agent (target) and an undercover federal agent who pretended to be a business consultant retained by Mr. Baugh, in order help the undercover agent form a close relationship with, and obtain compromising information about, the target.

Mr. Baugh was consistently instructed by his FBI handler to stick with his false "cover story" if confronted or questioned by local law enforcement or corporate representatives about his actions in connection with these covert government operations.

eBay executives were well aware of Mr. Baugh's background, and they expected he would use strategies and tactics that he learned in service of the U.S. government to address what they characterized as the existential threat posed by the Newsletter. eBay's General Counsel, Marie Huber, had advised executives and Mr. Baugh that ordinary legal tools were unlikely to be effective in addressing issues posed by the Newsletter and a Twitter account believed to be associated with the Victims. Executives therefore turned to Mr. Baugh to solve the problem by less conventional means. SVP Wymer's direction to Mr. Baugh, cc'ed to GC Huber, could not have been more clear:

> I genuinely believe these people are acting out of malice and ANYTHING we can do to solve it should be explored.  Somewhere, at some point, someone chose to let this slide. It has grown to a point that is absolutely unacceptable. It's the "blind eye toward graffiti that turns into mayhem" syndrome and I'm sick about it. Whatever. It. Takes.

D.E. 3-2 (Cmplt. Aff.) ¶ 49.

The Requested Discovery.

By letter dated June 29, 2021, Mr. Baugh requested, *inter alia*, the following items in discovery:

- Documents sufficient to identify activities performed by Mr. Baugh authorized by or in support of U.S. government intelligence or law enforcement agencies or operations from 2014 to 2018.

- Documents concerning or comprising any agreements between Mr. Baugh and U.S. government agencies relating to the activities referenced in the previous request.

- Documents concerning or comprising written instructions or warnings provided to Mr. Baugh relating to the activities referenced in the previous two requests.

D.E. 62 ¶¶ 6-8.

The prosecution, "[w]ithout confirming or denying the existence of any of the described activities, agreements, instructions, or warnings for the period between 2014 and 2018, …

6

decline[d] to produce such records." D.E. 67 at 3-4. It asserted the information is "irrelevant because it predates the existence of the conspiracy alleged in the Indictment." *Id*. at 4. Moreover, implicitly admitting that the information, at minimum, would be relevant to the "degree of the defendant's culpability" under Local Rule 116.2(b)(4), the prosecution argued that the information is not discoverable *yet*: "To the extent you seek information in the government's possession that, assuming it existed, would tend to diminish the degree of the defendants' culpability, Local Rule 116.2(b)(4) requires only that a written summary of any information be provided before the earlier of a plea or the defendant's submission of objections to a Presentence Investigation Report." *Id*.[3]

The prosecution is wrong. Because the requested information is potentially exculpatory and material to preparing Mr. Baugh's defense, it must be turned over now. And even under the prosecution's narrow and jaundiced view of its obligation as limited to pre-plea sentence mitigation, Mr. Baugh cannot meaningfully weigh whether to *consider* a plea without access to the requested materials now. Finally, even if discovery were not yet required under the Local Rules, delay under these circumstances is a waste of resources and inconsistent with the prosecution's obligation to seek justice, not simply a conviction.

## ARGUMENT

The requested information is material to Mr. Baugh's state of mind. Did he "*intend*" to "*harass*" the alleged victims, using various means including physical surveillance, as the federal stalking statute requires? Did he "*corruptly*" engage in misleading conduct as the witness tampering statute requires? Or, instead, did he act in good faith, believing his actions to be appropriate and necessary to avoid greater harms? Even if such a belief appears erroneous or

---

[3] Notably, the government has not invoked the declination provision of Local Rule 116.6.

unreasonable today, with the benefit of hindsight, Mr. Baugh is entitled to develop and present evidence bearing on his state of mind at the time of alleged conduct at issue.

Evidence concerning Mr. Baugh's prior participation in U.S. government-sponsored covert operations that employed physical surveillance and other arguably unlawful means in service of a greater good (that is, to avoid greater perceived or potential harm), and any instructions and warnings his official handler may have provided (*e.g.,* to maintain a false "cover story" in response to inquiries from local law enforcement or corporate representatives) would be exculpatory and material to as evidence that tends to negate specific intent and/or support an affirmative defense of actual or perceived necessity.

**I.     Legal Standard**

The government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 266 (1st Cir. 2011) (citing *Brady v. Maryland,* 373 U.S. 83 (1963)). The Local Rules further provide:

> [e]xculpatory information includes, *but may not be limited to*, all information that is material and favorable to the accused because it tends to:
> (1) Cast doubt on defendant's guilt as to any essential element in any count of the indictment or information;
> (2) Cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief, that might be subject to a motion to suppress or exclude . . . .;
> (3) Cast doubt on the credibility or accuracy of any evidence that the government anticipates offering in its case-in-chief; or
> (4) Diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines.

Local Rule 116.2(a) (emphasis added).

In addition, the criminal discovery rules provide that

8

> [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) <u>the item is material to preparing the defense</u>;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) <u>the item was obtained from or belongs to the defendant.</u>

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added); *see* Local Rule 116.1(c)(1)(A) (requiring production of Rule 16 material within 28 days of arraignment). Thus, under Local Rule 116.1(c)(1)(E) and Fed. R. Crim. P. 16(a)(1)(E), the government must permit the inspection of requested documents, within 28 days of arraignment, if they are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i).

Materiality is a low threshold: The First Circuit has observed that

> Rule 16's mandatory discovery provisions were designed to contribute to the fair and efficient administration of justice by providing the defendant with sufficient information upon which to base an informed plea and litigation strategy; by facilitating the raising of objections to admissibility prior to trial; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact-finding process.

*United States v. Lanoue*, 71 F.3d 966, 976 (1st Cir. 1995), *abrogated on other grounds by United States v. Watts*, 519 U.S. 148 (1997). Information is material even if it does not ultimately lead to a viable defense. *See United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) ("[i]nformation is material even if it simply causes a defendant to completely abandon a planned defense and take an entirely different path").

**II.   The Court Should Order the Requested Discovery**

The requested information is exculpatory and material to Mr. Baugh's *mens rea*, which is directly at issue in both the stalking and witness tampering charges. *See* Fed. R. Crim. P. 16(a)(1)(E)(i). Moreover, to the extent the requests include agreements, warnings, and other

9

documents that Mr. Baugh actually signed, they constitute materials "obtained from" him to which he is automatically entitled. *See* Fed. R. Crim. P. 16(a)(1)(E)(iii).

In order to obtain a federal "stalking" conviction under 18 U.S.C. § 2261A, the government must prove, among other things, that Mr. Baugh travelled in interstate commerce "[with] the intent to kill, or injure, or harass, or intimidate, or place under surveillance with the intent to kill, injure, harass or intimidate, the person named in the Indictment." *United States v. Walker*, 665 F.3d 212, 224 (1st Cir. 2011); *see* 18 U.S.C. § 2261A(1); *see also* Pattern Crim. Jury Inst. for the District Courts of the First Circuit 4.18.2261A.[4] That specific intent must exist at the time of the interstate travel. *See United States v. Casile*, 490 Fed. Appx. 470, 2012 U.S. App. LEXIS 15872 (3d Cir. Aug. 1, 2012).

In order to obtain a witness tampering conviction under 18 U.S.C. § 1512(b)(3), the government must prove that Mr. Baugh *knowingly* and *corruptly* persuaded or attempted to persuade, or engaged in misleading conduct toward an identified person with the intent to hinder, delay, or prevent communication of information to federal law enforcement. Construing that statute, the Supreme Court has emphasized that "[o]nly persons conscious of wrongdoing can be said to 'knowingly . . . corruptly persuade.'" *Arthur Andersen LLP v. United States*, 544 U.S. 696, 705-06 (2005) (ellipsis in original).

As to both sets of charges, Mr. Baugh is entitled to present evidence that he did not have the requisite *mens rea*—the specific intent to *harass* the Victims, or to *corruptly* tamper with a witness. While the government always bears the burden to prove *mens rea* elements beyond a reasonable doubt, Mr. Baugh may request a "good faith" instruction. *See* Pattern Crim. Jury Inst.

---

[4] Available at https://www.med.uscourts.gov/pdf/crpjilinks.pdf .

for the District Courts of the First Circuit § 5.02 ("Evidence has been presented of [defendant's] [. . . good faith. . .]. Such [ ] may be inconsistent with [the requisite culpable state of mind]"); *United States v. Sturm*, 870 F.2d 769, 777 (1st Cir. 1989) ("Jury instructions that allow a conviction even though the jury may not have found that the defendant possessed the mental state required for the crime constitute plain error.").

Relatedly, Mr. Baugh can also seek to establish the necessity or, at least, the good-faith *perceived* necessity of his conduct. That affirmative defense would require Mr. Baugh to prove that he "(1) was faced with a choice of evils and chose the lesser evil, (2) acted to prevent imminent harm, (3) reasonably anticipated a direct causal relationship between his acts and the harm to be averted, and (4) had no legal alternative but to violate the law." *United States v. Lebreault-Feliz*, 807 F.3d 1, 3-4 (1st Cir. 2015).

The circumstances here indicate that Mr. Baugh: (1) believed the Victims and the Newsletter posed a grave and imminent threat in the form of incitements to violence against eBay personnel; (2) believed the alleged actions would avert the threatened harm; (3) was told by the GC Huber that "ordinary" legal tools were ineffective to neutralize that threat; (4) had previously, at the U.S. government's direction and with its authorization, engaged in surveillance, trespassing, and misleading activities similar to those charged here, in what he understood to be necessary for the greater good. The requested discovery would show that Mr. Baugh was previously hired to engage in similar conduct by the U.S. government; he reasonably understood the conduct was lawful or, at least, necessary; and he undertook that conduct not to "harass or intimidate" or to "corruptly" mislead but to serve important national security objectives. Such evidence would help to demonstrate Mr. Baugh's good faith.

Stated differently, evidence that Mr. Baugh previously engaged in surveillance and other arguably unlawful activities believing them to be justified, supports the inference that he did so here, too. In *United States v. Lee*, 790 F.3d 12 (1st Cir. 2015), the First Circuit found that historical evidence of the defendant's abuse of his former wife was relevant (and admissible) in a § 2261A stalking prosecution, not only to show the *victim*'s state of mind but "relevant to [the defendant's] motive or intent" as well. *Id*. at 16-17 (emphasis added). If such evidence is relevant and admissible when offered to show an inculpatory state of mind, as in *Lee*, it is similarly relevant and admissible to show an *exculpatory* state of mind.

## CONCLUSION

For the foregoing reasons Mr. Baugh respectfully requests that this Court order the government to provide the discovery requested in paragraphs 6-8 of his June 29, 2021 letter.

Respectfully submitted,

**JIM BAUGH**

by his attorneys,

    */s/ William Fick*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO # 601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM
DMARX@FICKMARX.COM
ABARSKY@FICKMARX.COM

## CERTIFICATE OF SERVICE

I caused the foregoing document to be served, by ECF filing August 16, 2021, on the parties registered for ECF notices in this case.

    */s/ William Fick*