IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM BAUGH, *et al.* | No.  20-cr-10263-PBS |

**DEFENDANT JIM  BAUGH'S MOTION FOR RULE 17(c) SUBPOENAS
TO EBAY AND MORGAN LEWIS WITH INCORPORATED MEMORANDUM**

Pursuant to Fed. R. Crim. P. 17(c), Defendant Jim Baugh respectfully moves for leave to issue pretrial document subpoenas to eBay Inc. (Exhibit A) and Morgan, Lewis & Bockius LLP (Exhibit B).[1]

**INTRODUCTION**

The Indictment in this case alleges a bicoastal conspiracy that was planned from eBay's headquarters in San Jose, California, and unfolded around a private residence in Natick, Massachusetts. D.E. 33. It alleges that Mr. Baugh, along with other eBay employees and contractors, harassed and intimidated a couple ("Victims 1 and 2"), who published an online newsletter ("Newsletter") about eBay and other ecommerce companies.[2] It further alleges that Mr.

---

[1] While Mr. Baugh could have filed this motion *ex parte, see, e.g., United States v. Colburn*, No. 19-cr-10080-NMG, 2020 U.S. Dist. 209113, *7-*8 (D. Mass. Nov. 9, 2020), there would be little strategic advantage in doing so given the close cooperation between eBay and the prosecution. Notably, however, a party (here, the prosecution) has no standing to challenge a subpoena served upon non-parties. *See, e.g., Katz v. Liberty Power Corp., LLC*, No. 18-cv-10506-ADB, 2020 U.S. Dist. LEXIS 112969, *26-*28 (D. Mass. Jun. 26, 2020) (collecting cases).

[2] This motion refers to the "Victims" and "Newsletter" as in the Indictment, but their identities are no secret. Indeed, they have filed a civil lawsuit and held at least one press conference. *See Steiner et al. v. eBay, Inc. et al.,* No. 21-cv-11181-DPW (D. Mass.); *see also* Aaron Pressman, "'It has to be known what was done to us': Natick couple harassed by eBay tell their story for the first time," THE BOSTON GLOBE (Jul. 31, 2021), available at https://tinyurl.com/3ydekuzz.

Baugh and the others sought to obstruct an investigation of the charged conspiracy by lying to eBay investigators and local police and by destroying documents.

The alleged objectives of the charged conspiracy, according to the Indictment, were "to distract the Victims from publishing the Newsletter, to alter the Newsletter's coverage of eBay, and to gather information that the defendants and their co-conspirators could use to discredit the Victims and the Newsletter." *Id.* ¶ 12. But the broader purpose, the Indictment indicates, was to satisfy "eBay's senior leadership," who "perceived the Newsletter as a threat to eBay's public image." *Id.* ¶ 10 ("These senior eBay executives disliked the Newsletter's content and comments that the Newsletter's readers posed[.]").

Specifically, the fifteen-count Indictment charges that, in violation of 18 U.S.C. § 371, Mr. Baugh conspired (i) to travel in interstate commerce to stalk the Victims and (ii) to use the facilities of interstates commerce to cyber-stalk them (Count I). D.E. 33. It also charges the substantive offenses of stalking in violation of 18 U.S.C. § 2261(A)(1)(B) (Counts II and III) and cyber-stalking in violation of 18 U.S.C. § 2261(A)(2)(B) (Counts VI and VII). Further, the Indictment charges that, in violation of 18 U.S.C. § 1512(b)(3), Mr. Baugh committed witness tampering against a Natick Police Department ("NPD") detective (Count X) and eBay investigators (Count XI). Finally, it charges that, in violation of 18 U.S.C. § 1519, Mr. Baugh obstructed a federal investigation into the charged conspiracy by directing a colleague to falsify a document (Count XIII) and by destroying data on his cellphone (Count XIV).[3]

Although the Indictment does not identify the "eBay investigators" whom Mr. Baugh allegedly misled, published reports indicate that, to assist in-house counsel, in August 2019, eBay

---

[3] The Indictment includes parallel counts against co-Defendant David Harville for all but two of the substantive charges (Counts IV, V, VIII, IX, XII, and XV).

hired Morgan Lewis & Bockius LLP, a global law firm, to conduct "an internal probe of the scheme." Brian Dowling, "*Former EBay Execs Deny New Charges In Cyberstalking Case*," LAW360 (Nov. 19, 2020).[4] Based on that internal investigation, eBay "fired everyone involved, including then-Chief Communications Officer Steven Wymer." *Id.*

## <u>BACKGROUND</u>[5]

The criminal complaint recounts that former Chief Executive Officer Devin Wenig (identified as "Executive 1") and Wymer (identified as "Executive 2") closely followed the Newsletter, expressed extreme hostility toward the Victims, and were the primary drivers of the alleged efforts to harass and intimidate them. On April 10, 2019, Wymer texted Wenig, "We are going to crush this lady," referring to Victim 1. D.E. 3-2 at ¶ 18. On May 31, 2019, Wenig directed Wymer, "Take her down." *Id.* at ¶ 20. On July 18, 2019, Wenig's wife contacted Baugh about the Newsletter, expressing her concern that Victim 1 "gets people worked up with the way she skews her stories." *Id.* at ¶ 31.

Concerns that false, misleading, personal, and inflammatory content in the Newsletter could incite actual physical violence preoccupied eBay's executives—and, as a result, Mr. Baugh and his eBay security team, too. In the wake of the April 2018 mass shooting at YouTube headquarters, the large, open eBay "campus" comprised of multiple buildings in San Jose was viewed as particularly vulnerable. And the eBay "Open" conference, which draws a large, often-

---

[4] Available at https://tinyurl.com/yyn2rmzp. In addition, the prosecution has produced in discovery multiple cover letters from Morgan Lewis accompanying materials from its investigation that the firm selectively provided to federal law enforcement.

[5] This background narrative is for the purpose of this Motion only. It is substantially based on the charging documents and materials produced by the government in discovery. Mr. Baugh does not concede that any particular facts or allegations, many of which are outside his personal knowledge, are true or accurate.

fractious collection of eBay sellers to Las Vegas every year, was also viewed as high-risk. Indeed, the 2019 conference was held at the Mandalay Bay, the same site where one of the nation's worst mass shooting incidents had taken place in 2017.

On August 1, 2019, the Newsletter posted an article about a RICO lawsuit by eBay, in which Victim 1 criticized Wenig for his failure "to stop a decline in market sales" and the lawsuit as "not the best tactic" in an effort "to dissuade sellers from turning to Amazon." That same day, Wenig angrily texted Wymer:  "If you are ever going to take [Victim 1] down . . . now is the time." *Id.* at ¶¶ 35-36. Wymer quickly responded:  "On it." *Id.* at ¶ 37. Following his exchange with Wenig, Wymer contacted Mr. Baugh, calling Victim 1 a "biased troll" who "needs to get BURNED DOWN." *Id.* at ¶ 38. Critically, Wymer assured Mr. Baugh that eBay would "embrace managing any bad fall out," because the company "need[s] to STOP her." *Id.* ¶ 39. According to the criminal complaint, the charged conspiracy then moved into its planning and execution phases.

During the initial planning, Mr. Baugh allegedly told his co-conspirators, who all worked in eBay's corporate security operation, that they had "executive support for these actions," and he "shared with one or more members of the group" text messages from eBay's senior leadership. *Id.* at ¶ 44. Later, Mr. Baugh forwarded to others an email from Wymer, in which Wymer wrote that the Newsletter was "very damaging" to eBay and that the Victims were "acting out of malice." *Id.* at ¶ 49. In his email, Wymer exhorted Mr. Baugh:

> ANYTHING we can do to solve it should be explored. Somewhere, at some point, someone chose to let this slide. It has grown to a point that is absolutely unacceptable. It's the "blind eye toward graffiti that turns into mayhem" syndrome and I'm sick about it. *Whatever. It. Takes.*

*Id.* (emphasis added). In another message, sent a few days later, Wymer told Mr. Baugh:

> I want to see ashes. As long as it takes. *Whatever it takes.*

*Id.* at ¶ 56 (emphasis added).

Based on these consistent, unequivocal messages from eBay's senior leadership, Mr. Baugh allegedly advised his co-conspirators that he had been "ordered" by "the bosses" "to find and destroy" the Victims and their Newsletter. *Id.* at ¶ 59. Mr. Baugh allegedly emphasized that "[Wymer] said this has to stop even if . . . eBay takes on some risk," referring to potential legal liability, and that the company would provide any necessary legal support. *Id.* at ¶ 161 ("If I need to bring in an[] eBay attorney to talk to cops, I have that in my back pocket.").

The charged conspiracy failed to accomplish its alleged objectives. Rather than distract the Victims or change the content of their Newsletter, it prompted a local police investigation in Massachusetts. After a detective from the Natick Police Department followed several clues back to eBay's headquarters in California, Mr. Baugh and other eBay employees and contractors allegedly lied to "eBay investigators," destroyed records on "eBay-issued cellphones," and removed computers from eBay's offices. *Id.* at ¶¶ 13, 16jjj, 16lll, 16mmm, 16ooo.

These developments were a focus of extensive discussions at the highest levels of the company.

> The eBay board's audit committee learned of the investigation in late August [2019], and the broader board was briefed the following month during a five-hour call led by lawyers at Morgan Lewis & Bockius, according to people familiar with the matter.

Kristin Grind & Sebastian Herrera, "*'Crush This Lady.' Inside eBay's Bizarre Campaign Against a Blog Critic*," THE WALL STREET JOURNAL (June 24, 2020).[6] Although the board was reportedly told that Wenig had been unaware of the charged conspiracy, he promptly left eBay in September 2019 with an "exit package" reportedly worth $57 million. *See id.*; *see also* eBay, Inc. SEC Form 8-K (Sept. 25, 2019).[7] Wymer, on the other hand, was fired in September 2019. *See* Spencer Soper,

---

[6] Available at https://tinyurl.com/yzvd43tp.

[7] Available at https://sec.report/Document/0001193125-19-254832/.

"*EBay Former PR Chief Is 'Executive 2' in Indictment*," BLOOMBERG LAW (June 17, 2020).[8] Mr. Baugh and all his co-defendants were also fired.

## SUBPOENAS FOR DOCUMENTS

A defendant may request subpoenas *decus tecum* that are returnable prior to trial. *See* Fed. R. Crim. P. 17(c); *United States v. Kravetz*, 706 F.3d 47, 53 n.2 (1st Cir. 2013). To obtain a subpoena for documents, a criminal defendant must "clear three hurdles: (1) relevancy, (2) admissibility; and (3) specificity." *United States v. Henry*, 482 F.3d 27, 30 (1st Cir 2007) (citing *United States v. Nixon*, 418 U.S. 683, 698-700 (1974)) (explaining the "chief innovation" of Rule 17(c) was "to expedite . . . trial by providing a time and place before trial for the inspection of subpoenaed materials"). Because Rule 17(c) has "constitutional underpinnings," based on a defendant's rights to due process (Fifth Amendment) and compulsory process (Sixth Amendment), the courts have "the resultant obligation . . . to assist criminal defendants in exercising their rights." *United States v. Colburn*, No. 19-cr-10080-NMG-PK, 2020 U.S. Dist. LEXIS 209113, at *6-7 (D. Mass. Nov. 9, 2020).

The materials that Mr. Baugh seeks from eBay and Morgan Lewis are plainly relevant to the pending criminal charges; indeed, they concern eBay's internal investigation of the very same alleged conduct.

The requested materials also have evidentiary value, for several reasons. They will undoubtedly include direct evidence of the events that transpired (i) at eBay headquarters before the alleged "operation"; (ii) in Natick when the alleged harassment, intimidation, and surveillance later occurred; and (iii) again in San Jose during the alleged "cover-up." The records will also provide definitive proof that senior eBay executives, including in-house attorneys, knowingly

---

[8] Available at https://tinyurl.com/ys5s9pux.

participated in the charged conspiracy. Finally, internal documents from eBay and Morgan Lewis will offer support for a necessity defense, and show that at all times, Mr. Baugh acted in good-faith.

For example, it will be impossible for the prosecution to prove that Mr. Baugh misled eBay because, as the evidence from the company's investigation will show, Mr. Baugh acted at the direction of Wenig and Wymer and provided regular updates as events unfolded to Wenig and Wymer as well as Marie Huber, the General Counsel; Wendy Jones, the Chief Operating Officer (who was Mr. Baugh's boss); and other eBay executives. Moreover, the prosecution will not be able prove that Mr. Baugh acted "knowingly" and "intentionally" – that is, with a general awareness that his conduct was unlawful – because senior corporate leadership led Mr. Baugh to believe that the alleged actions the Victims were necessary to protect the security of eBay and its employees, and they promised to provide legal support to Mr. Baugh and the others.

The email that Wymer sent on August 7, 2019, which the criminal complaint quoted at length, *see* D.E. 3-2 at ¶ 49, was written in response to an earlier email that an in-house eBay attorney sent to Wymer, Huber, and Mr. Baugh, about the limited options for addressing disturbing tweets about eBay, which the company believed were connected to, or provoked by, the Newsletter. The full thread, attached as Exhibit C, makes clear that Huber and Aaron Johnson in eBay's legal department requested that Mr. Baugh regularly update the company's senior executives about "any news/developments on [his] end." Ex. C. That is exactly what happened. During a lengthy discussion by email about @unsuckebay (also known as "the Parody Account"), attached as Exhibit D, one of the accounts that sent many of the most troubling tweets and continuously harassed eBay executives, *see* D.E. 3-2 at ¶¶ 18, 57-58, Mr. Baugh reported to Wenig, Wymer, and Huber that the security department was working to gather "information regarding [the

poster's] identity and location" and stating that he would continue to "work with" Wenig and Huber "to determine the best course of action." Ex. D. In the same thread, Wymer mentioned corporate and legal efforts to "get [@unsuckebay] killed." *Id.*

Although eBay will likely assert attorney-client privilege over some of the requested materials, Mr. Baugh's constitutional rights to a fair trial trump any common-law interest that the company may have in the confidentiality of internal investigation. "Whether rooted" in the rights of due process, compulsory process, or confrontation, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (holding the Sixth Amendment guarantees "the right to present the defendant's version of the facts"); *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (holding "criminal defendants have the right . . . to put before a jury evidence that might influence the determination of guilt"). As a result, "[e]ven the attorney-client privilege" should "yield in a particular case" if a defendant's constitutional rights "would be violated by enforcing the privilege." *United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994); *see United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006) (ruling "the attorney-client privilege could in certain circumstances yield to a defendant's Sixth Amendment rights") (citing *Murdoch v. Castro*, 365 F.3d 699 (9th Cir. 2004)).

Here, separately, given the materials that eBay has apparently provided to investigators and that the prosecution has quoted in its charging documents, eBay has likely waived any claim of attorney-client privilege through its voluntary disclosure to a third-party. *See In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) ("[T]he attorney-client privilege may be waived . . . When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege

is premised."); *see generally United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684-85 (1st Cir. 1997) (including under "waiver," "selective disclosure to some outsiders but not all," and explaining that such disclosure is inconsistent with confidentiality, "the search for truth," and "fairness" to all parties); *see also Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("Knowing disclosure to third-party almost invariably surrenders the privilege with respect to the world at large; selective disclosure is not an option."). To be sure, a party, like eBay, "cannot . . . engage in selective disclosure and waive the privilege only as to beneficial communications," *Mag Jewelry Co. v. Cherokee, Inc.*, No. 04-174T, 2005 U.S. Dist. LEXIS 53358, at *5 (D.R.I. Aug. 12, 2005), or as to cherry-picked information that it chooses to reveal to the prosecution for use against Baugh and other former employees.

Even if eBay has not already waived any privilege claim, courts have concluded that, when in conflict, a defendant's confidential rights take precedence over a corporation's common-law claim to confidentiality. In *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006), the court allowed a motion by three defendants to use Grace's privileged documents in their defense at trial.

> Grace has asserted its legitimate interest in protecting its privileged communications unconditionally and in good faith. Still, the law requires that the privilege yield where its invocation is incompatible with a criminal defendant's Sixth Amendment rights.

*Id.* at 1145; *see id.* at 1142 (recognizing that privileged material may be "of such probative and exculpatory value as to compel admission of the evidence over Defendant Grace's objection as the attorney-client privilege holder" and ruling admissibility determinations would be "made on a document-by-document basis at trial"). Similarly, in *United States v. Mix*, Crim. No. 12-171 Section "K"(1), 2012 U.S. Dist. LEXIS 88044 (E.D. La. June 26, 2012), the court ordered BP to disclose its privileged materials to the defendant and stated that, if necessary at trial, it would

establish a protocol to determine which documents are subject to the attorney-client privilege and whether any such documents should be admitted into evidence at trial," notwithstanding the privilege. *Id.* at *8-*9 (following *W.R. Grace*). In *United States v. Weisberg*, No. 08-CR-347 (NGG) (RML), 2011 U.S. Dist. LEXIS 37221 (E.D.N.Y. Apr. 5, 2011), the defendant sought a Rule 17(c) subpoena for documents from two law firms that asserted attorney-client privilege. Recognizing that such material may be "so important to the defense that its disclosure is constitutionally required," the court ruled that it would be "appropriate" to review *in camera* each privileged item. *Id.* at *15.

Precedent exists in this District for a strategy of piercing a corporation's privilege to obtain evidence that may show a defendant's "good faith." In *United States v. Stryker Biotech*, No. 09-cr-10330 (D. Mass.), the former president of Stryker Biotech, Mark Philip, who had been indicted along with the company and three former sales executives, moved to sever his trial from the company's case so that he could present a good-faith defense based on his frequent communications with in-house and outside counsel who (according to Philip) had not raised any legal or compliance concerns. *See id.,* D.E. 264-65. Philip argued that his constitutional right to use exculpatory material was incompatible with the company's attorney-client privilege. Stryker Biotech acknowledged that privileged material was exculpatory to Philip because it tended to negate the prosecution's proof of specific intent, but the company objected to the admission of those materials, claiming they would prejudice the company's own right to a fair trial. *See id.,* D.E. 267 at 1-2. To protect Philip's right to present his defense and also to respect Stryker's interest in the privilege, on the eve of trial, the court allowed Philip's motion to sever, ordering a separate trial at which Philip could use Stryker's privileged materials to present his good-faith defense. *See* Electronic Clerk's Note (Jan. 9, 2019); *see also* Stephen G. Huggard and Hilary B. Dudley, "*The*

*Sword, a Shield, and Severance: The Corporate Attorney-Client Privilege in White Collar Criminal Prosecutions,*" BLOOMBERG LAW (Sept. 11, 2012).[9] Ultimately, before the separate trial, the prosecution dismissed all charges against Philip. *See Stryker, supra,* D.E. 309.

Finally, the requested subpoenas are narrowly tailored to serve Mr. Baugh's need to gather relevant, admissible evidence in advance of trial to prepare his defense. Mr. Baugh does not seek "any and all" documents in eBay's possession, custody, or control concerning the charged conspiracy or "any and all" documents concerning Morgan Lewis's internal investigation. Rather Baugh seeks only the following specific, discrete categories of documents: (1) the final report (or reports) from eBay's internal investigation, (2) the presentation (or presentations) made by Morgan Lewis to the Audit Committee and the Board (along with the supporting materials that Morgan Lewis provided and any minutes of those meetings), (3) the memoranda or recordings of interviews with Mr. Baugh in which he allegedly lied to eBay investigators, (4) the memoranda or recordings of interviews with other eBay employees who spoke to investigators about Mr. Baugh's alleged involvement in the charged conspiracy, and (5) forensic analysis of Baugh's alleged falsification or destruction of evidence; and (6) (from eBay only) communications among specific eBay personnel concerning a limited range of key topics. It should not be difficult for eBay and/or Morgan Lewis to locate these materials or unduly burdensome to produce them to Mr. Baugh, especially in light of his constitutional rights to confront his accusers and present his defense.

## **CONCLUSION**

For the foregoing reasons, Defendant Jim Baugh respectfully requests that this Court allow the Motion and grant him leave to serve the proposed subpoena on eBay, Inc. and Morgan, Lewis & Bockius LLP.

---

[9] Available at https://tinyurl.com/3emccueb.

Respectfully submitted,

**JIM BAUGH**

by his attorneys,

_/s/ William Fick_
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
_wfick@fickmarx.com_
_dmarx@fickmarx.com_

## <u>CERTIFICATE OF SERVICE</u>

I caused the foregoing document to be served, by ECF filing August 24, 2021, on the parties registered for ECF notices in this case. A courtesy copy will also be served by e-mail on counsel for eBay.

_/s/ William Fick_