UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM BAUGH &<br>DAVID HARVILLE,<br><br>Defendants | 1:20-cr-10263-PBS/MBB |

<u>OPPOSITION TO DEFENDANT JIM BAUGH'S MOTION TO COMPEL DISCOVERY</u>

Well before the events described in the Indictment, defendant Jim Baugh claims he served as an FBI confidential human source. Under the direction of a "handling" agent, Baugh says he supported covert national security operations, and that he was instructed to lie to protect his cover. He moves to compel records regarding that alleged service,[1] claiming that the records offer a defense to the Indictment's charges. Baugh argues that he had good intentions as a covert source, and that he harassed the Victims and obstructed investigations into that harassment for another good reason: to protect eBay executives from harm. (Docket No. 77).

For the reasons stated below, the records Baugh requests are not exculpatory or otherwise discoverable. Past government service is not a license to commit crimes forever, or to fish through sensitive files when caught. The covert activities under government supervision that Baugh describes have no relation to his later intent to harass, intimidate, and obstruct as a private

---

[1] The government has neither confirmed nor denied that Baugh was a government source. Because the records he requests are not discoverable, whether they exist or not, the government accepts Baugh's characterization of his service only for purposes of this motion.

1

citizen.  Nor would documents about past government service support a necessity defense.  The Court should accordingly deny Baugh's motion.

I.     <u>Background</u>[2]

Baugh was the Senior Director of Global Security at eBay.  (¶ 1).  Victims 1 and 2, who lived in Natick, published a Newsletter that covered eBay.  (¶¶ 8-9).  In August 2019, Baugh led a harassment, intimidation, and surveillance campaign targeting Victims 1 and 2 in retaliation for the Newsletter's content.  (¶ 11).

Baugh first directed several of his reports to send harassing and threatening deliveries to the Victims' home.  The deliveries included live insects, a fetal pig, a book on surviving the loss of a spouse, and a funeral wreath, among others.  (¶ 16h, j, q, and t).  Baugh and other coconspirators also targeted the Victims with harassing and threatening communications over Twitter, including the publication of the Victims' home address and threats to visit them there if the Victims did not change the Newsletter's coverage of eBay.  (¶ 16s, v, and nn).  Baugh, his co-defendant David Harville, and two other coconspirators also traveled to Natick, where they surveilled the Victims and attempted to install a GPS device on the Victims' car.  (¶ 16bb, hh).

In connection with the trip, Baugh directed another coconspirator to make up allegations that the Victims had directly threatened eBay's CEO and employees, so that the surveillance team could claim to be investigating the Victims if stopped by the police.  (¶ 15h).

When the Natick Police Department ("NPD") connected the harassment to Harville and Veronica Zea, another coconspirator, Baugh falsely posed as Zea's husband to an investigating detective.  (¶ 16ww).  Baugh and his coconspirators then coordinated a response to the NPD investigation, offering a slew of false justifications for the surveillance team's presence in

_____

[2]"¶" references are to the Indictment, Docket No. 33.

Natick, including that eBay personnel were investigating the harassment—the very conduct that Baugh had directed. (¶ 16xx, ddd. ggg). When Baugh learned that the NPD had connected debit cards used in the Bay Area to some of the harassing deliveries, he directed a coconspirator to fabricate an eBay document that named uninvolved third parties as eBay "Persons of Interest". (¶ 16eee). When Baugh returned to eBay's California headquarters, he lied (and directed others to lie) to eBay investigators about the purpose of the trip, and he destroyed (and directed others to destroy) communications and other evidence of the harassment campaign. (¶ 16iii—qqq).

The Indictment charges Baugh with conspiracy to commit stalking through travel and the facilities of interstate commerce, in violation of 18 U.S.C. § 371 (Count 1); stalking through interstate travel, in violation of 18 U.S.C. § 2261A(1)(B) (Counts 2 and 3); stalking through facilities of interstate commerce, in violation of 18 U.S.C. § 2261A(2)(B) (Counts 6 and 7); witness tampering, in violation of 18 U.S.C. § 1512(b)(3) (Counts 10 and 11); and obstruction of justice, in violation of 18 U.S.C. § 1519 (Counts 13 and 14).

II.     Baugh's Service is Irrelevant to the Offenses Charged in the Indictment

Baugh first argues that the government service described in his motion bears on whether he intended to harass and intimidate the Victims, or to engage corruptly in obstructive conduct. *Def. Mem. at 7*. His motion, however, draws a false equivalence between government-authorized activities in support of "national security objectives" and Baugh's later actions as a private citizen, which he claims were necessary "in service of a greater good". *Id. at 8, 11*.

Whatever surreptitious or otherwise unlawful things Baugh says he did for the FBI, he also claims to have done them at a handler's instruction. Directed actions are authorized, and therefore lawful. Baugh could not be prosecuted for them. But Baugh does not suggest here that the government directed him to harass the Victims, that it required him to obstruct the NPD to

3

maintain a cover, or that he reasonably relied on such authorizations.  That would be a "public authority" defense—one that Baugh has not raised.  *Cf. United States v. Bulger*, 928 F. Supp.2d 305, 323 n.10 (D. Mass. 2013) (elements of public authority defense are (1) "a defendant engaged in criminal conduct at the behest of a government official"; (2) "the government official had the power to authorize the action"; and (3) "the defendant reasonably relied on the government official's authorization").

Baugh claims his government ended in 2018.  He had no FBI handler in August 2019, and the gulf between government-authorized conduct and his crimes is too great for him to draw any reasonable or exculpatory connection between them.

First, Baugh claims covert service involving national security issues and hostile foreign governments.  What he did as an eBay employee involved, at best, domestic legal concerns, and more likely the question of how others, including the Victims, portrayed eBay online.  Baugh could not reasonably believe that these objectives justified him targeting the Victims in the same way that one government targets another.

Second, there are important differences between an agent of the government and a former agent of the government (*i.e.*, a private citizen).  Law enforcement agencies supervise and task a source according to policies and procedures that protect the source, the public, and the integrity of the investigation, especially when the agency tasks a source with what would otherwise be illegal activity.  The *Attorney General's Guidelines Regarding the Use of FBI Confidential Human Sources*, available publicly at https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag-guidelines-use-of-fbi-chs.pdf ("the AG Guidelines"), make these differences clear.

For example, before authorizing a source to engage in what would otherwise be illegal activity ("OIA"), senior FBI officials and prosecutors must determine that a source's role in OIA is necessary and that the benefits to be obtained outweigh the risks.  (AG Guidelines at 30-33). OIA authorization is in writing, and it is time-limited, typically for 90 days. *Id.* at 31, 34.  FBI agents must admonish sources only to engage in authorized conduct and not in any other illegal activity. *Id.* at 34.  Agents must also periodically monitor a source's performance—to, among other reasons, "minimize the adverse effect of the [OIA] on innocent persons"; evaluate the continuing need for the source's involvement in OIA, and, when that need is no longer present, revoke a source's authority to commit crimes. *Id.* at 34-35.

Baugh, on the other hand, targeted the Victims without a written determination by senior government officials about the necessity, risk, and benefit of his actions.  No handler monitored Baugh to ensure that he acted within an agreed-upon scope, or that his actions minimized harm to innocent third parties.  Baugh posits a world in which, by virtue of prior government service, he alone is authorized to identify threats and to commit crimes based solely on his assessment— indefinitely.  The law prohibits this kind of self-help, and what happened to the Victims is exactly why.

Even if there were some relationship between the government service Baugh alleges and what followed at eBay, it would at best show that Baugh had additional intent, not diminished intent.  In other words, Baugh intended to harass the Victims and obstruct the investigation, <u>and</u> to protect eBay executives from some risk of harm.  This secondary purpose, far from negating the intent the statutes require, tends to confirm Baugh's intent to harass and obstruct.

The Indictment's charges do not require the government to prove that harassment, intimidation, or corrupt obstruction was Baugh's significant or motivating purpose, only that it

was a purpose. *See United States v. Casile*, 490 Fed. Appx 470, 474 (3d Cir. 2012). That Baugh also possessed some other intent or motive would not negate or diminish the required *mens rea* at all. *See United States v. Tavares*, 705 F.3d 4, 17 (1st Cir. 2013) (in prosecution for violation of 18 U.S.C. § 2423(a), proof required that criminal sexual activity was "at least one of the defendant's motivations for taking the trip on the first place").

Moreover, the very necessity defense that Baugh proposes—that he chose the lesser of two evils to protect eBay's executives—is incompatible with a claim that he did not form the intent to commit the crimes charged. In *United States v. Dixon*, 548 U.S. 1, 6-7 (2006), the Supreme Court held that justification defenses do not turn on a defendant's *mens rea*. The defendant in that case argued she made false statements (to buy guns) because her boyfriend had threatened to kill her if she did not. As Baugh does here, Dixon suggested that the situation she found herself in bore on her intent to act knowingly and willfully. The Court rejected this construction, noting that defenses of necessity and duress do not "negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to 'avoid liability ... because coercive conditions or necessity negates a conclusion of guilt *even though the necessary mens rea was present*.'" *See Dixon,* 548 U.S. at 6-7 (quoting *United States v. Bailey*, 444 U.S. 394, 402 (1980)) (emphasis supplied). Baugh's lesser-of-two-evils theory is a necessity defense that would "negate[] a conclusion of guilt", *see id.*, not one that requires evaluation of his *mens rea* at all. The documents that Baugh claims would reveal his *mens rea* are accordingly irrelevant and not discoverable.[3]

---

[3]Documents about the service Baugh claims would, in any event, do nothing to establish that he later had good intent with respect to what he did to the Victims. *See United States v.*

III.     The Service Baugh Describes is Irrelevant to a Necessity Defense

Baugh's second claim—that the requested documents will help show he acted in defense

of eBay's executives—is also without merit.  *Def. Mem. at 11.*

The elements of the affirmative defense of necessity are that a defendant "(1) was faced

with a choice of evils and chose the lesser evil, (2) acted to prevent imminent harm,

(3) reasonably anticipated a direct causal relationship between his acts and the harm to be

averted, and (4) had no legal alternative but to violate the law."  *United States v. Lebreault-Feliz*,

807 F.3d 1, 4 (1st Cir. 2015) (*quoting United States v. Maxwell*, 254 F.3d 21, 27 (1st Cir. 2001)).

Courts evaluate these elements through a lens of objective reasonableness, not based on whether

the defendant subjectively believed they existed.  *United States v. Gottesfeld*, 319 F. Supp. 3d

548, 555 (D. Mass. 2018); *see United States v. Schoon*, 971 F.2d 193, 196 (9th Cir. 1992) ("[t]he

law could not function were people allowed to rely on their subjective beliefs and value

judgments in determining which harms justified the taking of criminal action").

Assessed through this framework, documents related to service as a government source

would have no relevance to any of the elements of a necessity defense.

First, the requested documents would not bear on whether Baugh faced a choice of evils

and chose the lesser evil.  A source does not have to choose between committing crimes and

worthy intelligence goals.  As noted above, a source's actions are authorized, even if otherwise

illegal, because a handler directs them.  In the language of necessity's elements, there is only one

evil—the foreign adversary—and thus no choice between evils.  Baugh cannot use FBI

documents to draw a connection between government-authorized tasks and the vigilantism he

---

*Graham*, 981 F.3d 1254, 1264-65 (11th Cir. 2020) ("[e]vidence of good conduct is not
admissible to negate criminal intent").

later directed.

Second, documents about government service would not make it objectively reasonable for Baugh to believe that eBay's executives faced imminent harm,[4] or that Baugh had no legal alternative but to commit the charged offenses.  If anything, documents suggesting that Baugh once had law enforcement connections would make the existence of lawful alternatives more likely, not less.  Baugh could have, for example, called his FBI handler, or any sworn law enforcement officer, and reported that eBay's executives were in harm's way.  "The necessity defense requires that the defendant show that an emergent crisis precluded all options but the one taken."  *Gottesfeld*, 319 F. Supp. 3d at 555.  The fact that Baugh was "unlikely to effect the changes he desire[d] through legal alternatives does not mean, *ipso facto*, that those alternatives [were] non-existent."  *See id*.

Finally, the documents Baugh seeks would not show that it was objectively reasonable for him to anticipate a direct and causal relationship between harassing, threatening, and surveilling the Victims and ending an imminent threat.  The tortured path that Baugh imagined— harassment and intimidation of the Victims; the Victims' gratitude for help with the harassment;

---

[4]It is not clear under any circumstances that Baugh can show imminent harm that he acted to prevent.  He describes only the potential for violence, "hostility toward the company and its executives that the Newsletter and comments provoked," and a mass shooting unrelated to the Newsletter that took place some 16 months earlier at YouTube. *Def. Mem. at 3*; *see United States v. Lebreault-Feliz*, 807 F.3d 1, 4 (1st Cir. 2015) (holding as a matter of law that defendant being threatened six months earlier in a different country did not establish imminent harm justifying criminal acts).  Some courts have even required that a criminal act that a defendant breaks the law to prevent be about to occur in the defendant's presence—a standard Baugh cannot meet.  *See United States v. Brodhead*, 714 F. Supp. 593, 598 (D. Mass. 1989).  In any event, Baugh's written instruction to a coconspirator to make up allegations that the Victims had threatened eBay and its executives (¶ 15h) should be fatal to any claim that he believed harm was imminent.  *See United States v. Maxwell*, 254 F.3d 21, 26 (1st Cir. 2001) ("when the proffer in support of an anticipated affirmative defense is insufficient as a matter of law to create a triable issue, a district court may preclude the presentation of that defense entirely").

the Victims' help in identifying an online critic of eBay; an end to online posts criticizing eBay executives; and an end to a risk of harm to eBay executives—was anything but direct and causal. *See United States v. Dorrell*, 758 F.2d 427, 434 (9th Cir. 1985) (holding as a matter of law that defendant could not establish that his spray-painting of government property could be reasonably anticipated to lead to the termination of a missile program and the aversion of nuclear war and world starvation). Baugh's obstruction was outside even this attenuated chain—there is no relationship at all between the lies he told and the goal he claims of stopping an imminent harm.

Baugh might claim that experience targeting national security subjects would make it reasonable to believe that his private gambit would work, but the national security tasks Baugh describes were considerably more direct than what he claims to have done on the executives' behalf. *Def. Mem. at 5* (obtaining false credential so undercover agent could attend a corporate meeting with a foreign delegation; falsely introducing an undercover agent to a foreign target as a business contact). There is no reasonable comparison between these kinds of direct actions and what Baugh did in 2019. *See Gottesfeld*, 319 F. Supp.3d at 554-55 (holding as a matter of law that defendant could not reasonably expect a cyber-attack on a hospital to lead to publicity that would lead to the discharge of a patient under the hospital's care); *see also Maxwell*, 254 F.3d at 28 ("He cannot will a causal relationship into being simply by the fervor of his convictions (no matter how sincerely held).").

The documents Baugh seeks are therefore not relevant to a necessity defense and are accordingly not discoverable.

IV.   Baugh's Argument Exposes Source Files to Groundless Discovery Requests

Baugh's argument—that a necessity defense justifies the disclosure of a former source's entire file—also poses serious risks to law enforcement's ability to manage confidential sources. Any time a former source was charged with a crime, the defendant could seek discovery of his file to address supposed questions about his intent, whether or not the charged crime had anything to do with the defendant's authorized activities as a source. Sources do not have access to their files while serving. Such files typically contain information about investigations and their subjects that sources do not know, or that they are not permitted by law to know. The Court should not permit Baugh to use criminal discovery tools to publicize alleged relationships and documents that are irrelevant to his case.[5]

V.   Conclusion

For all of the reasons stated above, the United States respectfully requests that the Court deny Baugh's motion to compel.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   /s/ Seth B. Kosto
SETH B. KOSTO
Assistant United States Attorney

September 2, 2021

---

[5]Government service generally, assuming it was honorable, could tend to diminish the degree of a defendant's culpability. Government experience, if abused, could also tend to *increase* the degree of a defendant's culpability. In any event, Local Rule 116.2(b)(4) only requires disclosure prior to a plea of a written summary of such degree-of-culpability information, not all documents that concern it. Baugh has given no indication that he intends to plead guilty. Nor would his stated intent to plead afford him access to the documents he seeks.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

_____ /s/Seth B. Kosto_____
SETH B. KOSTO
Assistant United States Attorney

September 2, 2021