IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.                                                  No.  20-cr-10263-PBS

JIM BAUGH, *et al.*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JIM BAUGH'S MOTION TO DISMISS COUNTS X, XI, XIII, AND XIV OF THE INDICTMENT

William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA  02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

Dated: October 29, 2021

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ ii

Introduction ........................................................................................................... 1

Background ............................................................................................................ 3

Argument ............................................................................................................... 5

I.     Counts X and XI should be dismissed, because the Indictment alleges only that Baugh lied to a local police officer and corporate investigator, not that he tampered with witnesses in a likely federal investigation in violation of 18 U.S.C. § 1512(b)(3). .............................. 5

     A.     Making false statements to witnesses does not constitute "hindering, delaying, or preventing the communication of information." .................................................... 5

     B.     Lying to local police or corporate investigators, when no federal investigation is likely to occur, does not constitute federal witness tampering. .............................. 9

II.     Count XIII should be dismissed, because the Indictment alleges only that Baugh directed an eBay colleague to create a document with the intent to mislead, not to *falsify* the document. ........................................................................................................... 12

III.     Counts XI, XIII, and XIV should be dismissed for lack of venue, because the Indictment fails to allege that Baugh committed the charged offenses in this District. ...................... 13

     A.     Legal Framework ................................................................................. 13

     B.     Charged Offenses ................................................................................ 18

          1.     Count XI charges that Baugh knowingly tampered with potential federal witnesses by lying to eBay investigators, while both Baugh and the investigators were outside Massachusetts. ................................................. 18

          2.     Count XIII charges that Baugh knowingly directed a colleague in California to falsify an eBay document to obstruct a potential federal investigation of the charged conspiracy. ........................................................................... 19

          3.     Count XIV charges that Baugh knowingly destroyed "records" on his eBay-issued cellphone to obstruct that same investigation, after Baugh returned from Massachusetts to California. ......................................................... 20

Conclusion ............................................................................................................ 20

Certificate of Service ............................................................................................ 21

# TABLE OF AUTHORITIES

## Cases

*Almendarez-Torres v. United States*,
    523 U.S. 224 (1998)............................................................................................ 8

*Brotherhood of Railroad Trainmen v. Baltimore Ohio Railroad Co.*,
    331 U.S. 519 (1947)............................................................................................ 8

*Chu v. Commissioner*,
    486 F.2d 696 (1st Cir. 1973)............................................................................ 8

*City of Providence v. Barr*,
    954 F.3d 23 (1st Cir. 2020).............................................................................. 6

*Conroy v. Aniskoff*,
    507 U.S. 511 (1993)............................................................................................ 7

*Fowler v. United States,*
    563 U.S. 668 (2011)......................................................................................7, 10

*Hamling v. United States*,
    418 U.S. 87 (1974)........................................................................................... 14

*Lagos v. United States*,
    138 S. Ct. 1684 (2018)..................................................................................... 6

*Moskal v. United States*,
    498 U.S. 103 (1990)........................................................................................... 6

*S.D. Warren Co. v. Maine Board of Environmental. Protection*,
    547 U.S. 370 (2006)........................................................................................... 7

*Sorich v. United States*,
    555 U.S. 1204 (2009)....................................................................................... 11

*Travis v. United States*,
    364 U.S. 631 (1961)......................................................................................... 15

*United States v. Anderson*,
    328 U.S. 699 (1946)......................................................................................... 15

*United States v. Auernheimer*,
    748 F.3d 525 (3d Cir. 2014)........................................................................... 16

*United States v. Bailey*,
　　405 F.3d 102 (1st Cir. 2005) ................................................................ 9, 17

*United States v. Baldyga*,
　　233 F.3d 674 (1st Cir. 2000) ............................................................ 8, 9, 10

*United States v. Bauzo-Santiago*,
　　867 F.3d 13 (1st Cir. 2017) ..................................................................... 7

*United States v. Bowen*,
　　224 F.3d 302 (4th Cir. 2000) ........................................................... 15, 16

*United States v. Byrne*,
　　153 F.3d 1233 (1st Cir. 1998) ...................................................... 9, 10, 17

*United States v. Cabrales*,
　　524 U.S. 1 (1998) ................................................................................. 14

*United States v. Flaherty*,
　　2015 U.S. Dist. LEXIS 152723 (D. Mass. Nov. 11, 2015) .............................. 10

*United States v. Godin*,
　　534 F.3d 51 (1st Cir. 2008) ................................................................... 13

*United States v. Gonzalez*,
　　906 F.3d 784 (9th Cir. 2018) ................................................................. 12

*United States v. Griffin*,
　　814 F.2d 806 (1st Cir. 1987) ................................................................. 14

*United States v. Guadalupe*,
　　402 F.3d 409 (3d Cir. 2005) .................................................................. 10

*United States v. Hernandez-Hernandez*,
　　291 F. Supp. 2d 490 (W.D. Tex. 2003) ..................................................... 14

*United States v. Johnson*,
　　323 U.S. 273 (1944) ............................................................................. 13

*United States v. Motz*,
　　652 F. Supp. 2d 284 (E.D.N.Y. 2009) ..................................................... 15

*United States v. Percuoco*,
　　630 F. Supp. 784 (D. Mass. 1986) .......................................................... 14

*United States v. Rivera,*
    131 F.3d 222 (1st Cir. 1997) ................................................................. 7

*United States v. Rodriguez-Moreno,*
    526 U.S. 275 (1999) ............................................................................. 15

*United States v. Ronda,*
    455 F.3d 1273 (11th Cir. 2006) ........................................................... 17

*United States v. Rowland,*
    826 F.3d 100 (2d Cir. 2016) ................................................................ 13

*United States v. Salinas,*
    373 F.3d 161 (1st Cir. 2004) ................................................... 13, 15, 16

*United States v. Seward,*
    967 F.3d 57 (1st Cir. 2020) ................................................................. 15

*United States v. Troy,*
    618 F.3d 27 (1st Cir. 2010) ................................................................. 14

*United States v. Veal,*
    153 F.3d 1233 (11th Cir 1998) ..................................................... 10, 17

*United States v. Voisine,*
    778 F.3d 176 (1st Cir. 2015) ................................................................. 7

*United States v. Weadick,*
    __ F.4th __, 2021 U.S. App. LEXIS 29024 (1st Cir. Sept. 24, 2021) ............... 10

*Wheeling & Lake Erie Railway Co. v. Keach,*
    799 F.3d 1 (1st Cir. 2015) ..................................................................... 6

## Constitutional Provisions

U.S. Constitution, amendment IV ................................................................ 14

U.S. Constitution, article III, § 2, clause 3 ................................................. 14

## Statutes

18 U.S.C. § 371 ............................................................................................. 1

18 U.S.C. § 1001 ............................................................................... 6, 8, 16

18 U.S.C. § 1071 ......................................................................................... 16

18 U.S.C. § 1341 ........................................................................................................ 8

18 U.S.C. § 1343 ........................................................................................................ 8

18 U.S.C. § 1346 ...................................................................................................... 11

18 U.S.C. § 1512 ................................................................................................. passim

18 U.S.C. § 1513 ........................................................................................................ 7

18 U.S.C. § 1515 ...................................................................................................... 17

18 U.S.C. § 1519 ................................................................................................. passim

18 U.S.C. § 1951 ...................................................................................................... 15

18 U.S.C. § 2261A ...................................................................................................... 1

42 U.S.C. § 1983 ...................................................................................................... 10

## Rules

Fed. R. Crim. P. 7(c)(1) ............................................................................................. 14

Fed. R. Crim. P. 12(b)(3)(A)(i) ................................................................................. 14

Fed. R. Crim. P. 18 .................................................................................................... 14

## Other Authorities

Senate Report No. 107-146 (2002) ............................................................................ 13

Harvey A. Silverglate, THREE FELONIES A DAY (2009) .............................................. 11

Mike Chase, HOW TO BECOME A FEDERAL CRIMINAL (2019) ..................................... 11

Merriam-Webster Online Dictionary (2021) ........................................................... 6, 8

## INTRODUCTION

The Indictment in this case alleges a bicoastal conspiracy that was planned from eBay's headquarters in San Jose, California, and unfolded around a private residence in Natick, Massachusetts. D.E. #33. It alleges that Defendant Jim Baugh, along with other eBay employees and contractors, harassed and intimidated a couple ("Victims 1 and 2") who published an online newsletter ("Newsletter") about eBay. The charged conspiracy allegedly involved sending direct messages on Twitter to the Victims, arranging for unwanted deliveries to their home, and attempting to conduct covert, physical surveillance of them.[1]

Specifically, the fifteen-count Indictment charges that, in violation of 18 U.S.C. § 371, Baugh and his co-defendant, David Harville, conspired (i) to travel in interstate commerce to stalk the Victims and (ii) to use the facilities of interstate commerce to cyber-stalk them (Count I). It also charges the substantive offenses of stalking in violation of 18 U.S.C. § 2261A(1)(B) (Counts II and III) and cyber-stalking in violation of 18 U.S.C. § 2261A(2)(B) (Counts VI and VII). Further, the Indictment charges that, in violation of 18 U.S.C. § 1512(b)(3), Baugh committed federal witness tampering by engaging in misleading conduct toward a Natick Police Department ("NPD") detective (Count X) and an eBay investigator (Count XI). Finally, it charges that, in violation of 18 U.S.C. § 1519, Baugh obstructed a federal investigation concerning the charged

---

[1] Stephanie Popp, Stephanie Stockwell, Veronica Zea, and Brian Gilbert, who previously worked with Baugh at eBay in San Jose, California, were charged by information in *United States v. Gilbert et al.*, No. 1:20-cr-10098-WGY (D. Mass.), and all four defendants pleaded guilty. Philip Cooke, a former police captain in Santa Clara, California, who also worked with Baugh on security operations at eBay, was charged by information in *United States v. Cooke*, No. 1:20-cr-10126-ADB (D. Mass.), and he, too, pleaded guilty.

1

conspiracy by directing a colleague to falsify a document (Count XIII) and by destroying data on his cellphone (Count XIV).[2]

Counts X and XI of the Indictment should be dismissed because lying to a local police officer and an in-house corporate investigator do not constitute federal witness tampering in violation of 18 U.S.C. § 1512(b)(3). Here, the prosecution fails to allege—and at trial, it will not be able to prove—that, at the time when Baugh supposedly lied to a Natick detective and eBay attorney, a federal criminal investigation concerning the events in Natick was under way or likely to occur or that, by lying to the local police or corporate investigators, Baugh intended to prevent any communications to federal law enforcement officers.

Further, Count XIII should also be dismissed, because creating a truthful document for a misleading purpose is not the same as "falsif[ying]" a document and, thus, does not constitute "obstruction" in violation of 18 U.S.C. § 1519. The Indictment alleges only that, at Baugh's direction, an eBay colleague created a list of "persons of interest" who presented security concerns for eBay ("Bay Area POIs_August 2019.docx"), and that Baugh hoped the document would deflect attention from the NPD. It does not allege that the document itself was "falsified," *i.e.*, that the list contained phony names or false information about security threats to eBay.

Finally, Counts XI, XIII, and XIV should be dismissed for lack of venue, because they charge that Baugh violated federal law while he was *in California* – specifically, that he tampered with a witness by lying to an eBay investigator, in violation of 18 U.S.C. § 1512(b)(3), and that he obstructed a potential federal investigation, by having an eBay colleague "falsify" a document and destroying his own cellphone records, in violation of 18 U.S.C. § 1519. All this alleged conduct

---

[2] The Indictment includes parallel counts against Harville (Counts IV, V, VIII, IX, XII, and XV) for all but two of the substantive charges.

occurred in California, mostly after Baugh returned from the bungled "surveillance operation" in Massachusetts. As a result, there is no venue in this District to prosecute those charges.

## BACKGROUND[3]

At the time of the alleged conspiracy, in August and September 2019, Baugh lived in San Jose, California, not far from eBay's headquarters. D.E. #33 at ¶ 1. Baugh served as eBay's Director of Safety and Security and, in that capacity, oversaw Global Security and Resiliency ("GSR"), a division responsible for the physical security of eBay's employees and facilities. *Id.* He also worked with employees and contractors, including Stephanie Popp, Stephanie Stockwell, and Veronica Zea, who operated eBay's Global Intelligence Center ("GIC"), an intelligence and analytics group within GSR that supported the company's overall security operations. *Id.* ¶¶ 3-5.

eBay's senior corporate leadership believed the Newsletter, and the Victims who published it, were a serious threat to the company, both because of the Newsletter's contents and the comments that its readers posted online. *Id.* ¶ 10. In an effort to distract the Victims from publishing the Newsletter, to alter its coverage, and to gather information that might discredit the Victims, Baugh allegedly conspired with eBay colleagues to "harass and intimidate the Victims" by sending "repeated and hostile Twitter messages" to the Victims and "deliveries of unwanted – and in some instances disturbing – items" to their home. *Id.* ¶¶ 11-12. In addition, Baugh allegedly conspired with his co-defendants to place the Victims "under surveillance" by travelling from California to Massachusetts to "conduct physical surveillance." *Id.*

On or about August 15, 2019, Baugh travelled from California to Massachusetts with Harville and Zea. *Id.* ¶ 16z. Later that same day, all three drove to Natick in a rental car. They

---

[3] This narrative is for the purpose of this Motion only. It is based on the charging documents and materials produced by the prosecution in discovery. Baugh does not concede that any facts or allegations, many of which are outside his personal knowledge, are true or accurate.

planned to install a GPS tracking device on the Victims' car, but that never happened, because the car was locked in the Victims' garage. *Id.* ¶ 16bb. Then, on August 16, 2019, in a different rental car, Baugh, Harville, and Zea returned to Natick; they repeatedly drove past the Victims' home and followed Victim 2 as he drove around town. *Id.* ¶¶ 16ff, 16hh.

On or about August 18, 2019, Baugh, Popp (who had travelled to Boston on August 17, 2019, and replaced Harville on the "surveillance team"), and Zea drove to Natick and, again, followed Victim 2 in his car. Baugh and the others were spotted, and Victim 2 was able "to take a photograph of the surveillance team's license plate." *Id.* ¶ 16qq. Shortly thereafter, on August 20, 2019, Baugh texted Popp, Cooke, and Brian Gilbert to report that two different rental cars had been "burned." *Id.* ¶ 16rr.

Although the Indictment includes many salacious allegations about the messages sent and deliveries made (by alleged co-conspirators, not Baugh), this Motion focuses on the charged "tampering" and "obstruction," all of which supposedly took place *after* the so-called "surveillance operation" in Massachusetts went awry and cover was blown.

On or about August 21, 2019, a NPD detective came to the Boston hotel, where Baugh, Popp, and Zea were staying, "to investigate Zea and Harville's connection" to the alleged "cyberstalking campaign." *Id.* ¶ 16vv. Baugh allegedly made unspecified "false statements" to the NPD detective. *Id.* He also told Popp, in a text, that he had answered Zea's cellphone, claimed to be her husband, and "played dumb." *Id.* ¶ 16ww.

Baugh learned that the NPD detective was looking into the purchase of prepaid debit cards in Santa Clara, California, to purchase pizzas for delivery to the Victims. *Id.* ¶ 16ddd. Baugh and Popp then "directed" Stockwell to create "a list of eBay 'Persons of Interest'" that Gilbert could use in talking with the NPD to "deflect attention from Zea." *Id.* ¶ 16eee.

4

Although the Indictment does not allege when Baugh returned to California from Massachusetts, there is no dispute that he flew home on August 23, 2019. The prosecution claims that, by then, "eBay investigators" were looking into reports about harassment of the Victims, and that Baugh "falsely told" corporate investigators that "his team was not responsible for harassing messages or deliveries" but that they "had been in Natick to investigate threats against the Victims." *Id.* ¶ 16jjj.

On August 28, 2019, while still in California, Baugh again spoke with eBay investigators and, according to the Indictment, "falsely told" them that "his team was not responsible for the deliveries or harassing communications." *Id.* ¶ 16nnn.

Meanwhile, on August 26, 2019, also while in California, Baugh and others allegedly "deleted and attempted to delete data from their mobile phones that evidenced the conspiracy, including WhatsApp messages." *Id.* ¶ 16lll.

## ARGUMENT

I.     **Counts X and XI should be dismissed, because the Indictment alleges only that Baugh lied to a local police officer and corporate investigator, not that he tampered with witnesses in a likely federal investigation in violation of 18 U.S.C. § 1512(b)(3).**

A.     **Making false statements to witnesses does not constitute "hindering, delaying, or preventing the communication of information."**

Counts X and XI charge that Baugh tampered with witnesses to a federal investigation by lying to a NPD detective and an eBay investigator, respectively, in violation of 18 U.S.C. § 1512(b)(3). Putting aside whether making false statements to a local police officer or in-house corporate investigator could have obstructed a non-existent *federal* investigation, *see* Part I.B. *infra*, the alleged conduct was not "witness tampering," as § 1512(b)(3) defines that offense.

"In determining the scope of a statute, we look first to its language," giving the "words used" their "ordinary meaning." *Moskal v. United States*, 498 U.S. 103, 108 (1990) (internal quotations and citations omitted). Here, the relevant statutory language provides:

> Whoever knowingly uses intimidation, threats, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, *with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense* . . . shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(3) (emphasis added). By its terms, the statute prohibits certain conduct, such as intimidating or misleading, when undertaken with the specific intent to "hinder, delay, or prevent the communication . . . of information" related to possible federal criminal activity. Unlike 18 U.S.C. § 1001 which expressly prohibits lying about matters within the jurisdiction of the federal government, 18 U.S.C. § 1512 is only concerned with preventing the communication of information. It says nothing about making inaccurate or untruthful statements.

The statutory language "hinder, delay, or prevent" leaves no doubt that the aim of 18 U.S.C. § 1512 is to impose criminal penalties on persons who, by violence, threats, or trickery, *silence* witnesses and victims. The ordinary meaning of "prevent" is "to keep from happening." Merriam-Webster Online Dictionary (2021). "Hinder" and "delay," commonly mean "to hold back" or "to make slow or difficult." *Id.* To the extent any of these words might be stretched more broadly, "the canon of *noscitur a sociis* teaches that 'statutory words are often known by the company they keep.'" *Lagos v. United States*, 138 S. Ct. 1684, 1688-89 (2018); *see Wheeling & Lake Erie Ry. Co. v. Keach (In re Montreal, Me. & Atl. Ry., Ltd.)*, 799 F.3d 1, 8 (1st Cir. 2015). "Under this canon, 'a string of statutory terms raises the implication that the 'words grouped in list should be given related meaning.'" *City of Providence v. Barr*, 954 F.3d 23, 34 (1st Cir. 2020) (quoting *S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 378 (2006) (further internal quotation

omitted)). In the context of § 1512(b)(3), all three synonyms, "hinder, delay, [and] prevent," refer to stopping or slowing "the communication . . . of information," regardless of its content.

The broader context of 18 U.S.C. § 1512 further reinforces the clear meaning of subsection (b)(3). *See United States v. Bauzo-Santiago*, 867 F.3d 13, 18 (1st Cir. 2017) ("In considering the meaning of the text, we read a legislative enactment as a whole, "since the meaning of the statutory language, plain or not, depends on context.") (quoting *United States v. Rivera*, 131 F.3d 222, 225-26 (1st Cir. 1997) (*en banc*) (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 515 (1993))); *see United States v. Voisine*, 778 F.3d 176, 180 (1st Cir. 2015) (recognizing that "context matters"). Subsection (a)(1)(C) prohibits killing (or attempting to kill) to "prevent" communications by witnesses to law enforcement officers or judges, and subsection (a)(1)(C) prohibits using physical force (or threatening to use force) to "hinder, delay, or prevent" such communications. The paradigmatic example of an offense in violation of § 1512(a)(1)(C)1 is killing a witness so that he or she cannot testify at trial. *See, e.g.*, *Fowler v. United States*, 563 U.S. 668 (2011).

Looking even more broadly at 18 U.S.C. § 1513 leads to the same conclusion: § 1512 prohibits preventing a witness from communicating information to federal officials, and § 1513 prohibits retaliating against a witness who does so. Mirroring § 1512(a)(1) and (2), § 1513(a) and (b) impose penalties on persons who kill (or attempt to kill) or harm (or threaten to harm) anyone for "providing to a law enforcement officer *any information* relating to the commission or possible commission of a Federal offense." § 1513(a)(1)(B) and (b)(2) (emphasis added). Again, "any information," includes both truthful and false information. The point is to punish people for retaliating against witnesses who talk, regardless of what those witnesses might say.

If any sliver of doubt remains, the heading of § 1512 "resolve[s] any textual ambiguities." *Bhd. of R.R. Trainmen v. Balt. Ohio R.R. Co.*, 331 U.S. 519, 528-29 (1947). "'[T]he title of a statute

and the heading of a section' are 'tools available for resolution of a doubt' about the meaning of a statute." *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998) (quoting *Bhd. of R.R. Trainmen*, 331 U.S. at 528-29). Here, the heading of § 1512 is "*tampering* with a witness, victim, or an informant" (emphasis added). The ordinary meaning of "tamper" is "to inflict physical harm, threats, intimidation, or corrupt persuasion with the goal of influencing or *preventing a witness's testimony*," Merriam-Webster Online Dictionary (2021), and "such language certainly does provide at least some evidence of the intended congressional scheme." *Chu v. Comm'r*, 486 F.2d 696, 700 (1st Cir. 1973). "Tampering" with a witness to keep him or her from talking is not the same as trying to spread misinformation or falsehoods through the witness.

In some circumstances, lying to a local police officer may be a federal crime (18 U.S.C. § 1001, perhaps), and misleading an in-house corporate investigator could conceivably constitute some sort of federal fraud (18 U.S.C. §§ 1341 or 1343, maybe). But making false statements is not the same as preventing the communication of information related to a federal investigation, and § 1512 prohibits only the latter. The offense in *United States v. Baldyga*, 233 F.3d 674 (1st Cir. 2000), illustrates the core conduct that § 1512 criminalizes. Baldyga was the target of an extensive investigation by various agencies, including the DEA, into cocaine distribution. On several occasions, a cooperating witness made "controlled purchases" at Baldyga's home. *Id.* at 678. Then, on the final occasion, Baldyga "gave him a note instructing him to remain silent and to put his hands on the wall," found a listening device that he was wearing, "point[ed] a gold colored, double barreled gun at his face," and ordered him to "leave the premises and never return." *Id.* Although Baldyga never explicitly threatened to harm the cooperating witness "should he contact federal authorities," the First Circuit affirmed the conviction under § 1512(b)(3), because "the jury in this case could readily and reasonably infer that Baldyga's brandishing the gun, and holding it to [his]'s

head, reflected an intent to deter [the witness] from discussing the cocaine deals with federal authorities." *Id.* at 679; *see also id.* ("The jury could also have concluded that Baldyga intended to prevent or discourage such communication when he ripped the wire away from the transmitter.").[4]

Here, the Indictment charges only that Baugh made "false statements" to a Natick detective and an eBay investigator. It does not charge that he tried to "hinder, delay, or prevent" anyone from talking to the detective or investigator, much less that he tried to stop the detective or investigator from talking to anyone else. Ironically, the allegation is that Baugh made statements (which the prosecution contends were false) in the hope that his statements would be repeated to other persons, possibly including federal agents. Put simply, telling tales to investigators is not tantamount to *tampering* with witnesses and, thus, does not violate § 1512(b)(3).

### B.    Lying to local police or corporate investigators, when no federal investigation is likely to occur, does not constitute federal witness tampering.

In *United States v. Bailey*, 405 F.3d 102 (1st Cir. 2005), the First Circuit rejected the defendant's argument that "§ 1512(b)(3) requires an existing or imminent federal investigation at the time of the defendant's misleading conduct." *Id.* at 109; *see also United States v. Byrne*, 153 F.3d 1233, 1250 (1st Cir. 1998) ("By its terminology, § 1512(b)(3) does not depend on the existence or imminency of a federal case or investigation but rather on the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime."). Nevertheless, the fact that a federal investigation need not be "existing or imminent" does not mean that lying to any

---

[4] In *Baldyga*, the First Circuit cited *United States v. Victor*, 973 F.2d 975 (1st Cir. 1992) (affirming conviction where defendant threatened to kill witness who testified in grand jury about illegal gambling; citing evidence from which jury could have found defendant told witness "that providing information about him to the federal authorities could carry fatal consequences"), and *United States v. Black*, 78 F.3d 1 (1st Cir. 1996) (affirming conviction where defendant displayed gun to witness after defendant's partner told witness she would be "silenced if she spoke with law enforcement agents"). Both cases involved silencing witnesses by making threats of violence.

investigator, anywhere in the United States, about any potential crime, comes within the ambit of the statute merely because a federal investigation is conceivable or remotely possible.

The required connection to a federal investigation must be a meaningful one. At a minimum, a federal investigation must be likely or probable, *United States v. Veal*, 153 F.3d 1233, 1251 (11th Cir 1998) ("For violation of § 1512(b)(3), it is sufficient if the misleading information is *likely* to be transferred to a federal agent.") (emphasis added), rather than "remote, outlandish, or simply hypothetical," *United States v. Flaherty*, No. 15-cr-10127-MLW, 2015 U.S. Dist. LEXIS 152723, at *7-8 (D. Mass. Nov. 11, 2015) (quoting *Fowler*, 563 U.S. at 678). This "federal nexus" is a critical element, because without it, § 1512(b)(3) could be misread "to federalize the treatment of witness tampering in run-of-the mill cases." *United States v. Weadick*, __ F.4th __, 2021 U.S. App. LEXIS 29204, at *17 (1st Cir. Sept. 24, 2021).

In most reported cases, the circumstances made federal investigations highly likely, if not almost certain. In *Bailey*, the defendant prison guard was charged with excessive force. Given the frequency of civil rights claims under 42 U.S.C. § 1983, guards in state and local facilities understand that federal investigations are commonplace, and that witnesses "might communicate with federal officials." *United States v. Guadalupe*, 402 F.3d 409, 413 (3d Cir. 2005). The same was true in *Byrne*, which involved allegations of excessive force by a police officer. *Byrne*, 435 F.3d at 17-18. Indeed, the defendant told another officer that "the FBI was investigating the incident." *Id.* at 26. Finally, there was also no question about probable federal involvement in *Baldyga*, a federal drug case that followed a task force investigation in which the DEA participated. *See* 233 F.3d at 681. Reading these cases to hold that § 1512(b)(3) applies whenever a federal investigation is merely possible would ignore their critical factual contexts. Moreover, a "possible" investigation standard would all-but eliminate the federal investigation element of the offense.

10

Such an unbounded interpretation would be a dangerous mistake, because an investigation of potential federal criminal activity is almost always *possible*. Commentators have observed that "modern federal criminal laws . . . have become not only exceedingly numerous . . . and broad, but also . . . impossibly vague." Harvey A. Silverglate, THREE FELONIES A DAY (2009) at xxx; *see also* Mike Chase, HOW TO BECOME A FEDERAL CRIMINAL (2019) at 2 ("Congress has passed thousands of federal criminal statutes and has allowed federal agencies like the IRS and FDA to make thousands upon thousands more rules that carry criminal penalties. These criminally enforceable rules cover everything from how runny ketchup can be to what you're allowed to do if a bird of prey takes up residence in your house."). For example, Justice Scalia cited 18 U.S.C. § 1346, the honest services fraud statute, as a vague but expansive law that "had been invoked to impose criminal penalties on a staggeringly broad swath of behavior." *Sorich v. United States*, 555 U.S. 1204, 1205 (2009) (Scalia, J., dissenting from cert. denial). Such laws "invite[] abuse by headline-grabbing prosecutors in pursuit of [people] who engage in any manner of unappealing or ethically questionable conduct." *Id.* at 1206.

In this case, the Indictment does not allege that federal authorities were likely to investigate complaints by Victims 1 and 2 that they received unwanted deliveries of packages and pizzas to their home, had their fence vandalized, and been followed around Natick. Those complaints concern quintessential local police matters. The FBI is not typically called to track down vandals and pranksters, even ones who engage in persistent harassment. At the time when Baugh supposedly tampered with witnesses in a potential federal investigation, there was no such investigation – and none was likely to occur. Of course, a federal investigation did happen, and it led to this federal prosecution. But as the allegations in this case demonstrate, unlikely things can come to pass, and that reality does not expand federal jurisdiction to reach every remote possibility.

11

## II.     Count XIII should be dismissed, because the Indictment alleges only that Baugh directed an eBay colleague to create a document with the intent to mislead, not to *falsify* the document.

Count XIII charges that, in violation of 18 U.S.C. § 1519, Baugh knowingly falsified a document – specifically, "Bay Area POIs_August 2019.docx" – on August 21, 2019. D.E. #33 at ¶ 32. But the Indictment does not allege "falsification." It alleges only that Baugh told Stockwell to create a list of "persons of interest" for eBay. The Indictment alleges that, in response, Stockwell created "Bay Area POIs_August 2019.docx" and sent it to Baugh. Critically, however, it fails to allege that anything about the document itself was false – or that Baugh knew it contained any falsity. In fact, as a matter of routine corporate practice, eBay regularly identified and investigated "persons of interest" who posed potential physical or virtual threats to the company, its executives, or its employees.

The prosecution may argue that Stockwell, along with Baugh, created the POI list for Gilbert to "use" in his effort to mislead the NPD. But that contention cannot save Count XIII. Section 1519 has distinct conduct and intent elements:  the defendant must falsify a document (or alter, destroy, or conceal it) and, at that same time, intend to impede, obstruct, or influence a federal investigation. Any argument that it would be sufficient to create a true document with the intent to mislead a federal investigator would improperly collapse the separate conduct and intent components of the obstruction statute into a single element. It would, in effect, re-write § 1519 to sweep more broadly and to criminalize altering, destroying, concealing, falsifying, *or creating* any record, document, or tangible object with the intent to obstruct an investigation. That is not what the statute says, nor what Congress proscribed. *See United States v. Gonzalez*, 906 F.3d 784, 795 (9th Cir. 2018) (holding that § 1519 prohibits, as "falsification," meaning "the creation of false documents" rather than true documents for false purposes).

12

In an attempt to stretch § 1519 to criminalize the creation of accurate, truthful documents, with bad intent or for a bad purpose, the prosecution may point to the legislative history, which talks about "fabrication." S. Rep. No. 107-146, at 14 (2002). This Court should not go down that path. For starters, the statutory language is not ambiguous, so it would be inappropriate to consider any legislative history. *See United States v. Godin*, 534 F.3d 51, 56 (1st Cir. 2008). Further, although a Senate Report used the word "fabricate," the statute does not. Finally, in context, to "fabricate" clearly meant to create a fake or false document. *See United States v. Rowland*, 826 F.3d 100, 108-09 (2d Cir. 2016) (affirming conviction where defendant created fake contracts that themselves misrepresented his relationship as political consultant to candidates) (holding "defendant may violate § 1519 by creating a document that is false or that mispresents the truth").

Here, according to the Indictment, Stockwell created a list of actual "persons of interest" for eBay in August 2019. There is no allegation that the document itself was "false" in any way (*e.g.*, that Stockwell made up the names or included phony information about "POIs"). Although the Indictment alleges that Baugh hoped Gilbert would use "Bay Area POIs_August 2019.docx" to deflect the NPD's attention from Zea, it fails to allege that the document, or any information in it, was "falsified." Thus, Count XIII should be dismissed.

## III. Counts XI, XIII, and XIV should be dismissed for lack of venue, because the Indictment fails to allege that Baugh committed the charged offenses in this District.

### A. Legal Framework

Far from "an arcane technicality," venue "involves 'matters that touch closely the fair administration of criminal justice and public confidence in it.'" *United States v. Salinas*, 373 F.3d 161, 162 (1st Cir. 2004) (quoting *United States v. Johnson*, 323 U.S. 273, 162 (1944))). "It is common ground that a criminal defendant has a right to be tried in an appropriate venue." *Id.* at 164. "The importance of this right is emphasized by the fact that it is mentioned not once, but

13

twice, in the text of the Constitution." *Id.* (citing U.S. Const., art. III, § 2, cl. 3, and amend. IV). "Echo[ing] the constitutional commands" concerning proper venue, *id.* (quoting *United States v. Cabrales*, 524 U.S. 1, 6 (1998)), Congress has issued "an explicit directive that limits a criminal prosecution to 'a district in which the offense was committed.'" *Id.* (citing Fed. R. Crim. P. 18).

"This guarantee of a trial in the state and district in which the crime was committed includes the indictment process." *United States v. Percuoco*, 630 F. Supp. 784, 786-87 (D. Mass. 1986) (allowing pre-trial motion to dismiss indictment for lack of venue"), *aff'd sub nom. United States v. Griffin*, 814 F.2d 806 (1st Cir. 1987). Thus, if an indictment is returned in "a district other than where the crime was committed," it "must be dismissed." *Id.* at 787; *see, e.g.*, *United States v. Hernandez-Hernandez*, 291 F. Supp. 2d 490, 491-92 (W.D. Tex. 2003) (allowing pre-trial motion to dismiss indictment for lack of venue); *see also* Fed. R. Crim. P. 12(b)(3)(A)(i) (requiring defendant to challenge improper venue before trial).

The prosecution, as the party with the "first crack at selecting the venue," must prove by a preponderance of the evidence that "venue is proper as to *each individual count*." *Id.* at 164 (emphasis added). At the pleading stage, "the statutory language may be used in the indictment to describe the offense, 'but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.'" *United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)); *see* Fed. R. Crim. P. 7(c)(1) (stating indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged").

There are two basic rules for determining proper venue. "If the statute under which the defendant is charged contains a specific venue provision, that provision much be honored[.]"

14

*Salinas*, 373 F.3d at 164 (citing *Travis v. United States*, 364 U.S. 631, 635 (1961)). "Otherwise, the '*locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *Id.* (quoting *United States v. Anderson*, 328 U.S. 699, 703 (1946)). To make that determination, a court must "'identify[] the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.'" *Id.* (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)).

"In determining the nature of the crime for the purposes of venue, the 'focus of this test is on the *conduct* comprising the offense.'" *United States v. Seward*, 967 F.3d 57, 60 (1st Cir. 2020) (emphasis added) (quoting *Salinas*, 373 F.3d at 164)). That distinction, between *actus reus* and *mens rea*, is critical, especially for specific intent offenses, such as § 1512(b)(3) and § 1519. For § 1512(b)(3), the conduct element is engaging in misleading conduct toward another. To be a federal crime, that conduct must be committed with the intent to prevent the communication of information to a federal officer about a possible federal crime. Similarly, for § 1519, the conduct element is altering, destroying, concealing, or falsifying records, documents, or tangible objects. To violate the statute, that conduct must be undertaken with the intent to impede, obstruct, and influence a federal investigation. *See United States v. Motz*, 652 F. Supp. 2d 284, 296 (E.D.N.Y. 2009) (dismissing § 1519 charge because "evidence developed thus far is insufficient to prove that the charge acts of document alteration took place in this district").

In *United States v. Bowen*, 224 F.3d 302 (4th Cir. 2000) (vacating convictions for lack of venue), the Fourth Circuit demonstrated how venue principles apply to criminal laws. On the one hand, the court observed that, in a prosecution for extortion or robbery under the Hobbs Act, venue is proper in any district where the offense conduct affects commerce, because "the terms of the statute itself forbid *affecting commerce* in particular ways." *Id.* (quoting 18 U.S.C. § 1951 (anyone

who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce" by robbery or extortion is subject to criminal penalties)). On the other hand, it held that "harboring" in violation of 18 U.S.C. § 1071 was "not defined in terms of its particular effects." *Id.*; *see id.* at 314 ("The sole essential conduct element . . . is the act of concealing a fugitive, and that conduct is defined in the statute without reference to its effects."). As a result, venue is only proper where the harboring occurs, and "the possible disruption of the administration of justice in the district issuing the arrest warrant is of no consequence to determining venue for a prosecution under § 1071." *Id.* at 313; *see also United States v. Auernheimer*, 748 F.3d 525, 536-37 (3d Cir. 2014) (applying the same analysis and distinguishing between various parts of the Computer Fraud and Abuse Act, some that define crimes by their effects ("causing damage") and some that do not).

Moreover, "[w]hen materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of a false statement are felt." *Salinas*, 373 F.3d at 166-67. For example, 18 U.S.C. § 1001 prohibits making materially false statements on any matter within the jurisdiction of the federal government. The conduct element of § 1001 is statutorily defined, at least in part, by the effect of the defendant's false statements, which must be "material" to the government. That is not the case with § 1512(b)(3) and § 1519, however. Neither statute contains a materiality requirement nor defines the offense conduct by its effects. Instead, they both require proof of specific intent. A prosecution under these statutes can only be brought where the actual conduct occurred: for § 1512(b)(3), where the defendant allegedly engaged in misleading conduct, and for § 1519, where the defendant falsified or destroyed the documents or records. Yet, as explained below, the Indictment does not allege that Baugh did any of those things in this District. Thus, venue is not proper here.

The prosecution may argue that § 1512 provides that "[a] prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the offense occurred." 18 U.S.C. § 1512(i). That contention would be mistaken, because § 1512(i) does not apply to the specific charges against Baugh. Section 1512(b) prohibits two types of witness tampering. Subsections (b)(1) and (2) involve tampering with "an official proceeding," which § 1515(a)(1) defines as a proceeding before a federal judge; before Congress or a Federal agency; or in certain interstate insurance regulatory matters. In contrast, subsection (b)(3) involves tampering in connection with "communication[s]" to a federal officer or judge about a possible federal crime. It makes no mention of any "official proceeding." *See Byrne*, 435 F.3d at 23-24 (distinguishing § 1512(b)(1)-(2), which refer to "an official proceeding," from § 1512(b)(3), which does not); *see United States v. Ronda*, 455 F.3d 1273, 1288 (11th Cir. 2006). By its terms, § 1512(i) applies only to "official proceeding" cases under § 1512(b)(1) or (2), and it sensibly establishes alternate venue in the district where the "official proceeding" takes place. It does not apply to "communication" cases under § 1512(b)(3).

The First Circuit reached that same conclusion, albeit in a slightly different context, in *United States v. Bailey*, 405 F.3d 102 (1st Cir. 2005). In rejecting Bailey's appeal from his conviction for "communication" tampering in violation of § 1512(b)(3), the appeals court held: "§ 1512(f)(1) does not apply to § 1512(b)(3) because § 1512(b)(3) does not require that the proscribed conduct occur in context of an 'official proceeding.'" *Id.* (citing *Veal*, 153 F.3d at 1250). The clear implication the First Circuit's reasoning in *Bailey*, is that the venue provision in § 1512(i) is limited to "official proceeding" cases under § 1512(b)(1) and (2) and does not apply to "communication" cases involving investigations under § 1512(b)(3).

### B.      Charged Offenses

#### 1.      Count XI charges that Baugh knowingly tampered with potential federal witnesses by lying to eBay investigators, while both Baugh and the investigators were outside Massachusetts.

Count XI charges that, in violation of 18 U.S.C. § 1519, Baugh knowingly engaged in misleading conduct toward eBay investigators with the intent to impede, obstruct, and influence a federal investigation about the alleged conspiracy to stalk or cyber-stalk the Victims. In listing the overt acts in furtherance of that alleged conspiracy, the Indictment alleges: (1) on or about August 23, 2019, Baugh "falsely told eBay investigators his team was not responsible for harassing messages or deliveries to and that his team had been in Natick to investigate threats to the Victims," D.E. #33 at ¶ 16jjj,  and (2) on or about August 28, 2019, Baugh "falsely told eBay investigators that his team was not responsible for the deliveries or harassing communications," *id.* at ¶ 16nnn.

The Indictment does not allege *where* Baugh was when he supposedly made these false statements to eBay investigators or *where* the investigators were when they supposedly heard or received those statements. Nor does the Indictment identify the investigator (or investigators). Those omissions are critical, because without them, the prosecution cannot establish venue in this District concerning Count XI. As the prosecution knows, and the discovery produced to date establishes, Baugh travelled by plane from Massachusetts to California early in the morning on August 23, 2019, and he was back at eBay headquarters in San Jose, California, by later that same day and, then again, on August 28, 2019.

The charge that Baugh, who was in California, made false statements to an eBay internal investigator, who was also in California (or at least, *not* in Massachusetts), is not an offense that may be prosecuted in this District. Because no part of the alleged crime occurred in this District, venue does not lie here. As explained above, the allegations that (i) the Victims lived in Massachusetts, (ii) they initially contacted the Natick police, and (iii) a federal investigation

ensued in this District do not alter the venue analysis. The prosecution contends that Baugh engaged in misleading conduct in California toward eBay investigators with the intent to hinder, delay, and prevent communication to federal officers of information related to possible federal offenses in Massachusetts. Because the intent element of § 1519 is not a conduct element, it cannot establish venue. The alleged crime (to which Baugh has pleaded not guilty) would have been complete when Baugh made the alleged false statements in California to eBay investigators with the requisite intent, not when those statements ultimately affected any subsequent federal investigation in Massachusetts or elsewhere.

### 2. Count XIII charges that Baugh knowingly directed a colleague in California to falsify an eBay document to obstruct a potential federal investigation of the charged conspiracy.

Count XIII charges that Baugh knowingly falsified a document – specifically, "Bay Area POIs_August 2019.docx" – on August 21, 2019. D.E. #33 at ¶ 32. As the Indictment alleges, however, it was Stockwell, not Baugh, who "created" that document. *Id.* at ¶ 16fff. And as the prosecution knows, and the discovery to date establishes, Stockwell worked from eBay headquarters in San Jose, California. The Indictment does not allege that, in connection with the alleged conspiracy, Stockwell ever travelled to this District or was otherwise present here. Thus, Count XIII charges an offense that allegedly occurred in California.

As explained above, the allegations that Stockwell sent the document to Baugh and that Baugh forwarded it to Gilbert for possible "use" in a meeting with the NPD do not establish venue in this District. The alleged obstruction offense (to which Baugh has pleaded not guilty) would have been complete when the document was created in California with the requisite intent, *i.e.*, to obstruct a potential federal investigation. As with § 1512, because the intent element of § 1519 is not an essential conduct element, it cannot establish venue. A simple hypothetical illustrates the constitutional problem: if a defendant in California falsified a document with the intent to obstruct

a federal criminal investigation in Massachusetts, but that defendant never left California or sent the document to Massachusetts (or anywhere else), he might be prosecuted in California, but he could not be hauled into court to face criminal charges across the country in this District. That, however, is what has happened to Baugh.

> ### 3. Count XIV charges that Baugh knowingly destroyed "records" on his eBay-issued cellphone to obstruct that same investigation, after Baugh returned from Massachusetts to California.

Count XIV charges that Baugh knowingly destroyed records – specifically, "records on his eBay-issued cellphone" – on or about August 26 to 30, 2019. D.E. #33 at ¶ 32. The Indictment alleges that, on August 26, 2019, Baugh "deleted and attempted to delete" data from his cellphone "that evidenced the conspiracy," including WhatsApp messages. *Id.* ¶ 16lll. It also alleges that, on August 30, 2019, that Baugh "directed" an unidentified eBay employee "to receive computers from the GIC and to bring them to his house," *id.* ¶ 16ooo, but not that Baugh destroyed or altered any records on those computers. Regardless, for venue purposes, such conduct would have occurred in California, where Baugh lived at the time and where the GIC was located, not in Massachusetts. *Id.* ¶¶ 1, 3.

The Indictment fails to allege that, in connection with Count XIV, Baugh engaged in any charged conduct in Massachusetts, and it makes no difference that Baugh supposedly intended to obstruct a later federal investigation in Massachusetts. By the time that investigation began, any violation of § 1519 would have already been completed. Accordingly, there is no venue in this District to prosecute charges that Baugh knowingly destroyed cellphone records or any other evidence in California to obstruct an investigation into the charged conspiracy.

## CONCLUSION

For the foregoing reasons, Defendant Jim Baugh respectfully requests that this Court dismiss Counts X, XI, XIII, and XIV of the Indictment.

Respectfully submitted,

**JIM BAUGH**

by his attorneys,

/s/ Daniel N. Marx
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO #601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 29, 2021.

/s/ Daniel N. Marx