UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

JIM BAUGH &
DAVID HARVILLE,

        Defendants

1:20-cr-10263-PBS/MBB

OMNIBUS OPPOSITION OF THE UNITED STATES
TO DEFENDANTS' MOTIONS TO DISMISS

NATHANIEL R. MENDELL
Acting United States Attorney

SETH B. KOSTO
Assistant United States Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
617-748-3100

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................... 1

RELEVANT PROCEDURAL HISTORY .................................................................... 5

THE INDICTMENT ..................................................................................................... 6

ARGUMENT ................................................................................................................. 7

I.    The Indictment is Neither Multiplicitous nor Duplicitous .................................... 7

    A.    Counts 4 & 5 (Stalking by Interstate Travel) Charge a Different Crime Than

        Counts 8 & 9 (Stalking through Facilities of Interstate Commerce) ........................... 7

    B.    Stalking Counts Are Properly Charged by Victim ...................................................... 8

    C.    Count 1's Conspiracy Charge is not Duplicitous ........................................................ 10

II.   The Indictment is Sufficiently Particular as to Harville's Course of Conduct ................. 10

III.  The Indictment Properly Charges Witness Tampering ...................................... 13

    A.    Legal Standard .......................................................................................................... 13

    B.    Whether Federal Communications Were Reasonably Likely is a Jury Question ....... 14

    C.    Section 1512(b)(3) Prohibits Making False Statements to Prevent the Communication

        of Truthful Information ........................................................................................... 16

    D.    A Local Police Officer and Internal Investigator are Proper Subjects of a Witness

        Tampering Charge ................................................................................................... 18

    E.    Communications with Federal Law Enforcement Were Reasonably Likely .............. 19

IV.   The Indictment Properly Alleges Violations of 18 U.S.C. § 1519 ...................... 22

A. The Stalking of the Victims Is a Matter Within the Jurisdiction of the FBI .............. 22

B. The Indictment Properly Alleges that Harville Destroyed Records .......................... 25

C. Count 13 Properly Alleges that Baugh "Falsified" Records ..................................... 25

V. The Indictment Properly Alleges Venue for Counts 11 through 15 ................................. 28

A. Legal Standard ........................................................................................................ 29

B. The Indictment Satisfies Pleading Requirements for Venue ..................................... 29

C. Venue on the Witness Tampering Counts—Counts 11 and 12—is Proper ............... 30

D. The Destruction of Records Counts are Properly Venued in Massachusetts ............. 37

Conclusion ........................................................................................................................ 40

TABLE OF AUTHORITIES

**Cases**

*Aguero v. United States*,
   580 F. App'x 748 (11th Cir. 2014) ......................................................................... 20

*Albernaz v. United States*,
   450 U.S. 333 (1981) .......................................................................................... 7

*Blockburger v. United States,*
   284 U.S. 299 (1932) .......................................................................................... 7

*Braverman v. United States*,
   317 U.S. 49 (1942) ........................................................................................... 10

*Bruce v. Warden Lewisburg USP*,
   868 F.3d 170 (3d Cir. 2017) ................................................................................ 19

*Champagne v. Warden Lewisburg USP*,
   794 F. App'x 143 (3d Cir. 2019) ........................................................................... 21

*Fowler v. United States*,
   563 U.S. 668 (2011) .......................................................................... 14, 15, 19, 20

*Hamling v. United States*,
   418 U.S. 87 (1974) ........................................................................................... 11

*Travis v. United States*,
   364 U.S. 631 (1961) .......................................................................................... 30

*United States v. Abbas*,
   2021 WL 784095 (D. Mass. Mar. 1, 2021) ............................................................... 29

*United States v. Ackell*,
   907 F.3d 67 (1st Cir. 2018) ................................................................................. 12

*United States v. Anderson*,
   328 U.S. 699 (1946) .......................................................................................... 32

*United States v. Ayeki*,
   289 F. Supp. 2d 183 (D. Conn. 2003) .................................................................... 30

*United States v. Bailey*,
   405 F.3d 102, (1st Cir. 2005) .......................................................... 13, 16, 17, 18, 19

*United States v. Baldeo*,
   2013 WL 5477373 (S.D.N.Y. Oct. 2, 2013) ......................................................... 36, 37

iii

*United States v. Bellomo*,
    263 F. Supp. 2d 561 (E.D.N.Y. 2003) ................................................................................ 30

*United States v. Bowker*,
    372 F.3d 365 (6th Cir. 2004) ................................................................................... 12-13

*United States v. Byrne*,
    435 F.3d 16 (1st Cir. 2006) .......................................................................................... 15

*United States v. Conlan*,
    786 F.3d 380 (5th Cir. 2015) ......................................................................................... 8

*United States v. Ermoian*,
    752 F.3d 1165 (9th Cir. 2013) ..................................................................................... 37

*United States v. Fattah*,
    223 F. Supp. 3d 336 (E.D. Pa. 2016) .......................................................................... 24

*United States v. Fitts*,
    2019 WL 3409866 (S.D.N.Y. Jul. 29, 2019) .............................................................. 24

*United States v. Flaherty*,
    2015 WL 6965099 (D. Mass. Nov. 11, 2015) ............................................................ 14

*United States v. Gonzalez*,
    906 F.3d 784 (9th Cir. 2018) ..................................................................... 28, 35, 36, 37

*United States v. Gray,*
    642 F.3d 371 (2d Cir. 2011) ................................................................................... 23, 24

*United States v. Guadalupe*,
    402 F.3d 409 (3d Cir. 2005) ........................................................................................ 15

*United States v. Guerrier*,
    669 F.3d 1 (1st Cir. 2011) ............................................................................................ 11

*United States v. Hamilton*,
    2016 WL 1696136 (N.D. Ga. Apr. 28, 2016) ............................................................. 15

*United States v. Harmon*,
    2021 WL 54566445 (S.D. Miss. Nov. 22, 2021) ........................................................ 22

*United States v. Hassler*,
    992 F.3d 243 (4th Cir. 2021) ................................................................................... 22, 23

*United States v. Hawkins*,
    185 F. Supp. 3d 114 (D.D.C. 2016) ............................................................................ 17

*United States v. Jacquemain*,
    368 F. Supp. 2d 800 (E.D. Mich. 2005) ............................................................ 17

*United States v. Johnson*,
    874 F.3d 1078 (9th Cir. 2017) ..................................................................... 15-16

*United States v. Johnson*,
    874 F.3d (9th Cir. 2018) ................................................................................ 20

*United States v. Kostopoulos*,
    766 Fed. Appx 875 (11th Cir. 2019) ............................................................... 17

*United States v. Lanham*,
    617 F.3d 873 (6th Cir. 2010) ......................................................................... 27

*United States v. Lolo*,
    2018 WL 6619803 (M.D. Fla. 2018) ................................................................. 8

*United States v. Lubienecki*,
    2020 WL 7248323 (W.D.N.Y. Oct. 20, 2020) .................................................. 12

*United States v. Luthra*,
    2017 WL 11447192 (D. Mass. Sept. 26, 2017) ................................................ 10

*United States v. Lyons*,
    2011 WL 3809910 (D. Mass. Aug. 25, 2011) ................................................... 29

*United States v. Mixon*,
    2015 WL 13735755 (D. Ariz. Jun. 9, 2015) ..................................................... 38

*United States v. Moore*,
    2021 WL 3024058 (E.D. Wis. Apr. 27, 2021) .................................................. 14

*United States v. Motz*,
    652 F. Supp.2d 284 (E.D.N.Y. 2009) ............................................................. 38

*United States v. Moyer*,
    674 F.3d 192 (3d Cir. 2012) ............................................................... 23, 24, 25

*United States v. Nelson-Rodriguez*,
    319 F.3d 12 (1st Cir. 2003) ........................................................................... 10

*United States v. Nicolo*,
    523 F. Supp. 2d 303 (W.D.N.Y. 2007) ........................................................... 29

*United States v. Norman*,
    87 F. Supp.3d 737 (E.D. Pa. 2015) ........................................................... 27, 28

*United States v. Novak*,

443 F.3d 150 (2d Cir. 2006) ......................................................................................... 29-30

*United States v. Oury,*
2020 WL 555377 (S.D. Ga. Feb. 4, 2020) ....................................................................... 8

*United States v. Perry,*
37 F. Supp. 3d 546 (D. Mass. 2014) ............................................................................. 11

*United States v. Perry,*
335 F.3d 316 (4th Cir. 2003) ......................................................................................... 17

*United States v. Pires,*
642 F.3d 1 (1st Cir. 2011) ............................................................................................... 7

*United States v. Prieto,*
812 F.3d 6 (1st Cir. 2016) ............................................................................................... 9

*United States v. Ramirez-Martinez,*
273 F.3d 903 (9th Cir. 2001) ......................................................................................... 10

*United States v. Razo,*
2012 WL 5874667 (D. Me. Nov. 20, 2012) ................................................................... 30

*United States v. Ring,*
628 F. Supp.2d 195 (D.D.C. 2009) ......................................................................... 18, 19

*United States v. Rowland,*
826 F.3d 100 (2d Cir. 2016) ..................................................................................... 26, 28

*United States v. Salinas,*
373 F.3d 161 (1st Cir. 2004) ............................................................................. 30, 34, 38

*United States v. Salman,*
378 F.3d 1266 (11th Cir. 2004) ..................................................................................... 29

*United States v. Salman,*
2017 WL 3034041,*3-4 (M.D. Fla. July. 18, 2017) ......................................... 33, 34, 37

*United States v. Santiago,*
83 F.3d 20 (1st Cir. 1996) ............................................................................................. 39

*United States v. Savarese,*
686 F.3d 1 (1st Cir. 2012) ............................................................................................. 29

*United States v. Seward,*
967 F.3d 57 (1st Cir. 2020) ........................................................................................... 37

*United States v. Shrader,*
675 F.3d 300 (4th Cir. 2012) ..................................................................................... 8, 9

vi

*United States v. Siegelman*,
    561 F.3d 1215 (11th Cir. 2009) ................................................................................ 19

*United States v. Smith*,
 723 F.3d 510, 518 (4th Cir. 2013)....................................................................... 19, 20

*United States v. Snipes*,
    611 F.3d 855 (11th Cir. 2010) ................................................................................ 36

*United States v. Stein*,
    429 F. Supp. 2d 633 (S.D.N.Y. 2006) ................................................................... 29

*United States v. Stepanets*,
    879 F.3d 367 (1st Cir. 2018) ...................................................................... 1, 12, 26

*United States v. Troy*,
    618 F.3d 27 (1st Cir. 2010) ........................................................... 11, 12, 14, 25

*United States v. Tyler*,
    956 F.3d 116 (3d Cir. 2020) ............................................................................. 15, 19

*United States v. Veal*,
    153 F.3d 1233–46 (11th Cir. 1998) .......................................................... 17, 18, 19

*United States v. Veliz*,
    800 F.3d 63 (2d Cir. 2015) ............................................................................... 15, 20

*United States v. Weadick*,
    15 F.4th 1, (1st Cir. 2021)................................................................................ 14, 15

*Whitehouse v. U.S. Dist. Court*,
    53 F.3d 1349 (1st Cir. 1995) .................................................................................. 11

*Yates v. United States*,
    135 S. Ct. 1074 (2015) ........................................................................................... 23

**Rules**

Fed. R. Crim. P. 7 ...................................................................................................... 11

Fed. R. Crim. P. 18 .................................................................................................... 30

The Indictment charges two former senior employees at eBay, Jim Baugh and David Harville, for their roles in an interstate campaign to harass and intimidate two Massachusetts residents.  It also charges both men with obstructing the law enforcement investigation into that campaign, through both false statements and the falsification and destruction of documents and records.  Each defendant has moved to dismiss several of the counts against him.  (Docket No. 114 (Baugh); Docket No. 116 (Harville)).

The Court should deny the defendants' motions because the Indictment faithfully tracks the language of each statute that it charges, and it notifies the defendants not only of the elements of the crimes charged but also of the relevant factual scenario.  *See United States v. Stepanets*, 879 F.3d 367, 372-73 (1st Cir. 2018) ("an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet").  No more is required at this stage of the case.

## BACKGROUND[1]

In August 2019, Victims 1 and 2—wife and husband—lived in Natick.  (¶¶ 8-9).  They were the reporter and publisher, respectively, of an online newsletter ("the Newsletter") that covered ecommerce companies, including eBay.  (¶ 8).

On or about August 7, 2019, Victim 1 began to get anonymous, harassing private messages on her Twitter account.  (¶ 16e).  The messages criticized the Newsletter's coverage of eBay ("What's your problem with eBay?  You know that's how we pay rent."); were frequently vulgar ("Stop hiding behind ur computer screen u fucking cunt"); and at times threatened violence ("wen

---

[1] References to "¶ __" correspond to allegations in the Indictment.  This memorandum sets out only allegations relevant to the issues raised in the defendants' motions.

u hurt our bizness u hurt our familys…Ppl will do ANYTHING 2 protect family!!!!").  (¶¶ 16e, v, g).

At the same time, the Victims also began to receive anonymous deliveries at their home. Some were gross, such as fly larvae, cockroaches, and spiders.  (¶¶ 16h, u).  Others were embarrassing, including pornography addressed to Victim 2 at his neighbors' homes.  (¶ 16i).  The most concerning of them were threatening—a funeral wreath and a book entitled *Surviving the Loss of a Spouse*.  (¶¶ 16q, t).  The messages escalated to include the publication of the Victims' home address on the internet, online advertisements for consensual sexual encounters there, and statements that the harasser was going to "pay [Victim 1] a visit".  (¶¶ 16pp, yy).  The messages also made clear that their antagonist was responsible for the harassing deliveries.  (¶ 16oo) ("U get my gifts cunt!!??").

Baugh, the Senior Director of Safety & Security at eBay, planned the threatening messages and deliveries with eBay employees and contractors who reported to him.  (¶¶ 1, 16a, b).  To avoid detection, the defendants and their coconspirators communicated with each other over WhatsApp, a secure messaging application, (¶ 15m), and sent the harassing messages and deliveries using overseas email accounts, prepaid debit cards purchased for cash, Virtual Private Networks that enabled anonymity on the internet, and non-eBay computer equipment.  (¶ 15j).

On August 11, 2019, Baugh recruited Harville to travel with him to Boston on an "op" targeting Victim 1 and the Newsletter, stating in a message that Baugh had been ordered to "find and destroy".  (¶ 16o).  Among the purposes of the trip was to surveil the Victims and to install a GPS device on one of their cars.  (¶ 15f, ¶¶ 16w, bb).  Harville was aware of the harassing deliveries to the Victims.  (¶ 16w).  To conceal the true purpose of the trip, Harville attempted to register himself for a software development conference in Boston.  (¶ 16x).  Before leaving for

2

Massachusetts, Baugh also had Stephanie Stockwell, a coconspirator,[2] create an eBay document that stated falsely that Victims 1 and 2 had threatened eBay, eBay's CEO, and its employees—"in case we got stopped..that way would at least have something to show to PD".  (¶ 16ss).

On August 15, 2019, Baugh, Harville, and Veronica Zea (an eBay contractor and coconspirator)[3] traveled to Boston.  (¶ 16z).  Before doing so, Harville downloaded an app to his phone that could be used to monitor the "Natick Police and Fire Live Audio Feed".  (¶ 15y).

Upon arriving in Massachusetts, Baugh, Harville, and Zea went to the Victims' home at least twice:  once on August 15 in a failed attempt to install the GPS device—the car was locked in the Victims' garage, and once on August 16 to surveil the Victims and to follow Victim 2 as he drove in Natick.  (¶¶ 16 bb, ff, hh).   After failing to install the GPS device, Harville purchased equipment to break into the Victims' garage.  (¶ 16e).  While surveilling the Victims, Baugh, Harville, Zea, and Stephanie Popp (an eBay employee and coconspirator back in California)[4] used a conference line to communicate and to monitor police activity.  (¶¶ 16cc & gg).

Despite their precautions, Victim 2 was able to take a picture of the surveillance team's license plate, leading Baugh to return the "burned" rental car.  (¶ 16 qq, rr).  By August 21, 2019, the Natick Police Department ("NPD") had connected Zea and Harville to the surveillance.  An NPD detective[5] went to the lobby of Boston's Ritz Carlton Hotel in an effort to interview Zea.

---

[2] Stockwell has pled guilty for her role in the campaign and is expected to testify at trial.

[3] Zea has also pled guilty and is expected to testify at trial.

[4] Popp has also pled guilty and is expected to testify at trial.

[5] NPD Detective Jason Sutherland, who is expected to testify at trial, was also a task force officer assigned to the Drug Enforcement Administration, and thus a federal law enforcement officer within the meaning of 18 U.S.C. §§ 1512(b)(3) & 1515(a)(4).

Baugh spoke to the detective by phone, falsely claimed to be Zea's husband, and (in Baugh's words) "played dumb".  (¶¶ 16vv, ww).

Baugh dispatched a former Santa Clara police officer—coconspirator Brian Gilbert[6]—to meet with the NPD, and to report (falsely) that eBay was investigating the harassment of the Victims, not participating in it.  (¶¶ 16zz, ggg).  To support this ruse, Popp posted more threatening Twitter messages to the Victims, which Baugh then shared with Gilbert and Harville.  (¶ 16yy).

On August 21, 2019, after learning that the NPD was investigating the use of a prepaid debit card in the Bay Area to purchase one of the harassing deliveries to the Victims, Baugh—in Boston—directed Stockwell, in California, to prepare a document featuring eBay "Persons of Interest" that could be used to deflect attention from Zea, who had used that debit card.  (¶ 16eee).  Stockwell created the document, "Bay Area POIs_August 2019.docx" and emailed it to Baugh, who passed it along to Gilbert to provide to the NPD.  (¶ 16fff).  Zea, of course, was not listed.

Baugh, Harville, and their coconspirators were aware that the NPD was investigating the harassment, intimidation, and surveillance.  (¶¶ 15n, o).  They were also aware that eBay investigators were attempting to gather information in response to NPD requests.  (¶ 15p).  Armed with this knowledge, on August 26, 2019, Harville, Baugh, and several coconspirators deleted messages from their social media accounts that evidenced their harassment of the Victims and the surveillance operation in Natick, including WhatsApp messages.  (¶ 15r, ¶ 16lll).

Harville and Baugh also made false statements to eBay investigators who were responding to requests from NPD's Detective Sutherland.  (¶ 15p).  Among other statements, Baugh falsely denied that eBay personnel had any role in the harassment of the Victims.  (¶ 16nnn).  Harville,

---

[6] Gilbert has pled guilty and is awaiting sentencing.

for his part, falsely denied having been to Natick, or having had any interactions with the Victims or the NPD.  (¶ 16iii).

On August 30, 2019, aware of both the NPD's investigation and an eBay order not to delete anything from his company phone, Harville asked Baugh if he should "wipe" the device, and then returned it to eBay having deleted evidence related to his trip to Natick.  (¶¶ 16ppp, qqq).

### RELEVANT PROCEDURAL HISTORY

At trial, the government intends to prove the following regarding the investigation into the harassment and intimidation of the Victims and the defendants' efforts to keep truthful information about the campaign from Detective Sutherland and the NPD.

On three occasions between August 12 and August 16, 2019, the Victims reported what was happening to them by phone to the FBI National Threat Operations Center.

On August 22, 2019, both before and after the meeting between the NPD and Brian Gilbert, Detective Sutherland called a Senior Special Agent on the Boston FBI's criminal cyber squad to report the possible connection between eBay employees and the harassment of the Victims.

On August 26, 2019, the FBI opened an inquiry into the stalking of the Victims.

In late September 2019, the U.S. Attorney's Office opened a matter that led to the issuance of grand jury subpoenas, among other investigative steps.

The government charged Baugh and Harville by complaint in June 2020; the grand jury indicted both men on November 3, 2020.  (Docket No. 33).

**THE INDICTMENT**

The table below summarizes the Indictment's charges against Baugh and Harville.

| Count | Defendant | Statute (18 U.S.C.) | Charge | Object/Victim |
|-------|-----------|---------------------|--------|---------------|
| 1 | Baugh Harville | § 371 | Conspiracy to Stalk through Travel and Facilities of Interstate Commerce | Victims 1 and 2 |
| 2 | Baugh | § 2261A(1)(B) | Stalking through Interstate Travel | Victim 1 |
| 3 | | | | Victim 2 |
| 4 | Harville | | | Victim 1 |
| 5 | | | | Victim 2 |
| 6 | Baugh | § 2261A(2)(B) | Stalking through Facilities of Interstate Commerce | Victim 1 |
| 7 | | | | Victim 2 |
| 8 | Harville | | | Victim 1 |
| 9 | | | | Victim 2 |
| 10 | Baugh | § 1512(b)(3) | Misleading Conduct Toward Another Person with Intent to Hinder, Delay, and Prevent the Communication of Information Relating to the Commission or Possible Commission of a Federal Offense at a Federal Law Enforcement Officer | Detective Sutherland |
| 11 | Baugh | | | eBay Internal Investigator |
| 12 | Harville | | | eBay Internal Investigator |
| 13 | Baugh | § 1519 | Alteration/Destruction/ Falsification of Records/Documents/Objects with Intent to Impede/Obstruct/Influence the Investigation of a Matter within the Jurisdiction of Any Department of Agency of the United States | Bay Area POIs_August 2019.docx |
| 14 | Baugh | | | eBay Cell Phone Content |
| 15 | Harville | | | eBay Cell Phone Content |

**ARGUMENT**

I.      The Indictment is Neither Multiplicitous nor Duplicitous

Harville claims that several of the Indictment's stalking-related counts are duplicitous, multiplicitous, or simultaneously duplicitous and multiplicitous. *Harville Mem.* at 6-8.  The Court should reject these claims because (1) stalking by interstate travel (Counts 4 and 5) is a different crime than stalking through the facilities of interstate commerce (Counts 8 and 9); (2) the victim (and not a defendant's conduct) is the appropriate unit of prosecution under 18 U.S.C. § 2261A; and (3) a single conspiracy with several stalking-related objects (Counts 1) charges only one crime.

A.      Counts 4 & 5 (Stalking by Interstate Travel) Charge a Different Crime Than Counts 8 & 9 (Stalking through Facilities of Interstate Commerce)

An indictment is multiplicitous only if it charges a single criminal offense in more than one count. *United States v. Pires*, 642 F.3d 1, 15 (1st Cir. 2011).  Harville suggests incorrectly that Counts 4 and 5, which charge stalking by interstate travel, are multiplicitous with Counts 8 and 9, which charge stalking by interstate communications. *Harville Mem.* at *7* ("[Counts 1, 4, 5, 8 and 9] require proof of common facts, thereby unconstitutionally fragmentizing the Indictment").  In *Blockburger v. United States*, the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  284 U.S. 299, 304 (1932).  If each offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. *Albernaz v. United States*, 450 U.S. 333, 337 (1981).

To prove Counts 4 and 5, the government must establish that Harville:  (1) traveled in interstate commerce with the intent to harass or intimidate, or place under surveillance with the intent to harass or intimidate, another person;  (2) in the course, or as a result of such travel,

engaged in conduct; and (3) the conduct caused or would reasonably be expected to cause substantial emotional distress to the person. *See* 18 U.S.C. § 2261A(1)(B). To convict Harville of Counts 8 and 9, however, the government must prove that (1) Harville used a facility of interstate or foreign commerce; (2) to engage in a course of conduct with the intent to harass or intimidate, or place under surveillance with the intent to harass or intimidate, another person; and (3) his conduct caused or would reasonably be expected to cause substantial emotional distress to the person. *See* 18 U.S.C. § 2261A(2)(B).

The conduct alleged in Counts 8 and 9 does not require interstate travel, and the conduct alleged in Counts 4 and 5 does. The conduct alleged in Counts 4 and 5 requires only conduct, whereas the conduct alleged in Counts 8 and 9 requires a "course of conduct". Finally, Counts 8 and 9 require the use of a facility of interstate commerce; Counts 4 and 5 do not. The counts are accordingly not multiplicitous. *See United States v. Lolo*, 2018 WL 6619803 (M.D. Fla. 2018) (denying motion to dismiss as multiplicitous charges under 18 U.S.C. § 2261A(1) and 2261A(2)).

B.     Stalking Counts Are Properly Charged by Victim

Courts have regularly held that the proper unit of prosecution for violations of 18 U.S.C. § 2261A(1)(B) and § 2261A(2)(B) is the victim, not the defendant's conduct. *See United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015); *United States v. Shrader*, 675 F.3d 300 (4th Cir. 2012). In other words, where several individuals are harmed by a single course of conduct, there are multiple violations. *See United States v. Oury*, 2020 WL 555377, *3 (S.D. Ga. Feb. 4, 2020) (defendant who targeted three victims for harassment and intimidation in a single trip over state lines properly charged with three separate violations of 18 U.S.C. § 2261A(1)(B)).

In *Shrader*, for example, a defendant harassed and intimidated both his former girlfriend and her husband by phone and mail. He was convicted of two counts of violating 18 U.S.C.

§ 2261A(2)—one for targeting the former girlfriend and one for targeting her husband.  Shrader challenged his convictions as multiplicitous, arguing that the statute permitted only one punishment for his "course of conduct", regardless of the number of victims of that conduct. *Shrader*, 675 F.3d at 312-13.

The Fourth Circuit held that section 2261A(2) "unambiguously makes the victim, rather than the course of conduct, the unit of prosecution." *Id.* at 313.  It reasoned that the statute requires that a defendant target a particular individual—"another person" in the language of the statute.  It also recognized that the statute provides for varying punishments depending on the effect of the defendant's crime on a particular victim.  *See* 18 U.S.C. § 2261(b).  "Thus, the statute's terms unambiguously contemplate that the unit of prosecution is the targeted individual, requiring that the defendant act with intent towards a particular 'person', that his actions produce the requisite effect in 'that person,' and defining punishment in terms of the effect on the victim."  *Id.* at 313-14.  Charging Harville's conduct by victim accordingly raises no multiplicity concerns.

For the same reason, the stalking counts raise no concern of duplicity—the charging of two or more crimes in a single count.  *See United States v. Prieto*, 812 F.3d 6, 11 (1st Cir. 2016). Harville argues, citing 18 U.S.C. § 115, that Victim 1 and Victim 2 are "interchangeable" in Counts 4, 5, 8, and 9, and that each count therefore charges the infliction of emotional distress on two victims.  *Harville Mem*. at 9.  But the Indictment does not charge Harville with harassing Victim 1 and thereby affecting Victim 2, or vice versa.  Counts 4 and 8 charge only that Harville harassed and thereby caused (or would reasonably be expected to cause) substantial emotional distress to Victim 1, not her spouse under 18 U.S.C. § 2261A(1)(A)(iii).  Counts 5 and 9 similarly charge that

Harville harassed and thereby affected Victim 2, not his spouse.  Because the Indictment charges

a single stalking victim in each count, there is no duplicity.[7]

C.    Count 1's Conspiracy Charge is not Duplicitous

Harville also argues incorrectly that "the separate substantive 'Stalking' counts are

improperly grouped into a single conspiracy count."  *Harville Mem.* at 8.  Count 1 in fact charges

a single conspiracy with two objects, stalking through interstate travel (¶ 18a) and stalking through

the facilities of interstate commerce (¶ 18b).  In 1942, the Supreme Court held that "[t]he allegation

in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is

the crime, and that is one [offense], however diverse its objects."  *Braverman v. United States*, 317

U.S. 49, 54 (1942).  *Braverman*'s holding remains good law.  *See*, *e.g.*, *United States v. Nelson-*

*Rodriguez*, 319 F.3d 12, 31 (1st Cir. 2003).  Because the Indictment charges a single, overarching

conspiracy to harass and intimidate the Victims, the Court should deny Harville's motion to

dismiss Count 1.

II.    <u>The Indictment is Sufficiently Particular as to Harville's Course of Conduct</u>

Harville acknowledges that Counts 8 and 9 each allege that he engaged in a "course of

conduct".  *Harville Mem.* at 8-9.  He correctly defines "course of conduct" within the meaning of

18 U.S.C. § 2266(2), but he goes on to argue that the Indictment must state what acts constitute

---

[7] Duplicity would be, in any event, not fatal to the Indictment.  "[A] defendant indicted pursuant
to a duplicitous indictment may be properly prosecuted and convicted if either (1) the government
elects between the charges in the offending count, or (2) the court provides an instruction requiring
all members of the jury to agree as to which of the distinct charges the defendant actually
committed."  *United States v. Ramirez-Martinez*, 273 F.3d 903, 915 (9th Cir. 2001); *United States
v. Luthra*, 2017 WL 11447192, *2 (D. Mass. Sept. 26, 2017) (same).

that course of conduct and what the interstate nature of that conduct was. *Harville Mem.* at 9. It need not.

Indictments must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Generally, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 114, 94 (1974). "An indictment that tracks the language of the underlying statute generally suffices to meet this standard; provided, however, that the excerpted statutory language sets out all of the elements of the offense without material uncertainty." *United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010). An indictment must also, nevertheless, "be accompanied [by] a statement of the facts and circumstances [sufficient to] inform the accused of the specific offence [sic], coming under the general description, with which he is charged." *Id.* (citing *Hamling*, 418 U.S. at 117-18). "[I]n the ordinary course of events, a technically sufficient indictment handed down by a duly empaneled grand jury is enough to call for trial of the charge on the merits." *United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011). For that reason, defendants challenging the sufficiency of an indictment bear "a heavy burden," *United States v. Perry*, 37 F. Supp. 3d 546, 550 (D. Mass. 2014), and courts reserve dismissal for "extremely limited circumstances" to avoid "directly encroach[ing] upon the fundamental role of the grand jury." *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995).

The Indictment does all that is required of it as to Counts 8 and 9: it "faithfully tracks the language of the statutes" and notifies Harville "not only of the elements of the crimes charged but also of the relevant factual scenario." *See Troy*, 618 F.3d at 35. This is particularly true where

"[n]othing in § 2261A(2)(B)'s text indicates that the acts comprising the 'course of conduct' are themselves elements." *United States v. Ackell*, 907 F.3d 67, 79 (1st Cir. 2018).  Harville's "course of conduct" accordingly does not need to be stated specifically in the indictment. *See United States v. Lubienecki*, 2020 WL 7248323 (W.D.N.Y. Oct. 20, 2020) ("there is nothing in [18 U.S.C. § 2261A] that requires the facts or acts relating to the defendant's course of conduct be described in the indictment as necessary elements of the crime charged."); *see also Stepanets*, 879 F.3d at 372 ("[t]he government need not recite all of its evidence in the indictment.").

As a practical matter, however, the Indictment already advises Harville that between August 15, 2019 and August 17, 2019, in the District of Massachusetts and elsewhere, he took all of following acts, among others:  (1) in preparation for the trip to surveil the Victims, visiting a website that could be used to monitor the "Natick Police and Fire Live Audio Feed" (¶ 16y); (2) flying to Massachusetts (¶ 16z); (3) obtaining the license plate numbers for the Victims' cars (¶ 16aa); (4) driving to the Victims' home in Natick and attempting unsuccessfully to install a GPS tracking device on the Victims' car, which was locked in the Victims' garage (¶ 16bb); (5) dialing into a conference line with coconspirators to monitor the NPD dispatch (¶ 16cc); (6) purchasing tools at a Boston hardware store to break into the Victims' locked garage (¶ 16ee); (7) returning to Natick on August 16, 2019 to surveil the Victims and driving past their home repeatedly (¶ 16ff); (8) again dialing in to the surveillance team's conference line (¶ 16gg); and (9) following Victim 2 as he drove around Natick (¶ 16hh).  The Indictment thus provides Harville ample notice of the "relevant factual scenario." *See Troy*, 618 F.3d at 35; *see also United States v. Bowker*, 372 F.3d 365, 377 (6th Cir. 2004) (stalking indictment's reference to "specific dates and locations of the offenses, as well as the means used to carry them out (travel, internet, telephone), provided

[defendant] fair notice of the conduct with which he was being charged"), *vacated on other grounds*, 543 U.S. 1182 (2005).

III.     <u>The Indictment Properly Charges Witness Tampering</u>

Baugh and Harville each challenge the witness tampering charges in Counts 10, 11, and 12. Because the Indictment charges them with what the witness tampering statute expressly forbids—engaging in misleading conduct toward witnesses to hinder, delay, or prevent their communication of truthful information regarding the commission of a federal offense—and fairly advises the defendants of the relevant factual scenario, the Court should deny their motions to dismiss. Even if the law required more of the Indictment, the stalking campaign it describes was more than reasonably likely to involve communications to federal officials.

A.     Legal Standard

The witness tampering statute, 18 U.S.C. § 1512, provides in pertinent part:

(b)     Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

(3)     hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense

[commits a felony].

The "misleading conduct" that the statute prohibits includes both "knowingly making a false statement" to another person and "intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a false impression by such statement." 18 U.S.C. § 1515(a)(3)(A)-(B).

The parties agree that section 1512 does not require an "existing or imminent federal investigation at the time of misleading conduct." *Baugh Mem.* at 9 (*citing United States v. Bailey*,

405 F.3d 102, 109 (1st Cir. 2005)); *Harville Mem.* at 11.  Nor does the government need to prove that the defendants intended to prevent communications to "federal officials specifically," as opposed to law enforcement officers generally.  *See United States v. Weadick*, 15 F.4th 1, 13 (1st Cir. 2021).  Rather, since *Fowler v. United States*, the government has been required to prove that communications to a federal official of information related to the possible commission of a federal crime were reasonably likely, and not "remote, outlandish, or simply hypothetical."  563 U.S. 668, 678 (2011); *see Weadick*, 15 F.4th at 13; *United States v. Flaherty*, 2015 WL 6965099 (D. Mass. Nov. 11, 2015) (Cabell, J.).

      B.      Whether Federal Communications Were Reasonably Likely is a Jury Question

Both defendants complain that the Indictment's allegations do not meet the *Fowler* standard:  that communications were reasonably likely to be made to federal officials.  *Baugh Mem.* at 11 ("the Indictment does not allege that federal authorities were likely to investigate…"); *Harville Mem.* at 11 (the indictment "fails to state … that information would be relayed to" a federal law enforcement).  These arguments conflate pleading standards with the government's burden of proof at trial.  *See United States v. Moore*, 2021 WL 3024058, at *4 (E.D. Wis. Apr. 27, 2021) ("[W]hat's in the indictment and what's proven to a jury are very different questions.").

As noted above, an indictment is sufficient if it plainly puts forward the essential elements of the charged offense and advises the defendant of the relevant factual scenario.  *See Troy*, 618 F.3d at 35.  The Indictment in this case alleges the essential elements of the offense using the language of the statute:  (1) the defendants "knowingly engage[d] in misleading conduct" toward specific persons; (2) they intended "to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information"; and (3) the information "relat[ed] to the commission or possible commission of a Federal offense".  (*E.g.*, ¶ 28).  It also advises the

14

defendants that the information related to the "conspiracy described in Count 1 of the Indictment", the harassment and intimidation of the Victims.  (¶ 28).

The Indictment does not need to allege that communications to federal law enforcement personnel were reasonably likely.  In *United States v. Hamilton*, the court denied a motion to dismiss an indictment charging violations of section 1512(b)(3) that did not allege a reasonable likelihood that misleading communications would be shared with a federal official.  2016 WL 1696136, *4 (N.D. Ga. Apr. 28, 2016).  The court reasoned that *Fowler* simply interpreted the witness tampering statute's intent element, and that the case had not created a new element that must be pled.  *See id.* ("While [defendant] may be able to argue that *Fowler*'s construction of § 1512 should be explained to the jury, this construction does not undermine the fact that all of the necessary elements of § 1512 are already present in the indictment.")

The cases Baugh cites confirm that it is for a jury to decide whether communications to a federal law enforcement officer were reasonably likely.  *See Weadick*, 15 F.4th at 1 ("A rational factfinder also could have found a reasonable likelihood that the communication Weadick intended to prevent would have been made to one or more federal law enforcement officers"); *United States v. Byrne,* 435 F.3d 16, 17-18 (1st Cir. 2006) ("The evidence was sufficient to warrant all four of the convictions for witness tampering"); *United States v. Guadalupe*, 402 F.3d 409, 413 (3d Cir. 2005) (evaluating likelihood of communications as part of challenge to the sufficiency of the evidence).  Other courts have similarly addressed *Fowler* challenges *after* trial.  *See United States v. Tyler*, 956 F.3d 116, 129 (3d Cir. 2020) ("Therefore, a rational juror had a basis to conclude it was reasonably likely that [the witness] would have spoken to a qualifying law enforcement officer…."); *United States v. Veliz*, 800 F.3d 63, 75 (2d Cir. 2015) ("the jury reasonably found that federal involvement was 'more than remote, outlandish, or simply hypothetical.'"); *see also United*

15

*States v. Johnson*, 874 F.3d 1078, 1079 (9th Cir. 2017) ("we hold that there was insufficient evidence for any rational juror to find that it was reasonably likely that Johnson's reports would have reached federal officers").  The Court should accordingly leave this question to the jury.[8]

       C.    Section 1512(b)(3) Prohibits Making False Statements to Prevent the Communication of Truthful Information

Baugh asserts incorrectly that section 1512 is "only concerned with preventing the communication of information" and "says nothing about making inaccurate or untruthful statements."  *Baugh Mem.* at 6.  The statute expressly says otherwise.  It prohibits, as the Indictment charges, engaging in "misleading conduct", which is defined to include both "knowingly making a false statement" and omitting information from a statement that makes it misleading.  18 U.S.C. § 1515(a)(3)(A)-(B).

The Indictment alleges that Baugh and Harville engaged in misleading conduct toward witnesses to prevent, hinder, and delay communication of information regarding the commission or possible commission of a federal offense.  It need do no more.

Although Baugh strings together several cases in which defendants killed witnesses or threatened them at gunpoint to prevent them from sharing information with law enforcement, *Baugh Mem* at 8-9, that is not the only way a defendant can violate section 1512.  *Bailey* is a classic example of witness tampering through false and misleading statements.  The defendant, a prison

---

[8] Harville relatedly argues that the Indictment "fails to state the purported statements [he] made, [and whether said statements concern[ed] the commission or possible commission of a federal offense".  *Harville Mem.* at 11.  In short, the Indictment does allege that Harville made several false statements related to the harassment of the Victims:  (1) that he traveled to Boston to attend a conference, that he had not been to Natick, and that he had not interacted with the Victims or the NPD (¶ 16iii); (2) that he did not know whether Zea had traveled to Natick and that he had not worked on a matter involving the Victims (¶ 16kkk); and (3) again, that he attended the Boston conference with Zea (¶ 16mmm).  The Indictment also expressly charges that Harville did so to "prevent the communication … of information relating to the commission or possible commission of a federal offense, that is the conspiracy described in Count 1 of the Indictment."  (¶ 30).

guard who assaulted an inmate, did not tamper with investigators by silencing them.  Rather, he made false statements about the assault to internal investigators, which ended up in a report that the "FBI subsequently obtained" as part of a later federal excessive force investigation.  405 F.3d at 107.

Baugh is accordingly incorrect when he asserts that "telling tales to investigators" (*Baugh Mem.* at 9) is not witness tampering.  In *United States v. Veal*, defendant police officers lied to state investigators "by not telling them the true circumstances of [a drug dealer's] death and, thereby, precluding their communicating those facts to the Federal Bureau of Investigation, the United States Department of Justice, and judges of the United States").  153 F.3d 1233, 1245–46 (11th Cir. 1998), *overruling on other grounds recognized*, 808 F.3d 1263 (11th Cir. 2015).  The Eleventh Circuit noted that "federal jurisdiction under § 1512(b)(3) is based on the federal interest of protecting the integrity of potential federal investigations *by ensuring that transfers of information* to federal law enforcement officers and judges relating to the possible commission of federal offenses *be truthful and unimpeded*."  *Veal* 153 F.3d at 1245-46 (emphasis supplied); *see United States v. Perry*, 335 F.3d 316, 321 (4th Cir. 2003) (a defendant's false statement to local police provided "with an intent to prevent the [local police] from communicating his true identity to those who might investigate the firearms offenses" was witness tampering); *United States v. Jacquemain*, 368 F. Supp. 2d 800, 802 (E.D. Mich. 2005) (submission of false and misleading police report violated section 1512(b)(3)); *see also United States v. Kostopoulos*, 766 Fed. Appx 875 (11th Cir. 2019) (officer's false statement to internal investigator regarding matter later referred to FBI violated section 1512(b)(3)); *United States v. Hawkins*, 185 F. Supp. 3d 114, 125 (D.D.C. 2016) (by providing false information to FBI agents, defendant "clearly intended to 'prevent', 'hinder', and 'delay' the communication of the truthful information he had on these topics").

D.     A Local Police Officer and Internal Investigator are Proper Subjects of a Witness
Tampering Charge

Harville correctly states that the Indictment does not allege that eBay's investigator was a federal officer.  *Harville Mem.* at 10.  Section 1512(b)(3), however, does not require such an allegation.  It requires only that the defendant intended engage in misleading conduct toward "another person".  Courts have interpreted this term to include intermediaries, including internal investigators (as in *Bailey*), local police officers, and even attorneys conducting an internal investigation.  *See Veal*, 153 F.3d at 1245 ("another person" in section 1512(b) is "easily and commonly understood to mean any person, regardless of whether he possessed knowledge of the commission or possible commission of a federal crime from being an eyewitness or investigating official").

In *United States v. Ring*, 628 F. Supp.2d 195, 203 (D.D.C. 2009), a lobbying firm hired outside counsel to investigate the activities of the defendant, one of its lobbyists.  The defendant lied to the investigating attorney, despite knowing both that there were ongoing investigations into the lobbying firm's activities and believing that the law firm was providing information to both the Department of Justice and a Senate committee.  The government charged the defendant with violations of section 1512(b)(3), for making false statements to the lawyer, "and thereby preventing the communication of information" to the FBI relating to the possible commission of federal offenses.

The court rejected defendant's motion to dismiss based on an argument, similar to the one that Harville raises, that private counsel was not a federal investigator.  628 F. Supp.2d at 222.  Noting the legislative history to section 1512, the court reasoned that the statute was intended to cover "activities designed to create witnesses as part of a cover-up *and to use unwitting third parties or entities* to deflect the efforts of law enforcement agents in discovering the truth." *Id.*

18

(quoting *Veal*, 153 F.3d at 1247) (emphasis supplied).  "As a result, [section 1512(b)(3)] can also be violated even where, as alleged here, the defendant directly misleads a private attorney." *Ring*, 628 F. Supp.2d at 222; *see also United States v. Siegelman*, 561 F.3d 1215, 1235 (11th Cir. 2009) (defendant violated section 1512(b)(3) by misleading a private lawyer into believing that a financial transaction was legitimate, creating an "unwitting third party" who could support a cover up as to the true nature of the transaction); *Veal*, 153 F.3d at 1247 (section 1512(b)(3) covers defendants' use of police personnel as "conduits to create false and misleading evidence").

The Indictment fairly alleges that, knowing an NPD investigation was underway, Baugh, Harville, and their coconspirators made knowingly false statements to eBay investigators and to Detective Sutherland to "deflect the efforts of law enforcement agents in discovering the truth." *See Ring*, 628 F.Supp.2d at 222.  The defendants attempted to make these witnesses unwitting participants in their coverup—conduct that fits comfortably within section 1512(b)(3).  *See Bailey*, 405 F.3d 107 (false statements to prison's investigators included in a report that the FBI obtained).

E.     Communications with Federal Law Enforcement Were Reasonably Likely

Even if section 1512 requires that an indictment establish that communications with federal law enforcement were reasonably likely (and not remote, speculative or outlandish), the Indictment easily satisfies this standard, which courts have characterized as a "relatively low bar".  *See Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 185 (3d Cir. 2017) (quoting *United States v. Smith*, 723 F.3d 510, 518 (4th Cir. 2013)).  To establish reasonable likelihood, "[t]he Government need not show that such a communication, had it occurred, would have been federal beyond a reasonable doubt, nor even that it is more likely than not." *Fowler*, 563 U.S. at 678.  Instead, it only "must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Tyler*, 956 F.3d at 126.

19

In *Veliz*, the Second Circuit held that the federal nexus required under section 1512(b)(3) can be satisfied by a showing that the offense under investigation was "federal in nature," plus additional appropriate evidence.  800 F.3d at 75.  That additional evidence could include the fact that the witness did ultimately communicate with federal authorities or that a federal investigation did ensue.  *See id.* ("Given the ongoing and interstate nature of the offenses, the jury reasonably found that federal involvement was 'more than remote, outlandish, or simply hypothetical.'"). Similarly, evidence that federal officers were in contact with their state counterparts, had investigated similar incidents, or had established policies and practices of investigating can support a *Fowler* reasonable likelihood finding "without much difficulty".  *See United States v. Johnson*, 874 F.3d at 1083 (9th Cir. 2018); *see also Aguero v. United States*, 580 F. App'x 748, 753 (11th Cir. 2014) (holding the reasonable likelihood standard satisfied in a police shooting investigation, where police had a working relationship with the federal government, investigations occurred after each police shooting, and there was a standard practice of forwarding information from shootings to the FBI); *Smith*, 723 F.3d at 518 (holding the reasonable likelihood standard satisfied where victim complained of gang activity and drug trafficking, and evidence showed that the DEA worked closely with the city police and that the police were its "biggest source of information").

The Indictment alleges more than adequately that the investigation into the stalking, intimidation, and harassment of the Victims was federal in nature.  What the Victims confronted in August 2019 was not a quintessentially "local police matter[]" involving "vandals and pranksters".  *Baugh Mem.* at 11.  Rather, the Victims received a funeral wreath (¶ 16q), a book on coping with the death of a spouse (¶ 16t), threats of physical harm (¶ 16v), and warnings that the same people who had threatened them online would visit the Victims at their home (¶ 16yy). "Vandals and pranksters" do not make threats, monitor police broadcasts to evade detection, or

travel from California to Massachusetts under the guise of attending a software development conference.  (¶¶ 16x, z).  The defendants and their coconspirators also hid using sophisticated techniques that were reasonably likely to attract the attention of investigators assigned to fight online crime:  overseas email accounts, VPN services, and prepaid cell phones and laptops, among others.  (¶ 15j).  It is far from "remote, outlandish, or simply hypothetical" that communications to a federal official would ensue in the wake of a sophisticated, threatening, and anonymous online attack.  Even the Victims recognized the federal nature of the attacks—the evidence will show they reached out directly to the FBI National Threat Operations Center for help.

Thereafter, when Baugh, Harville, and their coconspirators knew that the NPD was investigating, they expressly communicated among themselves about "how best to thwart the NPD investigation" and "l[ied] to eBay investigators who were responding to NPD requests for eBay's assistance".  (¶ 15o and p).  Under these circumstances, it is hardly surprising that an NPD detective called the FBI Boston's Division twice on August 22, 2019; that the FBI's cybersquad opened an inquiry into the stalking of the Victims on August 26, 2019; or that a grand jury investigation and federal charges soon followed.  *See Champagne v. Warden Lewisburg USP*, 794 F. App'x 143, 146 (3d Cir. 2019) (subsequent investigation resulting in a federal charge shows that communication with qualifying federal officers was reasonably likely).

The defendants' crimes made federal communications a virtual certainty.  Their threatening and sophisticated nature makes unpersuasive Baugh's hypothetical complaint that any lie to any investigator about any potential crime comes within the scope of section 1512(b)(3).  Likening the federal stalking statutes to crimes involving "how runny ketchup could be" or a "bird of prey tak[ing] up residence in your house" is simply not a reasonable comparison.  The Court should reject the defendants' suggestion that (1) a transnational plot (2) by senior employees of a

21

multinational, publicly traded company (3) to travel interstate and (4) use the facilities of interstate commerce (5) to harass the publishers of an online journal (6) through threatening and anonymous communications, deliveries, and surveillance was not reasonably likely to lead to a federal investigation, and it should accordingly deny the motions to dismiss Counts 10, 11, and 12.

IV.    The Indictment Properly Alleges Violations of 18 U.S.C. § 1519

Counts 13 and 14 charge Baugh, and Count 15 charges Harville, respectively, with violating 18 U.S.C. § 1519.  (¶¶ 31-34).  That statute, in pertinent part, punishes anyone who:

> knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation of or proper administration of any matter within the jurisdiction of any department, or agency of the United States, …, or in relation to or contemplation of any such matter or case…."

The elements of a violation of section 1519 are:  (1) that a defendant knowingly altered, destroyed, mutilated, concealed, covered up, falsified, or made a false entry in a record, document, or tangible object; (2) that the defendant acted with the intent to impede, obstruct, or influence the investigation or proper administration of a matter, or in relation to or in contemplation of a matter; and (3) that the matter was within the jurisdiction of a federal agency.  *United States v. Harmon*, 2021 WL 54566445, *2, n.1 (S.D. Miss. Nov. 22, 2021) (citing Fifth Circuit Pattern Criminal Jury Instructions, No. 2.65); *see also United States v. Hassler*, 992 F.3d 243, 245 (4th Cir. 2021) (same).

A.    The Stalking of the Victims Is a Matter Within the Jurisdiction of the FBI

Harville argues that the "matter" he is charged with obstructing in Count 15 was an internal eBay investigation, and that eBay's investigator was not an agent of the federal government. *Harville Mem.* at 12.  This argument misstates both what section 1519 requires and the matter he is accused of impeding and obstructing.  It is the federal subject matter of the investigation, not

which agency investigates at the outset, that confers federal jurisdiction over this obstruction offense.

The Supreme Court has held that section 1519 "covers conduct intended to impede any federal investigation or proceeding, including one not even on the verge of commencement." *Yates v. United States*, 135 S. Ct. 1074, 1087 (2015).  Indeed, section 1519 covers efforts to obstruct investigations that do not result in the filing of charges.  *See, e.g., United States v. Gray,* 642 F.3d 371, 379 (2d Cir. 2011) ("[Section] 1519 does not require the existence or likelihood of a federal investigation.").  Similarly, there is no requirement that a defendant know that a federal matter may result.  *Hassler*, 992 F.3d at 245 (collecting cases) ("[t]he Government was not required to prove that Hassler knew or contemplated that the investigation he intended to impede was within the jurisdiction of a federal agency.")

As noted above, it is the subject under investigation that brings a matter within federal jurisdiction.  *United States v. Moyer* initially concerned a state investigation into a racially motivated killing.  674 F.3d 192, 200-01 (3d Cir. 2012).  A police chief was charged with violating section 1519 for aiding and abetting the creation of false reports about that killing for a district attorney.  The Third Circuit held that a bill of particulars was unnecessary when the government identified the matter under investigation as "the racially motivated killing of" the victim.  674 F.3d at 206.  *Moyer* reiterated that a federal investigation need not have been pending and that evidence supporting the police chief's conviction was sufficient where the FBI had jurisdiction over the subject matter—racially motivated killings.  *Id.* at 210.[9]

_____

[9]*United States v. Gray,* 642 F.3d 371, 378 (2d Cir. 2011), does not support Harville's position.  In *Gray*, the Second Circuit held that a prison's private investigation was within the jurisdiction of the Department of Justice (for purposes of a section 1519 charge) because of the prison's contractual obligation to the federal government to investigate and report prisoner abuse.  642 F.3d at 378.  As illustrated by *Moyer*, however, a contractual obligation to investigate is not the only

The matter the Indictment charges is a conspiracy to stalk the Victims, (¶ 30), not eBay's internal investigation, or even the NPD's initial steps to investigate.  For the reasons stated above, matters involving interstate travel and the use of the facilities of interstate commerce with the intent to harass and intimidate are within the jurisdiction of the FBI.  That is all section 1519 requires.  *See United States v. Fattah*, 223 F. Supp. 3d 336, 371 (E.D. Pa. 2016) ("It is sufficient for the government to prove simply that the matter which is the subject of an investigation was within the jurisdiction of a department or agency of the United States, regardless of the defendant's knowledge or intent in this regard.").

Even if section 1519 required some federal nexus to the obstructive act—here Harville's deletion on August 30, 2019 of information regarding the stalking of the Victims—there was already a federal matter on that date.  As noted above, the NPD had reported eBay's connection to the harassment to the FBI on August 22, 2019, and the FBI opened an inquiry into the stalking on August 26, 2019, all before Harville is alleged to have destroyed data.  The Indictment similarly charges that Harville was aware of the NPD investigation.  (¶¶ 15m, o, p).  He did not need to know it had become a federal one.  *See Gray*, 642 F.3d at 378 ("By the plain terms of § 1519, knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime."); *Moyer*, 674 F.3d at 208 (same).

---

circumstance under which the federal government would have jurisdiction over a matter involving prison violence.  *Gray*, 642 F.3d at 377 (analyzing the legislative history of section 1519 and concluding that the statute was "specifically meant not to include any technical requirement ... to tie the obstructive conduct to a pending or imminent proceeding or matter."); *see also United States v. Fitts*, 2019 WL 3409866 (S.D.N.Y. Jul. 29, 2019) (holding that there was no requirement under section 1519 that an investigating entity be federal, contractually obligated to report to the federal government, or engaged in a function traditionally performed by the federal government).

B.      The Indictment Properly Alleges that Harville Destroyed Records

Harville argues the Indictment must state specifically what communications he deleted from his phone to obstruct the inquiry into the harassment of the Victims.  *Harville Mem.* at 13. It does not.  As Harville concedes, "Count 15 broadly states the elements of 18 U.S.C. § 1519…." and "generalizes categories of information (*e.g.*, WhatsApp messages, etc.)".  *Harville Mem.* at 14.  That is all that is required.  *See Moyer*, 674 F.3d at 203 (indictment adequately charged falsification of "police reports" even without listing "every omission or inclusion that rendered the documents false").  The government is not obligated to, "at the pre-trial stage, weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant."  *Id.*  Even if more were required, the Indictment does not simply accuse Harville of deleting the contents of his eBay-issued cell phone.  It charges him with deleting data "related to his trip to Natick" (¶ 16qqq) and data that "evidenced the conspiracy" charged in Count 1, "including WhatsApp messages", (¶ 16lll), which the Indictment alleges was the way that the coconspirators communicated about how to harass the victims and how to respond to the NPD investigation.  (¶ 15m).  The Indictment thus adequately advises Harville of the "relevant factual scenario."  *See Troy*, 618 F.3d at 35.[10]

C.      Count 13 Properly Alleges that Baugh "Falsified" Records

Baugh argues that Count 13 should be dismissed because he did not falsify a document to obstruct the investigation into the harassment, but instead directed Stephanie Stockwell to send

---

[10] The government also provided Harville in discovery with an image of the eBay phone that he turned in on August 30, 2019.  The report containing that image indicates which records Harville deleted.

him an eBay record of "Persons of Interest" that was accurate, and then used that accurate document for a misleading purpose. *Baugh Mem.* at 12.

As an initial matter, Baugh's motion on this count is premature. The Indictment properly alleges a violation of section 1519 by reciting its statutory language, including the accusation that Baugh "falsif[ied]" the "Persons of Interest" document. Baugh acknowledges that a defendant can violate section 1519 "by creating a document that is false or that misrepresents the truth", but then contends that the document Stockwell created "was not false in any way." *Baugh Mem.* at 13. This is a question for a jury to decide after the Court instructs it on the meaning of "falsified". *See Stepanets,* 879 F.3d at 372 (1st Cir. 2018) (reversing dismissal of an indictment: "keep in mind that courts must not inquire into the sufficiency of the evidence underlying the indictment).

In that regard, Baugh offers far too narrow a definition of "falsify"—one that other courts have rejected. In *United States v. Rowland*, the former government of Connecticut was charged with violating section 1519 for creating sham private consulting agreements that enabled him to be paid for his hidden role consulting on a political campaign. 826 F.3d 100, 105-06 (2d Cir. 2016). Rowland argued that he had not falsified the consulting agreements because "falsify" meant to alter an existing document, not to create an entirely new document. *Rowland*, 826 F.3d at 107-08. The Second Circuit rejected Rowland's definition of "falsify" ("to make false by mutilation or addition"), noting that "falsify" can also mean "to represent falsely, misrepresent, distort". *Id.*

The narrow definition of "falsify" that Baugh espouses would overlap too closely with "alter", which is another of the statute's prohibitions. *Id.* at 109 ("It is well-settled that courts should avoid statutory interpretations that render provisions superfluous: 'It is our duty to give effect, if possible, to every clause and word of a statute.'"). The legislative history preceding

section 1519 also makes clear that Congress intended to combat obstruction through both the creation and destruction of documents:

> Section 1519 is meant to apply broadly to any acts to destroy *or fabricate* physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation."

S. Rep. No. 107-146, at 14 (2002) (emphasis supplied).  The creation of a document with intent to obstruct an investigation can accordingly violate section 1519.

In *United States v. Norman,* the government charged a Philadelphia police officer with falsifying a police report with intent to impede a matter within federal jurisdiction.  The report, while otherwise accurate, omitted the fact that the officer had taken $3,900 from a motorist during a traffic stop.  The Court rejected the argument that an omission was not a falsification, noting the breadth of section 1519:  "Section 1519 describes a broad range of conduct—'alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry'—which as a whole, creates the clear impression that the statute is concerned with any intentionally deceptive behavior regarding records, documents, and objects."  87 F. Supp.3d 737, 745 (E.D. Pa. 2015); *see also United States v. Lanham*, 617 F.3d 873, 887 (6th Cir. 2010) ("Material omissions of fact can be interpreted as an attempt to "cover up" or "conceal" information.").

The government is charging as a falsification the creation of the eBay document, not simply its use.  (The use to which Baugh put that document also goes to his intent to impede, obstruct, and influence the inquiry into the harassment of the Victims.)  The Indictment accordingly charges Baugh with directing a subordinate to "prepare", for provision to the NPD, a document that did not previously exist:  an eBay record of "Persons of Interest" in the Bay Area.  (¶¶ 16eee & fff). It alleges that Baugh knew the NPD was investigating harassing purchases made with a debit card

in the Bay Area, and that he directed the creation of this document knowing that none of the "Persons of Interest" who would end up on it had any role in the harassment.  (It had been his coconspirator, Zea, who made the purchase).  The omission of these facts from the new eBay document "falsified" it within the meaning of section 1519, just like a report that failed to include key facts in *Norman*, or a contract in *Rowland* that failed to disclose the true state of affairs.  The Indictment accordingly alleges, and the government expects to prove at trial, that Baugh engaged in "intentionally deceptive behavior regarding records, documents, and objects" in a matter within the FBI's jurisdiction.  *See United States v. Gonzalez*, 906 F.3d 784, 795 (9th Cir. 2018) ("After all, government investigations can be obstructed just as readily by creating false documents as by altering documents that already exist.").

V.       The Indictment Properly Alleges Venue for Counts 11 through 15

Harville and Baugh challenge venue in Massachusetts as to Counts 11 through 15.  Each of these counts alleges that the defendants acted in "the District of Massachusetts and elsewhere," which is all that is required for an indictment to withstand a motion to dismiss based on venue.  In any event, Counts 11 and 12, which charge Baugh and Harville, respectively, with witness tampering, are properly charged in this District pursuant to that statute's venue provision, 18 U.S.C. § 1512(i).  Count 13 is properly venued in Massachusetts because Baugh directed the falsification of the "Persons of Interest" report from here.  Counts 14 and 15, charged under 18 U.S.C. § 1519, are also properly venued here because, even if the defendants were in California when they destroyed records, the Indictment charges that they did so to impede the investigation into the stalking of the Victims here in Massachusetts.  The Court should accordingly deny their motions to dismiss as to venue.

A.     Legal Standard

"A court considering a pretrial motion to dismiss for improper venue must take as true the allegations in the indictment."  *United States v. Abbas*, 2021 WL 784095, *2 (D. Mass. Mar. 1, 2021) (Sorokin, J.); *see also United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006) ("[A]s long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied.").  The government accordingly satisfies its venue burden by alleging that criminal conduct occurred within the venue.  *United States v. Nicolo*, 523 F. Supp. 2d 303, 320 (W.D.N.Y. 2007).  "If there is a facially sufficient indictment, the Court cannot make venue determinations based on extrinsic evidence in deciding a pre-trial motion." *United States v. Lyons*, 2011 WL 3809910, *3 (D. Mass. Aug. 25, 2011) (Saris, J.), *see United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) (pointing out there is no summary judgment procedure in criminal cases).  Ultimately, the question presented by a motion seeking dismissal of a lawfully returned indictment "is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense."  *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012).

B.     The Indictment Satisfies Pleading Requirements for Venue

As noted above, the Indictment charges Baugh and Harville in Counts 11 through 15 with taking actions "in the District of Massachusetts and elsewhere."  *See*, *e.g.*, ¶ 28 ("From August 20, 2019 through on or about August 30, 2019, in the District of Massachusetts and elsewhere, the defendant, JIM BAUGH, did…").  "Courts have found the language 'In [state] and elsewhere' to be sufficient for purposes of alleging venue."  *Lyons*, 2011 WL 3809910 at *3 (collecting cases); *see also United States v. Novak*, 443 F.3d 150, 161-62 (2d Cir. 2006) (finding indictment language alleging criminal activity "within the federal districts listed below and elsewhere" did not

29

constitute facial venue defect); *United States v. Razo*, 2012 WL 5874667, \*5 (D. Me. Nov. 20, 2012) (finding no facial venue defect where indictment alleged criminal activity took place "in the District of Maine and elsewhere"); *United States v. Ayeki*, 289 F. Supp. 2d 183, 188 (D. Conn. 2003) (stating, where indictment alleged crimes "in the District of Connecticut and elsewhere," "the indictment, on its face, properly alleges venue in the District of Connecticut" such that "there is no basis at this stage for moving for dismissal because of improper venue"); *United States v. Bellomo*, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003) (stating, where indictment alleged crimes "within the Eastern District of New York and elsewhere," that indictment language "suffices to sustain it against this pretrial attack on venue"). The Indictment thus adequately alleges venue in this District. The Court should follow the precedent above to deny defendants' motions to dismiss on these grounds.

C.      Venue on the Witness Tampering Counts—Counts 11 and 12—is Proper

Even if the defendants' venue challenges were not premature, venue on the witness tampering charges is appropriate in this District.

"If a statute under which a defendant is charged contains a specific venue provision, that provision must be honored (assuming, of course, that it satisfies the constitutional minima)." *United States v. Salinas*, 373 F.3d 161, 164 (1st Cir. 2004) (citing *Travis v. United States*, 364 U.S. 631, 635 (1961)); *see also* Fed. R. Crim. P. 18 ("*Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed*") (emphasis supplied).

18 U.S.C. § 1512—charged here in Counts 11 and 12—contains a specific venue provision, which states in pertinent part:

A prosecution under this section … may be brought in the District in which the official proceeding (whether or not pending or about to be instituted) was intended

30

to be affected or in the district in which the conduct constituting the alleged offense occurred.

18 U.S.C. § 1512(i).

### 1.   Count 11 – False Statements to eBay Investigator

The Indictment alleges that Baugh engaged in misleading conduct toward an internal investigator "from on or about August 20, 2019 through on or about August 30, 2019." (¶ 28).  As the Indictment charges, the government expects to prove that he engaged in some of this misleading conduct on August 22, 2019, at a time when Baugh concedes he was in the District of Massachusetts.  *Baugh Mem.* at 18.   Because he did so "in the district in which the conduct constituting the alleged offense occurred," venue on Count 11 is appropriate in this District.  That Baugh made other false statements elsewhere, including after he returned to the Northern District of California, does not prevent the government from charging him here.

### 2.   Counts 11 and 12 – Baugh and Harville's California Statements

The government does not dispute that Harville made his false statements to the eBay internal investigator only after he left Massachusetts, or that Baugh made several of his false statements from California.   Venue nevertheless remains appropriate in Massachusetts under either prong of section 1512's venue provision, both because Massachusetts is the "district in which the conduct constituting the alleged offense occurred" and because the charge is properly brought where "the official proceeding (whether or not pending or about to be instituted) was intended to be affected."  18 U.S.C. § 1512(i).

i.      The Conduct Constituting the Offense Occurred in <u>Massachusetts</u>

The place of an offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it. *United States v. Anderson*, 328 U.S. 699, 703 (1946).  As noted in section III.D above, Section 1512(b)(3)'s elements both require an intermediary ("misleading conduct toward another person"), and that the misleading conduct take place with the intent to hinder that other person's communication of information.  These elements envision an effect somewhere other than the place where the misleading conduct takes place.

In this case, the Indictment charges that that other place is the District of Massachusetts.  It alleges both that Baugh, Harville and coconspirators were aware that the NPD was investigating the harassment and intimidation of the Victims, (¶¶ 15 l, m, n, o), and that they attempted to mislead eBay internal investigators to prevent information about the conspiracy from getting to the Massachusetts investigators. *E.g.*, ¶ 12 ("BAUGH, HARVILLE and their coconspirators took steps to conceal their harassment campaign … from state and federal authorities, by, among other things, monitoring law enforcement communications, forging records, lying to investigators, and destroying evidence."); ¶ 14 (purposes of the conspiracy included "avoiding law enforcement detection and prosecution"); ¶ 15o (defendants and their coconspirators "exchanged ideas as to how best to thwart the NPD investigation"); ¶ 15r (coconspirators deleted computers, cell phones, and social media accounts that evidenced the "defendants' and their coconspirators' efforts to obstruct the NPD investigation"); ¶ 16y ("On or about August 15, 2019, HARVILLE used his eBay-issued phone to visit a website that could be used to monitor the "Natick Police and Fire Live Audio Feed"); ¶ 16ll (HARVILLE dialed in to a conference line "to

32

monitor the NPD dispatch"); ¶ 16eee (BAUGH directed Stockwell to prepare "Persons of Interest" document in response to NPD investigation); ¶ 16iii (HARVILLE falsely told eBay investigators that "he had not had any interaction with the Victims or the NPD"). Although Baugh and Harville need not have known an investigation into the harassment was underway here, they did and took steps to impede it. Massachusetts is accordingly a district in which the conduct constituting the alleged offense occurred.

In *United States v. Salman*, the wife of an active shooter who killed 49 people at a nightclub in Orlando, Florida (in Florida's Middle District) was charged with misleading local officers and federal agents who interviewed her in St. Lucie and Fort Pierce, Florida (both in the state's Southern District). Charged in the Middle District of Florida with violating 18 U.S.C. § 1512(b)(3) by preventing the communication of information about the shooting to officials there, she claimed venue was only appropriate in the Southern District, where she lied. 2017 WL 3034041,*3-4 (M.D. Fla. July. 18, 2017).

The court held that the wife's offense was continuing in nature, because it "began in the Southern District of Florida *and was intended to adversely impact FBI agents and federal judges located in the Middle District of Florida*." 2017 WL 3034041 at *5 (emphasis supplied). The court rejected the defendant's argument that her crime under section 1512(b)(3) was complete the moment she made her false statements, reasoning instead that because the statute required the defendant to prevent the communication of information to another person, that the destination of those communications—the place where the investigation was underway—was an appropriate place to venue a witness tampering prosecution. *Id.*

*Salman* correctly distinguished *United States v. Salinas*, a case in which the First Circuit held that the crime of making a false passport application was complete upon the submission of the application, making venue in the District to which the government sent the completed application unfair. 373 F.3d 161, 163 (1st Cir. 2004). The *Salman* court recognized that section 1512(b)(3) requires the government to show that the "defendant adversely impacted the 'communication of information' *to* a federal official", and that "1512(b)(3) by its plain language envisions the misleading conduct having the continuing effect of adversely impacting a federal investigation or prosecution in a district other than where the misleading conduct occurs." *Salman*, 2017 WL 3034041 at *3.

*Salman* also recognized that the "another person" to whom false statements are directed under section 1512(b)(3) is an intermediary, and that intermediary status necessarily implies the misleading communications being directed elsewhere. *See id.*; *cf. Salinas* (finding that a postal employee who received a false passport application was not an intermediary because crime was complete upon submission of the false application). The defendant in *Salman* knew that her false and misleading statements concerned the night club shooting in another District, and that the information she provided to intermediaries was being provided to investigators there. 2017 WL 3034041 at *3.

The Indictment's charges are no different. Harville and Baugh, through statements made in California, intended to prevent an intermediary—an eBay internal investigator—from communicating truthful information regarding the possible commission of a federal offense in Massachusetts. Where the Indictment charges that the defendants intended to affect an investigation ongoing in Massachusetts, venue is proper in Massachusetts because

it is a "district where the conduct constituting the alleged offense occurred" within the meaning of section 1512(i).

> ii.   Massachusetts was a District in which an Official
> Proceeding was Intended to be Affected

Section 1512(i) defines a second location in which venue for witness tampering is appropriate: the district in which an official proceeding was intended to be affected.

In *United States v. Gonzalez*, the Second Circuit held that a witness tampering charge could be brought in a district where an investigation was ongoing, even though the tampering conduct (the killing of a cooperating witness) took place elsewhere. The Court held that 18 U.S.C. § 1512(h)—the predecessor venue provision to section 1512(i)— encompassed the location of the affected investigation. 922 F.3d 1044, 1055 (2d Cir. 1991).

*Gonzalez* rejected the argument that Baugh raises here—that section 1512(i) provides venue only in cases involving "official proceedings", which are the subject of the witness tampering prohibitions in sections 1512(b)(1) and (b)(2), but not section (b)(3). The Second Circuit reasoned that section 1512 was enacted to overrule case law requiring that an official proceeding be pending in order for a defendant to be subject to prosecution for witness tampering:

> In enacting [the venue provision], Congress surely did not aim to narrow the reach of the Victim and Witness Protection Act. Were we to adopt defendant's reading of the provision and hold that some official proceeding beyond the investigatory stage be pending or contemplated the effect would be read out of the statue much of the criminal activity ostensibly covered by section 1512(a)(1)(C).[11]   That

---

[11]   18 U.S.C. § 1512(a)(1)(C) also prohibits misleading conduct intended to prevent communications of information relating to the commission or possible commission of a federal offense. Because their statutory language is identical, courts often interpret section 1512(a)(1)(C) and 1512(b)(3) similarly.

portion of the statute generally extends to protect to individuals willing to furnish
information regarding a federal offense.  We decline to rule that a person who kills
a witness while an official proceeding is pending or in progress cannot escape
prosecution, but that same person may escape prosecution if he happens to commit
the same murder during the investigatory stage. That loophole is one Congress has
already closed.

922 F.2d at 1055-56.  *Gonzalez* followed this logic to find that an investigation in lower

Manhattan that led to a killing in the Eastern District of New York was properly venued in

Manhattan, because the killing "was to affect this investigation in lower Manhattan."   "To

the extent that § 1512(h) provides for venue in the place where the act was intended to have

its effect—that is to say, to interfere with the government's attempt to ferret out and

prosecute wrongdoing—Lower Manhattan was that place in this case."  *Id.*; *see also United

States v. Baldeo,* 2013 WL 5477373, at *5 (S.D.N.Y. Oct. 2, 2013) ("laying venue where

an investigation is underway is proper to the extent that acts of obstruction or witness

tampering 'interfere[d] with the government's attempts to ferret out and prosecute

wrongdoing' in that venue") (*quoting Gonzalez*, 922 F.2d at 1055-56).

Here too, Baugh and Harville are alleged to have intended to affect the investigation

into the harassment of their Massachusetts victims.  To the extent that section 1512(i)

provides for venue in the place where the act was intended to have its effect, the jury should

be permitted to find that "[Massachusetts] was that place in this case."  *See Gonzalez*, 922

F.2d at 1056; *see also United States v. Snipes*, 611 F.3d 855, 865 (11th Cir. 2010) ("[V]enue

is an essential element of the government's proof at trial…A jury must decide whether

venue in a given district is proper").

Even if *Gonzalez*'s interpretation of witness tampering venue is incorrect—because

investigations are not "official proceedings"—Massachusetts is still an appropriate venue

because the investigation that Baugh lied about was, by at least August 26, 2019, a

36

Massachusetts FBI investigation.  Approximately one month later, it was an "official proceeding"—a Massachusetts federal grand jury investigation.  By its very terms, section 1512(i) makes an official proceeding that was "not pending or about to be instituted" an appropriate source for venue.  *See United States v. Ermoian*, 752 F.3d 1165, 1171 n.5 (9th Cir. 2013) (disagreeing with *Gonzalez*, but noting that section 1512's venue provision "could extend to investigations, not through the term "official proceeding," but through the subsequent parenthetical phrase—'whether or not pending or about to be instituted.'").  Because venue is appropriate, under section 1512, in the place where an official proceeding is "about to be instituted", venue is appropriate in the District of Massachusetts.  *See also Salman*, 2017 WL 3034041 at *7 (accepting the government's argument that an "almost immediately ensuing grand jury investigation" would be an official proceeding that would support venue if it was "intended to be affected"); *Baldeo*, 2013 WL 5477373 at *5 (same), *aff'd*, 615 Fed. Appx. 26 (2d Cir. 2015) ("venue was proper in the Southern District of New York, where the official proceedings were anticipated").

> D.     The Destruction of Records Counts are Properly Venued in Massachusetts

Counts 13 and 14 (as to Baugh) and 15 (as to Harville) allege that the defendants violated 18 U.S.C. § 1519 by altering, destroying, concealing, and falsifying records with the intent to impede, obstruct, and influence the investigation into a matter within the jurisdiction of any department and agency of the United States—the stalking conspiracy charged in Count 1.

Where a statute contains no venue provision, as noted above, the "locus delicti [of the offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it."  *United States v. Seward*, 967 F.3d 57, 60 (1st Cir. 2020).  Section 1519 concerns

crimes done with the intent to impede, obstruct, and influence an investigation of a federal matter. Where that matter was underway in Massachusetts, venue is proper here.

In *United States v. Mixon*, the defendant was charged under section 1519 in Arizona because she signed a false interrogatory there.  2015 WL 13735755, *2  (D. Ariz. Jun. 9, 2015). Her attorneys had prepared the falsified document interrogatory in Washington, D.C. and sent it to the Bureau of Prisons in Georgia, where a BOP matter was pending.  *Mixon* held in dicta that section 1519 was a "continuing offense" that could be prosecuted in any of the three jurisdictions, because she knew "that the documents would be submitted to the Bureau of Prisons attorney [in Georgia] in furtherance of her EEOC claims".[12]

*United States v. Salinas,* 373 F.3d 161 (1st Cir. 2004), cited by Baugh, similarly supports the government's argument that venue is appropriate in Massachusetts on the section 1519 counts. *Salinas* involved a defendant who made false statements (in Brooklyn, New York) on a passport application that happened to end up, through no involvement of the defendant, in the District of New Hampshire.  The *Salinas* court expressed concern that a defendant could be prosecuted as far as away as "Alaska say, or Guam" based on the State Department's decision to process a false passport application there.  373 F.3d at 17.

In this case, Massachusetts venue is connected both to the offenders and the offense.  This is not a case in which Baugh and Harville have been unfairly "hauled into court to face criminal charges across the country."  *Baugh Mem.* at 20.  Although they are charged in Count 13 through

---

[12]The Court should give little weight to the only other reported case the government has identified addressing venue under section 1519, *United States v. Motz*, 652 F. Supp.2d 284, 296 (E.D.N.Y. 2009).  The government appears in *Motz* to have agreed to the dismissal of a section 1519 count while allowing that it might re-indict the defendant for the same offense in the same jurisdiction.

15 with taking acts at times when they were in California, they had been in Massachusetts only days earlier, and they were involved here in the crimes that gave rise to the NPD investigation and the federal investigation and official proceedings that followed.  The Indictment alleges that the defendants were aware that there was an investigation in Massachusetts into their conduct, and that they took steps with the intent to impede that Massachusetts investigation.  If "[t]he venue requirement is designed to prevent a criminal defendant from having to defend himself in a place that has no meaningful connection to the offense with which he is charged," the prosecution of these obstruction offenses in Massachusetts does not offend this principle at all.  *See United States v. Santiago*, 83 F.3d 20, 24 (1st Cir. 1996).

The defendants' contrary argument is unpersuasive:  a defendant who, in the space of approximately two weeks, traveled to Massachusetts, brought with him false documents to provide "in case we got stopped" there to "show the PD", harassed and surveilled victims in Massachusetts, lied to a Massachusetts police officer investigating that harassment, falsified documents for the purpose of providing them to that Massachusetts police officer, and destroyed records to keep them from Massachusetts investigators cannot be charged in Massachusetts with impeding an investigation into his actions.  That is not (and cannot be) the law.

## CONCLUSION

For all of the reasons stated above, the United States respectfully submits that the Court should deny the defendants' motions to dismiss.

NATHANIEL R. MENDELL
Acting United States Attorney


By:      */s/ Seth B. Kosto*_____
SETH B. KOSTO
Assistant U.S. Attorney


December 2, 2021

40

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true copy of the Opposition of the United States to Defendants' Motions to Dismiss to be served on counsel of record through the Court's Electronic Case Filing system.

/s/Seth B. Kosto_____
SETH B. KOSTO
Assistant United States Attorney

December 2, 2021