1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MASSACHUSETTS
2

3      UNITED STATES OF AMERICA,              )
                                              )
4                    Plaintiff                )
                                              )
5           -VS-                              )   Criminal No. 20-10263-PBS
                                              )   Pages 1 - 31
6      JIM BAUGH, also known as James         )
       Baugh, and DAVID HARVILLE,            )
7                                             )
                     Defendants               )
8                                             )
            -AND-                             )
9                                             )
       eBAY Inc. and                          )
10     MORGAN LEWIS & BOCKIUS LLP,           )
                                              )
11                   Intervenors              )

12
                     **STATUS CONFERENCE BY VIDEO**
13

14                BEFORE THE HONORABLE PATTI B. SARIS
                     UNITED STATES DISTRICT JUDGE
15

16

17
                                    United States District Court
18                                  1 Courthouse Way
                                    Boston, Massachusetts  02210
19                                  October 1, 2021, 9:32 a.m.

20

21

22
                          LEE A. MARZILLI
23                     OFFICIAL COURT REPORTER
                     United States District Court
24                   1 Courthouse Way, Room 7200
                          Boston, MA  02210
25                        leemarz@aol.com

1    A P P E A R A N C E S:

2        SETH B. KOSTO, ESQ., Assistant United States Attorney,
    Office of the United States Attorney, 1 Courthouse Way,
3    Room 9200, Boston, Massachusetts, 02210, for the Plaintiff.

4        WILLIAM W. FICK, ESQ. and DANIEL N. MARX, ESQ.,
    Fick & Marx LLP, 24 Federal Street, 4th Floor, Boston,
5    Massachusetts, 02110, for the Defendant Jim Baugh.

6        DANIEL K. GELB, LLP, Gelb & Gelb, LLP,
    900 Cummings Center, Beverly, Massachusetts, 01915, for the
7    Defendant David Harville.

8        JONATHAN M. McDOUGALL, ESQ., The Law Office of Jonathan D.
    McDougall, 1640 Laurel Street, San Carlos, California, 94070,
9    for the Defendant David Harville.

10        JACK W. PIROZOLLO, ESQ., KATHRYN LUNDWALL ALESSI, ESQ.,
    and DREW A. DOMINA, ESQ., Sidley Austin LLP,
11    60 State Street, 34th Floor, Boston, Massachusetts, 02109,
    for the Intervenor eBay Inc.

12
        NATHAN J. ANDRISANI, ESQ., Morgan Lewis & Bockius LLP,
13    1701 Market Street, Philadelphia, Pennsylvania, 19103-2921,
    for the Intervenor Morgan Lewis & Bockius LLP.

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2      THE CLERK:  Good morning, Judge.

3      THE COURT:  Good morning.

4      THE CLERK:  I'll call the case.

5      THE COURT:  Thank you.

6      THE CLERK:  The Court calls Criminal Action 20-10263,

7  United States v. Jim Baugh, et al.  Could counsel please

8  identify themselves for the record.

9      MR. KOSTO:  Good morning, your Honor.  Assistant

09:33 10  United States Attorney Seth Kosto appearing on behalf of the

11  government.

12      MR. FICK:  Good morning, your Honor.  Bill Fick and

13  Daniel Marx on behalf of Mr. Baugh, who is here on the Zoom as

14  well.

15      MR. GELB:  Good morning, your Honor.  Daniel Gelb for

16  Mr. Harville, who's dialed in telephonically, as well as

17  cocounsel Jonathan McDougall.

18      THE COURT:  All right.

19      MR. PIROZOLLO:  Good morning, your Honor.  Jack

09:33 20  Pirozzolo, Kathryn Alessi, and Drew Domina on behalf of eBay.

21      MR. ANDRISANI:  And good morning, your Honor.  Nathan

22  Andrisani on behalf of Morgan Lewis & Bockius.

23      THE COURT:  Thank you.  Okay, so we're here today

24  basically on an appeal of a Magistrate Judge's order, and I

25  know there's been a motion to intervene which has been

1   unopposed, and I will certainly allow that as unopposed.  That

2   said, I'm not a hundred percent sure procedurally what's the

3   best way to go forward.  I think Mr. Fick has raised a -- I

4   shouldn't say just Mr. Fick -- the defendants have raised some

5   important arguments in appealing the Magistrate Judge's order,

6   and I also understand there might be significant attorney-client

7   issues if I should order some of this produced.  So I'm trying

8   to figure out, and I really don't have a strong feeling, about

9   whether I should allow the subpoenas to issue and then have a

09:34 10   motion to quash filed, or whether you all believe that we

11   should just brief the attorney-client-type issues in advance.

12        MR. FICK:  So, your Honor, if I may, first of all, I

13   should say that I think in 20 years of doing this, I've never

14   had a 17(c) request denied by a magistrate judge.  And, you

15   know, normally I would make the motion ex parte.  Here, in an

16   effort to sort of expedite things, I put it on the public

17   docket, anticipating that there would be, you know, motion to

18   quash practice once the subpoenas issued because, you know, I

19   think the idea it would stay a secret is just unrealistic.  And

09:35 20   so I think -- and I can address the merits of our appeal --

21        THE COURT:  I just -- let me start off with -- let's

22   put it this way:  We need briefing.  The procedural vehicle I

23   think won't be the controversial part, we'll figure that out;

24   but I could just allow the motion subpoenas to issue, go

25   through that, and then have you move to quash; or I could

1    simply say you oppose it on the grounds of attorney-client

2    privilege, if that's the sole basis, and then we can brief it

3    that way.

4         But let me start off with the government.  I think --

5    Mr. Kosto, there you are.  On Zoom, I can never find the box

6    that you're in.  Let me start off and find out from you what

7    the case is about, not so much -- I get the stalking/

8    harassment piece of it, but the obstruction piece, those

9    obstruction-related counts, because that's where some of this

09:36 10   may really come in.

11        MR. KOSTO:  Sure, your Honor.  So the Court has made

12   reference to what we described in the indictment or the grand

13   jury described as that three-prong harassment campaign.  So the

14   Steiners, the family in Natick, Massachusetts, is receiving

15   threatening messages.  They're receiving threatening, harassing

16   packages.  And then a team of employees from eBay heads out to

17   Natick with GPS devices, attempted break-ins to their garage

18   and surveillance.  The mini-van is following Mr. Steiner around

19   as he's moving through Natick, and he catches on and reports

09:37 20   that to the police.  All of this is being reported to the

21   Natick Police Department over the approximately 13 or 14 days

22   preceding August 20, 2019.

23        So the Natick Police is investigating the packages,

24   they're investigating the threats, they're investigating this

25   surveillance, and they come across some connections between the

harassment, the surveillance, and the packages to eBay.  And so

on about the 20th of August, they reach out a couple different

ways through basically email portals to eBay and say, "Hi, this

is the Natick Police.  We're conducting an investigation.  We

have some indication that there's a connection of some kind

between this harassment that's going on in Natick and eBay.

Can you please help us?"  And what that appears to initiate

within eBay, based on our investigation, is an effort to figure

out what's going on, including efforts by eBay investigators to

09:38 10   interview the people who were out in Massachusetts --

THE COURT:  But can I stop you right now.

MR. KOSTO:  Sure.

THE COURT:  So when you say eBay investigators, so

far, these investigators are private-company investigators, not

Morgan Lewis and not the feds?

MR. KOSTO:  Mr. Pirozollo can jump in.  My

understanding is that -- or perhaps Morgan Lewis -- that Morgan

Lewis was not initially retained until about the 30th of

August.  So in this first three or four days, eBay is trying to

09:38 20   respond to a Natick Police Department request for information.

Separately, at about the same time, the Natick Police

Department has reached out to the FBI because of the nature of

what's happening to the victims.

THE COURT:  So when does Natick reach out to the FBI?

MR. KOSTO:  Natick reaches out to the FBI on, I

1    believe it's the 22nd of August, the day of a meeting between

2    one of the coconspirators who's pled guilty, the day that some

3    eBay employees fly out and try to explain to the Natick Police

4    Department what's going on; but actually that meeting is a ruse

5    to cover up the existence --

6              THE COURT:  Are you talking about the defendants or

7    other eBay employees?

8              MR. KOSTO:  Mr. Baugh was out here in Boston, but a

9    retired police officer from Santa Clara, a gentleman named

09:39 10    Brian Gilbert, who's pled guilty and is pending sentencing

11   before Judge Young, flies out with another retired police

12   officer, both eBay employees, and they meet with Natick, at

13   Mr. Baugh's direction, to explain away the harassment or to

14   explain away the surveillance that the Natick Police have

15   connected to eBay.

16             THE COURT:  And so far, the federal government -- I'm

17   just trying to understand the obstruction charges to understand

18   whether or not there was an obstruction.  So is this part of

19   your obstruction charge?

09:40 20             MR. KOSTO:  Absolutely, your Honor.

21             THE COURT:  I'm just trying to understand it because

22   the stalking part, you know, is obviously troubling, but it's

23   straightforward.  I'm trying to understand --

24             MR. KOSTO:  Sure.  So the witness tampering charge,

25   your Honor, is tampering with the eBay witnesses who were

providing information in response to the investigation.  The

investigation doesn't have to be federal.  It has to be a --

THE COURT:  Say it again.

MR. KOSTO:  It does not have to be an active federal

investigation.  In other words, it doesn't have to be the FBI

who's being tampered with.  If it's a potential federal

investigation, because of the nature of the investigation,

what's being investigation, here interstate cyberstalking, and

someone takes a step to act corruptly toward a witness who's

09:40 10  providing information in connection with that investigation,

that's witness tampering, and that's what the indictment

charges.

The indictment also charges the destruction of

documents that would be relevant to the investigation under the

jurisdiction of the FBI.  So while the FBI is involved very

early on, it doesn't really matter.  It's the nature of the

investigation that makes it an obstruction.  Under the

controlling precedent in the First Circuit, if the federal

investigation --

09:41 20  THE COURT:  But what is that case that's the

controlling precedent?

MR. KOSTO:  There are three, your Honor.  I don't have

them in front of me, but I'd be happy to submit them to the

Court afterwards.

THE COURT:  Yes, because to some extent, I'm going to

1    have to decide these issues, whether now or at trial, because

2    if in fact it's relevant to the witness tampering or the

3    obstruction or whatever, there's a very strong argument for

4    producing documents that relate to that, so long as they're not

5    protected by the attorney-client privilege; and then Mr. Fick

6    can make his argument, or the defendants can, on the

7    constitutionality of the attorney-client privilege.  So you're

8    claiming that the witness tampering charge stems back to 8/22?

9             MR. KOSTO:  Well, the witness tampering as to a Natick

09:42 10   police officer that Mr. Baugh lied directly to on the 20th or

11   the 19th.  Mr. Baugh made false statements directly to a Natick

12   Police Department at the Ritz-Carlton Hotel.  That's a direct

13   statement to a --

14            THE COURT:  I don't know anything about this case.

15   This is why I'm holding this hearing.  You never mentioned that

16   before.  So you're saying on 8/19, Baugh makes a false

17   statement to Natick, a Natick PO, and you're saying that's part

18   of witness tampering?

19            MR. KOSTO:  Yes, because the Natick police officer

09:42 20   will be providing information to and in connection with the

21   federal investigation.  The Natick police detective arrives --

22            THE COURT:  But that investigation hasn't happened

23   yet?  You're just saying it's a potential?  Is that how you're

24   explaining it?

25            MR. KOSTO:  That's correct, because of the nature of

1    the subject matter, it's a federal matter.  This is the law

2    that we can get the Court to.

3              THE COURT:  All right.

4              MR. KOSTO:  But there are two obstructions, two

5    witness tamperings.  When the Natick police officer arrives in

6    the lobby of the Ritz-Carlton Hotel in Boston to try to figure

7    out what's going on with the harassment that they potentially

8    connected to a guest at the hotel, Mr. Baugh gets on the phone

9    and makes false statements to that police officer.  That's

09:43 10   witness tampering number one.  When --

11             THE COURT:  So let me just stop.  And what date is

12   that on?  That's 8/19?

13             MR. KOSTO:  8/19, yes.

14             THE COURT:  And have you produced all documents

15   relating to that?

16             MR. KOSTO:  We produced everything short of the Jencks

17   material, your Honor, but we've produced all the Natick Police

18   Department reports in relation to that statement, yes.

19             THE COURT:  All right.

09:43 20            MR. KOSTO:  And then, beginning on or about the 24th,

21   as eBay internally is investigating this harassment that's

22   going on in Natick, in response to the Natick Police Department

23   request for assistance, eBay interviews Mr. Baugh and

24   Mr. Harville as well as many other people --

25             THE COURT:  eBay does or Morgan Lewis does?

1          MR. KOSTO:  eBay.

2          THE COURT:  eBay, what does eBay mean, the --

3          MR. KOSTO:  Two employees of eBay.  One's name is Amir

4     Vonsover -- he's a lawyer -- and one's name is Shannon

5     McCauley, and she is a manager of Employee Relations -- excuse

6     me, not Employee Relations -- a manager within the Legal

7     Department.  I'll defer to Mr. Pirozollo as to whether she's a

8     lawyer.  But they are asking questions of Mr. Baugh and

9     Mr. Harville, among others, and what's charged in the

09:44 10    indictment are the false statements that Mr. Baugh and

11    Mr. Harville make to that individual, Mr. Vonsover, who is

12    responding to a law enforcement request for information.  So

13    the indictment accuses Mr. Baugh and Mr. Harville of tampering

14    with that investigator.  He's a witness to the federal

15    investigation.

16          THE COURT:  I'm obviously going to have to learn a

17    whole lot about this because you're saying lying to a company

18    investigator before the start of a federal investigation is

19    enough to trigger an obstruction.

09:45 20    MR. KOSTO:  The analogous case in the First Circuit,

21    your Honor, is if there is an investigation of prison

22    misconduct, a guard --

23          THE COURT:  You're going to send me those cases.

24          MR. KOSTO:  I will.

25          THE COURT:  It's just a brand-new area for me, and

```
  1    I've never seen it interpreted so expansively, but I will look

  2    into it.

  3              MR. KOSTO:  I will, your Honor.

  4              THE COURT:  I'm assuming you did before you brought

  5    this.  But, in any event, all of this then becomes a focus of

  6    discovery, right?

  7              MR. KOSTO:  Yes, it becomes a focus of discovery, but

  8    Rule 17 subpoenas are not a vehicle for discovery.  Rule 17

  9    subpoenas issue for the obtaining of admissible evidence.

09:45 10         THE COURT:  Yes, but admissible would be if they want

 11    to know whether -- if they want to prove they didn't say

 12    anything wrong, or they didn't say anything material, or they

 13    didn't mislead.  I'm likely to allow a lot of this, let me just

 14    say.  It's the attorney-client piece.  But you're saying one of

 15    these women, Shannon someone, was a lawyer?

 16              MR. KOSTO:  Amir Vonsover is an attorney, yes, your

 17    Honor.

 18              THE COURT:  So is it possible that's protected?

 19              MR. KOSTO:  It is entirely possible.

09:46 20         THE COURT:  We don't know, so that's something --

 21              Mr. Pirozollo, are you the one representing eBay?

 22              MR. PIROZOLLO:  Yes, your Honor.  Yes, your Honor.

 23              THE COURT:  Would you be asserting privilege there?

 24              MR. PIROZOLLO:  Yes, we would, your Honor.

 25              THE COURT:  Okay.  So I'm just trying to understand
```

```
 1    where the pressure points are coming for me to make decisions.
 2           Now, what about with respect to the other person,
 3    Amir?  What was Amir's last name?
 4           MR. PIROZOLLO:  Vonsover, your Honor.  If I could
 5    explain, maybe this will be helpful to the Court.  So
 6    Mr. Vonsover is part of the Legal Department.  He's a lawyer
 7    within eBay, and he was one of the principal people within eBay
 8    who was initially tasked with investigating what was going on
 9    out in Natick.
10           THE COURT:  So are you going to assert likely the
11    privilege with respect to both of those people?
12           MR. PIROZOLLO:  Yes, your Honor.
13           THE COURT:  I just want to understand it.  But is any
14    of the information used from these people going to be part of
15    the obstruction case?
16           MR. FICK:  Your Honor, if I could --
17           THE COURT:  Yes, Mr. Fick, I'm trying to understand
18    the contours of this issue.
19           MR. FICK:  Yes, and your Honor is asking very good
20    questions.  Some of these issues we're going to be teeing up I
21    think in dispositive motions on some of the charges, and the
22    due date for that I think is October 15, so a lot of these
23    issues are going to get fleshed out in that context.
24           As to the subpoena, I guess stepping back for a
25    moment, our position would be, the subpoenas should issue; we
```

1    should meet and confer with eBay and Morgan Lewis to see if

2    there are things that are not controversial; and then we should

3    have orderly briefing of a motion to quash.  I think that's the

4    way you do this.

5        Our position is that, like, in terms of the *Nixon*

6    criteria of relevancy, admissibility, and specificity, what

7    we're talking about here is a private investigation of the very

8    conduct that is at issue in the indictment.  Our view is that

9    to the extent a privilege even applies, it's probably been

09:48 10   waived because Morgan Lewis and eBay have made extensive

11   selective disclosures to the government of material sort of

12   implicating Mr. Baugh and people below him in the company,

13   while sort of leaving out a lot of what we expect was

14   investigation of the people in the C-suite above them that's

15   highly relevant.  And so there are going to be issues of waiver

16   about whether any privilege even obtained, and then the

17   separate question of whether we had a constitutional right to

18   pierce a corporate assertion of privilege as opposed to an

19   individual.

09:48 20       THE COURT:  That all sounds fascinating.  Let me ask

21   you this:  I seem to remember somewhere that even if the

22   government knows certain facts, if you lie to the government on

23   a material fact, it's still considered tampering or obstruction,

24   even if the government already knows the information.

25       MR. FICK:  It could be, though I think a more

1    pertinent question here is Mr. Baugh's intent in speaking in

2    particular to the eBay investigators and intent to mislead

3    somebody when the C-suite already knows the answers to a lot of

4    these questions, for example, so --

5           THE COURT:  I understand.  So is it your contention

6    that the C-suite knew about, indeed authorized, the conduct?

7           MR. FICK:  The extent of specific knowledge of

8    particular acts I think is an interesting question that we need

9    documents about, but there's certainly already, even in the

09:49 10   record that the government has charged, you know, clear

11   evidence that the CEO was basically saying, you know, "These

12   people pose an existential threat to the company.  There's a

13   security risk.  Burn it down, whatever you have to do," lots of

14   language like that.  So, you know, we think there's certainly

15   more --

16          THE COURT:  It's certainly not, at least, a legal

17   excuse for the conduct, even if the CEO blessed it.

18          MR. FICK:  It's true, but that's a bit of a straw man

19   in the sense that, first of all, at least the standard does not

09:50 20   require evidence be exculpatory, only that it be relevant, and

21   what we're really --

22          THE COURT:  No, I understand, I understand --

23          MR. FICK:  -- improbable story.  And there's still a

24   real question of what's Mr. Baugh's intent here ultimately?

25   The cyberstalking statute requires an intent to harass.  The

1    statute has survived, you know, many challenges as to what

2    harassment means, but --

3            THE COURT:  By any definition, this falls in it, so --

4            MR. FICK:  I think the acts could be viewed as

5    harassment certainly, objectively with hindsight, et cetera;

6    but whether that was Mr. Baugh's intent at the time, you know,

7    I think at least a jury is entitled to a full picture of what

8    was going on.

9            THE COURT:  I think the bigger issue is the

09:50 10   obstruction because it's a very broad view of the obstruction

11   and tampering statute.  And so there may be legal defenses, but

12   there also may be factual defenses, and I -- but there also may

13   well be attorney-client issues and waiver issues.  It's a very

14   hard set of issues.  And so let me just say, so I've got the

15   two -- are those two witness tamperings the sum of the

16   obstruction issues?

17           MR. KOSTO:  No.  In addition to witness tampering,

18   lies to the detective and lies to the eBay investigators, there

19   are also destruction --

09:51 20          THE COURT:  The Natick detective?

21           MR. KOSTO:  The Natick detectives and the eBay

22   investigator, Mr. Vonsover.  There are also deletion and

23   alteration of eBay documents relevant to the investigation.

24   Those are charged under 18 U.S.C., Section 1519.  It's the

25   destruction of documents relevant to a matter within the

1   jurisdiction of the FBI.

2        THE COURT:  All right, now, let me just ask you this:

3   So within the jurisdiction of the FBI, so did this happen after

4   the FBI investigation began or before?

5        MR. KOSTO:  It happened both before and after.  The

6   language of the statute refers to a possible or contemplated

7   investigation.  So again here, your Honor, the same issue:  The

8   federal investigation doesn't have to be up and running.  It's

9   the subject matter of the facts of the investigation that

09:52 10  brings the conduct --

11       THE COURT:  Well, I look forward to seeing that, since

12  federal jurisdiction is so broad, and what do you have to know?

13  Do you have to know it's within the confines?  But that's for

14  another day.  Right now I'm just dealing with this.

15       So it sounds as if a lot of the information being

16  sought is relevant and it's not a fishing expedition to the

17  obstruction issues.  And I've never seen -- I've been a judge a

18  long time now, I'm an old lady, and so I've just never seen

19  a -- I'm with Mr. Fick on this; this issue has never arisen

09:52 20  before where a magistrate judge has declined to issue the

21  subpoena, so I'm looking at these kind of issues for the first

22  time myself, ironically.  I mean, I just have never seen this.

23       When you say sua sponte, Mr. Fick, I mean, she's got

24  to allow it.  There's almost always going to be sua sponte

25  because most of the time I imagine it's ex parte, so --

1          MR. FICK:  And I think I just -- right, yes.

2          THE COURT:  But, in any event, I mean, that seems to

3    be sort of like a putdown, but it really realistically almost

4    always happens that way, but I've just never seen an appeal of

5    one.  It just has never come up to me before.  So it's fully

6    squarely in front of me.  I don't see why it's a fishing

7    expedition.  Some of them go directly to the obstruction

8    counts.

9          MR. KOSTO:  Your Honor, if I may.

09:53 10          THE COURT:  Mr. Kosto and then Mr. Pirozollo.  Go

11    ahead.

12          MR. KOSTO:  Sure.  Focusing the Court back to the

13    *Nixon* standard, which understanding there's an issue around

14    privilege, if the Court gets there, I just want to touch

15    briefly on the idea that let's say there is a set of notes that

16    Mr. Vonsover took in response to what Mr. Baugh said to him

17    about why he was out in Natick, and the evidence will be that

18    Mr. Baugh said that people in Natick were at a cyber conference

19    of some sort, not that they were out there following the

09:54 20    victims around, and made false statements about why these eBay

21    employees were in Boston.  Let's say there's a set of notes

22    that Mr. Vonsover took, and let's say for a second even that

23    they're not covered by the work product.  How are those notes

24    admissible?  How are they the proper subject of a Rule 17

25    subpoena?  And one could say the same thing of --

THE COURT:  I'm not going to even do this in the
abstract.  But the reality is, if in fact he takes notes and
Mr. Baugh said, "This is what I did," and tells them exactly
what he did, and says, "And you tell the CEO that," and
everyone knows that's what he did, it is not clear that's an
obstruction.  So it could be exculpatory.

Well, let me ask it this way:  Have you personally
reviewed all the notes that were taken by either the legal team
or by Morgan Lewis?

09:55   MR. KOSTO:  The government has none of the notes that
were taken by the legal team or Morgan Lewis.

THE COURT:  Did they disclose any of them to you?

MR. KOSTO:  We didn't ask for them.  We interviewed
Mr. Vonsover.

THE COURT:  Well, did he have his notes in front of
him?  In other words, this is a serious charge, these
obstructions, and it's a very aggressive use of the statute.
So I am going to allow the subpoenas to issue.  I'm going to
allow the appeal, and it's going to be subject to the motion to
09:55 quash, which will be filed together with attorney-client
issues, and I'm assuming we'll have full discussions of waiver.

There is a little bit to what Judge Bowler was saying
with respect to the fishing expedition because it was all
emails with eight people.  I would suggest you confer in
narrowing that to the time period of the alleged conspiracy.

1    And so what's it?  It must be like a one-year period, eight

2    months, even less?

3            MR. FICK:  Your Honor, just to be clear, there were

4    eight people, but there were only a handful of subject matters.

5            THE COURT:  Yes, but without a time limit, and perhaps

6    what you can do is limit it to the issue of these Natick people

7    during the period of the conspiracy.  But, in any event -- and

8    then we'll -- all right, so --

9            MR. PIROZOLLO:  Your Honor, this is Jack Pirozzolo.

09:56 10   Can I be heard briefly on this issue?

11           THE COURT:  Yes, yes.  I'm sorry, I did stop you from

12   talking.  Yes, go ahead.

13           MR. PIROZOLLO:  Yes, thank you.  I think mostly my

14   comments are about just making sure we're clear about what

15   we'll move forward with regard to briefing.  I think it's

16   appropriate under the circumstances that all issues related to

17   a potential motion to quash, including on issues related to

18   whether this meets the *Nixon* standard, should be allowed; eBay

19   should be entitled to brief that issue as well.  I think that's

09:56 20   implicit in the requirement of the meet-and-confer that I think

21   you're contemplating that we do --

22           THE COURT:  Yes, yes.

23           MR. PIROZOLLO:  -- with, among other things, the

24   emails that are being requested.  I just want it to be clear

25   that eBay is entitled to challenge it in all respects

```
 1    appropriate under the law, not simply on the question of
 2    privilege.  Obviously the privilege issues are going to be
 3    front and center, but there are --
 4              THE COURT:  By the way, I include in that work
 5    product.
 6              MR. PIROZOLLO:  Yes, and work product, yes, of course,
 7    all of the privileges.  And obviously those are going to be
 8    front and center on certainly the first several requests, the
 9    first four, at least, and so -- but we do intend and we think
10    it's appropriate for eBay to be able to be heard on whether the
11    Nixon standard is met here as well.
12              THE COURT:  I didn't hear the end of it.  Just it was
13    the audio.
14              MR. PIROZOLLO:  We think it should be appropriate that
15    we should be heard on whether this meets the Nixon standard as
16    well, not just the privilege issue.
17              THE COURT:  Well, I don't remember whether you have
18    standing to talk about relevance or whatever or whether that's
19    the government, I don't know, but I have no problems with
20    anyone addressing the Nixon standard; but I do think it's
21    complex enough and important enough to have a full briefing on
22    it.
23              So let me just sum up what I've ruled so far, which is
24    I allow the unopposed joint motion of eBay and Morgan Lewis to
25    intervene, and I want to thank the attorneys for organizing
```

 1    that in advance so it wasn't -- you know, talking to everyone

 2    and conferring on that.  That's allowed.

 3         I allow the appeal that was filed by the defendants,

 4    and I overturn the order just quashing those subpoenas.  Those

 5    should be served.

 6         How many days after -- since you know what they look

 7    like, and I'm sure you have a squadron of associates already

 8    working on this, how long after the subpoenas are served do you

 9    want to move to quash?

09:58 10        MR. PIROZOLLO:  So perhaps we could have a schedule

11    for a meet-and-confer first, your Honor.

12             THE COURT:  Yes.

13             MR. PIROZOLLO:  And then following the

14    meet-and-confer -- let's say maybe we meet and confer the end of

15    next week, so one week -- and then following the meet-and-confer,

16    we move to quash within two weeks?  Would that be reasonable?

17             THE COURT:  It is, it is.  But just so I can get this

18    done, it's now October 1, so we'll have the meet-and-confer by

19    the 15th?  Does that seem appropriate for everybody?  And then

09:59 20   by October 30, so you can go trick or treat, you'll get in the

21    motion to quash with the briefings on the attorney-client.

22             THE CLERK:  Motion to quash when?

23             THE COURT:  And then ops, Mr. Fick?  You know, I keep

24    saying Mr. Fick.  It's Mr. Gelb too, right?

25             MR. GELB:  Right, your Honor.  Good afternoon.

```
 1              THE COURT:  I know Mr. Fick, and I don't know you as
 2    well.  So if the motion to quash comes in on the 30th --
 3              MR. FICK:  Two weeks I think is --
 4              THE COURT:  November, let's say the 12th or the 19th?
 5    What do you want?
 6              MR. FICK:  The 19th is fine.
 7              THE COURT:  The 19th?  And then we'll set something.
 8    There may be an opportunity for a reply, and set something up,
 9    Mem, for early December, let's say --
10              THE CLERK:  Okay, Judge, hold on.  Let me look at
11    December.
12              THE COURT:  A full-blown hearing.  Now, I may end up
13    looking at these in camera, so I would just make sure that we
14    organize.  That's one possible remedy that I have.
15              THE CLERK:  Judge, I'm looking at December.  How many
16    hours?  Is it going to be a full-blown hearing or --
17              THE COURT:  Yes.  Well, it's at least an hour.
18              THE CLERK:  Okay.
19              THE COURT:  Perhaps two hours.  I would block two
20    because there are so many people involved.
21              THE CLERK:  Okay.  Then we can do -- I don't know if
22    we're going to be on trial, but we could do Thursday,
23    December 9 at 9:30.
24              THE COURT:  And just so that I can really get through
25    the waiver issue, Mr. Kosto, it will be hard for me to
```

10:00 (line 10)
10:01 (line 20)

1   understand what exactly the government has produced and what

2   information it got.  When you say you haven't produced the

3   302s, that might make it hard for anyone to deal with the

4   waiver issue.

5       MR. GELB:  Your Honor, if I may jump in on that issue

6   logistically.

7       THE COURT:  Yes.

8       MR. GELB:  So I believe the Court still has under

9   advisement Mr. Harville's motion to compel which focuses on the

10:01 10  302s.  Judge Bowler had taken that under advisement.

11      THE COURT:  Yes, I think we found out that by accident

12  she sent it back to me, and I think that motion is still

13  pending in front of her.  I don't know if she's taken the case

14  back again physically.

15      THE CLERK:  Judge, she did, she took the case back and

16  said she'll have an opinion in the week or two on that motion

17  to compel.

18      MR. GELB:  Okay, so the second question with respect

19  to that, your Honor, is, even though this is Mr. Baugh's

10:02 20  Rule 17 motion, we would just respectfully ask to be able to

21  join in on the briefing, so much as the interests are the same

22  with respect to Attorney Fick's motion on these issues because

23  clearly, as the Court has acknowledged, the attorney-client

24  issues, this is something that was inevitably going to come up

25  at some point.  I'd just like to be able to confer with

1    Mr. Harville --

2          THE COURT:  Yes.  And this whole thing of internal

3    investigations is a cottage industry among the law firms, so

4    there must be case law on this, the extent to which when you're

5    doing an internal investigation, the extent to which it's

6    protected by attorney-client because it's not technically --

7    these employees who were being interviewed aren't technically

8    doing it to get advice of the attorneys, although obviously

9    eBay is doing it to get advice of the attorneys.  I mean, are

10:03 10    there big cases on this that have gone to the circuits?

11          MR. KOSTO:  *Upjohn v. United States*, among others,

12    your Honor.

13          THE COURT:  Well, that's the golden-oldie one, right?

14          MR. KOSTO:  It still works.

15          THE COURT:  It still works?  So I know this is what

16    the companies are doing now to protect themselves, is getting

17    these internal investigations, but I'm not sure what I need to

18    know in order to make the ruling on whether it qualifies.  So

19    I'm sure Morgan Lewis has that at its fingerprints, so I

10:03 20    think --

21          MR. GELB:  Your Honor -- I'm sorry to interrupt the

22    Court, your Honor.  To the extent, and not to engage in

23    conjecture, but I'm not quite sure whether or not any content

24    of the 302s, whether or not that's compelled to be produced

25    would inform the question on the Rule 17 issue as well, so I'm

1    just throwing that out there, your Honor.

2         THE COURT:  Maybe.  I don't know why the government --

3    usually, I mean -- are you worried about releasing them?  Is

4    that it?

5         MR. KOSTO:  Your Honor, we've taken the position in

6    front of Judge Bowler and we've communicated with counsel that

7    we ordinarily do turn over Jencks in advance of trial, and that

8    we'll work with them to find a date that won't interrupt the

9    ordinary preparation for trial, but we have not disclosed the

10:04 10   302s of our cooperators and witnesses as yet.

11        THE COURT:  It may well inform my decision with

12   respect to, well, all the *Nixon* factors really, not to mention

13   waiver.

14        MR. KOSTO:  Well, that would be Mr. Vonsover's 302,

15   which is the only one we have, so we'll discuss with the other

16   parties that particular subpoena, but we don't understand the

17   issue of early disclosure of all 302s in the investigation to

18   be on the table.

19        THE COURT:  Well, maybe not.  I'm not saying that.

10:05 20   I'm just saying that on the issue of waiver, what it is that

21   eBay told you may be quite relevant to not only whether they

22   did lie but also whether or not it was waived, so --

23        MR. KOSTO:  I mean, that's a fair point, your Honor,

24   but in our view, it would distinguish between that and, say,

25   the entire internal investigation and all of its written

1    documents.  You know, those are two very different beasts.

2            THE COURT:  Sure.

3            MR. FICK:  Your Honor, just on the 302 issue, you

4    know, it's a bit of a -- in terms of orderly and efficient

5    trial preparation, my experience has been, usually the

6    government produces 302s right away.  They hold the grand jury

7    until 21 days before trial as Jencks.  I mean, I guess, if they

8    really want to be aggressive, they can hold the 302s back, but

9    it just slows everything down not to have them, and so I --

10:06 10           THE COURT:  I couldn't agree with you more, and most

11    prosecutors have been doing the open-book approach, so I don't

12    know why this is taking so long.  Maybe it's just the nature of

13    the kinds of harassment that happened here.  But particularly

14    with respect to the 302 of eBay employees, I don't understand

15    why it's not being disclosed right away.  But I'm going to do

16    this in the orderly way, Judge Bowler will rule on it, and I

17    think we have a way of approaching it right now.  And I may

18    require that they be turned over if I can't decide the

19    attorney-client issues.  Really what makes this harder is the

10:06 20    obstruction issues because you want to know exactly what it is

21    he told Mr. Vonsover, what did he say.  If there's an

22    obstruction, that's, like, critical, right, if you're expanding

23    it to him?  Unless you want to drop that because these weren't

24    statements to FBI agents.

25            MR. KOSTO:  The case law that I suspect we'll be

1    getting into on what I anticipate will be a motion to dismiss

2    will make clear that the statement need not be to a federal

3    officer, or even to a law enforcement officer, to qualify as

4    witness-tampering behavior.

5         THE COURT:  Maybe not, but then you've got to disclose

6    the statements to him.  You've got to disclose his notes and

7    the statements to him.  I'm just saying, you can't have it both

8    ways.  So I don't know this body of law.  I do know some --

9    I've never had it applied so aggressively in the past.  I've

10:07 10    always had obstructions that dealt with an actual federal agent

11   or a federal officer.  So maybe you're right; maybe some courts

12   have done that.  I am simply saying that if you do take that

13   aggressive position on the law, you may have to produce more,

14   so --

15        MR. KOSTO:  We respectfully suggest it's not an

16   aggressive position within the First Circuit authority.

17   We'll --

18        THE COURT:  It may not be.  It may not be.  So you say

19   you have a case where someone lied to a company investigator

10:08 20    before the start of a federal investigation?

21        MR. KOSTO:  Specifically a prison investigator, your

22   Honor, but a private prison investigator --

23        THE COURT:  I don't know.

24        MR. KOSTO:  -- who then testified as a witness in the

25   federal proceeding, and that was held to be obstruction, yes.

1          THE COURT:  Before the federal investigation started?

2          MR. KOSTO:  Yes.

3          THE COURT:  Well, okay, maybe.

4          MR. KOSTO:  But we'll get it to you.

5          THE COURT:  We'll see.  You don't remember the name of

6     the case right now, do you?

7          MR. KOSTO:  I'll have to pull it up, your Honor.  I

8     can submit it immediately after the hearing so the Court has a

9     chance to look it over, but I suspect it will be part of the

10:08 10   briefing of the parties.

11         THE COURT:  I'm sure it will be.

12         MR. KOSTO:  I meant to mention, just for context sake,

13    your Honor, there's a briefing schedule that Judge Bowler set

14    on what I believe will be motions to suppress and motions to

15    dismiss.  So Mr. Fick and Mr. Gelb and colleagues are filing

16    those on the 14th of October; we'll be replying by the end of

17    October.  So there will also be, I suspect, some teed-up

18    motions on -- and I defer to them about what specifically they

19    are -- but on motions to dismiss and motions to suppress.  It

10:09 20   probably will be too much to handle in an hour's worth of work,

21    but those are coming as well.

22         THE COURT:  Well, all right.  Well, so this will be a

23    heavily litigated case, and I look forward to interesting

24    issues here.  And I take it there's one other case in front of

25    Judge Young, and are there other cases coming that are in front

1    of other judges right now?

2        MR. KOSTO:  Judge Burroughs sentenced one of the

3    participants, a retired police officer named Phil Cooke, to

4    18 months in custody following his guilty plea.  There are four

5    defendants in front of Judge Young, each of whom has pled

6    guilty.  As to those four, three are expected to testify as

7    cooperating witnesses at trial, and one is pending sentencing,

8    so seven charges overall, five pleas, and then Mr. Baugh and

9    Mr. Harville.

10:10 10       THE COURT:  And did they -- I'm sorry, I haven't been

11   familiar with it -- did they involve obstruction charges, or

12   are they just the stalking and harassing?

13       MR. KOSTO:  They pled guilty to conspiracies to harass

14   and to obstruct, yes, your Honor, to witness tampering.

15       THE COURT:  Okay, so that would be very useful for me

16   to find out.  Are they all in front of Judge Bowler?

17       MR. KOSTO:  Those cases are no longer in front of

18   Judge Bowler.  They're pending sentencing before Judge Young as

19   to --

10:10 20       THE COURT:  Were 302s produced for all of those?

21       MR. KOSTO:  In those cases?  No, your Honor.

22       THE COURT:  All right, so it's not part of a -- it's

23   not something yet that's seen the light of day.

24       MR. KOSTO:  Those were all resolved on informations.

25       THE COURT:  I see, I see.  Okay, all right, useful to

1    know.

2          Okay, I think there's nothing else that we can resolve

3    right now, and I look forward to some very interesting legal

4    issues and briefing.  Thank you.

5          MR. KOSTO:  Thank you, your Honor.

6          MR. FICK:  Thank you, your Honor.

7          MR. PIROZOLLO:  Thank you, your Honor.

8          (Adjourned, 10:11 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3

   UNITED STATES DISTRICT COURT )
4  DISTRICT OF MASSACHUSETTS    ) ss.
   CITY OF BOSTON               )
5

6

7          I, Lee A. Marzilli, Official Federal Court Reporter,

8  do hereby certify that the foregoing transcript, Pages 1

9  through 31 inclusive, was recorded by me stenographically at

10 the time and place aforesaid in Criminal No. 20-10263-PBS,

11 United States of America v. Jim Baugh and David Harville, and

12 thereafter by me reduced to typewriting and is a true and

13 accurate record of the proceedings.

14         Dated this 2nd day of December, 2021.

15

16

17

18

19

20         /s/ Lee A. Marzilli
   _____
21 LEE A. MARZILLI, CRR
   OFFICIAL COURT REPORTER

22

23

24

25