# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

vs.

JIM BAUGH, et al.,

      Defendants.

Criminal No. 20-CR-10263-PBS

HEARING SCHEDULED FOR:
January 28, 2022

<u>**MEMORANDUM IN SUPPORT OF INTERVENOR EBAY INC.'S MOTION TO QUASH RULE 17(C) SUBPOENAS ISSUED TO EBAY INC. AND MORGAN, LEWIS & BOCKIUS LLP**</u>

Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State St., 36th Floor
Boston, MA 02109
Tel. (617) 223-0300
jpirozzolo@sidley.com
kalessi@sidley.com
*Counsel for eBay Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.    The Pending Charges ........................................................................... 2

    B.    eBay's Investigation and Cooperation with the Government ............................ 4

    C.    The Rule 17 Subpoena ........................................................................ 7

ARGUMENT ................................................................................................................. 10

  I.    The Requested Documents Are Protected from Discovery by the Attorney-Client
       Privilege and Work Product Doctrine ................................................................. 10

    A.    The Requested Documents Are Privileged and Work Product Protected ............... 10

    B.    Supreme Court Precedent Forecloses Baugh's Constitutional Claim ..................... 11

    C.    eBay's Disclosures Did Not Waive Privilege Over the Documents in the
       Outstanding Requests ........................................................................ 12

  II.    The Outstanding Requests Do Not Meet the *Nixon* Standard ............................... 15

    A.    Relevant Legal Standard ....................................................................... 16

    B.    The Outstanding Requests ..................................................................... 17

        1.    Request 1: Final Reports ............................................................... 17

        2.    Request 2: Board Communications .................................................... 18

        3.    Request 4: Interview Memoranda ..................................................... 18

        4.    Request 6: Emails from January through September 2019 ........................ 19

CONCLUSION .............................................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bacchi v. Mass. Mut. Life Ins. Co.*,
  110 F. Supp. 3d 278 (D. Mass. 2015) ....................................................................................11

*Golden Trade, S.r.L. v. Lee Apparel Co.*,
  1992 WL 367070 (S.D.N.Y. Nov. 20, 1992) ..........................................................................11

*Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  293 F.R.D. 244 (D. Mass. 2013) ............................................................................................15

*In re Seagate Tech., LLC*,
  497 F.3d 1360 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs.,*
  *Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016) ................................................................15

*SEC v. Present*,
  2015 WL 9294164 (D. Mass. Dec. 21, 2015) ........................................................................12

*Swidler & Berlin v. United States*,
  524 U.S. 399 (1998)........................................................................................................2, 11, 12

*United States v. Altvater*,
  954 F.3d 45 (1st Cir. 2020)......................................................................................................13

*United States v. Bradford*,
  806 F.3d 1151 (8th Cir. 2015) ................................................................................................20

*United States v. Cuthbertson*,
  630 F.2d 139 (3d Cir. 1980).....................................................................................................16

*United States v. Gikas*,
  112 F.R.D. 198 (D. Mass. 1986).................................................................................16, 17, 18

*United States v. Henry*,
  482 F.3d 27 (1st Cir. 2007)......................................................................................................16

*United States v. Murray*,
  2019 WL 1993785 (D. Mass. May 16, 2019) ........................................................................20

*United States v. Nixon*,
  418 U.S. 683 (1974).............................................................................................................2, 16

*United States v. Rogers*,
  2012 WL 2273939 (E.D. Mich. June 18, 2012)......................................................................17

ii

*United States v. RW Pro. Leasing Servs. Corp.*,
   228 F.R.D. 158 (E.D.N.Y. 2005) ..................................................................................16, 19

*United States v. Shinderman*,
   232 F.R.D. 147 (D. Me. 2005) ......................................................................................16, 19

*United States v. Stevenson*,
   727 F.3d 826 (8th Cir. 2013) .............................................................................................17

*United States v. Treacy*,
   2009 WL 812033 (S.D.N.Y. Mar. 24, 2009) ................................................................13, 14

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981) ...........................................................................................................11

**Rules**

Fed. R. Evid. 106 ..............................................................................................................12, 13

Fed. R. Evid. 502 ....................................................................................................................12

Fed. R. Evid. 502(a) advisory committee's note ............................................................12, 13, 15

**INTRODUCTION**

Defendant Jim Baugh, the former head of security for eBay Inc., faces nine criminal charges arising from allegations that he conspired to stalk, harass, and intimidate a Massachusetts couple who run an ecommerce newsletter that reports on eBay and then tried to cover his tracks by misleading investigators and destroying evidence. On October 1, 2021, Baugh issued a subpoena to eBay with six separate document requests, including several that explicitly seek privileged communications and records involving eBay's in-house and outside counsel. Baugh issued a similar subpoena directly to eBay's outside counsel, Morgan, Lewis & Bockius LLP ("Morgan Lewis"). During an extensive meet and confer process, eBay and Morgan Lewis produced privilege logs demonstrating that the vast majority of documents responsive to Baugh's subpoenas are privileged and/or protected from disclosure under the work product doctrine.[1] Although the parties were able to reach agreement regarding two requests, four requests remain outstanding (the "Outstanding Requests"). eBay and Morgan Lewis have attempted to reach a reasonable compromise over the Outstanding Requests, but Baugh has rejected those efforts. eBay now seeks to quash the Outstanding Requests on two basic grounds.[2]

First, the documents Baugh seeks in the Outstanding Requests consist predominantly of privileged materials regarding eBay's and Morgan Lewis's investigations of the alleged harassment conspiracy, including privileged materials communicated to the eBay Board. During the meet and confer process, Baugh has not contested the fact that the documents are privileged.

---

[1] Unless otherwise noted, this memorandum refers to the attorney-client privilege and work product doctrine collectively as the "privilege," and refers to materials protected by both these doctrines as "privileged" materials.

[2] eBay seeks to quash Baugh's subpoenas to both eBay and Morgan Lewis. Morgan Lewis is also filing a separate motion to quash the subpoena it received, which incorporates by reference the arguments set forth in this memorandum that are applicable to that subpoena.

Indeed, during the now several weeks of discussions, he has not at any time challenged the assertions of privilege as to any of the documents listed on the privilege logs. Instead, Baugh has taken the position that eBay's privilege must yield entirely to his client's constitutional trial rights. He has also suggested, albeit with little or no specificity, that eBay somehow waived its privilege when it provided certain information it had gathered during its internal investigation to the government. As discussed in more detail below, Baugh is wrong on both counts. The Supreme Court's decision in *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), forecloses Baugh's constitutional argument, and eBay's cooperation with the government by providing factual information derived from its own internal investigation did not trigger any subject matter waiver, let alone the unbounded waiver of privilege Baugh now appears to assert.

Second, the Outstanding Requests run afoul of *United States v. Nixon*, 418 U.S. 683 (1974). As discussed in more detail below, *Nixon* and its progeny expressly limit the range of documents appropriately requested under Rule 17(c), which is *not* a general rule of discovery. Instead, Rule 17(c) permits subpoenas only under circumstances in which the defendant can make the required showings of specificity, relevance, *and* admissibility. At no time during the multiple meet and confer sessions has Baugh articulated any bases for the Outstanding Requests that meet the *Nixon* standard. Rather, Baugh's basis for pursuing the Outstanding Requests is the mere hope—common to all fishing expeditions—that the subpoenaed documents might turn up something helpful. Such a position is simply insufficient under *Nixon* and provides no basis for compelling eBay or Morgan Lewis to produce the documents that currently remain in dispute.

## BACKGROUND

### A.    The Pending Charges

On November 3, 2020, a grand jury indicted Baugh for conspiracy to commit stalking through travel and facilities of interstate commerce, in violation of 18 U.S.C. § 371 (Count I);

2

stalking through interstate travel, in violation of 18 U.S.C. §§ 2261A(1)(B) and 2 (Counts II and III); stalking through facilities of interstate commerce, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2 (Counts VI and VII); witness tampering, in violation of 18 U.S.C. §§ 1512(b)(3) and 2 (Counts X and XI); and destruction, alteration, and falsification of records in a federal investigation, in violation of 18 U.S.C. §§ 1519 and 2 (Counts XIII and XIV). *See* Dkt. 33.

As alleged in the indictment, the charges against Baugh arise from events that took place from approximately August 5, 2019 to approximately September 6, 2019. *See id.* ¶ 11. During that month, Baugh and six subordinates at eBay allegedly stalked, harassed, and intimidated Ina and David Steiner, a married couple residing in Natick, Massachusetts who run an ecommerce newsletter, EcommerceBytes, that had published articles critical of eBay. *See id.* ¶¶ 8-11.[3] The alleged purposes of the harassment campaign "were … to distract the Victims from publishing the Newsletter, to alter the Newsletter's coverage of eBay, and to gather information that [Baugh] and [his] co-conspirators could use to discredit the Victims and the Newsletter." *Id.* ¶ 12. Counts X, XI, XII, and XIV arise from allegations that, once Baugh learned that the Natick police and eBay were investigating his team's conduct, he attempted to mislead them about the team's actions and to destroy evidence. *See id.* ¶ 13. Count XI, in particular, charges Baugh with lying to an eBay investigator in late-August 2019 about his and his team's involvement in the Natick events. *See id.* ¶¶ 16.jjj, 28. That investigator has since been identified as Amir Vonsover, an in-house lawyer at eBay who interviewed Baugh and others as part of eBay's internal investigation into the Natick events. *See* Tr. of 10/1/2021 Hr'g at 11:3-15.

---

[3] The six subordinates are David Harville (Baugh's co-defendant here), Stephanie Popp, Stephanie Stockwell, Veronica Zea, Brian Gilbert, and Philip Cooke. *See* Dkt. 33 ¶¶ 2-7. Popp, Stockwell, Zea, Gilbert, and Cooke all have pled guilty to conspiracy charges arising from their participation in the harassment campaign and subsequent cover-up. *See United States v. Gilbert et al.*, No. 1:20-cr-10098 (D. Mass.); *United States v. Cooke*, No. 1:20-cr-10126 (D. Mass.).

B.      **eBay's Investigation and Cooperation with the Government**

Members of eBay's compliance and legal team, including Mr. Vonsover, first learned of the alleged harassment of the Steiners on or about August 20, 2019, when the Natick Police, which was investigating the harassment, contacted eBay for assistance. On that day, Mr. Vonsover assumed principal responsibility within eBay to investigate the Natick events.

Within days of the call from the Natick Police, Mr. Vonsover, along with eBay paralegal Shannon Macauley, interviewed several eBay and eBay-associated personnel about the harassment campaign. Declaration of Andrew C. Phelan ("Phelan Decl.") ¶¶ 7-8. In addition to Baugh, Mr. Vonsover interviewed Baugh's co-defendant, David Harville. *See id.* ¶¶ 8, 15; Dkt. 33 ¶ 16.iii-kkk, mmm. He also interviewed other individuals who have since been charged and pled guilty to various crimes related to the harassment of the Steiners, including Brian Gilbert, Stephanie Popp, Stephanie Stockwell and Veronica Zea, *see* Phelan Decl. ¶¶ 8, 15, as well as Steven Wymer, eBay's then-Chief Communications Officer, who has not been charged, *id.* ¶ 8.

Approximately a week after the Natick police contacted eBay, on or about August 28, 2019, eBay retained Morgan Lewis as outside counsel to conduct a further investigation. Phelan Decl. ¶ 3. Andrew Phelan, then a partner at Morgan Lewis, led those efforts. *Id.* ¶ 5. The purpose of Morgan Lewis's investigation was to collect relevant facts regarding the alleged harassment of the Steiners in order to provide legal advice to eBay. *Id.* ¶ 6. Documents and communications created during the course of the investigation were prepared not only to provide legal advice, but also in anticipation of potential litigation. *Id.*

During its investigation, Morgan Lewis worked in close coordination with eBay's in-house legal team, including Mr. Vonsover. *Id.* ¶ 7. As part of the investigation, Morgan Lewis collected relevant documents and conducted interviews of individuals at eBay. *Id.* ¶ 9. Morgan Lewis also reviewed information that Mr. Vonsover had collected as part of eBay's initial

investigation. *Id.* eBay's and Morgan Lewis's investigations were intended to be subject in their

entirety to eBay's attorney-client privilege, and documents created in the course of the

investigations were intended to be subject to work product protection. *Id.* ¶ 10.

In parallel with its investigation, eBay immediately began cooperating with law

enforcement, including the FBI and U.S. Attorney's Office for the District of Massachusetts (the

"government"). Beginning in September 2019 and continuing through the present, Mr. Phelan

has served as eBay's lead outside counsel in communicating with the government.[4] *Id.* ¶ 11.

Consistent with eBay's full cooperation in the matter, Mr. Phelan has provided to the

government factual information that eBay had learned during the course of eBay's and Morgan

Lewis's investigations. *Id.* ¶ 12. He has also provided information in response to specific

requests the government made of eBay. *Id.* ¶ 11.

The information Mr. Phelan has provided includes documents collected during the

investigations, such as emails and text messages by and among Baugh, Harville, and other eBay

personnel. *Id.* ¶ 12. He has also provided information showing that certain individuals, including

Baugh, destroyed or otherwise deleted evidence of their harassment of the Steiners and of their

communications and activities at and around the time the harassment occurred. *Id.* In total, eBay

has produced over 14,000 pages of records to the government. *See* Dkt. 88 at 4.

Mr. Phelan also informed the government of statements Baugh, Harville, and Wymer

made to Mr. Vonsover during eBay's initial investigation in August 2019. Phelan Decl. ¶ 13. Mr.

Phelan did not provide copies of any memoranda or notes of those interviews. *Id.* Rather, on or

about October 13 and 16, 2020, Mr. Phelan provided oral reports of the statements given to Mr.

---

[4] Mr. Phelan left Morgan Lewis in January 2020 but has continued to have primary responsibility
for the investigation and to serve as eBay's principal contact with the government.

Vonsover. *Id.* Mr. Phelan did not discuss with the government the substance of any other interviews conducted during the investigations. *Id.*

With regard to Baugh, Mr. Phelan reported to the government the fact that Baugh's attorney had told Mr. Phelan in early September 2019 that Baugh had lied to Mr. Vonsover. *Id.* ¶ 14. Mr. Phelan further reported that Baugh's attorney had added that Baugh had confirmed for the attorney that Devin Wenig, eBay's CEO at the time of the harassment campaign, had never told Baugh to do anything illegal or improper with regard to the Steiners. *Id.*

All information that Mr. Phelan provided to the government was subject to the express understanding that eBay was not waiving any applicable privilege. *Id.* ¶ 17. The prosecutors responsible for the government's investigation stated to Mr. Phelan multiple times that they were seeking only non-privileged facts regarding the harassment of the Steiners. *Id.* Those same attorneys further stated that the government was not asking eBay to waive privilege. *Id.*

On February 23, 2021, eBay made Mr. Vonsover available to the government for an interview via Zoom. *Id.* ¶ 15. Mr. Phelan also attended. *Id.* At the outset of the interview, the government made clear that it was not asking Mr. Vonsover or eBay to waive privilege and that it was not seeking information subject to those protections. *Id.* During the interview, Mr. Vonsover related statements that Baugh and Harville had made to him during the investigation in August 2019, as well as some statements made in telephonic interviews of other members of Baugh's team on the same days as the Harville and Baugh interviews. *Id.* These included statements by Brian Gilbert, Scott Fitzgerald (not charged), Stephanie Popp, Veronica Zea, and Stephanie Stockwell. *Id.* The government did not ask about the statements made by these other individuals in any detail; by that point in time, all the eBay employees who had been criminally charged in connection with the harassment of the Steiners had pleaded guilty, except for Baugh

and Harville, so the focus of the interview was on them and the accounts they gave of the events

involving the Steiners, including efforts to cover up those events. *Id.* The government did not ask

about any statements by Wenig, Wymer, or Wendy Jones (Baugh's direct supervisor). *Id.*

Mr. Phelan and Morgan Lewis did not prepare any "final report" of the investigation for

eBay. *Id.* ¶ 18. Mr. Phelan made oral reports to the company without any handouts, PowerPoints

or other writings, and in certain instances prepared one- or two-page updates for the company on

the current status of the matter. *Id.*

### C.   The Rule 17 Subpoena

On August 24, 2021, Baugh moved under Federal Rule of Criminal Procedure 17(c) to

issue document subpoenas to eBay and Morgan Lewis. Dkt. 79. The eBay subpoena

("Subpoena") seeks the following categories of documents:

> (1) Final report(s) from the eBay and/or Morgan Lewis internal investigation(s) of Baugh and/or activities by Baugh and/or other eBay officers, employees, or agents in relation to EcommerceBytes and/or David and/or Ina Steiner;

> (2) Presentation(s) concerning Baugh and/or activities by Baugh and/or other eBay officers, employees, or agents in relation to EcommerceBytes and/or David and/or Ina Steiner made by eBay employees, in-house counsel, or Morgan Lewis to the Audit Committee or the Board (along with the supporting materials that eBay employees, in-house counsel, or Morgan Lewis provided and any minutes of those meetings);

> (3) Memoranda, recordings, and notes of interviews with Baugh conducted by eBay employees, in-house counsel, or Morgan Lewis;

> (4) Memoranda, recordings, and notes of interviews with individuals who spoke to eBay employees, in-house counsel, or Morgan Lewis about Baugh and/or activities by Baugh and/or other eBay officers, employees, or agents in relation to EcommerceBytes and/or David and/or Ina Steiner;

> (5) Forensic analyses of alleged falsification or destruction of evidence by Baugh and/or other eBay employees or contractors;

> (6) Communications from 2017 through 2019 between or among any of Devin Wenig, Cyndy [sic] Lam, Scott Schenkel, Steve Wymer, Wendy Jones, Marie

> Huber, Molly Finn, Amir Vonsover, Aaron Johnson, Russell Phimister, and/or
> Baugh concerning any of the following:
>> EcommerceBytes
>> David Steiner
>> Ina Steiner
>> @FidoMaster1 Twitter account
>> @unsuckebay Twitter account
>> Elliott Management
>> Jessie [sic] Cohn

Declaration of Jack W. Pirozzolo ("Pirozzolo Decl.") Ex. 1.[5] The Morgan Lewis subpoena includes the first five requests but not the sixth. *Id.* Ex. 2.

On August 27, 2021, Magistrate Judge Bowler denied Baugh's motion for failing to comply with the standards for Rule 17(c) subpoenas set by the Supreme Court in *Nixon*. Dkt. 81. On October 1, this Court reversed that order and allowed the subpoenas to issue. *See* Dkt. 108. In doing so, the Court anticipated that eBay and Morgan Lewis would challenge the subpoenas on privilege and *Nixon* grounds, and set a briefing schedule for motions to quash. *See id.* Baugh issued his subpoenas to eBay and Morgan Lewis that afternoon. *See* Pirozzolo Decl. Exs 1-2.

Since then, the parties have conferred multiple times to narrow areas of disagreement. *See id.* Exs. 3-5, 17. With respect to timeframes for the requests, the parties agreed to limit the scope of Request 2 and 4 to records from 2019, and Request 6 to communications from January to September 2019.[6] To narrow the areas of disagreement, the parties also agreed that eBay and

---

[5] With respect to Request 6, during the designated timeframe: Wenig was eBay's CEO; Lam was Wenig's chief of staff; Schenkel was eBay's chief financial officer (and, after Wenig's resignation in September 2019, interim CEO); Wymer was eBay's chief communications officer; Jones was eBay's Senior Vice President for Global Operations; Huber was eBay's general counsel; Finn was eBay's chief compliance officer; Johnson was eBay's head of litigation; Phimister was eBay's Senior Director & Head of Global Workplace Resources; Elliott Management, a hedge fund, was an investor in eBay; and Cohn was a partner at Elliott Management and member of eBay's Board.

[6] eBay does not concede that these timeframes, which are considerably longer than the one-month duration of the events underlying Baugh's charges, are appropriate for any of the requests. *See* Dkt. 33 ¶ 11 (charging Baugh with a conspiracy "beginning on or about August 5, 2019 and continuing through at least September 6, 2019").

Morgan Lewis would produce privilege logs of potentially responsive documents. Pursuant to that agreement, eBay and Morgan Lewis undertook the substantial burden, involving hundreds of attorney hours, of collecting, searching, and reviewing potentially responsive documents for privilege. On November 8, November 15, and December 16, eBay produced three privilege logs reflecting entries for 661 documents that are potentially responsive to the Subpoena's requests. *See id.* Exs. 6-9, 18-19. On November 8 and December 16, Morgan Lewis produced two privilege logs reflecting entries for 96 documents identified as potentially responsive to its subpoena. *See id.* Ex. 10-11, 20-21.

Through subsequent meet-and-confers, the parties have been able to reach agreement regarding Requests 3 and 5. The parties have not been able to reach agreement on Requests 1, 2, 4, and 6—the Outstanding Requests. The disputes over those requests are as follows:

- **Request 1 (Final Reports):** eBay has offered to provide a March 2021 PowerPoint presentation given by Mr. Phelan to the government that described the results of eBay's and Morgan Lewis's investigations, but will not provide two documents identified on eBay's November 8, 2021 privilege log at Log00001 and Log00002 because they are privileged, work product, and not appropriately sought under *Nixon*. Baugh has demanded production of those documents insofar as they report "findings of fact." Morgan Lewis has not identified any documents in its possession, custody, or control responsive to Request 1.

- **Request 2 (Board minutes and materials):** eBay has offered to provide certain non-privileged Board minutes from 2019 (without conceding they are appropriately sought under *Nixon*). Although agreeing to limit the request to 2019, Baugh has rejected any further limit and continues to demand privileged Board minutes and a host of privileged materials provided to the Board.

- **Request 4 (interviews):** eBay and Morgan Lewis have offered to provide memoranda and notes of those interviews that contain statements of interviewees that Mr. Vonsover and Mr. Phelan discussed with the government. Baugh has demanded all interview notes and memoranda for all individuals interviewed in 2019 by eBay in-house counsel and Morgan Lewis.

9

- **Request 6 (emails by and among specific individuals):** eBay has offered to consider proposals to narrow the scope of this request, but Baugh has not suggested any and has not agreed to limit the request beyond limiting the time frame to January 2019 through September 2019. Baugh has also demanded all responsive privileged emails.

## ARGUMENT

### I.   The Requested Documents Are Protected from Discovery by the Attorney-Client Privilege and Work Product Doctrine

The Court should quash the Outstanding Requests because they predominantly seek documents protected by privilege. The Outstanding Requests on their face seek privileged documents involving eBay's in-house and outside counsel, and as Baugh's rejection of eBay's offer to produce certain non-privileged 2019 Board minutes and continued demand for privileged Board records make clear, *see supra* at 9, Baugh seeks highly sensitive, confidential communications and documents. This Court should reject this unfounded effort to invade eBay's privilege and quash the Outstanding Requests insofar as they seek privileged materials.

### A.   The Requested Documents Are Privileged and Work Product Protected

Virtually all the documents Baugh seeks in the Outstanding Requests are privileged. eBay has produced three detailed privilege logs describing 661 potentially responsive documents, with twelve informational fields identifying for each document, as applicable, the author, sender, recipients, who is a lawyer, the email subject or document file name, the subpoena request(s) to which the document responds, the privilege basis, and the specific reasons each documents falls within the scope of the attorney-client privilege and/or work product doctrine. *See* Pirozzolo Decl. Exs. 7, 9, 19. Morgan Lewis has produced two similarly detailed privilege logs describing 96 potentially responsive documents. *See id.* Exs. 11, 21. These logs demonstrate that the listed documents satisfy the elements of attorney-client privilege, work product doctrine, or both. *See, e.g.*, *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 278, 282

(D. Mass. 2015) ("Generally, a privilege claim is made by serving a privilege log that separately lists each document, specifies who created the document and all recipients, and concisely states the basis for the claim of privilege."); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992) (explaining that "sufficiently detailed privilege logs" establish the basis of a privilege claim, "particularly in cases involving large quantities of disputed documents"). Indeed, Baugh has never disputed that the logged documents satisfy these elements, and throughout the parties' meet-and-confer process has never objected to any particular privilege designations.

Instead, Baugh contends that he is entitled to these documents based on two general assertions. First, he claims that he has a constitutional right to the documents that outweighs eBay's privilege. *See* Dkt. 79 at 9-10. Second, he claims that eBay supposedly waived privilege as to the disputed documents when eBay, through counsel, disclosed certain documents and information to the government during the course of the government's investigation. *See id.* at 8-9. Neither argument is correct.

### B.    Supreme Court Precedent Forecloses Baugh's Constitutional Claim

Supreme Court precedent forecloses Baugh's argument that his "constitutional rights to a fair trial trump any common-law interest that [eBay] may have in the confidentiality of [its] internal investigation." Dkt. 79 at 8. In *Swidler*, the Supreme Court held that "there is no case authority for the proposition that the privilege applies differently in criminal and civil cases." 524 U.S. at 408-09. The Court also "rejected use of a balancing test in defining the contours of the [attorney-client] privilege," reasoning that "[b]alancing *ex post* the importance of the information against client interests, even limited to criminal cases, introduces substantial uncertainty into the privilege's application." *Id.* at 409; *see also Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) (explaining that "some degree of certainty whether particular discussions

11

will be protected" is essential to the attorney-client privilege and that "[a]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all"); *SEC v. Present*, 2015 WL 9294164, at *2 (D. Mass. Dec. 21, 2015) (rejecting the use of a balancing test in weighing interests as to privileged communications). Baugh's argument here is simply a bid to allow what *Swidler* forbids. It would apply the privilege "differently in criminal and civil cases" and would, in criminal cases, define the "contours of the privilege" by "[b]alancing *ex post*" a defendant's Sixth Amendment rights "against client interests." *Swidler*, 524 U.S. at 408-09. Accordingly, this Court should reject Baugh's argument that his constitutional trial right overcomes eBay's privileges.

C.     **eBay's Disclosures Did Not Waive Privilege Over the Documents in the Outstanding Requests**

eBay's disclosures to the government did not trigger any subject matter waiver, let alone one broad enough to reach the documents sought in the Outstanding Requests. This question is governed by Federal Rule of Evidence 502(a), under which disclosure of privileged materials waives privilege over undisclosed communications or information only if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). Rule 502(a) makes subject matter waivers the exception, not the rule. It limits them to "those unusual situations" in which "a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner."[7] Fed. R. Evid. 502(a) advisory committee's note.

_____

[7] Case law interpreting Federal Rule of Evidence 106—from which Rule 502(a)'s "ought in fairness" standard derives, *see* Fed. R. Evid. 502(a) advisory committee's note—confirms this limitation. Rule 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The First Circuit has interpreted this rule to apply only "to prevent the jury from being misled by reading or hearing a statement 'out of context.'" *United States v. Altvater*,

Here, although Baugh has for months possessed all of the documents eBay produced to the government, he has never proffered any basis for believing eBay's disclosures to the government were "selective, misleading [or] unfair." *Id.* His failure to do so reflects the reality that eBay's disclosures fairly and accurately depicted the conduct that led to Baugh's charges. Accordingly, fairness does not require disclosure of any privileged, undisclosed materials sought by the Outstanding Requests.

The district court's decision in *United States v. Treacy*, 2009 WL 812033 (S.D.N.Y. Mar. 24, 2009), is instructive on how the principles of Rule 502(a) apply here. In *Treacy*, as here, a defendant sought production of privileged interview memoranda from a company's internal investigation, arguing that the company's lawyers at Akin Gump waived privilege either "by furnishing certain other interview memoranda to the Government that related to the same subject matter" or "by making oral presentations to the Government of certain statements made by some of these witnesses, as well as, more generally, its overall findings." *Id.* at *1. The court, however, quashed this request. Although it required Akin Gump to produce the interview memorandum of the witness about whose interview Akin Gump had given "detailed oral recitations to the Government," *id.*, the court explained that "no comparable disclosure was made to the Government with respect to the interviews or interview memoranda now here sought," *id.* "In analogous situations," the court went on, "courts have routinely declined to find that waiver has occurred." *Id.* (citing cases). The court further emphasized that the defendant had "failed to point to any authority (controlling or otherwise) that stands for the broad proposition that the disclosure of a handful of interview memoranda to the Government automatically results in a

---

954 F.3d 45, 49 (1st Cir. 2020). Thus, a party invoking the rule must show how admitting only part of a document would "create[] a misunderstanding or distortion that could only be averted by the introduction of the full text of the out-of-court statement." *Id.* at 49-50 (cleaned up).

general waiver of privilege and work product protection over different memoranda that were not provided to the Government." *Id.* Finally, the court explained that Akin Gump's disclosures did not trigger fairness concerns because "the holder of the privilege is not a party to the action," "neither the Government nor defendant is in possession of the interview memoranda here sought," *id.* at *2, and "there is no suggestion of 'selective' or 'misleading' conduct," *id.* (quoting Fed. R. Evid. 502(a) advisory committee's note).

All the same reasoning applies here. As in *Treacy*, to cooperate with the government's investigation of criminal conduct involving its employees, eBay gave oral presentations to the government regarding the statements that certain individuals, most notably Baugh himself, made to eBay during the investigation. Phelan Decl. ¶¶ 13-15 . And eBay and Morgan Lewis have offered to produce notes and memoranda of those interviews that contain statements that Mr. Vonsover and Mr. Phelan orally disclosed in significant part to the government. *See* Pirozzolo Decl. Ex. 17. At the same time, as in *Treacy*, there is no basis for finding waiver as to materials that were not disclosed. eBay and Morgan Lewis did not disclose, and were not asked to disclose, all witness statements. Moreover, eBay and Morgan Lewis are not parties to this action, neither the government nor Baugh possesses the materials sought in the Outstanding Requests, and there is no suggestion—let alone colorable suggestion—of selective or misleading conduct. This Court should therefore follow *Treacy* and quash the Outstanding Requests.

Indeed, the grounds for quashing are even stronger here than in *Treacy* because Baugh's requests seek categories of documents far afield from anything ever disclosed to the government. In Request 1, Baugh seeks two documents from September 2020, more than a year after the alleged conspiracy ended, and in Request 2, Baugh seeks a host of privileged communications and materials involving eBay's Board. Yet at no point, ever, did Mr. Phelan, Morgan Lewis, or

14

eBay relay to the government the September 2020 documents or *any* privileged communications outside or in-house counsel had with the eBay Board regarding the investigations. *See* Phelan Decl. ¶ 18. Given that there was no disclosure of Board communications, Baugh cannot validly claim that there was a "selective" disclosure of those communications triggering a waiver.

The fact that the documents Baugh seeks are irrelevant to establishing his guilt or innocence weighs further against requiring any broader disclosure. The fairness requirement of Rule 502(a) is concerned with preventing parties from using privilege to make a "selective and misleading presentation of evidence *to the disadvantage of the adversary*." Fed. R. Evid. 502 advisory committee's note (emphasis added). The only documents that could, even in theory, disadvantage Baugh are ones relevant to his charges. *Cf. Mass. Mut. Life Ins. Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 293 F.R.D. 244, 253 (D. Mass. 2013) (concluding that fairness did not require the disclosure of additional documents because the plaintiff did not need those documents to prove its claims and had eschewed their use as evidence at trial); *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) (en banc) ("Because willful infringement in the main must find its basis in prelitigation conduct, communications of trial counsel have little, if any, relevance warranting their disclosure, and this further supports generally shielding trial counsel from the waiver stemming from an advice of counsel defense to willfulness."), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016). Thus, because the documents Baugh seeks have no bearing on his guilt or innocence, eBay's decision to maintain privilege cannot disadvantage him.

## II.    The Outstanding Requests Do Not Meet the *Nixon* Standard

Separate and apart from the fact that the Outstanding Requests seek privileged information, the Outstanding Requests also seek general discovery of the sort forbidden under the Federal Rules of Criminal Procedure. As discussed in more detail below with respect to each

15

of the Outstanding Requests, Baugh falls well short of what he is required to show in order to subpoena the documents under Rule 17.

### A.      Relevant Legal Standard

Under Rule 17(c), the "defense may use subpoenas before trial to secure admissible evidence *but not as a general discovery device*." *United States v. Henry*, 482 F.3d 27, 30 (1st Cir. 2007) (emphasis added). The proponent of a subpoena under Rule 17 has the burden of establishing that the requested materials satisfy three criteria: (1) relevancy; (2) admissibility; and (3) specificity. *Nixon*, 418 U.S. at 700. Courts police these factors carefully, lest Rule 17(c) subpoenas "undercut[] the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 145-46 (3d Cir. 1980).

In this context, consistent with the rule that Rule 17 is not a discovery device, "relevance" requires something more than "potential" relevance. *United States v. Shinderman*, 232 F.R.D. 147, 152 (D. Me. 2005) ("It is not enough that the documents have some *potential* of relevance and evidentiary use. There must be a sufficient likelihood that the requested material is relevant to the offenses charged in the indictment ...." (cleaned up)).[8] Similarly, a "sufficient preliminary showing" regarding admissibility, *Nixon*, 418 U.S. at 700, requires identifying particularized grounds for admitting specific documents that amount to more than speculation about "potential[]" grounds for admissibility, *United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005). Finally, "specificity" requires the proponent of the subpoena to identify what the documents actually will show. *Shinderman*, 232 F.R.D. at 152. Baugh must "show more than a 'mere hope' that something of value might turn up in the documents," *Gikas*,

---

[8] *See also United States v. Gikas*, 112 F.R.D. 198, 201 (D. Mass. 1986) (explaining that a Rule 17(c) subpoena proponent must "present some facts demonstrating that the materials sought are relevant and of evidentiary value to a defense against the allegations" in the indictment).

112 F.R.D. at 201, and must offer more than "conjecture about what such … document[s] might contain," *United States v. Stevenson*, 727 F.3d 826, 832 (8th Cir. 2013). Baugh cannot meet these requirements.

### B.     The Outstanding Requests

#### 1.     Request 1: Final Reports

Baugh has never articulated how the request for "final reports" from Morgan Lewis and/or eBay satisfies *Nixon*. In any event, because eBay has offered to provide the presentation Mr. Phelan provided to the government in March 2021, *see supra* at 9, only two documents are now at issue in this request. As discussed above, the documents are privileged, but even if the Court does not agree that they are protected from disclosure as privileged, they are not properly subject to production under *Nixon*. The documents date from September 2020, more than a year after the alleged conspiracy ended. They fail the admissibility requirement largely because Baugh has identified only highly speculative grounds for their admission. They fail the relevance requirement because Baugh cannot show that anything in them would provide him with a defense in this criminal case. Baugh has suggested (falsely) that the documents show that he was acting at the behest of eBay senior executives, *see* Dkt. 84 at 8, but even assuming there were any basis for such a suggestion, the documents would not provide Baugh with a defense. Baugh's guilt or innocence of the charges does not in any way depend on the conduct of other eBay employees. *See United States v. Rogers*, 2012 WL 2273939, at *1 (E.D. Mich. June 18, 2012) ("The mere fact that others may have been involved in wrongdoing does not preclude Defendant's involvement; the fact remains that Defendant is the one charged in this case, and exculpatory evidence he seeks to introduce must be relevant to *his* guilt or innocence, not that of others."). Finally, they fail the specificity requirement because Baugh has not, and cannot,

articulate anything specific that the documents contain beyond a "mere hope" that there might be something helpful in them. *Gikas*, 112 F.R.D. at 201.

### 2.      Request 2: Board Communications

Although Request 2 encompasses more disputed documents than Request 1, the analysis is essentially the same as with Request 1. Baugh has identified no basis for admitting the requested Board materials and communications in this matter, and none exists. The materials are not relevant in the sense that *Nixon* and its progeny have construed the term because none of the requested materials will negate Baugh's guilt or innocence with regard to the crimes charged. And as with Request 1, Request 2 is not sufficiently specific because Baugh does not and cannot articulate anything but a "hope" that there might be something in them that is helpful.

### 3.      Request 4: Interview Memoranda

At this point, Baugh is, in effect, seeking the entire file of eBay's 2019 interviews from its investigation—a file comprising interviews with 15 individuals, many of whom had no involvement at all in the harassment campaign. *See* Pirozzolo Decl. Exs. 7, 9, 11, 19, 21. Again, despite the overbroad nature of this request, eBay and Morgan Lewis have offered to produce memoranda and interview notes from Vonsover's interviews with Baugh, his co-conspirators, and Wymer. Baugh, however, continues to also seek notes and memoranda from interviews with all other individuals, including Wenig (eBay's former CEO) and Jones (eBay's Senior Vice President of Global Operations) apparently based on the premise that they approved and directed his conduct, *see* Dkt. 84 at 8—a premise Baugh's own attorney admitted is false. *See* Phelan Decl. ¶ 14.

It is no surprise then that Baugh cannot show with specificity any information in those interviews that he should be entitled to subpoena. Baugh's claim for the interview memoranda and notes rests only on the "hope" that something in them may help him. But that is plainly

insufficient under *Nixon*. Baugh also cannot make the required showing that the interview notes or memoranda are admissible. As with the reports requested in Request 1, Baugh only theorizes about how such materials, in general, may be admissible, not how the notes at issue here could actually enter into evidence. *See* Dkt. 84 at 8-9. As discussed above, such speculation about theoretical paths to admissibility is not sufficient under *Nixon*. *See RW Pro.*, 228 F.R.D. at 162.

### 4.      Request 6: Emails from January through September 2019

Finally, Baugh has agreed to limit Request 6 to communications from January-September 2019, but has otherwise resisted narrowing Request 6 further by time period or by subject matter. Baugh seeks all communications regarding seven topics over nine months among eleven eBay employees, including eBay's former CEO, current general counsel, current chief compliance officer, and several other attorneys. This request does not come close to satisfying *Nixon*.

As with the other requests, the documents sought in Request 6—internal email communications by and among non-party eBay employees—are clearly inadmissible, and Baugh offers no reason to conclude otherwise. *See* Dkt. 79, 84. The absence of any identifiable grounds for admissibility of the documents sought in Request 6 reflects the shotgun, non-specific nature of the request. Baugh cannot explain why the requested documents will be admissible because he does not actually know what information most of the documents contain. If Baugh knew who said what, to whom, and under what circumstances, he could at least proffer some reason the documents would be admissible at trial. Instead, Baugh's failure to specify "what information is contained in the documents" means he cannot clear the "specificity hurdle" separating a permissible Rule 17(c) subpoena from a forbidden general discovery device. *Shinderman*, 232 F.R.D. at 152 (quoting *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994)).

Indeed, far from being specific, Request 6 is a quintessential fishing expedition. It is well established that "[r]equesting entire files instead of specific documents indicates a fishing

expedition." *Id.* (quoting *Jackson*, 155 F.R.D. at 668). Although Request 6 carefully avoids use of phrases such as "any and all" that courts have recognized as telltale signs of fishing expeditions, *see, e.g.*, *United States v. Murray*, 2019 WL 1993785, at *6 (D. Mass. May 16, 2019) (citing cases), in substance it requests "any and all" communications among eleven eBay employees over nine months regarding seven topics—a set comprising hundreds of documents. Indeed, this Court itself recognized that, at a minimum, the request should be "narrow[ed] … to the time period of the alleged conspiracy," Tr. of 10/1/21 Hr'g at 19:25—a period spanning roughly a month, from August 5, 2019 through approximately September 6, 2019, *see* Dkt. 33 ¶ 16, not the nine months Baugh seeks.

The breadth of Request 6 is especially telling because Baugh has already received over 14,000 pages of records that eBay produced to the government—including parts of some of the very conversations responsive to this request. *See* Dkt. 88 at 4; *supra* at 5. Baugh has more than enough information to articulate more specific requests, and his failure to do so confirms that he is merely "conjectur[ing] as to [the] contents" of the requested documents, which is insufficient to carry his burden on specificity. *United States v. Bradford*, 806 F.3d 1151, 1155 (8th Cir. 2015) (quoting *Stevenson*, 727 F.3d at 831).

The documents collected and logged in connection with Request 6 underscore its overbroad, general nature. As reflected in eBay's privilege logs, documents responsive to Request 6 include emails discussing press matters, deliberations within eBay's Board, and employment, compensation, and indemnification decisions. Pirozzolo Decl. Exs. 7, 9. Baugh articulates no reason to think these documents contain relevant information, and there is none.

## CONCLUSION

For the foregoing reasons, the Court should quash Requests 1, 2, 4, and 6 of the subpoena issued to eBay, and Requests 1, 2, and 4 of the subpoena issued to Morgan Lewis.

Dated: December 17, 2021

Respectfully submitted,

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State St., 36th Floor
Boston, MA 02109
Tel. (617) 223-0300
jpirozzolo@sidley.com
kalessi@sidley.com
*Counsel for eBay Inc*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2021, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jack W. Pirozzolo*
Jack. W. Pirozzolo