IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM BAUGH, *et al*. | No.  20-cr-10263-PBS |

**DEFENDANT JIM BAUGH'S OPPOSITION TO MOTIONS TO QUASH SUBPOENAS**

Defendant, Jim Baugh, respectfully submits this Opposition to Motions to Quash filed by eBay, Inc. [D.E. 137] and Morgan, Lewis & Bockius LLP [D.E. 141].[1] He incorporates by reference the arguments and authorities in his underlying Motion for Rule 17(c) Subpoenas [D.E. 79] and his Objection and Motion to Set Aside Magistrate Judge's Denial of Rule 17(c) Subpoenas [D.E. 84].

**Introduction**

When corporations or their employees are accused of wrongdoing, it is standard operating procedure for the corporations to engage large law firms to conduct extensive and expensive "internal investigations." Teams of firm lawyers commonly review gigabytes of documents and e-mails, interview dozens of witnesses, and draft binders full of memoranda summarizing their factual findings. Often, the law firms, acting for the corporations, selectively convey the fruits of their investigations to federal prosecutors and law enforcement agents, typically as part of the corporation's "cooperation" – that is, a self-serving "pitch" to convince the government not to bring charges against the entity (and, in some cases, its top executives).

---

[1] Since eBay is the holder of the claimed privilege and Morgan Lewis's supporting Memorandum [D.E. 142] simply adopts and incorporates eBay's arguments, this Opposition focuses on eBay's Motion and supporting Memorandum [D.E. 138].

1

The government undoubtedly benefits from receiving a prosecution-ready "package" of evidence and analysis gathered by a what amounts to a private, "junior varsity" FBI. Companies benefit from shaping investigations and, in many instances, avoiding prosecution. And the "business" of conducting multi-million-dollar internal probes has become a very profitable "practice area" for large law firms that employ former prosecutors to do this work.

For individuals such as Mr. Baugh who ultimately face charges, however, these structural features of contemporary investigation practice create dangerous barriers to a vigorous and well-informed defense, impairing constitutional rights of due process (Fifth Amendment) and compulsory process (Sixth Amendment). By purporting to assert attorney-client privilege and work product protection over their "private" investigations while nevertheless making limited, selective disclosures to the government, corporations can implicate individuals in wrongdoing while simultaneously seeking to deprive those same individuals of information that is plainly "material" to the cases against them and may even prove exculpatory. That is precisely what eBay and its outside counsel from Morgan Lewis are attempting to do here in moving to quash Mr. Baugh's pretrial subpoenas.

To date, relatively few defendants have sought to pierce corporate assertions of privilege where internal investigations are closely linked to criminal prosecutions. But as Mr. Baugh explained in his underling Motion [D.E. 79 at 9-11], courts have recognized that "the law requires that the [corporation's] privilege yield where its invocation is incompatible with a criminal defendant's Sixth Amendment rights." *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1145 (D. Mont. 2006); *see also United States v. Mix*, 2012 U.S. Dist. LEXIS 88044 (E.D. La. June 26, 2012); *United States v. Weisberg*, 2011 U.S. Dist. LEXIS 37221 (E.D.N.Y. Apr. 5, 2011).

eBay's Motion contains no convincing response to this line of authority. The Supreme Court's decision in *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), has nothing to do with the corporate attorney-client privilege and cannot bear the weight eBay places on it. eBay's other objections are likewise unavailing. Mr. Baugh's narrow and carefully crafted subpoena requests seek relevant and admissible information to which he is constitutionally entitled, and they satisfy *United States v. Nixon*, 418 U.S. 683 (1974).  eBay's and Morgan Lewis's Motions to Quash should therefore be denied.

**I.     The Parties Have Narrowed the Scope of Their Dispute, But To Date, Neither eBay nor Morgan Lewis Has Produced Any Materials in Response to the Subpoenas.**

In substance, eBay's Motion accurately summarizes the parties' extensive negotiations to narrow areas of dispute in relation to the subpoenas. It is important to note, however, that eBay has not *yet* produced any of the materials it "offered to provide" during the negotiations, D.E. 138 at 9-10, specifically:

> **Request 1 (final reports)**: the "March 2021 PowerPoint presentation given by Mr. Phelan to the government that described the results of eBay's and Morgan Lewis's investigations. . . . ."
>
> **Request 2 (Board minutes and materials)**: "certain non-privileged Board minutes from 2019."
>
> **Request 3 (interviews of Mr. Baugh)**: "sets of notes from 4 interviews of [Mr. Baugh] in August 2019, and sets of notes from 2 calls with [Mr. Baugh's] former attorney in September 2019 . . . . to be provided subject to [Mr. Baugh's] agreement that eBay's production of these documents to [him] does not constitute any waiver of the attorney client privilege or attorney work product protections, including with respect to third parties, and that production will be made with sufficient protection so as not to trigger any waiver of privilege, *i.e.*, as part of a court order providing such protection."
>
> **Request 4 (other interviews)**: "memoranda and notes of those interviews that contain statements of interviewees that Mr. Vonsover and Mr. Phelan discussed with the government."

3

> **Request 5 (forensic analyses)**: "the UFED report for [Mr. Baugh's eBay-issued] phone, subject to eBay's review and redaction of the report for information as to which it claims privilege/protection, and further subject to the Court's order that the production does not trigger any waiver of privilege . . . . eBay will cooperate to help authenticate certain communications that you identify in eBay's productions to the government, as needed."

To the extent these materials, which eBay has agreed to produce, bear on matters relevant to the instant motion (*e.g.*, the relevance of other, related requests or the scope of a privilege or work product waiver), Mr. Baugh may seek to supplement this Opposition or re-open the matter once he has an opportunity to review the materials.

### II.   Disputed Materials Are Not Protected from Disclosure by the Attorney-Client Privilege or Work Product Doctrine.

#### A.   eBay's and Morgan Lewis's Privilege Logs Are Helpful But Inadequate.

eBay and Morgan Lewis have produced privilege logs that, while helpful, are not sufficient to fully vet their claims of privilege. As eBay has itself acknowledged, D.E. 138 at 15, in citing *Golden Trade, S.r.L. v. Lee Apparel Co.*, 1992 U.S. Dist. LEXIS 17739 (S.D.N.Y. Nov. 20, 1992):

> The standard for testing the adequacy of the privilege log is whether, as to each document, it sets for specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed. The focus is on the specific descriptive portion of the log, and not on the conclusory invocations of the privilege or work product rule, since the burden of the party withholding documents cannot be "discharged by mere conclusory or *ipse dixit* assertions."

*Id*. at *12-*13. While some of eBay's and Morgan Lewis's log entry descriptions are sufficiently detailed to understand the nature and basis of privilege the claim, *e.g.*, Log00053 ("Notes of confidential interview of Jim Baugh on [DATE], attended by [LIST] reflecting the collection of information for the purpose of rendering legal advice in connection with internal investigation after Natick events, prepared at the direction of counsel in anticipation of litigation…"), many others are completely generic and conclusory, *e.g.*, Log00004 ("Draft document prepared at the

4

direction of counsel providing information to allow for the rendering of legal advice and prepared in anticipation of litigation").

Notably, eBay and Morgan Lewis have together identified and logged just 755 potentially responsive documents subject to claims of privilege, a relatively modest number that the Court could review, *in camera*, to make fully informed privilege determinations. No matter how detailed eBay's log descriptions, individual *in camera* review may be the only realistic way for the Court to determine whether a document is "so important to the defense that its disclosure is constitutionally required" despite an otherwise facially valid claim of privilege. *United States v. Weisberg*, 2011 U.S. Dist. LEXIS 37221 (E.D.N.Y. Apr. 5, 2011), at *15. Alternatively, as in *United State v. Mix*, 2012 U.S. Dist. LEXIS 88044 (E.D. La. June 26, 2012), at *8-*9, the Court could simply order production to Mr. Baugh subject to the existing protective order and reserve final determinations about privilege and admissibility for what will likely prove to be a much smaller number of proposed exhibits at trial.

### B. The Cited Supreme Court Precedent Does Not Foreclose Mr. Baugh's Constitutional Arguments.

eBay does not even attempt to respond directly to the authorities Mr. Baugh cited in his underlying Motion, D.E. 79 at 9-11, holding that an individual defendant's constitutional rights can trump a corporation's common-law claim to confidentiality under the attorney-client privilege. All these authorities post-date the Supreme Court's 1998 decision in *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), which does not remotely "foreclose" Mr. Baugh's argument, as eBay claims. D.E. 138 at 11.

The holding of *Swidler* was simple and straightforward: the individual attorney-client privilege belonging to former Deputy Clinton Administration White House Counsel Vincent Foster survived his death by suicide. *See* 524 U.S. at 401-02. Accordingly, the Supreme Court held

5

that the Independent Counsel could not obtain notes from Foster's consultation with an attorney before his death, despite a claim that the information would be of "substantial importance" to a criminal case. *See id.* at 409. The Court explained that it "has been generally, if not universally, accepted, for well over a century, that the attorney-client privilege survives the death of the client" where the client is an individual. *Id*. at 410.

But *Swidler* has no bearing on questions about the scope and applicability of a corporation's privilege. Even *Swidler's* narrow "survivability" holding does not apply to corporations: "The weight of authority . . . holds that a dissolved or defunct corporation retains no privilege." *SEC v. Carrillo Huettel LLP*, 2015 U.S. Dist. LEXIS 45988 (S.D.N.Y. Apr. 8, 2015), at * 6 (collecting cases). In contrast to the Supreme Court's observations in *Swidler* concerning the venerable contours of a natural person's individual privilege, "there is no 'tradition' of the privilege surviving the demise of a corporation." *Id*. at *6-*7. Moreover, "limiting the duration of the attorney-client privilege to the life of a corporation is consistent with the principle that the privilege is to be construed narrowly because it withholds relevant information from the judicial process." *Id.* at *8.

As the Supreme Court explained in *Upjohn Co. v. United States*, 449 U.S. 383 (1981), while it has long "assumed" that "the privilege applies" to corporations, "complications in the application of the privilege arise when the client is a corporation, which in theory is an artificial creature of the law and not an individual." *Id*. at 389-90. In holding that attorney communications with employees outside the executive "control group" were privileged, the *Upjohn* Court cautioned that "we decide only the case before us and do not undertake to draft a set of rules which should govern challenges" to subpoenas served on corporations. *Id*. at 396. While adjudicating corporate

6

privilege claims on "a 'case-by-case' basis may to some slight extent undermine desirable certainty in the boundaries of the attorney-client privilege, it obeys the spirit of the rules." *Id.* at 396-97.

Accordingly, Supreme Court precedent does not foreclose Mr. Baugh's argument. To the contrary, Mr. Baugh's position here vindicates the fundamental principle that "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," *Crane v. Kentucky*, 473 U.S. 683, 690 (1986), and "the right to present the defendant's version of the facts." *Taylor v. Illinois*, 484 U.S 400, 409 (1988). If a defendant's constitutional rights "would be violated by enforcing the privilege," that common-law protection from disclosure should "yield." *United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994).

### C. eBay Has Made a Broad Waiver of Privilege Through Its Selective Disclosures to the Government.

eBay does not dispute that the "attorney-client privilege may be waived . . . [w]hen otherwise privileged communications are disclosed to a third party," which "destroys the confidentiality upon which the privilege is premised." *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003); *see also* Fed. R. Evid. 502(a) (providing waiver extends to undisclosed information if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness be considered together"). Rather, eBay contends that Mr. Baugh "has not proffered any basis for believing eBay's disclosures were 'selective, misleading, or unfair.'" D.E. 138 at 17.

But it is precisely the partial and *selective* nature of the disclosures that makes them misleading and unfair. eBay acknowledges that its counsel disclosed to the government 14,000 pages of documents gathered during its internal investigation, *see* D.E. 138 at 5, provided oral summaries to the government of interviews with Mr. Baugh and certain others, *see id.*, and made

7

a PowerPoint presentation to the government, summarizing the investigation and urging the government not to prosecute eBay, *see* D.E. 138 at 9; *see also* D.E. 139 (Phelan Decl.) at 6. But it also withheld critical underlying materials, including numerous memoranda of witness interviews and contemporaneous (pre-investigation) communications that happened to include an eBay lawyer, all of which are necessary, "in fairness," to fully understand the context of the investigation's findings and conclusions, to evaluate those findings and conclusions, and, if appropriate, to impeach them.

eBay relies on *United States v. Treacy*, 2009 U.S. Dist. LEXIS 66016 (S.D.N.Y. Mar. 24, 2009) (Rakoff, J.), to oppose "the proposition that the disclosure of a handful of interview memoranda to the Government automatically results in a general waiver of privilege and work product protection over different memoranda that were not provided to the Government." *Id*. at *4. But, as eBay concedes, Judge Rakoff "required Akin Gump to produce the interview memorandum of the witness about whose interview Akin Gump had given 'detailed oral recitations to Government.'" D.E. 138 at 17. (Presumably, this explains eBay's promise here, in response to Request 4, to produce "memoranda and notes of those interviews that contain statements of interviewees that [eBay's counsel] discussed with the government"). And before Judge Rakoff denied Treacy's other requests, he performed an *in camera* review of "the *Government's* detailed notes of the Akin Gump presentations" to confirm that "no comparable disclosure was made to the government" with respect to the additional materials sought. 2009 U.S. Dist. LEXIS 66016, at *3 (emphasis added). This Court does not have equivalent access to the government's file to independently assess the scope of eBay's disclosures.

Further, with all respect to Judge Rakoff, the limited scope of his ruling in *Treacy* was based on the mistaken premise that Akin Gump was not "using the privilege as both a 'sword and

8

a shield' by choosing which memoranda it disclosed to the Government," because "the holder of the privilege is not a party to the action and seeks no advantage against its adversary." *Id*. at *5. This reasoning ignores the practical reality where a corporation acts as a cooperating witness and actively assists in the prosecution of an individual defendant (typically, to avoid being prosecuted itself). As Judge Furman recognized in *Alaska Electrical Pension Fund v. Bank of America Corp.*, 2017 U.S. Dist. LEXIS 8141 (S.D.N.Y. Jan. 20, 2017), where, as here, "materials at issue were 'generated by counsel *during* a government investigation, with the specific intent to dissuade the government from bringing suit[,]' [v]oluntary production of such materials to the government 'is inconsistent with the purposes behind the attorney work product doctrine.'" *Id.* at *9 (emphasis in original) (internal citation omitted). A "client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." *Id*. at *10 (quoting *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

### III.  The Subpoena Requests are Proper.

Mr. Baugh's requests seek materials that are plainly relevant, admissible, and specific under *United States v. Nixon*, 418 U.S. 683, 700 (1974).[2] eBay's arguments to the contrary are not persuasive.

#### 1.  Request 1: Final Reports.

eBay contends that the final "investigative reports" are not relevant because Mr. Baugh "cannot show that anything in them would provide him with a defense in a criminal case." D.E.

---

[2] Mr. Baugh also preserves his argument that *Nixon* does not apply to Rule 17(c) subpoenas served on private third parties by criminal defendants and cannot unduly constrain his Sixth Amendment right to compulsory process. *See* D.E. 84 at 5 & n. 5.

9

138 at 21. But *Nixon* only requires relevance, not a finding that subpoenaed documents are necessarily exculpatory or would provide a complete defense. eBay's argument that final reports concerning an investigation of the very conduct at issue in this case (which Mr. Baugh is accused of obstructing) are not "relevant" strains credulity.

The reports may be admissible as business records. *See, e.g., Crimm v. Missouri Pacific R. Co.*, 750 F.2d 703 (8th Cir. 1984) (affirming admission of investigative report pursuant to business record exception); *Brauninger v. Motes*, 260 F. App'x 634, 636-639 (5th Cir. 2007) (investigation by human resource manager of sexual harassment complaints admissible as business record); *Byrd v. Merrill Lynch*, 2011 U.S. Dist. LEXIS 73686, at *18 (D.N.J. July 8, 2011) ("the investigative file is almost certainly admissible as a business record under Federal Rule of Evidence 803(6)"); *Smith v. Beck*, 2012 U.S. Dist. LEXIS 54142, at *6 (M.D.N.C. Apr. 18, 2012) (internal investigation report considered admissible as business record). Components of the reports also may be admissible as evidence of Mr. Baugh's state of mind. *See* Fed. R. Evid. 801(c)(2) (hearsay prohibition triggered only by statements offered for the truth of the matter asserted). And witness statements contained in the reports would be admissible for impeachment.

Finally, eBay argues the request "fails the specificity requirement because Baugh has not, and cannot, articulate anything specific that the documents contain beyond a 'mere hope' that there might be something helpful in them." D.E. 138 at 18. That argument is *non sequitur*. eBay does not dispute that the request, as now narrowed, identifies just *two* specific documents that arguably constitute "final reports." Mr. Baugh need not divine the precise contents of those documents (an impossible burden) or establish that they would necessarily be "helpful" (as opposed to be merely "material") in order to satisfy *Nixon*.

### 2. Request 2: Board Communications

Communications to the eBay Board reporting the results of the internal investigation are relevant, admissible, and specific for the same reasons the "final reports" at issue in Request 1 satisfy the *Nixon* criteria. eBay does nothing more than repeat its inapt objection that the requested materials may not prove to be exculpatory. D.E. 138 at 22.

### 3. Request 4: Interview Memoranda

eBay contends that documents concerning 15 interviews conducted in the internal investigation are not "relevant" because the premise that eBay executives "approved and directed [Mr. Baugh's] conduct" is false. D.E. 138 at 22. Again, however, eBay's argument erroneously shrinks the universe of what is potentially "relevant" to evidence that is decisively exculpatory.[3] Counsel conducted the witness interviews to investigate the conduct squarely at issue in this case. And the request is quite specific: a limited and readily identifiable number of people were subjected to interviews.

Interview notes, memoranda, and statements within those documents would be admissible for impeachment and could also be admissible as business records, *see La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 n.7 (5th Cir. 2002) (human resource manager's notes regarding sexual harassment investigation admissible as business records), and/or under various other exceptions to

---

[3] Moreover, even crediting for the sake of argument eBay's assertion that CEO Devin Wenig never expressly "told Mr. Baugh to do anything illegal or improper with regard to the Steiners," D.E. 139, the existing record is replete with evidence that eBay executives urged Mr. Baugh to do whatever is necessary to "solve" the Steiner "problem." Additional evidence that fills in further detail about what executives communicated to Mr. Baugh about the perceived "threat" posed by the Steiners, the ineffectiveness of "traditional" legal tools in dealing with the Steiners, and executives' expectations (or willful blindness) given what they knew of Mr. Baugh's professional background, are all highly relevant to a full understanding of what occurred, as well as Mr. Baugh's state of mind at the time.

the hearsay rule. *See, e.g.*, Fed. R. Evid. 803(2) (present sense impression), 803(5) (recorded recollection).

### 4. Request 6: Emails

The subpoenas request communications among a short list of identified individuals (including Mr. Baugh himself) concerning a list of seven topics closely tied to the case, including EcommerceBytes, the Steiners, two Twitter accounts suspected to be linked to the Steiners, and an activist investment company which eBay executives suspected was colluding with the Steiners. eBay's privilege log suggests that Mr. Baugh was included in many of these communications. The list of email custodians, topics, and modified time frame were narrowly tailored to capture communications that illuminate the reasons for animus among eBay's executives toward the Steiners, the conduct underlying the alleged conspiracy, and the alleged efforts to obstruct eBay's inquiry in the immediate aftermath of the alleged harassment campaign. Mr. Baugh further agreed to limit the time frame of the request to the period from January to September 2019, the months before, during, and just after the alleged harassment conspiracy alleged in the Indictment. eBay's corporate emails would be broadly admissible as business records, many of the communications constitute statements of indicted or unindicted co-conspirators, and other statements would be admissible for impeachment, present sense impression, then existing state of mind, or other non-hearsay purposes. eBay's characterization of these thoughtfully tailored requests as a "fishing expedition," D.E. 138 at 24-25, does not make it so.

**Conclusion**

For the foregoing reasons, the Court should deny the Motions to Quash and direct eBay and Morgan Lewis to produce the requested documents. Alternatively, at a minimum, the Court should review the logged documents *in camera* to assess assertions of attorney-client privilege and work product protection, on one hand, and materiality to Mr. Baugh's defense, on the other hand.

Respectfully submitted,

**JIM BAUGH**

by his attorneys,

  */s/ William Fick*
William W. Fick (BBO #650562)
Daniel N. Marx (BBO #674523)
Amy Barsky (BBO # 601111)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*
*dmarx@fickmarx.com*
*abarsky@fickmarx.com*

**CERTIFICATE OF SERVICE**

I caused the foregoing document to be served, by ECF filing January 10, 2022, on the parties registered for ECF notices in this case.

  */s/ William Fick*