**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA,

vs.

JIM BAUGH, et al.,

Defendants.

Criminal No. 20-CR-10263-PBS

HEARING SCHEDULED FOR:
January 28, 2022

Leave to file reply granted:
December 6, 2021

**REPLY IN SUPPORT OF INTERVENOR EBAY INC.'S MOTION TO QUASH RULE 17(C) SUBPOENAS ISSUED TO EBAY INC. AND MORGAN, LEWIS & BOCKIUS LLP**

Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State St., 36th Floor
Boston, MA 02109
Tel. (617) 223-0300
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California St. Suite 2000
San Francisco, CA 94104
Tel. (415) 772-1285
snonaka@sidley.com

Daniel J. Feith (*pro hac vice*)
SIDLEY AUSTIN LLP
1510 K St. NW
Washington, D.C. 20005
Tel. (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii
INTRODUCTION .......... 1
ARGUMENT .......... 2
I. The Requested Documents Are Privileged .......... 2
A. The Privilege Logs Establish that the Requested Documents Are Privileged .......... 2
B. Baugh Cannot Overcome eBay's Privilege on Constitutional Grounds .......... 3
C. eBay Has Not Waived Privilege Over the Requested Documents .......... 5
II. Baugh Fails to Carry His Burden Under *Nixon* .......... 8
A. Requests 1 and 2: Final Reports and Board Communications .......... 8
B. Request 4: Interview Notes and Memoranda .......... 9
C. Request 6: Emails from January through September 2019 .......... 10
CONCLUSION .......... 12
CERTIFICATE OF SERVICE .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
No. 14-CV-7126 (JMF), 2017 WL 280816 (S.D.N.Y. Jan. 20, 2017) ....................................7

*Barton v. Target Corp.*,
No. 19-12205-PBS, 2021 WL 2627964 (D. Mass. May 11, 2021) ........................................10

*Chevron Corp. v. Pennzoil Co.*,
974 F.2d 1156 (9th Cir. 1992) ..................................................................................................6

*Commodity Futures Trading Comm'n v. Weintraub*,
471 U.S. 343 (1985)..................................................................................................................4

*Crane v. Kentucky*,
476 U.S. 683 (1986)..................................................................................................................5

*In re Grand Jury Proc. Oct. 12, 1995*,
78 F.3d 251 (6th Cir. 1996) ......................................................................................................6

*Hook v. Regents of Univ. of Cal.*,
394 F. App'x 522 (10th Cir. 2010) ....................................................................................8, 10

*Jordan v. Binns*,
712 F.3d 1123 (7th Cir. 2013) ................................................................................................10

*Pajak v. Under Armour, Inc.*,
No. 1:19-CV-160, 2021 WL 4225767 (N.D. W. Va. Sept. 15, 2021) .......................................2

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996)...............................................................................................................3, 4

*Swidler & Berlin v. United States*,
524 U.S. 399 (1998)...............................................................................................................3, 4

*Taylor v. Illinois*,
484 U.S. 400 (1988)..................................................................................................................5

*Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*,
71 F.3d 335 (10th Cir. 1995) ..................................................................................................10

*United States v. Cone*,
714 F.3d 197 (4th Cir. 2013) ..................................................................................................11

*United States v. Ferber*,
966 F. Supp. 90 (D. Mass. 1997) ....................11

*United States v. Indivior Inc.*,
No. 1:19CR00016, 2020 WL 616167 (W.D. Va. Feb. 10, 2020) ....................12

*United States v. LaRouche Campaign*,
841 F.2d 1176 (1st Cir. 1988) ....................8, 9

*United States v. Lindberg*,
No. 5:19-CR-22-MOC-DSC-1, 2019 WL 7000089 (W.D.N.C. Dec. 20, 2019) ....................11

*United States v. Mix*,
No. 12-171, 2012 WL 2420016 (E.D. La. June 26, 2012) ....................3

*United States v. Rainone*,
32 F.3d 1203 (7th Cir. 1994) ....................5

*United States v. Richardson*,
607 F.3d 357 (4th Cir. 2010) ....................11

*United States v. Treacy*,
No. S2 08 CR 366(JSR), 2009 WL 812033 (S.D.N.Y. Mar. 24, 2009) ....................7

*United States v. W.R. Grace*,
439 F. Supp. 2d 1125 (D. Mont. 2006) ....................4

*United States v. Wells Fargo Bank, N.A.*,
132 F. Supp. 3d 558 (S.D.N.Y. 2015) ....................4

*United States v. Zangrillo*,
No. 19-10080-NMG, 2020 WL 1027815 (D. Mass. Mar. 3, 2020) ....................8

*Willco Kuwait (Trading) S.A.K. v. deSavary*,
843 F.2d 618 (1st Cir. 1988) ....................8

*Ypsilanti Cmty. Utils. Auth. v. MeadWestvaco Air Sys. LLC*,
No. 07-CV-15280, 2010 WL 200836 (E.D. Mich. Jan. 15, 2010) ....................2

**Rules**

Fed. R. Evid. 502(a) advisory committee's note ....................6

Fed. R. Evid. 803(1) ....................10

Fed. R. Evid. 803(5)(B) ....................10

Fed. R. Evid. 803(6)(A) ....................8

## INTRODUCTION

Perhaps the most noteworthy aspect of Baugh's Opposition is its complete lack of specificity in support of his claim that eBay should produce all of the documents currently in dispute. Even though Baugh has had over 14,000 pages of eBay documents in his possession since at least last summer and received eBay's first and second privilege logs in November, he has made virtually no effort in his Opposition to challenge on a document by document basis any of eBay's assertions of privilege.[1] Nor has Baugh even attempted to challenge the logged documents by categories, such as time frame, subject matter, or type (*e.g.*, reports, interview notes, emails), even though specificity is necessary for the Court to evaluate both the privilege issues and *Nixon* factors.

Instead, Baugh invites the Court to override eBay's privilege by adopting one of two novel legal theories that would have far reaching, disruptive and troubling implications for privilege. First, Baugh would have the Court ignore clearly controlling Supreme Court precedent and hold that his constitutional rights as a criminal defendant categorically trump eBay's privilege. Second, he would have the Court hold that the disclosure of *any* information to the government gathered as part of an internal investigation requires eBay to disclose to a third-party all documents, including all attorney-client privileged and work product documents, related in any way to that investigation. As eBay discusses in more detail below, Baugh's position is neither reasonable nor in accordance with the law.

[1] Consistent with eBay's opening brief, this reply refers to the attorney-client privilege and work product doctrine collectively as the "privilege," and refers to materials protected by both these doctrines as "privileged" materials.

## ARGUMENT

### I. The Requested Documents Are Privileged

#### A. The Privilege Logs Establish that the Requested Documents Are Privileged

Baugh's challenge to the privilege logs is groundless, and offers no support for his suggestion that the Court review *in camera* the hundreds of logged documents, many of which are several pages or more.[2] As eBay explained in its opening brief, the detailed privilege logs eBay and Morgan Lewis produced establish that the vast majority of documents Baugh seeks are privileged. Dkt. 138 ("Mem.") at 10. To this day, with one exception mentioned in his opposition brief, Baugh has never raised particularized challenges to the adequacy of the logs' entries for specific documents or sets of documents. *See, e.g., Pajak v. Under Armour, Inc.*, No. 1:19-CV-160, 2021 WL 4225767, at *4 (N.D. W. Va. Sept. 15, 2021) (rejecting "broad" objections to a privilege log that "do not reflect discrete, specific concerns"). Baugh nevertheless argues that "many" entries are "generic and conclusory." Dkt. 153 ("Opp.") at 4. But the one example he gives, Log00004, shows that the opposite is true. *See id.* at 4–5. eBay's privilege log describes this entry as an attachment to the email logged in the previous entry, for which the log identifies the sender, recipients, subject, and grounds for privilege—that is, the "specific facts that, if credited, would suffice to establish each element of the privilege." *Id.* at 5 (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, No. 90 Civ. 6291 (JMC), 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992)); *see also Ypsilanti Cmty. Utils. Auth. v. MeadWestvaco Air Sys. LLC*, No. 07-CV-15280, 2010 WL 200836, at *2 (E.D. Mich. Jan. 15, 2010) (rejecting broad challenge to privilege logs where challenger "identif[ied] only two privilege log entries to illustrate [its]

---

[2] In addition to the five privilege logs that eBay has filed with the Court, eBay served Baugh with an additional privilege log on January 19, 2022. *See* Pirozzolo Decl. Exs. 7, 9, 11, 19, 21; Dkt. 156.

argument that Defendant 'continues to employ no more than boilerplate descriptions of the documents'").

Baugh also suggests the Court can "reserve final determinations about privilege" until trial by ordering production of eBay's privileged documents subject to a protective order. Opp. 5. This is flatly wrong. Baugh's suggestion that he, a third party, be allowed to pore over eBay's privileged materials is simply a request that the Court decide the privilege issues in his favor. Furthermore, *United States v. Mix*, No. 12-171, 2012 WL 2420016 (E.D. La. June 26, 2012), offers no support for Baugh's proposal. Baugh omits that the defendant there, unlike Baugh, already possessed the purportedly privileged material, and the only issue was whether he could use it at trial. *See id.* at *1. There is simply no basis for the Court to override eBay's privilege assertions based on the adequacy of the privilege logs.

### B. Baugh Cannot Overcome eBay's Privilege on Constitutional Grounds

As eBay described in its opening brief, *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), forecloses Baugh's argument that his constitutional rights trump eBay's privilege. Clearly recognizing this, Baugh argues that *Swidler*'s holding is limited to the narrow proposition that the privilege survives a privilege-holder's death. Opp. 5–6. He is incorrect. The holding of a Supreme Court decision consists "not only [of] the result but also [of] those portions of the opinion necessary to that result." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996). In *Swidler*, the subpoena proponent argued for an exception from the general rule that privilege survives the privilege-holder's death for criminal cases or cases where the information at issue has "substantial importance." *Swidler*, 524 U.S. at 408. The Supreme Court rejected that argument on the grounds that "there is no case authority for the proposition that the privilege applies differently in criminal and civil cases" and that "[b]alancing *ex post* the importance of the information against client interests, even limited to criminal cases, introduces substantial

uncertainty into the privilege's application." *Id.* at 408–09. Because these grounds were "necessary to [*Swidler*'s] result" that the privilege survives the privilege-holder's death, *Seminole Tribe*, 517 U.S. at 67, they are part of case's holding.[3]

Baugh's reliance on *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (D. Mont. 2006) also is misplaced. *Grace* held that where a defendant invokes his Sixth Amendment rights to seek privileged evidence, a court should apply a "fact-specific" "balancing test" weighing the "nature and content of the privileged evidence … against the purposes served by the attorney-client privilege." *Id.* at 1140–42. This holding, however, contravened *Swidler*, decided eight years earlier, which squarely "rejected use of a balancing test in defining the contours of the privilege." 524 U.S. at 409. *Grace* simply ignored *Swidler*'s discussion of the issue and made no effort to reconcile the two outcomes. As other courts have observed, *Grace* is wrongly decided and should not be followed. *See United States v. Wells Fargo Bank, N.A.*, 132 F. Supp. 3d 558, 565 (S.D.N.Y. 2015).

In any event, *Grace* does not stand for the broad proposition that a defendant's constitutional rights always "take precedence over a corporation's common-law claim to confidentiality," as Baugh claims. Dkt. 79 at 9. At most, *Grace* suggests that a defendant may override a third-party's privilege if the documents sought are in fact exculpatory. *See Grace*, 439 F. Supp. 2d at 1140 ("[I]n weighing the competing interests it is the exculpatory value of the lost evidence to the accused that weighs most heavily on the scale of fair trial."). Here, Baugh has not even tried to make that showing. Nor has he ever articulated any "fact-specific" balancing of the

---

[3] Baugh also suggests that *Swidler* is inapplicable because it concerned the privilege of a natural person, not a corporation. But Baugh cites no authority for the proposition that privilege applies differently to living people and going concerns. In fact, it is "well established" that "the attorney-client privilege attaches to corporations as well as to individuals." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).

different interests with respect to any particular document or category of documents in dispute. Baugh's failure to make these showings demonstrates that, in reality, he is simply asking the Court to implement a rule that eBay's privilege must categorically give way to his constitutional rights. Neither *Swidler* nor *Grace* supports that outcome.[4]

### C. eBay Has Not Waived Privilege Over the Requested Documents

While Baugh primarily focuses his Opposition on his constitutional argument and the meaning of *Swidler, see* Opp. 1–7, he also claims that he is entitled to every document on eBay's privilege logs because eBay made a "[b]road [w]aiver" of privilege through its "[s]elective [d]isclosures" to the government. *Id.* at 7. In support of this waiver argument, Baugh points to eBay's disclosure to the government of 14,000 pages of documents, oral summaries of certain witness interviews (including Baugh's), and a PowerPoint presentation. *Id.* at 7–8. Baugh says that due to those disclosures, he is "in fairness" entitled to "critical underlying materials, including numerous memoranda of witness interviews and contemporaneous (pre-investigation) communications that happened to include an eBay lawyer … to fully understand the context of the investigation's findings and conclusions, to evaluate those findings and conclusions, and, if appropriate, to impeach them." *Id.* at 8. Baugh's argument—when considered in light of the privileged documents he is actually seeking from eBay—represents an unjustifiable and unreasonable overreach.

---

[4] The other cases Baugh cites do not help him either. The two Supreme Court cases he cites (at Opp. 7) have nothing to do with the relationship between privilege and a defendant's constitutional rights. *See Taylor v. Illinois*, 484 U.S. 400 (1988); *Crane v. Kentucky*, 476 U.S. 683 (1986). And although *United States v. Rainone*, 32 F.3d 1203 (7th Cir. 1994), states that the attorney-client privilege "might have to yield" in particular cases if the Sixth Amendment right to confrontation would otherwise be violated, *id.* at 1206, this case was decided before *Swidler* rejected such balancing tests and, in any event, ultimately held that the Constitution permitted limiting the scope of cross-examination to protect the privilege. *See id.* at 1206–07.

The 14,000 pages Baugh points to as the basis for his waiver argument were, with limited exceptions discussed below, historical emails, text messages, expense and travel reports, electronic calendars, and other documents to which no independent claim of privilege ever existed. Similarly, the PowerPoint presentation Baugh references was shown to the government, and eBay has never asserted privilege over the document. For Baugh to assert, as he appears to here, that the production of non-privileged information to the government waives privilege for all related documents simply because the information was collected by way of an internal investigation, is unreasonable. It asks the Court to adopt a rule of waiver that it totally unmoored from Federal Rule of Evidence 502.

To the extent Baugh is arguing that eBay waived privilege over *all* materials pertaining to the Natick events by sharing certain privileged information from its internal investigation with the government, he is also mistaken. Courts have consistently rejected such overbroad assertions of subject-matter waiver. *See, e.g.*, *In re Grand Jury Proc. Oct. 12, 1995*, 78 F.3d 251, 255–56 (6th Cir. 1996) (holding that a laboratory had not waived privilege with respect to an entire marketing plan by disclosing specific privileged parts of the plan); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (disclosure to auditor of advice letter on tax deferral did not waive privilege for "every document or communication that touched on the more general tax deferral question"). Baugh does not dispute that Federal Rule of Evidence 502(a) reserves subject-matter waivers only for "*unusual* situations" in which a party actually puts "protected information into the litigation in a selective, misleading[,] and unfair manner." Fed. R. Evid. 502(a) advisory committee's note (emphasis added); *see* Mem. 12. Yet he argues, in essence, that an unbounded subject-matter waiver should apply to the perfectly commonplace situation where a company cooperates with a law enforcement investigation into its employees. Opp. 7–8.

Moreover, the one category of privileged information that Baugh points to—the oral disclosures of interviews with individuals—does not support the broad waiver Baugh asks for here. As eBay explained in its opening memorandum (Mem. 13–14), *United States v. Treacy*, No. S2 08 CR 366(JSR), 2009 WL 812033 (S.D.N.Y. Mar. 24, 2009), provides an appropriate guide for measuring the scope of waiver when a company gives an oral readout of internal investigation interviews. There, the court ordered the memoranda of interviews disclosed to the government to be turned over, but declined to order others turned over. *See id.* at *2–3.

Of course Baugh disagrees with *Treacy*, but the case he relies on (at Opp. 9) to argue for a broader waiver, *Alaska Electrical Pension Fund v. Bank of America Corp.*, No. 14-CV-7126 (JMF), 2017 WL 280816 (S.D.N.Y. Jan. 20, 2017), only reinforces *Treacy*'s approach. In *Alaska Electrical*, the court granted a motion to compel production of documents that the privilege holders, while under government investigation, had disclosed to the government in the hope of dissuading it from taking further action. *Id.* at *2–3. But the court did *not* require the privilege holders to produce any documents beyond those they had turned over to the government.

Perhaps lost in Baugh's Opposition is the fact that the categories of privileged documents Baugh seeks extend far beyond the two categories he names in his Opposition as those he should get "in fairness." He is demanding that eBay produce, for example: attorney-client communications with members of the Board through the entirety of 2019, well after any conceivable conduct at issue in the criminal case; attorney-client communications regarding employment decisions; and attorney-client communications and internal work product from Morgan Lewis. Baugh does not articulate why the fairness principle embedded in the waiver analysis should or could extend to any of those documents. That is for good reason. Principles of

fairness do not support the scope of waiver he is asking for here. Rather, the Court should take the same approach here as was taken in *Alaska Electrical* and *Treacy*. *See* Mem. 13.

## II. Baugh Fails to Carry His Burden Under *Nixon*[5]

### A. Requests 1 and 2: Final Reports and Board Communications

Baugh fails to establish that the documents sought in Requests 1 and 2 satisfy any—let alone all—of *Nixon*'s three requirements. He most clearly comes up short regarding admissibility. First, he argues that the sought-after documents may be admitted as business records. But the reports sought in Request 1 do not qualify as business records pertinent to the events underlying Baugh's charges because they were prepared in September 2020, more than a year after those events, *see* Log00001, Log00002, not "at or near the time" of the those events, Fed. R. Evid. 803(6)(A); *see Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618, 628 (1st Cir. 1988) (telex that referenced investigation and report that had occurred more than three months earlier was not made "at or near the time" of the events recorded and thus did not qualify as a business record). As to Request 2, Baugh does not explain how the requested Board materials, which include a wide variety of document types, qualify as business records. In particular, he offers no explanation of how these materials were created as part of eBay's regular business practices, as Rule 803(6)(C) requires.

Second, Baugh speculates that the documents may be admissible to show his state of mind or for impeachment. But Baugh overlooks the multi-layered hearsay problems such statements would create. *See Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 531 (10th Cir.

[5] In passing, Baugh asserts that *Nixon* does not apply to Rule 17(c) subpoenas served on third parties by defendants. Opp. 9 n.2. But the First Circuit and courts in this district routinely apply *Nixon* in such circumstances. *E.g.*, *United States v. LaRouche Campaign*, 841 F.2d 1176, 1178–80 (1st Cir. 1988); *United States v. Zangrillo*, No. 19-10080-NMG, 2020 WL 1027815, at *5 (D. Mass. Mar. 3, 2020).

2010) (affirming exclusion of transcripts and interview notes compiled as part of defendant's internal investigation where plaintiff neglected "to address the multiple layers of hearsay contained in the transcripts and interview notes"). And, "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," as Baugh seeks here, and Baugh identifies no basis for granting him an exception to this general rule. *LaRouche Campaign*, 841 F.2d at 1180 (quoting *United States v. Nixon*, 418 U.S. 683, 701 (1970)).

Finally, Baugh's Opposition shows that Request 2 is plainly overbroad. Far from encompassing only "[c]ommunications to the eBay Board reporting the results of the internal investigation," Opp. 11, Request 2 sweeps in numerous other categories of documents related to press matters and employment decisions. It should be denied on this basis as well.

**B. Request 4: Interview Notes and Memoranda**

As eBay has explained, it has agreed to produce memoranda and interview notes from Amir Vonsover's interviews with Baugh, his co-conspirators, and Wymer, and the parties' dispute is centered on Baugh's insistence that eBay produce the interview memos for Wenig (eBay's former CEO) and Jones (eBay's Senior Vice President of Global Operations). But Baugh offers no satisfactory explanation for how these documents—or any records of the other interviews at issue—meet any of *Nixon*'s requirements. While he asserts that certain unnamed "executives communicated to Mr. Baugh about the perceived 'threat' posed by the Steiners" and the "ineffectiveness of 'traditional' legal tools in dealing with the Steiners," Opp. 11 n.3, he tellingly does not attribute any such statements to Wenig or Jones. Indeed, Baugh does not dispute that his former attorney admitted that Baugh had told him that Wenig never directed or approved any illegal conduct. *See id.*; Phelan Decl. ¶ 14.

Baugh also fails to demonstrate that the interview notes are admissible. Again, he invokes the business records exception, Opp. 11, but this Court has explained that "[i]t is not clear" that

reports from a company's internal investigation are admissible under the business records exception given that they were not prepared for a "core business purpose." *Barton v. Target Corp.*, No. 19-12205-PBS, 2021 WL 2627964, at *1 n.2 (D. Mass. May 11, 2021) (citing *United States v. Cameron,* 699 F.3d 621, 646 (1st Cir. 2012)). Indeed, courts routinely hold that documents prepared in anticipation of litigation, like the interview notes and memoranda here, are not made in the regular course of business and therefore do not qualify as business records. *See, e.g.*, *Jordan v. Binns*, 712 F.3d 1123, 1135 (7th Cir. 2013); *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 342 (10th Cir. 1995). And, again, Baugh ignores that even if the notes themselves are business records, the statements within them are a second layer of hearsay. *See Hook*, 394 F. App'x at 531. This omission is fatal to Request 4.[6]

**C. Request 6: Emails from January through September 2019**

Finally, Baugh does not carry his burden under *Nixon* with respect to Request 6. Despite seeking all communications regarding seven topics over nine months among eleven eBay employees, including four lawyers, Baugh claims the request is "narrowly tailored" to identify documents "closely tied to the case." Opp. 12. But the numerous irrelevant documents netted by Request 6 belie this claim. As eBay has explained (Mem. 19–20), documents potentially responsive to Request 6 include internal emails by or to counsel discussing press matters, Board communications, and employment decisions unrelated to Baugh.[7] *See* Pirozzolo Decl. Exs. 7, 9.

[6] Baugh's passing reference to "other exceptions to the hearsay" rule is equally unavailing. Opp. 11–12. Baugh does not even attempt to explain how statements in interview notes recorded days, weeks, or even months after the alleged conduct, by persons other than the declarants, could be either recorded recollections or present sense impressions. *See* Fed. R. Evid. 803(2), 803(5)(B).

[7] Further, eBay's privilege logs represent only a fraction of the documents potentially responsive to Request 6. For example, eBay has not undertaken the significant burden of reviewing and logging any and all documents "between or among" such actors as the Company's former CEO, CFO and General Counsel broadly "concerning" a former member of its Board, Jesse Cohn, and

Baugh has never articulated how these or other specific communications are relevant to the charges against him.

Similarly, Baugh does not explain why all such communications from a period *nine times* longer than the charged conspiracy are appropriate. *See* Tr. of 10/1/21 Hr'g at 19:25. For example, if, as Baugh argues, he needs details about what executives communicated to him about the Steiners to provide a "full understanding of what occurred, as well as Mr. Baugh's state of mind at the time," Opp. 11 n.3, there is no reason he needs emails from September 2019, *after* the events involving the Steiners had ended. The indefensibly overbroad, general nature of Request 6 demonstrates that Baugh is "merely fishing for evidence that might support his theory," which Rule 17(c) does not allow. *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010). Because Baugh cannot satisfy *Nixon*'s specificity and relevancy requirements, Request 6 should be quashed.

The request should also be quashed because Baugh fails to establish the admissibility of such communications. eBay's emails are not, as Baugh suggests, "broadly admissible" as business records simply because they were sent via the Company's email. Opp. 12. Such a rule would make "virtually any document found in the files of a business which pertained in any way to the functioning of that business … a business record" and "is not the law." *United States v. Ferber*, 966 F. Supp. 90, 99 (D. Mass. 1997); *accord United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013). Baugh also rattles off a list of hearsay exclusions and exceptions, none of which is tied to any particular communication and all of which are entirely speculative. Speculation about future admissibility, however, does not satisfy *Nixon*. *See, e.g.*, *United States v. Lindberg*,

---

a hedge fund investor in the Company, Elliott Management. *See* Pirozzolo Decl. Ex. 1 at 5 ¶ 6; *id.* Ex. 5 at 5 n.4; *id.* Ex. 17 at 4.

No. 5:19-CR-22-MOC-DSC-1, 2019 WL 7000089, at *3 (W.D.N.C. Dec. 20, 2019) ("Conclusory allegations of relevance and admissibility are insufficient." (quoting *United States v. Wittig*, 250 F.R.D. 548, 553 (D. Kan. 2008))); *United States v. Indivior Inc.*, No. 1:19CR00016, 2020 WL 616167, at *4 (W.D. Va. Feb. 10, 2020) ("[I]t is not enough that [materials] 'contain information which could be admissible.'"). Baugh's failure on this score provides an independent ground for quashing Request 6.

## CONCLUSION

For the foregoing reasons, and those in eBay's opening brief, the Court should quash Requests 1, 2, 4, and 6 of the eBay subpoena, and Requests 1, 2, and 4 of the Morgan Lewis one.

Dated: January 21, 2022

Respectfully submitted,

*<u>/s/ Jack W. Pirozzolo</u>*

Jack W. Pirozzolo (BBO #564879)
Kathryn L. Alessi (BBO #651110)
SIDLEY AUSTIN LLP
60 State St., 36th Floor
Boston, MA 02109
Tel. (617) 223-0300
jpirozzolo@sidley.com
kalessi@sidley.com

Scott T. Nonaka (*pro hac vice*)
SIDLEY AUSTIN LLP
555 California St. Suite 2000
San Francisco, CA 94104
Tel. (415) 772-1285
snonaka@sidley.com

Daniel J. Feith (*pro hac vice*)
SIDLEY AUSTIN LLP
1510 K St. NW
Washington, D.C. 20005
Tel. (202) 736-8511
dfeith@sidley.com

*Counsel for eBay Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2022, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jack W. Pirozzolo*
Jack. W. Pirozzolo