### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

```
_____
                              )
UNITED STATES OF AMERICA,      )
                              )          Criminal Action
v.                            )          No. 20-10263-PBS
                              )
JIM BAUGH and DAVID HARVILLE,  )
                              )
                Defendants.    )
_____)
```

### MEMORANDUM AND ORDER

March 02, 2022

Saris, D.J.

### INTRODUCTION

Defendants Jim Baugh and David Harville, two former senior employees at eBay, have been indicted on multiple charges arising from their alleged roles in an interstate campaign to harass and intimidate two Massachusetts residents and the ensuing cover up. They have been charged in a fifteen-count indictment. As relevant here,[1] Baugh has been charged with witness tampering under 18 U.S.C. § 1512(b)(3) as to a Natick detective (Count 10) and an eBay investigator (Count 11) and with destruction, alteration, or falsification of records under 18 U.S.C. § 1519 (Count 13) by falsifying "Bay Area POIs_August 2019.docx." And as relevant here, Harville has been charged with witness tampering under 18 U.S.C. § 1512(b)(3) as to an eBay investigator (Count 12) and with the

---

[1] Defendants have launched a multi-pronged attack on the indictment which will be addressed in other opinions.

destruction, alteration, and falsification of records in a federal investigation under 18 U.S.C. § 1519 by destroying the contents of his eBay-issued cell phone (Count 15).

After hearing, the Court **DENIES** Defendants' motions to dismiss their indictments (Dkt. 114 and 116).

**FACTUAL BACKGROUND**

The indictment alleges the following facts.

Baugh was the Senior Director of Safety and Security at eBay, and Harville was the Director of Global Resiliency. In 2019, eBay's senior leadership became aware of an online newsletter (the "Newsletter") that it perceived as a threat to eBay's image. From August 5, 2019 through September 6, 2019, Baugh, Harville, and five other eBay employees[2] began harassing Victim 1 and Victim 2, a married couple living in Natick, Massachusetts who disseminated the Newsletter. Their goals were to distract the Victims from publishing the Newsletter, to change how the Victims covered eBay in the Newsletter, and to gather information to discredit the Victims.

The intimidation began with a series of online messages and home deliveries. On August 6, 2019, Popp created a Twitter profile

---

[2] The five employees were Stephanie Popp, eBay's Senior Manager of Global Intelligence; Stephanie Stockwell, the manager of eBay's Global Intelligence Center ("GIC"); Veronica Zea, an eBay contractor who worked as an intelligence analyst in the GIC; Brian Gilbert, a Senior Manager of Special Operations for eBay's Global Security Team; and Philip Cooke, a supervisor of security operations for eBay's Global Security Team.

named "@Tue_Elei" with a skeleton mask as its avatar. Popp used
the account to send a direct message to Victim 1's Twitter account,
depicting @Tue_Elei as an angry eBay user who wrote, "whats your
problem w/ebay? You know that's how we pay rent." Dkt. 33 at ¶ 16e.
When Victim 1 did not respond, Popp used the @Tue_Elei account to
send her a series of obscene messages on August 9, 2019 that
included, "I guess im goin to have to get ur attention another way
bitch . . ." Id. at ¶ 16g. The conspirators then began sending
harassing deliveries to the Victims' home on August 9-10, 2019,
including live spiders, fly larvae, and a Halloween pig mask. They
also purchased subscriptions for pornographic magazines in Victim
2's name and had them delivered to the Victims' neighbors. On
August 10, 2019, Victim 1 received a direct Twitter message from
the @Tue_Elei account saying, "DO I HAVE UR ATTENION NOW????" Id.
at ¶ 16l.

On August 11, 2019, Baugh directed Harville to travel with
him to Boston for an "op" targeting the Victims, writing to
Harville that "I won't send the bosses texts, but I've been ordered
to find and destroy." Id. at ¶¶ 16n-o. Harville replied, "Copy.
Totally black[.] I'm deleting this now." Id. at ¶ 16o. Before
traveling to Boston, on August 12, 2019, Baugh directed his co-
conspirators to increase the harassing deliveries and messages.
From August 12-14, the group sent the Victims a book about grieving
the loss of a spouse, a funeral wreath, and live cockroaches. The

@Tue_Elei account posted angry public messages to Victim 1's Twitter account, including "UR stupid idkiot comments r pushin buyers away from ebay and hurtin families!!! STOP IT NOW!!" and "[name of Victim 1] wen u hurt our bizness u hurt our familys . . . Ppl will do ANYTHING 2 protect family!!!!" Id. at ¶¶ 16s–v.

On August 14, 2019, Baugh, Harville, Zea, Gilbert, and Popp met to plan the trip to Boston to surveil the Victims and install a GPS tracking device on their car. Baugh ordered the deliveries to stop to prevent interference with the operation. On August 15, 2019, Baugh, Harville, and Zea flew to Boston. That same day, Harville visited a website that could be used to monitor the Natick Police Department's ("NPD") live audio feed. Baugh, Harville, Popp, and Zea dialed into a conference call to communicate with each other and to monitor the NPD dispatch. Meanwhile, Baugh directed Stockwell to prepare a "Person of Interest" report ("POI Report") falsely listing the Victims as eBay's top persons of interest and told Stockwell, "In the narrative I need you to write that they have made direct threats to ebay, [eBay's CEO], and our employees (make it up.)" Id. at ¶ 16dd.

Baugh, Harville, and Zea drove to the Victims' home, but were unable to install the GPS device because the Victims' car was locked in their garage. On August 16, 2019, Harville purchased

tools for the purpose of breaking into the Victims' garage.[3] Baugh, Harville, and Zea continued their surveillance and followed in a rental car as Victim 2 drove around Natick, stopping when they came to believe he had spotted them. Baugh returned the rental car.

Baugh then directed that the harassing deliveries resume. On August 17, 2019, the conspirators ordered a pizza to be delivered to the Victims' home at 4:30am for payment upon delivery. The @Tue_Elei account posted Victim 1's name, age, address, and telephone number publicly and continued sending threatening and obscene messages taking credit for the deliveries. Some of the conspirators also posted an advertisement on Craigslist claiming to be a married couple seeking sexual partners at the Victims' home address. Later, on August 17, 2019, Harville returned to California and was replaced in Boston by Popp.

On August 18, 2019, Victim 2 was able to take a picture of the surveillance team's license plate as Baugh, Popp, and Zea followed him around Natick. The conspirators began taking steps to cover their tracks. Baugh forwarded Gilbert the POI Report and wrote in a WhatsApp message, "Just sent poi doc with [Victims] included. I had GIC send this to me last week in case we got stopped...that way would at least have something to show to PD."

---

[3] The indictment does not allege that Harville or anyone else ever broke into the Victims' garage.

Id. at ¶ 16ss. Baugh and Zea lied to an NPD detective who came to their hotel and attempted to call Zea; as Baugh described the encounter in a text message, "Detective called her cell. I answered just now as her husband and played dumb." Id. at ¶ 16ww. The conspirators also began compiling dossiers on the Victims that they could give to the NPD to make the Victims "look crazy." Id. at ¶ 16xx. On August 21, 2019, to confuse an NPD investigation into the use of a prepaid debit card to purchase the pizzas that had been delivered to the Victims, Baugh and Popp instructed Stockwell to create another list of eBay "persons of interest" in the San Francisco area to deflect attention from Zea, who had purchased the card. Baugh and Popp forwarded the document Stockwell created, named "Bay Area POIs_August 2019.docx" to Gilbert for use in a meeting with the NPD.

On August 22, 2019, Gilbert met with NPD officers and falsely told them that Zea and Harville had come to Boston to attend a conference, that Popp was Zea's supervisor, and that Zea had driven to Natick on her own to conduct a Person of Interest investigation regarding the victims. Harville and Baugh each also told similar falsehoods to eBay's internal investigators. For example, on August 23, 2019, Harville told them that he had travelled to Boston to attend a conference, that he had not gone to Natick, and that he had not interacted with the Victims or the NPD. That same day, Baugh told eBay's internal investigators that his team was not

responsible for the messages and deliveries and that they had gone to Natick to investigate the threats against the Victims. On August 26, 2019, Harville falsely told eBay investigators that he did not know whether Zea had gone to Natick and that he had not worked on a matter involving the Victims. Beginning on August 26, 2019, Baugh, Harville, and others deleted and attempted to delete data from their mobile phones that contained evidence of their alleged wrongdoing, including WhatsApp messages. On August 30, 2019, after receiving an email from an eBay investigator directing him to preserve relevant information and to turn in his eBay-issued cell phone, Harville messaged Baugh, asking, "Want me wipe it[?]" Id. at ¶ 16ppp. That day, Harville turned in his eBay-issued phone, from which significant data related to his trip to Natick had been deleted.

## LEGAL STANDARD

A defendant may move to dismiss an indictment for lack of specificity, see Fed. R. Crim. P. 12(b)(3)(B)(iii), or for failure to state an offense, see Fed R. Crim. P. 12(b)(3)(B)(v), among other defects. An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment need not say much to satisfy these requirements—it need only outline 'the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in

any future prosecution for the same offense." <u>United States v.
Stepanets</u>, 879 F.3d 367, 372 (1st Cir. 2018) (quoting <u>United States
v. Guerrier</u>, 669 F.3d 1, 3 (1st Cir. 2011)). "In other words, the
indictment may use the statutory language to describe the offense,
but it must also be accompanied by such a statement of facts and
circumstances as to inform the accused of the specific offense
with which he is charged." <u>United States v. Savarese</u>, 686 F.3d 1,
6 (1st Cir. 2012).

"[C]ourts must not inquire into the sufficiency of the
evidence underlying the indictment—for when 'a defendant seeks
dismissal of the indictment, the question is not whether the
government has presented enough evidence to support the charge,
but solely whether the allegations in the indictment are sufficient
to apprise the defendant of the charged offense.'" <u>Stepanets</u>, 879
F.3d at 372 (quoting <u>Savarese</u>, 686 F.3d at 7); <u>see also</u> <u>Guerrier</u>,
669 F.3d at 4 (noting that courts "routinely rebuff efforts to use
a motion to dismiss as a way to test the sufficiency of the evidence
behind an indictment's allegations"). Put another way, "[a]t the
indictment stage, the government need not 'show,' but merely must
allege, the required elements" and the allegations "are assumed to
be true." <u>United States v. Stewart</u>, 744 F.3d 17, 21 (1st Cir.
2014). And "[t]he government need not recite all of its evidence
in the indictment." <u>United States v. Innamorati</u>, 996 F.2d 456, 477
(1st Cir. 1993).

**DISCUSSION**

I.   **Baugh's Motion to Dismiss The Witness Tampering Charge**

The indictment charges Baugh with federal witness tampering in violation of 18 U.S.C. § 1512(b)(3) by engaging in misleading conduct toward a Natick Police Department Detective (Count 10) and an eBay investigator (Count 11). Baugh argues that these counts should be dismissed because the indictment only alleges that Baugh lied to the Natick Detective and an eBay investigator, and fails to allege a federal criminal investigation was underway or likely to occur, or that that Baugh intended to prevent any communications to federal law enforcement officers. These arguments are without merit.

The witness tampering statute proscribes "knowingly . . . engag[ing] in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the Unites States of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3). The term "misleading conduct" means "knowingly making a false statement" or "intentionally omitting information from a statement and thereby causing a portion of such statement to be misleading, or intentionally concealing a material fact, and thereby creating a

false impression by such statement." 18 U.S.C. § 1515(a)(3)(A)-(B).

The indictment alleges that on August 21, 2019, Baugh "made false statements to an NPD detective who came to the surveillance team's hotel to investigate Zea and HARVILLE's connection to the cyberstalking campaign," Dkt. 33 at ¶ 16vv. He explained to his co-conspirators in a text message, "Natick detective is in lobby looking for [Zea]. I've taken her away from hotel headed to airport...Detective called her cell. I answered just now as her husband and played dumb." Id. at ¶ 16ww. On August 23, 2019, Baugh "told eBay investigators his team was not responsible for harassing messages or deliveries and that his team had been in Natick to investigate threats to the Victims." Id. at ¶ 16jjj; see also id. at ¶ 16nnn. Tracking the statutory elements of the offence, the indictment alleges that these falsehoods were told "with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense, that is, the conspiracy described in Count One of this Indictment." Id. at ¶ 28.

Defendant's first argument is that "'[t]ampering' with a witness to keep him or her from talking is not the same as trying to spread misinformation or falsehoods through the witness." Dkt. 115 at 14. This argument is easily dispatched. As the government

points out, although silencing a witness is one way to violate
§ 1512, it is not the only way to engage in witness tampering.
Section 1512(b)(3) includes misleading state or private
investigators by not telling them the true circumstances to prevent
them from learning the actual facts and, thereby, precluding their
communicating those facts to federal officers. See United States
v. Veal, 153 F.3d 1233, 1245 (11th Cir. 1998), overruled on other
grounds by United States v. Chafin, 808 F.3d 1263, 1273 (11th Cir.
2015); see also United States v. Hawkins, 185 F. Supp. 3d 114, 125
(D.D.C. 2016) ("In providing this false information . . . Defendant
clearly intended to 'prevent,' 'hinder,' and 'delay' the
communication of the truthful information he had on these topics.")
(emphasis added). The First Circuit found a violation of
§ 1512(b)(3) when two jail guards fabricated an incident report
and made false statements to investigators from the Sheriff's
Department, and the report by the investigators, "containing the
false statements, was subsequently obtained by the FBI." United
States v. Bailey, 405 F.3d 102, 107 (1st Cir. 2005).

Next, Baugh argues that the indictment fails to allege a
reasonable likelihood that a federal investigation would occur,
and thus fails to allege an intent to hinder communication to "a
law enforcement officer . . . of the United States." The Government
responds that the indictment need not allege that communications
to law enforcement were reasonably likely.

[11]

The dispute is governed by Fowler v. United States, 563 U.S. 668 (2011) (addressing an analogous provision in the witness tampering statute, § 1512(g)(2)). See United States v. Johnson, 874 F.3d 1078, 1082 (9th Cir. 2017) ("Fowler's standard applies to the federal nexus requirement of § 1512(b)(3)."). Fowler held that § 1512 can cover a defendant who tampers with a witness "with the intent to prevent communication with law enforcement officers generally (i.e., with any and all law enforcement officers)." 563 U.S. at 673. The Supreme Court explained that where the defendant does not have particular law enforcement officers in mind, the Government must show a "reasonable likelihood" that "at least one relevant communication would have been made to a federal law enforcement officer." Id. at 677. The Government must show that "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." Id. at 678. But Section 1512(b)(3) does not require an existing or imminent federal investigation at the time of the defendant's misleading conduct. See Bailey, 405 F. 3d at 109.

District courts seem to agree that the Supreme Court did not add a new element to § 1512, but they disagree on whether the indictment must specifically allege reasonable likelihood of communication to a federal law enforcement officer. Compare United States v. Hamilton, no.15-0240, 2016 WL 1696136, at *4 (N.D. Ga. Apr. 28, 2016) ("Fowler did not introduce any new elements for a

conviction under § 1512. . . . While [Defendant] may be able to argue that Fowler's construction of § 1512 should be explained to the jury, this construction does not undermine the fact that all of the necessary elements of § 1512 are already present in the indictment.") with United States v. Ortiz, no.15-00594, 2016 WL 4239370, at *8 (N.D. Cal. Aug. 11, 2016) (acknowledging that the Supreme Court did not create a new element of the federal obstruction statute, but holding "[n]evertheless, the reasonable likelihood that there would be communication to federal law enforcement is an essential fact that must be in an indictment.")

In my view, because Fowler did not add a new statutory element but instead explained what the Government must "show" to prove that a defendant intended to prevent communications to a federal officer when a defendant has an intent to interfere with federal officers generally, the indictment need not allege a "reasonable likelihood" to pass muster.

Even if there were such a requirement to specifically allege reasonable likelihood, the government points out that the indictment states the relevant factual background, connected to the element, to show a reasonable likelihood of a federal investigation. See Dkt. 33 at ¶ 13 ("BAUGH, HARVILLE and their coconspirators took steps to conceal their harassment campaign from eBay investigators and state and federal authorities by, among other things, monitoring law enforcement communications, forging

[13]

records, lying to investigators, and destroying evidence.")
(emphasis added). This is enough to put the defendants on notice
of the charge that a federal investigation was reasonably likely,
that is "more than remote, outlandish, or simply hypothetical."
Fowler, 563 U.S. at 678. Again, the indictment need not recite all
the evidence, just apprise the Defendants of the charged conduct,
which this indictment does. See Innamorati, 996 F.2d at 477.

## II.   **Baugh's Motion to Dismiss the Falsification Charge**

Baugh also moves to dismiss Count 13, which alleges that he
falsified documents. The statute governing this count punishes
anyone who:

> knowingly alters, destroys, mutilates, conceals, covers
> up, falsifies, or makes a false entry in any record,
> document or tangible object with the intent to impede,
> obstruct, or influence the investigation of or proper
> administration of any matter within the jurisdiction of
> any department, or agency of the United States, . . . ,
> or in relation to or contemplation of any such matter or
> case.

18 U.S.C. § 1519.

Baugh argues that the indictment does not allege
"falsification" because it merely alleges that he created a true
document with the intent to mislead, not that he created a false
document. This mischaracterizes the allegations.

The indictment alleges that Zea, a co-conspirator, "purchased
prepaid debit cards . . . for use in ordering harassing
deliveries," Dkt. 33 at 16f, and that "one or more members of the

conspiracy ordered pizza to be delivered to the Victim's home at 4:30 a.m., for payment upon delivery." Id. at 16ll. As to the falsification, it alleges:

> On or about August 21, 2019, after learning that the NPD was investigating the use of a prepaid debit card to purchase pizzas for delivery to the Victims, BAUGH and Popp directed Stockwell to prepare a list of eBay "Persons of Interest" in the San Francisco Bay Area that could be used (as part of Gilbert's "dossier") to deflect attention from Zea.

Id. at 16eee. The document allegedly did not contain the actual persons of interest. The creation of a document with a material omission is a falsification within the meaning of § 1519. See United States v. Singh, 979 F.3d 697, 716 (9th Cir. 2020) (collecting cases in which courts of appeals assumed that a material omission of fact with the requisite intent satisfies § 1519). The allegation is sufficient to state an offense and apprise Baugh of the charged conduct.

### III. Harville's Motion to Dismiss[4]

As to his witness tampering charge, Harville argues that the indictment "fails to state the purported statements Harville made," Dkt. 117 at 13, but the indictment outlines several statements. See Dkt. 33 at ¶ 16iii ("On or about August 23, 2019, HARVILLE falsely told eBay investigators that he had traveled to

---

[4] To the extent Harville moves to dismiss on the same grounds raised by Baugh, the motion is denied.

Boston to attend a conference, he had not been in Natick, and he had not had any interaction with the Victims or the NPD."); id. at ¶ 16kkk ("On or about August 26, 2019, HARVILLE falsely told eBay investigators that he didn't know whether Zea had gone to Natick and that he had not worked on a matter involving the victims."); id. at ¶ 16mmm ("On or about August 27, 2019, HARVILLE falsely told eBay investigators that he had attended a conference in Boston with Zea."). The indictment contains sufficient factual allegations to apprise Harville of the misleading conduct he is charged with.

As to the charge of destruction of documents, Harville challenges his § 1519 count as not meeting the statutory jurisdictional requirement that he had an intent to impede "the investigation of . . . any matter within the jurisdiction of . . . the United States." The indictment sufficiently alleges an intent to impede investigation of a matter within the jurisdiction of the United States, that is "the conspiracy charged in Count One of [the] Indictment." Dkt. 33 at ¶ 34.

Harville also argues that the indictment is insufficient because it does not set out the specific contents and substantive text of the cell phone that related to a matter within the jurisdiction of the federal government. The indictment identifies the destroyed records as data "related to his trip to Natick," Dkt. 33 at ¶ 16qqq, and data that "evidenced the conspiracy"

charged in Count 1, "including WhatsApp messages," Id. at ¶ 16lll. This is sufficient. See United States v. Moyer, 674 F.3d 192, 203 (3d Cir. 2012) ("Although the government did not identify every omission or inclusion that rendered false the documents identified in the indictment, and thus did not, at the pre-trial stage, weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendant, the government was not required to do so.") (cleaned up). The indictment "sketches the factual predicate of the offense;" more specificity is not required to apprise the Defendant of the charged conduct. See United States v. Troy, 618 F.3d 27, 35 (1st Cir. 2010).

## ORDER

For the reasons stated above, the Court **DENIES** Defendants' motions to dismiss their indictments (Dkt. 114 and 116) for lack of specificity and failure to state an offense as to the obstruction counts.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge