UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )    Criminal Action
v.                                  )    No. 20-10263-PBS
                                    )
JIM BAUGH and DAVID HARVILLE,       )
                                    )
                Defendants.         )
_____)

## MEMORANDUM AND ORDER

March 30, 2022

Saris, D.J.

### INTRODUCTION

Defendants Jim Baugh and David Harville appeal Magistrate Judge Bowler's Order regarding their motions to compel discovery. (Dkt. 122). Baugh seeks to compel documents from the government related to his alleged past government work as an agent with an FBI handler. (Dkt. 77). Harville seeks statements from cooperating witnesses. (Dkt. 73). In their view, the Magistrate Judge Order improperly imposed a materiality standard intended for ex post appellate review. The parties agree that the pre-trial threshold laid out in the Local Rules and endorsed by several district courts, including Massachusetts, is more appropriate. Because the applicable legal standard does not change the outcome of either motion, the Court **DENIES** both motions to compel.

**BACKGROUND**

**I.   Pending Charges**

The indictment alleges that Defendants Jim Baugh and David Harville, along with other eBay employees and contractors, stalked, harassed, and intimidated a couple who publish an online newsletter that contained articles critical of eBay. The alleged conspiracy began around August 5, 2019, and continued through September 6, 2019. Baugh, Harville, and others at eBay "were aware that members of eBay's senior leadership perceived the Newsletter as a threat to eBay's public image." Dkt. 33 ¶ 10. The indictment further alleges that Baugh and Harville sought to obstruct an investigation into the charged conspiracy by lying to Natick police and an eBay investigator about his and his team's actions, as well as by destroying evidence.

The indictment charges Baugh with: (1) conspiracy to commit stalking through travel and facilities of interstate commerce, in violation of 18 U.S.C. § 371 (Count I); stalking through interstate travel, in violation of 18 U.S.C. §§ 2261A(1)(B) and 2 (Counts II and III); stalking through facilities of interstate commerce, in violation of 18 U.S.C. §§ 2261A(2)(B) and 2 (Counts VI and VII); witness tampering, in violation of 18 U.S.C. §§ 1512(b)(3) and 2 (Counts X and XI); and destruction, alteration, and falsification of records in a federal investigation, in

violation of 18 U.S.C. §§ 1519 and 2 (Counts XIII and XIV). The indictment includes parallel counts against co-Defendant Harville for all but two of the substantive charges (Counts IV, V, VIII, IX, XII, and XV).

## II. <u>Baugh's Prior Covert Operations as a Security Contractor</u>

Baugh states that he worked as a U.S. government agent involved in clandestine activities prior to his work with eBay. The government neither confirmed nor denied "that Baugh was a government source" but accepts the "characterization of his service" solely for purposes of the motion to compel. Dkt. 82 at 1 n.1. Baugh explains that while working as a private sector security contractor, he worked with a "handler" from the FBI on covert government operations. Dkt. 151 at 5. These operations involved "conducting physical and electronic surveillance, engaging in physical trespass, using false pretenses and fake identities, and gaining unauthorized access to private corporate computer systems, documentation, and resources, all in support of some greater good." <u>Id.</u> Baugh's FBI handler told him to "stick with his false 'cover story'" if he was ever questioned by local law enforcement about his assignments. Dkt. 151 at 6.

Baugh alleges that eBay "expected he would use strategies and tactics that he learned in service of the U.S. government to address what they characterized as the existential threat posed

by the Newsletter." Id. SVP Wymer emailed Baugh, copying General Counsel Huber, with his instructions:

> I genuinely believe these people are acting out of malice and ANYTHING we can do to solve it should be explored. Somewhere, at some point, someone chose to let this slide. It has grown to a point that is absolutely unacceptable. It's the "blind eye toward graffiti that turns into mayhem" syndrome and I'm sick about it. Whatever. It. Takes.

Dkt. 3-2, ¶ 49.

## III. **Requested Discovery**

### A. **Harville's Motion to Compel and Magistrate Judge Order**

Harville moved to compel the government to supplement its discovery production with respect to Request No. 2 and Request No. 4 in his discovery letter (Dkt. 60). Request No. 2 "seeks all '302' reports created by the Government concerning the subject matter of the indictments in the above-referenced matter." Dkt. 60 at 1. In his motion to compel, Harville narrowed the scope of Request No. 2 to "'302' reports concerning those individuals the Government has disclosed as cooperating witnesses who were interviewed pursuant to a proffer agreement and will be called as witnesses should the above-captioned matter proceed to trial." Dkt. 73 at 2 ¶ 4. "302s" are FBI reports of interviews. Request No. 4 "seeks early production of Jenks material, at a minimum, for all unindicted co-conspirators

identified in the Government's discovery disclosure letter dated December 21, 2021." Dkt. 73 at 2 ¶ 5.

On December 1, Magistrate Judge Bowler denied Harville's motion to compel. On appeal, Harville is only pursuing the cooperating witness portion of his motion, Request No. 2. Harville is not appealing the Order as to the "'302 reports for the unindicted co-conspirators given the Government's representation it does not intend to call them as witnesses should the above-captioned matter proceed to trial." Dkt. 147 at 1 n.3 (citing Dkt. 83 at 4 n.1).

**B. Baugh's Motion to Compel and Magistrate Judge Order**

Baugh moved to compel: (1) "Documents sufficient to identify activities performed by Mr. Baugh authorized by or in support of U.S. government intelligence or law enforcement agencies or operations from 2014 to 2018;" (2) "Documents concerning or comprising any agreements between Mr. Baugh and U.S. government agencies relating to the activities referenced in the previous request;" and (3) "Documents concerning or comprising written instructions or warnings provided to Mr. Baugh relating to the activities referenced in the previous two requests." Dkt. 62 ¶¶ 6-8, Dkt. 151 at 6. Magistrate Judge Bowler substantially denied Baugh's motion to compel. (Dkt. 122). The MJ Order did require the government to disclose any

responsive documents that Baugh actually signed as items "obtained from or belong[ing] to" him under Rule 16(a)(1)(E)(iii). Dkt. 122 at 35-36.

## **LEGAL STANDARD**

When reviewing a magistrate judge's order on nondispositive matters, this Court "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). Under the "contrary to law" prong, questions of law are reviewed de novo. United States v. Aboshady, 297 F. Supp. 3d 232, 235 (D. Mass. 2018), aff'd, 951 F.3d 1 (1st Cir. 2020) (citing PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010)). Factual findings are reviewed for clear error. Aboshady, 297 F. Supp. 3d at 235 (citing Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999)). Mixed questions of law and fact require a spectrum of deference, where "[t]he more fact intensive the question, the more deferential the level of review (though never more deferential than the clear error standard); the more law intensive the question, the less deferential the level of review." In re IDC Clambakes, Inc., 727 F.3d 58, 64 (1st Cir. 2013) (internal quotation marks omitted).

**DISCUSSION**

**I. Baugh's Motion to Compel**

Magistrate Judge Bowler concluded that Baugh's requested information was not "material to the defense" because it would not "enable [Baugh] to significantly 'alter the quantum of proof' on his intent to harass or intimidate the victims," Dkt. 122 at 24, or "proof regarding his 'state of mind' to 'engage in misleading conduct' with the intent to 'hinder, delay or prevent the communication' to a law enforcement officer." Id. at 28 (internal citations omitted). She determined that the requested discovery was not relevant to a necessity defense and that the requested discovery was not exculpatory under Brady because it would not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 34 (quoting DeCologero v. United States, 802 F.3d 155, 161 (1st Cir. 2015)).

On appeal, Baugh contends that portions of the Magistrate Judge Order were "contrary to law" because they "misstated the standards governing production of information that is 'exculpatory' and/or 'material to the defense,' and [they] misapplied those standards to the discovery requests and charges at issue in this case." Dkt. 151 at 9. Baugh argues that the Magistrate Judge Order erred in evaluating the pre-trial motion

through a post-conviction lens. The Order set out that "[p]retrial disclosure at this time must enable him 'significantly to alter the quantum of proof in his favor.'" Dkt. 122 at 20 (quoting United States v. Goris, 876 F.3d 40, 45 (1st Cir. 2017)).

In response to his opposition, the government agreed that the post-trial standard of the Order's cited appellate cases was inapt: "The government agrees with Baugh that a prospective assessment of relevancy and materiality is appropriate in evaluating his discovery request, rather than asking—as appellate courts do after the fact—whether withheld discovery would have altered the outcome of a case." Dkt. 161 at 8 n.5 (citing Goris as an example of post-trial review). Even accepting an ex ante standard of relevancy and materiality, the government urges that Baugh's request still falls short: "where records regarding Baugh's past service do nothing to make a fact of consequence more or less probable, Fed. R. Evid. 401, and would have no significant effect on the defense for the reasons stated above, they are not discoverable under Rule 16(a)(1)(E)." Dkt. 161 at 8 n.5. The government argues that Baugh's service is irrelevant to the offenses charged because it "draws a false equivalence between government-authorized activities in support of 'national security objectives' and Baugh's later actions as a private citizen." Dkt. 161 at 4. Moreover, the service Baugh

[8]

describes is irrelevant to a necessity defense, the government argues, given the elements of that defense are evaluated through the lens of objective reasonableness, not Baugh's subjective beliefs.

   *1. Applicable Legal Standard*

The parties agree that a prospective assessment of materiality merits a different review than the standard appellate courts apply ex post. "Trial courts considering materiality under Brady have identified a difficulty applying this formulation, crafted in the post-trial appellate context, to the pretrial discovery setting." United States v. Pesaturo, 519 F. Supp. 2d 177, 189 n.7 (D. Mass. 2007) (citing United States v. Safavian, 233 F.R.D. 12, 16-17 (D.D.C.2005) ("The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial."); Report of the Judicial Members of the Committee Established to Review and Recommend Revisions of the Local Rules of the United States District Court for the District of Massachusetts Concerning Criminal Cases, at 18 (Oct. 28, 1998) (noting that a "determination of the materiality of information helpful to the defendant may be more difficult to make reliably in the pretrial context than post-conviction")). The Ninth Circuit has said Brady materiality "necessarily is a

retrospective test, evaluating the strength of the evidence after trial has concluded." United States v. Olsen, 704 F.3d 1172, 1183 (9th Cir. 2013). "A trial prosecutor's speculative prediction about the likely materiality of favorable evidence, however, should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." Id. at 1183 n.3 (citing United States v. Agurs, 427 U.S. 97, 108 (1976) ("[T]here is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge.")).

Local Rule 116.2 provides:

> Exculpatory information is information that is material and favorable to the accused and includes, but is not necessarily limited to, information that tends to:
>
> (1) cast doubt on defendant's guilt as to any essential element in any count in the indictment or information;
>
> (2) cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief, that might be subject to a motion to suppress or exclude, which would, if allowed, be appealable pursuant to 18 U.S.C. § 3731;
>
> (3) cast doubt on the credibility or accuracy of any evidence that the government anticipates using in its case-in-chief; or
>
> (4) diminish the degree of the defendant's culpability or the defendant's Offense Level under the United States Sentencing Guidelines.

L.R. 116.2. This court has recently noted that "[t]he manner in which 'exculpatory information' is defined by Local Rule 116.2

[10]

avoids, to some extent, the difficulty trial courts have noted in making pretrial assessments of materiality under Brady, a concept which was crafted by appellate courts for post-trial application." United States v. Brissette, No. 16-CR-10137-LTS, 2020 WL 708034, at *4 n.8 (D. Mass. Feb. 12, 2020). Judge Sorokin explained:

> This Court's Local Rule 116.2 imposes specific disclosure obligation on prosecutors practicing in the District of Massachusetts. It requires the government to produce to the defendant "exculpatory information," which the rule defines as "information that is material and favorable to the accused and includes . . . information that tends to . . . cast doubt on [a] defendant's guilt as to any essential element in any count in the indictment or information." L.R. 116.2(a)(1). By so defining "exculpatory information," the Local Rules do not permit the withholding of "favorable" information tending to "cast doubt on" the government's ability to prove an element of the charged offense, simply because a trial prosecutor does not believe such information will change the outcome of the trial. Rather, information fitting within any of Local Rule 116.2(a)'s enumerated categories is, by definition, "material and favorable to the accused" for purposes of that rule.

Brissette, 2020 WL 708034, at *4.

*2. Whether Baugh's Service is Material and Exculpatory*

When Baugh's request is evaluated under this local rule pre-trial legal standard, the government still prevails. Baugh's alleged work as an authorized government agent with an FBI handler is different in kind from the work of a private employee working for a corporation. For example, law enforcement agencies

have policies and guidelines that sources must follow before carrying out their operations. Baugh does not allege that he reported to a government handler, nor does he claim that anyone at eBay could authorize illegal conduct. His government service ended over a year before the events that led to this case. Baugh "posits a world in which, by virtue of prior government service, he alone is authorized to identify threats and to commit crimes based solely on his assessment—indefinitely." Dkt. 161 at 6.

Baugh avers that this information is material to his state of mind and would negate specific intent: "Did he 'intend' to 'harass' the alleged victims . . .[o]r, instead, did he act in good faith, believing his actions to be appropriate and necessary to avoid greater harms?" Dkt. 77 at 7. Baugh suggests that this material would provide evidence that negates his intent, but really his argument is that this evidence justifies his behavior. In Dixon v. United States, 548 U.S. 1 (2006), the petitioner contended that she could not have formed the requisite mens rea of knowledge because she was acting under duress. See id. at 6. The Supreme Court rejected this argument, reasoning that "even if we assume that petitioner's will was overborne by the threats made against her and her daughters, she still knew that she was making false statements and knew that she was breaking the law by buying a firearm." Id. at 6 (emphasis in original). The Court explained:

> Like the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to "avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary mens rea was present."

Dixon, 548 U.S. at 7 (quoting United States v. Bailey, 444 U.S. 394, 402 (1980)). Therefore, the information Baugh seeks will not be material on the issue of specific intent.

Baugh presses the argument that documents pertaining to his government service are important for establishing the necessity, or "at least, the good-faith perceived necessity," of Baugh's actions. Dkt. 151 at 14 (emphasis in original). The elements of the affirmative defense of necessity are that a defendant "(1) was faced with a choice of evils and chose the lesser evil, (2) acted to prevent imminent harm, (3) reasonably anticipated a direct causal relationship between his acts and the harm to be averted, and (4) had no legal alternative but to violate the law." United States v. Lebreault-Feliz, 807 F.3d 1, 4 (1st Cir. 2015) (quoting United States v. Maxwell, 254 F.3d 21, 27 (1st Cir. 2001)). The necessity defense is objective. See United States v. Dixon, 901 F.3d 1170, 1181 (10th Cir. 2018) (emphasizing that "a particular defendant's subjective beliefs or perspectives are not controlling; they must be objectively reasonable"); United States v. Schoon, 971 F.2d 193, 197 (9th

Cir. 1991) ("The law could not function were people allowed to rely on their <u>subjective</u> beliefs and value judgments in determining which harms justified the taking of criminal action.") (emphasis in original); <u>United States v. Gottesfeld</u>, 319 F. Supp. 3d 548, 555 (D. Mass. 2018) ("Defendant's proffered evidence does not, however, show that it was objectively reasonable to believe that (1) Ms. Pelletier had been subjected to unlawful force, (2) there were no viable legal alternatives or (3) that defendant's actions would cause the desired outcome."); <u>see also</u> First Circuit Pattern Criminal Jury Instructions on Duress § 5.05 (2003)("To find [defendant] guilty, therefore, you must conclude beyond a reasonable doubt that when [defendant] participated in the [describe offense] (1) no such threat occurred or it was not immediate; or (2) [defendant] had a reasonable opportunity to escape or otherwise frustrate the threat but did not exercise it; or (3) [defendant] did not have a well-grounded belief that the threat would be carried out.").

The defendant has not made a proffer as to why his actions were objectively reasonable. The Court does not have a basis for determining that the requested documents are material to a necessity defense.

## II. Harville's Motion to Compel

Harville moves to compel the production of statements, relying almost exclusively on United States v. Snell, 899 F. Supp. 17, 19 (D. Mass. 1995) ("If the evidence at issue is conceded to be Brady material, then it must be turned over immediately."). Judge Bowler found Snell to be inapposite, as the government does not concede that the cooperating witness statements include any Brady material.

Harville argues correctly on appeal that a different "materiality" threshold must be applied under L.R. 116.2(a) than the post-trial Brady standard applied by Magistrate Judge Bowler. L.R. 116.2(a)(3) provides pretrial discovery of statements that "[c]ast doubt on the credibility or accuracy of any evidence that the government anticipates using in its case-in-chief." The government states that it has not yet identified Brady materials within the 302s and it offers to produce the 302s 90 days before trial. The government correctly points out that these cooperating witness statements are covered by the Jencks Act and it is not required to produce non-Brady materials any earlier. The government acknowledges that there are circumstances in which impeachment evidence "tend[s] to cast doubt . . . on [a] defendant's guilt as to any essential element in any count in the Indictment," but it argues that those

circumstances are not present here. Dkt. 162 at 2 (quoting United States v. Paladin, 748 F.3d 438, 443-44 (1st Cir. 2014)). The government must make a good faith assessment of its disclosure obligations under Brady. See Fed. R. Crim. P. 5(f). Defendant Harville has not proffered any information that the government has violated this obligation.

## ORDER

For the reasons stated above, the Court **DENIES** Defendants' motions to compel (Dkt. 73 and 77).

SO ORDERED.

/s/ PATTI B. SARIS  
Hon. Patti B. Saris  
United States District Judge