```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
                                    )   Criminal Action
v.                                  )   No. 20-10263-PBS
                                    )
JIM BAUGH and DAVID HARVILLE,       )
                                    )
               Defendants.          )
_____)
```

## MEMORANDUM AND ORDER

April 11, 2022

Saris, D.J.

### INTRODUCTION

Two former senior employees at eBay, Jim Baugh and David Harville, have been charged in a fifteen-count indictment for their alleged roles in an interstate campaign to harass and intimidate two Massachusetts residents and the ensuing cover up. As relevant here, Baugh has been charged with witness tampering under 18 U.S.C. §§ 1512(b)(3) and 2 as to an eBay investigator (Count 11); destruction, alteration, or falsification of records under 18 U.S.C. §§ 1519 and 2 by falsifying "Bay Area POIs_August 2019.docx" (Count 13); and destroying the contents of his eBay-issued cell phone (Count 14). Harville has been charged with witness tampering under 18 U.S.C. §§ 1512(b)(3) and 2 as to an eBay investigator (Count 12) and with the destruction, alteration, and falsification

1

of records in a federal investigation under 18 U.S.C. §§ 1519 and 2 by destroying the contents of his eBay-issued cell phone (Count 15).

Defendants have moved to dismiss for lack of venue on the ground that the indictment charges conduct that did not occur in Massachusetts. After hearing, the Court **DENIES** the motions to dismiss for lack of venue. (Dkt. 114 and 116).

## FACTUAL BACKGROUND

The indictment alleges the following facts.

Baugh was the Senior Director of Safety and Security at eBay, and Harville was the Director of Global Resiliency. In 2019, eBay's senior leadership became aware of an online newsletter (the "Newsletter") that it perceived as a threat to eBay's image. From August 5, 2019, through September 6, 2019, Baugh, Harville, and five other eBay employees[1] began harassing Victim 1 and Victim 2, a married couple living in Natick, Massachusetts who disseminated the Newsletter. Their goals were to distract the Victims from publishing the Newsletter, to change how the Victims covered eBay

---

[1] The five employees were Stephanie Popp, eBay's Senior Manager of Global Intelligence; Stephanie Stockwell, the manager of eBay's Global Intelligence Center ("GIC"); Veronica Zea, an eBay contractor who worked as an intelligence analyst in the GIC; Brian Gilbert, a Senior Manager of Special Operations for eBay's Global Security Team; and Philip Cooke, a supervisor of security operations for eBay's Global Security Team.

in the Newsletter, and to gather information to discredit the Victims.

The intimidation began with a series of online messages and home deliveries. On August 6, 2019, Popp created a Twitter profile named "@Tue_Elei" with a skeleton mask as its avatar. Popp used the account to send a direct message to Victim 1's Twitter account, depicting @Tue_Elei as an angry eBay user who wrote, "whats your problem w/ebay? You know that's how we pay rent." Dkt. 33, ¶ 16e. When Victim 1 did not respond, Popp used the @Tue_Elei account to send her a series of obscene messages on August 9, 2019, that included, "I guess im goin to have to get ur attention another way bitch." Id., ¶ 16g. The conspirators then began sending harassing deliveries to the Victims' home on August 9-10, 2019, including live spiders, fly larvae, and a Halloween pig mask. They also purchased subscriptions for pornographic magazines in Victim 2's name and had them delivered to the Victims' neighbors. On August 10, 2019, Victim 1 received a direct Twitter message from the @Tue_Elei account saying, "DO I HAVE UR ATTENION NOW????" Id., ¶ 16l.

On August 11, 2019, Baugh directed Harville to travel with him to Boston for an "op" targeting the Victims, writing to Harville that "I won't send the bosses texts, but I've been ordered to find and destroy." Id., ¶¶ 16n-o. Harville replied, "Copy. Totally black[.] I'm deleting this now." Id., ¶ 16o. Before

3

traveling to Boston, on August 12, 2019, Baugh directed his co-conspirators to increase the harassing deliveries and messages. From August 12-14, the group sent the Victims a book about grieving the loss of a spouse, a funeral wreath, and live cockroaches. The @Tue_Elei account posted angry public messages to Victim 1's Twitter account, including "UR stupid idkiot comments r pushin buyers away from ebay and hurtin families!!! STOP IT NOW!!" and "[name of Victim 1] wen u hurt our bizness u hurt our familys . . . Ppl will do ANYTHING 2 protect family!!!!" Id., ¶¶ 16s–v.

On August 14, 2019, Baugh, Harville, Zea, Gilbert, and Popp met to plan the trip to Boston to surveil the Victims and install a GPS tracking device on their car. Baugh ordered the deliveries to stop to prevent interference with the operation. On August 15, 2019, Baugh, Harville, and Zea flew to Boston. That same day, Harville visited a website that could be used to monitor the Natick Police Department's ("NPD") live audio feed. Baugh, Harville, Popp, and Zea dialed into a conference call to communicate with each other and to monitor the NPD dispatch.

Baugh, Harville, and Zea drove to the Victims' home, but were unable to install the GPS device because the Victims' car was locked in their garage. On August 16, 2019, Harville purchased

4

tools for the purpose of breaking into the Victims' garage.[2] Baugh, Harville, and Zea continued their surveillance and followed in a rental car as Victim 2 drove around Natick, stopping when they came to believe he had spotted them. Baugh returned the rental car.

On August 17, 2019, Baugh (in Massachusetts) directed Stockwell (in California) to prepare a "Person of Interest" report ("POI Report") falsely listing the Victims as eBay's top persons of interest and told Stockwell, "In the narrative I need you to write that they have made direct threats to ebay, [eBay's CEO], and our employees (make it up.)" Id., ¶ 16dd. Baugh then directed that the harassing deliveries resume. The conspirators ordered a pizza to be delivered to the Victims' home at 4:30am for payment upon delivery. The @Tue_Elei account posted Victim 1's name, age, address, and telephone number publicly and continued sending threatening and obscene messages taking credit for the deliveries. Some of the conspirators also posted an advertisement on Craigslist claiming to be a married couple seeking sexual partners at the Victims' home address. Later, on August 17, 2019, Harville returned to California and was replaced in Boston by Popp.

On August 18, 2019, Victim 2 was able to take a picture of the surveillance team's license plate as Baugh, Popp, and Zea

---

[2] The indictment does not allege that Harville or anyone else ever broke into the Victims' garage.

followed him around Natick. The conspirators began taking steps to cover their tracks. Baugh forwarded Gilbert the POI Report and wrote in a WhatsApp message, "Just sent poi doc with [Victims] included. I had GIC send this to me last week in case we got stopped...that way would at least have something to show to PD." Id., ¶ 16ss. Baugh and Zea lied to an NPD detective who came to their hotel in Massachusetts and attempted to call Zea; as Baugh described the encounter in a text message, "Detective called her cell. I answered just now as her husband and played dumb." Id., ¶ 16ww. The conspirators also began compiling dossiers on the Victims that they could give to the NPD to make the Victims "look crazy." Id., ¶ 16xx. On August 21, 2019, to disrupt an NPD investigation into Zea's prepaid debit card, Baugh and Popp instructed Stockwell to create another list of eBay "persons of interest" in the San Francisco area. Baugh and Popp forwarded the document Stockwell created, named "Bay Area POIs_August 2019.docx" to Gilbert for use in a meeting with the NPD.

On August 22, 2019, Gilbert met with NPD officers and falsely told them that Zea and Harville had come to Boston to attend a conference, that Popp was Zea's supervisor, and that Zea had driven to Natick on her own to conduct a Person of Interest investigation regarding the victims[3]. Harville and Baugh each also told similar

---

[3] According to Baugh's brief, on August 23, 2019, Baugh returned to California. Dkt. 115 at 11.

6

falsehoods to eBay's internal investigators. For example, on August 23, 2019, Harville told them that he had travelled to Boston to attend a conference, that he had not gone to Natick, and that he had not interacted with the Victims or the NPD. That same day, Baugh told eBay's internal investigators that his team was not responsible for the messages and deliveries and that they had gone to Natick to investigate the threats against the Victims. On August 26, 2019, Harville falsely told eBay investigators that he did not know whether Zea had gone to Natick and that he had not worked on a matter involving the Victims. Beginning on August 26, 2019, Baugh, Harville, and others deleted and attempted to delete data from their mobile phones in California that contained evidence of their alleged wrongdoing, including WhatsApp messages. On August 30, 2019, after receiving an email from an eBay investigator directing him to preserve relevant information and to turn in his eBay-issued cell phone, Harville messaged Baugh, asking, "Want me wipe it[?]" Id., ¶ 16ppp. That day, Harville turned in his eBay-issued phone, from which significant data related to his trip to Natick had been deleted.

Additionally, the indictment alleges that Defendants' conduct for each count at issue took place "in the District of Massachusetts and elsewhere." Dkt. 33, ¶¶ 28, 30, 32, 34.

7

**DISCUSSION**

I. **Legal Standard**

   A. **Motion to Dismiss Standard**

On a motion to dismiss an indictment, "the allegations of the indictment and the unchallenged statement of proof of the prosecutor must be accepted as true." United States v. Ferris, 807 F.2d 269, 271 (1st Cir. 1986) (citing United States v. Sampson, 371 U.S. 75, 78-79 (1962)). "A court considering a pretrial motion to dismiss for improper venue must take as true the allegations in the indictment." United States v. Abbas, No. CR 20-10016-LTS, 2021 WL 784095, at *2 (D. Mass. Mar. 1, 2021) (citing United States v. Jensen, 93 F.3d 667, 669 (9th Cir. 1996)).

   B. **Foundational Venue Principles**

Article III of the Constitution requires that criminal defendants "must be tried in the state or district in which the offense 'shall have been committed.'" United States v. Seward, 967 F.3d 57, 60 (1st Cir. 2020) (quoting U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI); see also Fed. R. Crim. P. 18 ("[T]he government must prosecute an offense in a district where the offense was committed."). "If the statute under which the defendant is charged contains a specific venue provision, that provision must be honored (assuming, of course, that it satisfies the constitutional minima)." United States v. Salinas, 373 F.3d 161,

164 (1st Cir. 2004) (citing Travis v. United States, 364 U.S. 631, 635 (1961)).

Where there is no venue provision, the "locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Salinas, 373 F.3d at 164 (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). To determine a locus delicti, courts "identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999).

Where an offense "span[s] multiple jurisdictions, or 'where a crime consists of distinct parts which have different localities[,] the whole may be tried where any part can be proved to have been done.'" Seward, 967 F.3d at 60 (citing Rodriguez-Moreno, 526 U.S. at 281). Continuing offenses that begin "in one district and [are] completed in another, or [are] committed in more than one district, may be . . . prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237.

To determine where venue can be appropriate, courts focus on "the conduct comprising the offense," but do not focus exclusively on "action verbs" in statutes to identify the conduct at issue. Seward, 967 F.3d at 61 (citations omitted). "[R]equiring the presence of an action verb to define the nature of the crime could

9

sweep out conduct not enumerated by such action language but nonetheless essential to the offense." Id. (citing Rodriguez-Moreno, 526 U.S. at 280). Additionally, cases should not be brought in unforeseeable, far-flung districts that are unrelated to the underlying conduct. See Salinas, 373 F.3d at 170. A defendant cannot be charged in a district without a meaningful connection to the allegations. United States v. Santiago, 83 F.3d 20, 24 (1st Cir. 1996).

## II. Analysis

In Defendants' view, venue under §§ 1512(b)(3) and 2 can only be proper in California, where they allegedly engaged in the intentionally misleading conduct to the eBay internal investigators with the intent to "hinder, delay, or prevent the communication to a law enforcement officer . . . of the United States." Similarly, they argue that venue for §§ 1519 and 2 can only be proper in California where the destruction and falsification allegedly occurred.

The government responds that the indictment charges Baugh and Harville with taking actions "in the District of Massachusetts and elsewhere," and that this allegation alone is sufficient to satisfy the pleading requirement of venue unless a venue defect is evident on the face of the indictment. See United States v. Novak, 443 F.3d 150, 161-162 (2d. Cir. 2006).

Moreover, the government argues that venue on the witness tampering charges is appropriate under the specific venue provision in 18 U.S.C. § 1512(i). With respect to venue for the destruction of evidence counts charging violations under §1519, the government argues venue is proper under basic venue principles in the district where Defendants sought to affect the investigation. I address each count below.

### A. Count 11 (Witness Tampering and Aiding and Abetting by Baugh)

The indictment alleges that Baugh engaged in misleading conduct toward an internal eBay investigator "from on or about August 20, 2019, through on or about August 30, 2019." Dkt. 33, ¶ 28. The government alleges he engaged in some misleading conduct from August 20 through the August 22, when he states he was still in Massachusetts. Accordingly, a defect in venue is not apparent on the face of the indictment, and the motion to dismiss Count 11 is denied.

### B. Count 12 (Witness Tampering and Aiding and Abetting by Harville)

The indictment alleges that Harville engaged in misleading conduct to the eBay investigator with intent to "hinder, delay, and prevent the communication to a law enforcement officer of the United States" about commission of the conspiracy to stalk Victims 1 and 2. It charges witness tampering and aiding and abetting in

11

violation of 18 U.S.C. §§ 1512(b)(3) and 2. The government does not dispute that Harville engaged in the misleading conduct in California.

Rather, the government argues that venue is appropriate under the specific venue provision which provides: "a prosecution under this section [§ 1512] . . . may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred." 18 U.S.C. § 1512(i). Since the indictment charges a violation of § 1512(b)(3), this special venue provision applies.[4] The more difficult question is: Where did the conduct constituting the alleged offense occur?

The government takes the position that venue is proper in Massachusetts because Harville attempted to mislead eBay internal investigators in California to prevent information about the conspiracy from getting to the Massachusetts law enforcement officers conducting the investigation into the harassment campaign. Dkt. 33, ¶¶ 15r, 16iii, 30.

---

[4] The government and Defendants dispute whether a government investigation is an "official proceeding" under the first prong of § 1512(i). Some courts have held that investigations do not constitute official proceedings. See United States v. Ermoian, 752 F.3d 1165, 1171 & n.5 (9th Cir. 2013); United States v. Ramos, 537 F.3d 439, 460-64 & n.17 (5th Cir. 2008); but see United States v. Gonzalez, 922 F.2d 1044, 1056 (2d Cir. 1991). I need not resolve this issue here.

In an analogous situation, a district court in Florida rejected an argument to dismiss for lack of venue where the defendant engaged in misleading conduct in one district with the intent to adversely impact an FBI investigation in another district where she was charged. See United States v. Salman, No. 6:17-cr-18-Orl-40KRS, 2017 WL 3034041, at *3-4 (M.D. Fla. July 18, 2017) (holding § 1512(b)(3) violations are continuing crimes because the defendant must "willfully engage[] in misleading conduct toward another person . . . [with an intent to have] the continuing effect of adversely impacting a . . . prosecution in [another] district."); see also Gonzalez, 922 F.2d at 1055-56 (holding a witness tampering charge could be brought in the district where an investigation is ongoing even though the tampering conduct happened elsewhere); United States v. Baldeo, No. 1:(S1) 13 Cr. 125(PAC), 2013 WL 5477373, at *5 (S.D.N.Y. October 2, 2013) ("Laying venue where an investigation is underway is proper to the extent that acts of obstruction or witness tampering 'interfere[d] with the government's attempts to ferret out and prosecute wrongdoing' in that venue.") (quoting Gonzalez, 922 F.2d at 1055-56).

While there is no First Circuit case on point, Salinas provides a useful analytic framework. Salinas dealt with a fraudulent passport application in violation of 18 U.S.C. § 1542. 373 F.3d at 163. Defendant submitted a false passport application

13

at a passport application intake station in New York. Id. The passport was ultimately sent to be processed in New Hampshire, where Defendant was indicted. Applying general venue principles, the First Circuit held that the indictment must be dismissed for lack of venue. Id. at 165. The court began with the conduct elements. The court observed that "a violation requires only two things: (i) the making of a false statement, (ii) with the intent to secure the issuance of a passport." Id. at 165. Because defendants violate the statute "at the moment [they] make[] a knowingly false statement . . . with a view toward procuring a passport," the court reasoned that venue was only appropriate where the statement was made. Id. at 165. The Salinas court was concerned that "[a]llowing specific intent to continue a crime into any district in which that intent has consequences would significantly expand the range of permissible venues" and "[t]his would be unwarranted because such an expansion would effectively authorize the government to choose a venue of its liking." 373 F.3d at 169.

Relying on Salinas, both Defendants argue that § 1512(b)(3) is a point-in-time offense, not a continuing one, and the offense was complete when the misleading conduct with the specific intent to impede was complete. But some courts have held that when determining venue, courts can look to "where the offense's effects were felt" even though harm is not an element of the offense. See, e.g., United States v. Ringer, 300 F.3d 788, 791–92 (7th Cir. 2002)

(holding that venue was appropriate in a prosecution under 18 U.S.C. § 1001 in the targeted district given the "strong link" to Defendant's conduct). The First Circuit distinguished Salinas from cases like Ringer by pointing to the materiality requirement in the statute at issue in Ringer. The court explained: "When materiality is a critical component of the statutory definition, it makes perfect sense to consider the crime as continuing into the district in which the effects of the false statement are felt." 373 F.3d at 167 (citing Ringer, 300 F.3d at 790-92).

While it is a novel question, I conclude that venue is proper under § 1512(i) in Massachusetts because the misleading conduct was targeted at impeding the investigation by law enforcement officers of the federal offense in Massachusetts, even if the actual misleading conduct occurred in California. Massachusetts is not a far-flung district that is unrelated to the underlying conduct. Instead, Massachusetts has a meaningful, strong, defendant-driven link to the allegations.

### C. Count 13 (Destruction, Alteration, and Falsification of Records in a Federal Investigation; Aiding and Abetting by Baugh)

In Count 13, Baugh was charged with falsification or aiding and abetting falsification of "Bay Area POIs_August 2019.docx" on August 21, 2019, in violation of 18 U.S.C. § 1519. Because Baugh was in Massachusetts until August 23, any defect in venue in the

District of Massachusetts is not apparent on the face of the indictment.

### D. Counts 14 and 15 (Destruction, Alteration, and Falsification of Records in a Federal Investigation; Aiding and Abetting by Baugh and Harville)

Counts 14 and 15 allege violations of 18 U.S.C. §§ 1519 and 2. In count 14, Baugh is charged with destroying records on his eBay-issued cell phone between August 26 and August 30, 2019. In count 15, Harville is charged with destruction of records on his eBay-issued cell phone on August 30, 2019.

Because § 1519 contains no venue provision, this Court looks to the locus delicti based on the "nature of the crime alleged and the location of the act or acts constituting it." Seward, 967 F.3d at 60. This requires an examination of the statutory language. Section 1519 reads:

> Whoever <u>knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry</u> in any record, document, or tangible object <u>with the intent to impede, obstruct, or influence</u> the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (emphasis added).

Baugh argues that venue is only proper where Baugh destroyed his cell phone records. Defendants again assert that § 1519 is a point-in-time offense and not a continuing offense. In other words,

16

the crime is complete when the charged records are destroyed with the intent to obstruct the investigation. Therefore, Defendants argue that venue is not proper in the district where the affected investigation is located.

Even if the destruction of records occurred in California, the government argues that the specific intent was to impede and obstruct a federal investigation in Massachusetts. It again argues the Massachusetts investigation was the alleged target of the crime and has a meaningful link to the crime.

I conclude that Massachusetts has a strong link to the alleged offense because that is where the Defendants allegedly intended to interfere with the investigation. Venue is proper for the reasons stated above.

## ORDER

For the reasons set forth above, the Court **DENIES** the motions to dismiss for lack of venue with respect to Counts 11, 12, 13, 14, and 15.

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge