1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3

4     United States of America,      )
                    Plaintiff,        )
5                                     )
                                      )
6     vs.                             )    Case No. 20-cr-10263-PBS
                                      )
7                                     )
      Jim Baugh, also known as        )
8     James Baugh,                    )
                    Defendant.        )
9

10

      BEFORE:   The Honorable Patti B. Saris
11

12

13

14

15

16                          Remote Rule 11

17                          April 25, 2022

18

19

20

21

22

                         Marianne Kusa-Ryll, RDR, CRR
23                         Official Court Reporter
                         United States District Court
24                       595 Main Street, Room 514A
                     Worcester, Massachusetts 01608-2093
25                     508-929-3399 justicehill@aol.com
                     Mechanical Steno - Transcript by Computer

1    APPEARANCES (REMOTELY):

2    United States Attorney's Office
     Seth B. Kosto, Assistant United States Attorney
3    1 Courthouse Way, Suite 9200
     Boston, Massachusetts 02210
4    on behalf of the Government

5    Fick & Marx LLP
     William W. Fick, Esquire
6    24 Federal Street
     4th Floor
7    Boston, Massachusetts 02110
     on behalf of the Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          (The following proceedings were held remotely before

3   the Honorable Patti B. Saris, United States District Judge,

4   United States District Court, District of Massachusetts, on

5   April 25, 2022.)

6          THE CLERK:  The Court calls Criminal Action 20-10263,

7   United States versus Jim Baugh.

8          Would counsel please identify themselves.

9          MR. KOSTO:  Good morning, your Honor.  Seth Kosto for

10  the United States.

11         MR. FICK:  Good morning, your Honor.  William Fick for

12  Mr. Baugh.  He is here as well via video at our request.  He is

13  waiving his presence in the courtroom for this change of plea

14  hearing.

15         THE COURT:  Thank you.

16         May I ask, Miss Alice, who are you?

17         THE CLERK:  She's supposed to shut off -- Clary, can

18  you shut off her video, please.

19         THE COURT:  Okay.  All right.  All right.  So why are

20  we hear today, Mr. Fick?

21         MR. FICK:  We're here for a Rule 11 hearing for

22  Mr. Baugh to change his plea to the counts of the indictment

23  charging him.

24         THE COURT:  Mr. Baugh, can you -- it's Baugh or Baugh?

25         THE DEFENDANT:  It's Baugh.

1          THE COURT:  Baugh.  Mr. Baugh, can you hear me and see

2    me?

3          THE DEFENDANT:  I can.

4          THE COURT:  Okay.  Thank you.

5          Do you waive your right to be here in Massachusetts

6    in person in the courtroom?

7          THE DEFENDANT:  I do.

8          THE COURT:  Okay.  All right.  So do you want to put

9    him under oath and take the plea, Maryellen.

10          THE CLERK:  Yes, I will.

11          THE COURT:  Thank you.

12          THE CLERK:  Sir, can you raise your right hand.

13          Do you solemnly swear the answers you shall give to

14    this Court will be the truth, the whole truth, and nothing but

15    the truth, so help you God?

16          THE DEFENDANT:  I do.

17          THE CLERK:  Okay.  Thank you.

18          Count One:  Conspiracy to commit stalking through

19    interstate travel and through facilities of interstate commerce

20    all in violation of Title 18 U.S.C. Section 371.

21          How do you plead to Count One, guilty or not guilty?

22          THE DEFENDANT:  Guilty.

23          THE CLERK:  Okay.  Counts Two and Three:  Stalking

24    through interstate travel; aiding and abetting, all in

25    violation of Title 18 U.S.C. Section 2261A(1) and 2.

1          How to you plead to Counts Two and Three, guilty or

2     not guilty?

3               THE DEFENDANT:  Guilty.

4               THE CLERK:  Thank you.

5               As to Counts Six and Seven:  Stalking through

6     facilities of interstate commerce and aiding and abetting, all

7     in violation of Title 18 U.S.C. Section 2261A(2) and 2.

8               How to you plead to Counts Six and Seven, guilty or

9     not guilty?

10              THE DEFENDANT:  Guilty.

11              THE CLERK:  Thank you.

12              As to Counts Ten and Eleven:  Witness tampering and

13    aiding and abetting, all in violation of Title 18 U.S.C.

14    Section 1512(b)(3) and 2.

15              How do you plead to Counts Ten and Eleven, guilty or

16    not guilty?

17              THE DEFENDANT:  Guilty.

18              THE CLERK:  Okay.  And as to Counts Thirteen and

19    Fourteen:  Destruction, altercation, and falsification [sic] of

20    records in a federal investigation; and aiding and abetting,

21    all in violation of Title 18 U.S.C. Section 1519 and 2.

22              How do you plead to Counts Thirteen and Fourteen,

23    guilty or not guilty?

24              THE DEFENDANT:  Guilty.

25              THE CLERK:  Thank you.

1            That's it, Judge.

2            THE COURT:  Thank you.

3            Sir, do you understand that you are now under oath and

4    if you answer any of my questions falsely, your answers can

5    later be used against you in another prosecution for perjury or

6    making a false statement?

7            THE DEFENDANT:  I understand.

8            THE COURT:  What is your full name?

9            THE DEFENDANT:  Jim Lance Baugh.

10           THE COURT:  Do you go by any other names?

11           THE DEFENDANT:  I go by Jim.

12           THE COURT:  Jim?

13           THE DEFENDANT:  Yeah.

14           THE COURT:  No -- no false names or aliases?

15           THE DEFENDANT:  No.  No.

16           THE COURT:  All right.  Where were you born?

17           THE DEFENDANT:  I was born in Pine Bluff, Arkansas.

18           THE COURT:  And how far did you go in school?

19           THE DEFENDANT:  I completed graduate school.

20           THE COURT:  Where?

21           THE DEFENDANT:  University of Oklahoma.

22           THE COURT:  All right.  And what was the specialty?

23           THE DEFENDANT:  I have a master's of public

24    administration.

25           THE COURT:  Okay.  Thank you.

1          Did you -- how old are you?

2          THE DEFENDANT:  I'm 47.

3          THE COURT:  All right.  And have you ever been treated

4    for any mental health issues?

5          THE DEFENDANT:  I have not.

6          THE COURT:  Have you taken any unlawful drugs in the

7    last 48 hours?

8          THE DEFENDANT:  I have not.

9          THE COURT:  Have you had anything to drink in the last

10   48 hours?

11         THE DEFENDANT:  I have not.

12         THE COURT:  Yeah -- alcohol -- excuse me.

13         THE DEFENDANT:  No, no alcohol.

14         THE COURT:  All right.  And have you had enough -- I

15   know you worked a lot with Mr. Fick, and I'm sure people in his

16   office.

17         Do you feel as if you've had enough time to discuss

18   this plea with him?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand that you're not -- that

21   you are pleading guilty, as I understand it, without a plea

22   agreement?

23         THE DEFENDANT:  I do.

24         THE COURT:  And do you feel in any way as if your

25   attorney has pressured you into pleading guilty?

1          THE DEFENDANT:  I do not.

2          THE COURT:  Has anyone pressured you into pleading

3     guilty?

4          THE DEFENDANT:  No.

5          THE COURT:  Has anyone threatened you in any way?

6          THE DEFENDANT:  No.

7          THE COURT:  Have there been any promises made to

8     you --

9          THE DEFENDANT:  No.

10         THE COURT:  -- to get you to induce this plea?

11         THE DEFENDANT:  No.

12         THE COURT:  Let me ask counsel, because sometimes

13    defendants aren't as aware.

14         Are there any representations or promises with respect

15    to sentencing or any other issue regarding this case?

16         MR. KOSTO:  The government has made none, your Honor.

17         THE COURT:  Excuse me.

18         MR. FICK:  No, your Honor.

19         THE COURT:  Okay.

20         MR. KOSTO:  The government has made no promises or

21    representations regarding sentencing.

22         THE COURT:  Okay.  Now, to the government at this

23    point, please state the penalties that could be imposed.

24         MR. KOSTO:  Yes, your Honor, on Count One, which is

25    the conspiracy count under 18 U.S.C. Section 371, that's a

maximum term of imprisonment of five years; a $250,000 fine; a

maximum of three years supervised release; and as to each of

these counts, your Honor, restitution and forfeiture are

applicable.

Counts Two and Three, which charge stalking through

interstate travel also carries a maximum term of five years per

count; a $250,000 fine; and three years of supervised release

maximum.

Counts Six and Seven, which are the stalking through

facilities of interstate commerce also for each count carries a

maximum term of five years imprisonment; a $250,000 fine; and

three years of supervised release per count, although the

supervised release years generally run concurrently.

Counts Ten and Eleven, which charge witness tampering

in violation of 18 U.S.C., Section 1512(b)(3), each carry a

potential maximum term of imprisonment of 20 years in prison; a

$250,000 fine; again three years maximum supervised release.

And Counts Thirteen and Fourteen, each of which

charges falsification of documents in violation of 18 U.S.C.

Section 1519 also carries a maximum term of 20 years

imprisonment per count; a $250,000 fine; and a maximum of three

years supervised release.

THE COURT:  So there are no mandatory minimums, right?

MR. KOSTO:  There are no mandatory minimums, your

Honor.

1          THE COURT:  I know this is preliminary, and we'll have

2     to wait for the probation department, but do you have a

3     preliminary calculation of the United States Sentencing

4     Commission guideline ranges?

5          MR. KOSTO:  Your Honor, we estimate the -- the low end

6     of the advisory guidelines range to be 57, and the high end to

7     be 71 months with a Criminal History Category of I, although we

8     have yet to go through the PSR process.

9          THE COURT:  Is that including acceptance of

10    responsibility?

11         MR. KOSTO:  That does include a -- that does include

12    three points for acceptance, your Honor.

13         THE COURT:  Thank you.

14         Mr. Fick, do you have a similar guideline range

15    calculation, although I'm sure you will be seeking, you know,

16    departures and variances.

17         MR. FICK:  Sure.  There's one sort of disputed

18    enhancement.  You know, there's several cases that have already

19    been -- several cases with a similar guideline basis have been

20    brought in this case, and the -- there is one in particular

21    enhancement application that has a two-point swing that is

22    disputed, and so we would -- I think are likely to contend the

23    range is 46 to 57, not 57 to 71.

24         I think -- I believe Judge Burroughs is the only

25    person who has addressed the issue, and I think she kind of

1    punted on it, because the sentence she gave was below the range

2    anyway.  Mr. Kosto can correct me if that's incorrect.  But in

3    any event that will be laid out in the PSR in the objections

4    and sentencing memos.

5              THE COURT:  All right.  So there is a bit of a dispute

6    of the appropriate guideline range, do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Okay.  And -- and do you understand though

9    that what will happen is I will send this to the probation

10   department, which will calculate a sentencing guideline range,

11   look at the offense conduct as well as information about you as

12   a human being and your personal history, and they'll calculate

13   a guideline range.

14             In a sentencing hearing, you, your lawyer, very

15   knowledgeable in these things, can object if he thinks the

16   guideline range is wrong.  The government's also quite

17   knowledgeable.  They can object if the government doesn't

18   believe in the guideline range, and at that point I will rule

19   on the objections.

20             Do you understand that?

21             THE DEFENDANT:  I do.

22             THE COURT:  And then at that point, both sides could

23   ask for a variance or a departure because you're pleading

24   without a plea agreement; do you understand that?

25             Both sides are free to ask for departures or variances

1     under the guidelines; do you understand that?

2          THE DEFENDANT:  I do.

3          THE COURT:  And at that point what I will do is I will

4     impose a sentence.  If you disagree with the sentence, you can

5     appeal the sentence, but you can't at that point withdraw your

6     guilty plea.

7          Do you understand that?

8          THE DEFENDANT:  I understand.

9          THE COURT:  Okay.  And do you understand that by

10    pleading guilty you're essentially -- your counsel, as well as

11    I guess together with the codefendant filed many, many motions,

12    which I've ruled on I think most of them; and at this point,

13    that means you're basically giving up your claims with respect

14    to those motions.

15         Do you understand that?

16         THE DEFENDANT:  I do.

17         MR. FICK:  Your Honor, if I could just interject.  The

18    one thing that I think we would argue is not moot is the

19    lingering issues under the subpoena motion to eBay, because

20    some of that information could be pertinent to sentencing.

21         THE COURT:  You know, I was going to ask you about

22    that.

23         MR. FICK:  So we're not --

24         THE COURT:  So I haven't yet --

25         MR. FICK:  Right.

1          THE COURT:  -- ruled on that, I believe, and I was

2     going to ask you precisely that question.

3          So let me just at least at this point say I've ruled

4     on the motion to dismiss for multiplicity, for failure to state

5     a claim; I've ruled on the motion to compel and the motion

6     involving venue.

7          The one outstanding thing is that motion to quash.  So

8     I'll -- can I get to that later?  I don't think that's critical

9     right now.

10          MR. FICK:  Of course, of course, we have plenty of

11     time until sentencing, your Honor.

12          THE COURT:  Okay.  Okay.

13          MR. FICK:  I just want to be clear we're not waiving

14     that today.

15          THE COURT:  I get that.  Thank you.

16          MR. FICK:  Thank you.

17          THE COURT:  Other than that one issue Mr. Fick just

18     raised do you understand that you're waiving all those issues

19     that were presented to me?

20          THE DEFENDANT:  I understand, yes.

21          THE COURT:  All right.  And I want to go through the

22     very important rights that you're giving up by pleading guilty,

23     and let me start since your Criminal History Category I, which

24     means you haven't got any -- probably don't have any felony

25     convictions on your record.

1          Do you understand you're giving up the right to a jury

2    trial -- excuse me -- that -- that a felony conviction will

3    deprive you of certain important rights, such as the right to

4    vote, the right to hold public office, the right to serve on

5    juries, and the right to possess a firearm and -- so many

6    collateral consequences, I couldn't outline them here now

7    having to do with licensing and that sort of thing.

8          Do you understand it will have that collateral

9    consequence?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And similarly, do you understand that by

12    pleading guilty you're giving up some very important

13    constitutional rights; for example, you have a right to

14    representation by counsel at each and every stage of the

15    proceeding; do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  If you could not afford Mr. Fick or

18    somebody else, I could appoint counsel for you.

19          Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that you would be

22    entitled to a jury trial, which means 12 people chosen at

23    random from the community, 12 citizens would have to decide

24    you're guilty beyond a reasonable doubt before you could be

25    convicted?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that proof beyond a

3     reasonable doubt's a very high standard and the government

4     always bears it; do you understand that?

5          THE DEFENDANT:  I do.

6          THE COURT:  The one -- the one area that is a little

7     bit of a lower standard is venue, and that would be by a

8     preponderance, and you're giving up the right to force the

9     government to prove venue.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that the jury verdict

13     has to be unanimous?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand that you would have the

16     right to cross-examine the government's witnesses; and as you

17     just heard, your attorney's subpoenaed some people and has a

18     right to subpoena people; do you understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And you're giving up the right not only to

21     cross-examine the government's witnesses, but to present your

22     own; do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  And do you understand you have the

25     privilege against self-incrimination, which means you can't be

1     forced to testify against yourself?

2              THE DEFENDANT:  I understand.

3              THE COURT:  And -- but if you wanted to, you could

4     testify on your own behalf; do you understand that?

5              THE DEFENDANT:  I do.

6              THE COURT:  And present evidence which you have no

7     requirement to do so; do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  All right.  And understanding all these

10    very important rights do you still want to plead guilty?

11             THE DEFENDANT:  I do.

12             THE COURT:  Okay.  Now, I'm going to ask the

13    government to state the evidence that you would introduce at

14    trial.

15             Now, there's -- there's still a codefendant,

16    Mr. Harville, so to some extent some of these counts overlap

17    with his, but some don't.

18             So should we go count by count, and I should take the

19    plea, or are you going to do it all at once, Mr. Kosto?

20             What makes the most sense because it's a very long

21    indictment?

22             MR. KOSTO:  Your Honor, I'd propose to describe

23    the -- the facts that apply most generally to the conspiracy

24    Count One, and then pick up any remaining facts as to the

25    substantive counts in that single description.

1          THE COURT:  Thank you.

2          MR. KOSTO:  May I proceed?

3          THE COURT:  Yes.

4          MR. KOSTO:  And I apologize, your Honor, I forgot to

5    mention with respect to the statutory -- statutory maximums.

6    There would be a $900 special assessment that the Court is

7    inquire -- required to impose.  I apologize for leaving that

8    out.

9          THE COURT:  Thank you.

10          And while you're on it, that's a good comeback.  Has

11    there been any discussion of the amount of restitution to this?

12          MR. KOSTO:  We should have more to say about that at

13    sentencing, your Honor.

14          THE COURT:  So there has been no agreement -- that

15    might be -- in other words, that might take a longer time?

16          MR. KOSTO:  I don't believe it will -- it should

17    require any additional time.

18          THE COURT:  All right.  Well, it's not essential right

19    now, but right now we don't know what that number would look

20    like?

21          MR. KOSTO:  I think that's correct, your Honor.

22          THE COURT:  Have you talked that over, sir, Mr. Fick,

23    with Mr. Baugh?

24          MR. FICK:  I mean, we've talked about it in general

25    terms.  There's also a civil case by the -- the -- the -- the

1    affected parties out there against Mr. Baugh and others.  So

2    we've talked about these issues.  So he understands there's

3    uncertainty with regard to those issues.

4              THE COURT:  Okay.  Thank you very much.

5              All right.  I'm sorry to interrupt.  Go ahead, sir.

6              MR. KOSTO:  Thank you, your Honor.

7              Had the case proceeded to trial, the United States

8    would have proven beyond a reasonable doubt each of elements of

9    the five charged offenses, through and among other evidence,

10   witness testimony, including the testimony of witnesses

11   cooperating with the government's investigation; physical

12   evidence; electronic communications, including those to the

13   victims, between and among the coconspirators, and to and from

14   third parties, as well as the use of business records.

15             And what that evidence would show, the government

16   submits beyond a reasonable doubt, is that between

17   approximately August 5, 2019, and August 23, 2019, the

18   defendant, Mr. Baugh, and several coconspirators, all whom

19   worked at eBay, Inc., the multinational e-commerce company,

20   agreed to engage in a harassment campaign that targeted a

21   husband and wife who lived in Natick, Massachusetts.  They're

22   described in the indictment as Victim 1 and Victim 2.

23             The coconspirators included Mr. Baugh, who was then

24   eBay's senior director of safety and security --

25             THE COURT:  Can I step you right then --

1          MR. KOSTO:  Yes, your Honor.

2          THE COURT:  -- because it just occurred to me, I want

3    to make sure since this is a critical stage in the proceedings,

4    they've been -- I assume the two of them have been notified of

5    these proceedings?

6          MR. KOSTO:  And I have seen the -- I'm aware that the

7    victims both planned to attend, and I see at least a connection

8    from one of them on the Zoom, and I assume they're together.

9          THE COURT:  Okay.  I should have asked -- I should

10   have asked that earlier.  I'm sorry.  I interrupted.  Go ahead.

11         MR. KOSTO:  No, thank you for clarifying.  And, yes,

12   they are aware of the proceeding, and I believe they're both in

13   attendance today.

14         I mentioned Mr. Baugh, who was the senior director of

15   safety and security at eBay; Stephanie Popp, a coconspirator,

16   who was eBay's senior manager of global intelligence; David

17   Harville, Mr. Baugh's codefendant, who was eBay's director of

18   global resiliency; Brian Gilbert and Philip Cooke, two retired

19   San Jose, California, police captains, who worked on eBay's

20   global security team; Stephanie Stockwell, an eBay intelligence

21   analyst, who managed eBay's Global Intelligence Center, which I

22   may refer to as the GIC; and Veronica Zea, an eBay contractor

23   who was assigned to the GIC.

24         The campaign, your Honor, targeted Victims 1 and 2 for

25   their roles in publishing a newsletter that reported on issues

1    of interest to eBay sellers.  Senior executives at eBay were

2    frustrated with the newsletter's tone and content, and with the

3    tone and content of comments that appeared underneath the

4    newsletter's articles online.  The harassment campaign arose

5    from communications between those senior executives and

6    Mr. Baugh, who was at that time eBay's senior security

7    employee.

8              The campaign, which was intended to intimidate and

9    harass the victims, was, of course, a conduct that included,

10   first, sending threatening messages and communications to the

11   victims over Twitter, which was an instrumental --

12   instrumentality of interstate commerce.

13             Second, ordering unwarranted and disturbing deliveries

14   to the victims' home.

15             And third, Zea, Harville, Mr. Baugh, and Popps [sic]

16   traveled to Natick to surveil the victims in their home and

17   community.  The deliveries ordered to the victims's homes

18   included a book on surviving the death of a spouse, a bloody

19   pig mask, a fetal pig, a funeral wreath, and live insects.  The

20   harassment also featured Craigslist posts that invited the

21   public for sexual encounters or estate sales at the victims's

22   home.

23             The threatening Twitter messages were written to

24   Victim 1 and sometimes addressed to Victim 2 by name as if they

25   had been sent by eBay sellers who were unhappy with the

1    victims's coverage of eBay in the newsletter.  Some of these

2    messages posted the victims's addresses publicly on the

3    Internet, a concept known as doxing, and threatened to visit

4    the victims at their home.

5         An August 29th -- an August 22, 2019, message stated,

6    for example, At newsletter 20 years of lies and destroying

7    families.  Don't be proud of that you worthless bitch.  I will

8    destroy your family and business too.  See how you like it.

9         Another involved the author of one post asking another

10   when the two were going to visit Victim 1 in Natick.

11        Mr. Baugh intended for the harassment and intimidation

12   to distract the victims from publishing the newsletter, to

13   change the newsletter's coverage of eBay, and ultimately to

14   enable eBay to contact the victims to offer assistance with the

15   harassment, what the government has called a "White Knight

16   Strategy."  The White Knight Strategy would earn goodwill with

17   the victims such that they might help eBay learn the identity

18   of Phytomaster, an anonymous online persona who frequently

19   posted negative comments about eBay underneath the newsletter's

20   articles and thereby allow eBay to discredit both Phytomaster

21   and the victims.

22        Mr. Baugh, Harville, Zea, and -- and Ms. Zea also flew

23   to Boston and then drove immediately to Natick on August 15,

24   2019.  Mr. Baugh and Mr. Harville intended to install a GPS

25   tracking device on the victim's car, but it was safely locked

1    in their garage at the time.

2           The victims spotted the surveillance team on

3    August 16th, which led them to call the Natick Police

4    Department -- which I'll refer to as the NPD -- in fear.  Zea

5    and Mr. Baugh and Ms. Popp, who arrived to replace Mr. Harville

6    on August 17th, continued that surveillance even after having

7    been spotted by the victims.

8           The NPD which began investigating the deliveries, the

9    threats and the surveillance connected Ms. Zea and Mr. Harville

10   to two rented cars and then to eBay.  The NPD reached out to

11   the company for assistance; and when Mr. Baugh learned that the

12   NPD was making inquiries, he and his coconspirators took steps

13   to prevent the NPD from learning about eBay's involvement in

14   the harassment campaign.  This included sending Brian Gilbert,

15   one of the retired police captains, to a meeting with the NPD

16   at which Mr. Gilbert made false statements about Zea and

17   Harville's and eBay's involvement.

18          Mr. Baugh and several of his coconspirators also made

19   false statements to internal investigators at eBay who they

20   knew were attempting to respond to the NPD's request for

21   information and assistance.

22          Mr. Baugh and other coconspirators also deleted

23   digital evidence related to the cyberstalking campaign and

24   falsified records intended to throw the NPD off the trail.

25          As these events were unfolding, the NPD referred the

1   victims's harassment matter to the FBI for investigation in

2   late August of 2019.

3   On or about the dates below, Mr. Baugh took the

4   following additional steps in furtherance of the conspiracy

5   charged in Count One of the indictment or in an attempt to

6   obstruct the investigation into it.

7   And with respect to the Counts Two and Three, the

8   interstate travel in furtherance of stalking, the evidence

9   would show that on August 15, 2019, Mr. Baugh flew interstate

10   from California to Boston with Ms. Zea; and that upon arrival

11   at Logan Airport, the pair met up with Mr. Harville, rented

12   cars and drove out to the victims's residence in Natick in that

13   unsuccessful attempt to install a GPS device on the victim's

14   car.

15   With respect to Counts Six and Seven, the use of the

16   instrumentalities of interstate commerce in furtherance of

17   stalking, the evidence would show that on August 5, 2021,

18   Mr. Baugh convened a meeting at the GIC at eBay's corporate

19   headquarters with Stephanie Stockwell, Veronica Zea, Stephanie

20   Popp and others.  He directed them to brainstorm the harassing

21   packages that could be sent to the victims's residence.  This

22   meeting led to the delivery of the harassing packages that I

23   described a moment ago.

24   On or about August 6, 2019, Mr. Baugh convened a

25   second meeting among himself, Mr. Gilbert, Ms. Popp, and

1    Mr. Cooke.  In that meeting, Mr. Baugh and those in attendance

2    planned the online harassment that would lead to the White

3    Knight Strategy that I described a moment ago, and that led to

4    the delivery of those harassing and threatening communications

5    that I described a moment ago.

6            In Natick, during the course of surveilling Victim 1

7    and Victim 2, Mr. Baugh dialed into a telephone conference line

8    and used that facility of interstate commerce to communicate

9    with other members of the surveillance team in part to monitor

10   any police activity that might compromise the surveillance

11   team.

12           Mr. Baugh also used WhatsApp in a facility of

13   interstate commerce to communicate with his coconspirators

14   about the surveillance and about the content of the harassing

15   messages that would be sent to Victims 1 and 2.

16           As to Count Ten, the first of the witness tampering

17   counts, your Honor, on August 21, 2019, at approximately

18   9:34 a.m. at Boston's Ritz Carlton Hotel the evidence would

19   show that with the intent to prevent NPD Detective Jason

20   Sutherland from speaking with Ms. Zea, Mr. Baugh falsely told

21   the detective that Ms. Zea was his wife.  Mr. Baugh also stated

22   that Ms. Zea didn't want to speak with the detective; and

23   within 10 minutes Mr. Baugh took -- took Ms. Zea away from the

24   Ritz Carlton where the police were looking to speak with her to

25   another Boston area hotel.

1          As to Count Eleven, a second obstruction count, your

2     Honor.  By August 22, 2019, and thereafter, Mr. Baugh engaged

3     in misleading conduct, including making false statements and

4     statements that omitted certain material facts to eBay

5     investigators, including eBay corporate counsel, internal

6     counsel.

7          The statements which Mr. Baugh made to keep eBay and

8     the NPD from learning about eBay's role in the campaign

9     included that Mr. Baugh's team was not responsible for sending

10    harassing deliveries or messages to the victims; that his team

11    had been to Natick to investigate threats to the victims and

12    that Mr. Harville had gone to Boston to attend a conference.

13         As to Count Three, the first of the falsification

14    counts, your Honor, the evidence would show that on August 21,

15    2019, Mr. Baugh learned from Brian Gilbert, who had attended

16    the meeting with the NPD, that the NPD was looking into the use

17    of a prepaid debit card in the San Jose, California, area to

18    purchase one of the harassing deliveries.

19         Veronica Zea, one of the coconspirators, had, in fact,

20    made that purchase using that prepaid debit card, but Mr. Baugh

21    directed a subordinate, Stephanie Stockwell, to assemble a list

22    of eBay, quote, persons of interest in the Bay area that could

23    be used to throw the NPD off the trail of Ms. Zea as a suspect,

24    and that persons of interest list did not include Ms. Zea's

25    name.

1          As to Count Fourteen, a second falsification and

2     destruction count, your Honor, on or about August 26, 2019,

3     there was a meeting at eBay headquarters among Mr. Baugh and

4     his coconspirators, and during that meeting Mr. Baugh directed

5     the group to delete their WhatsApp and electronic messages

6     concerning the trip to Boston and the harassment of the

7     victims.

8          Together, your Honor, those facts, the government

9     respectfully submits, would provide the Court an adequate

10    factual basis to accept a plea as to each of the charged

11    offenses in the indictment, specifically Count One, Counts Two

12    and Three, Counts Six and Seven, Counts Ten and Eleven, and

13    Counts Thirteen and Fourteen.

14          THE COURT:  Thank you.

15          Mr. Baugh, do you disagree with any of those facts?

16          THE DEFENDANT:  I do not.

17          THE COURT:  So do you happen to have the indictment in

18    front of you?

19          THE DEFENDANT:  I have it on my computer.  I can pull

20    that up.

21          THE COURT:  Well -- well, here's the thing.  I'm not

22    going to read the entire indictment, we'd be here for the rest

23    of the day, but I am going to read the counts, and I didn't

24    know if you wanted, because I'm going to ask you to plead one

25    by one, and it's not essential that you have them, but

1    sometimes it's easier to read along rather than just listen,

2    so...

3              THE DEFENDANT:  I have it up now.

4              THE COURT:  Okay.  Great.  So I'm starting with Count

5    One, sir, which is conspiracy to commit stalking through travel

6    and through facilities of interstate commerce in violation of

7    18 U.S.C. Section 371 -- I think it's on page 14.

8              Do you have that up?

9              THE DEFENDANT:  I do.

10             THE COURT:  Okay.  So do you plead guilty knowingly,

11   freely, and voluntarily to Count One, that is, from on or about

12   August 5, 2019, through at least September 6, 2019, in the

13   District of Massachusetts and elsewhere that you, Jim Baugh,

14   together with David Harville, conspired with each other and

15   with others known and unknown to the grand jury, to commit

16   offenses against the United States, to wit:  a. stalking

17   through interstate travel, that is, to travel in interstate

18   commerce with the intent to harass, intimidate, and place under

19   surveillance with intent to harass and intimidate another

20   person, and in the course of, and as a result of, such travel,

21   engage in conduct that caused, attempted to cause, and would be

22   reasonably be expected to cause substantial emotional distress

23   to a person, that is Victims 1 and 2, in violation of 18 U.S.C.

24   Section 2261(A)(1)(B); and plead guilty to b. stalking through

25   facilities of interstate commerce, that is, with the intent to

1    harass, intimidate, and place under surveillance with intent to

2    harass and intimidate another person, use the mail, any

3    interactive computer service, electronic communication service,

4    electronic communication system of interstate commerce, and any

5    other facility of interstate and foreign commerce to engage in

6    a course of conduct that caused, attempted to cause, and would

7    be reasonably expected to cause substantial emotional distress

8    to a person, specifically, Victims 1 and 2, in violation of

9    18 U.S. Code Section 2261(A)(2)(B).  All in violation of

10   18 U.S.C. Section 371.

11           Do you plead guilty knowingly, freely, and voluntary

12   to Count One?

13           THE DEFENDANT:  I do.

14           THE COURT:  Count Two and Three, I suppose.  Yes,

15   because it involves the two separate victims.

16           From -- do you plead guilty to Counts Two and Three

17   that from on or about August 15, 2019, through on or about

18   August 23, 2019, in the District of Massachusetts and elsewhere

19   that you did travel in interstate commerce with intent to

20   harass, intimidate, and place under surveillance with intent to

21   harass and intimidate another person, and in the course of, and

22   as a result of, such travel engaged in conduct that caused,

23   attempted to cause, and would be reasonably expected to cause

24   substantial emotional distress to the persons described below:

25   Count Two, Victim 1; Count Three, Victim 2, in violation of

1    18 U.S.C. Section 2261A(1)(B) and 2.

2            Do you plead guilty knowingly, freely, and voluntarily

3    to Counts Two and Three?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Now, we're moving on to Counts, I believe,

6    Six and Seven.

7            Do you plead guilty -- and again it involves the two

8    victims.

9            Do you plead guilty from on or about August 5, 2019,

10   through on or about August 23, 2019, in the District of

11   Massachusetts and elsewhere that you did with intent to harass,

12   intimidate, and place under surveillance with the intent to

13   harass and intimidate another person, use the mail, an

14   interactive computer service, electronic communication service,

15   electronic communication system of interstate commerce, and

16   other facilities of interstate commerce to engage in a course

17   of conduct that caused, attempted to cause, and would be

18   reasonably expected to cause substantial emotional distress to

19   the persons described below:  Count Six, Victim 1; Count Seven,

20   Victim 2, in violation of 18 U.S.C. Section 2261A(2)(B) and 2.

21           Do you plead guilty knowingly, freely, and voluntarily

22   to Six and Seven?

23           THE DEFENDANT:  Yes.

24           THE COURT:  I guess we can go up to Counts Ten and

25   Eleven, the witness tampering and aiding and abetting.

1          Do you plead guilty from on or about August 20th

2    through on or about August 30, 2019, in the District of

3    Massachusetts and elsewhere that you, the defendant, did

4    knowingly engage in misleading conduct toward the persons

5    described below, with intent to hinder, delay, and prevent the

6    communication to a law enforcement officer of the United States

7    of information relating to the commission and possible

8    commission of a federal offense, that is, the conspiracy

9    described in Count One of the indictment; and that the object

10   of the misleading conduct in Count Ten was the Natick Police

11   Department detective; and with respect to Count Eleven was the

12   eBay internal investigator, all in violation of 18 U.S.C.

13   Section 1512(b)(3) and 2.

14          Do you plead guilty knowingly, freely, and

15   voluntarily?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And, finally, with respect to Counts

18   Thirteen and Fourteen.  Do you plead guilty to on or about the

19   dates set forth below in the District of Massachusetts and

20   elsewhere that you did knowingly alter, destroy, conceal and

21   falsify the records, documents, and tangible objects below with

22   the intent to impede, obstruct, and influence the investigation

23   and proper administration of a matter within the jurisdiction

24   of any department and agency of the United States, that is, the

25   conspiracy charged in Count One of the indictment.  Count

1    Thirteen, the date was August 21, 2019, the Bay area -- POI is

2    persons of interest, I assume; is that right?  Do I have that

3    right?

4              THE DEFENDANT:  You do.

5              THE COURT:  Okay.  August 2019 docx; and Count

6    Fourteen, August 26th to the 30th, records on eBay issued-cell

7    phone, all in violation of 18 U.S.C. Section 1519 and 2, do you

8    plead guilty knowingly, freely, and voluntarily?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right.  I think that's it.  I'm about

11   to accept this plea.

12             Would you like to discuss anything with your attorney

13   or me first?

14             THE DEFENDANT:  Not at this time, no.

15             THE COURT:  Okay.  I find the plea is knowing and -- I

16   find you're competent and capable of entering into an informed

17   plea, and that the plea is knowing and voluntary concerning

18   each of the essential elements of the offense, and I accept it.

19             What is the date of sentencing?  Maryellen, have you

20   already worked that out?

21             THE CLERK:  I did, Judge, yes.  We gave them

22   September -- hold on.  I think it was the 29th.  29th at 2:30.

23   September 29th at 2:30; is that okay?

24             THE COURT:  Well, so far, yes.

25             MR. FICK:  Yes, your Honor, thank you.

1              THE COURT:  As I understand it, I heard from probation

2      that there are no problems with the meeting the conditions of

3      release; is that correct?

4              MR. FICK:  That's correct, your Honor.

5              MR. KOSTO:  That is, your Honor.

6              THE COURT:  So I just put you -- I just maintain those

7      same correct conditions and leave you out on bail until that

8      period of time.

9              Is there -- so now there are a few other things that I

10     think we need to talk about.

11             One is recently I've had a number of these hearings

12     where restitution is then put off for another 90 days, and that

13     sort of prolongs things.  So I would encourage you to either

14     discuss this beforehand, and we'll combine a restitution

15     hearing with a sentencing hearing, as you said, Mr. Fick, that

16     there may be one contest with respect to the guideline ranges,

17     but ideally speaking, you would together at your sentencing

18     memo put together a restitution memo if it's not agreed upon.

19     So that would be very helpful just to get this moving.

20             The second thing is, Mr. Fick, I brought up the one

21     question I had in mind, which is we were pretty close to

22     issuing an opinion, and we weren't sure whether or not it was

23     moot or not.  You are still looking for some of this

24     information, I take it, for the sentencing hearing; is that

25     correct?

1          MR. FICK:  That's correct, your Honor.

2          THE COURT:  All right.  So we will be issuing

3     something.

4          Do you know, Mr. Kosto, whether or not Mr. Harville

5     has -- oh, see, that's not such a big rush shall I say.  That's

6     easily -- I can get that out by then.  The concern I have is do

7     you know whether Mr. Harville -- we couldn't find whether for

8     sure he joined in on that or not.

9          MR. KOSTO:  Sorry, on the --

10         THE COURT:  It was Mr. -- it was Mr. Baugh's --

11    Baugh's motion.

12         MR. KOSTO:  The motion -- the motion for the Rule 7 --

13    the Rule 17 subpoenas or the motion for additional information

14    regarding Mr. -- Mr. Baugh's past --

15         THE COURT:  I've already ruled on the motion to

16    compel.  You've received that, but I'm worried --

17         MR. KOSTO:  Yes.

18         THE COURT:  -- right now about the 17(c) subpoena

19    because we still have a trial date.

20         When's Mr. Harville's trial?

21         MR. KOSTO:  May 31, your Honor.

22         THE COURT:  May 31, and that's still going forward,

23    right, as far as you know?

24         MR. KOSTO:  As far as I know, your Honor.

25         THE COURT:  Okay.  So I may have to get that out.  I

1    don't know whether he has joined in that so...

2             MR. KOSTO:  I believe he did join in Mr. Fick's

3    motion.

4             I see Mr. Gelb on camera now.  I'm sure he would be

5    happy to speak to it, your Honor.  He represents Mr. Harville.

6             THE COURT:  Hello, Mr. Gelb.

7             MR. GELB:  Good morning, your Honor.

8             THE COURT:  Good morning.

9             MR. GELB:  Good morning.  We -- we had joined in on it

10   orally, your Honor.

11            THE COURT:  Oh, you did orally.  Okay.  I just -- I

12   just wasn't sure where we were all left with that motion.  So

13   we will get something out with that.

14            And, Mr. Gelb, is that likely to be a trial at this

15   point?

16            MR. GELB:  Nothing is -- no status has changed as of

17   our position at this point, your Honor.

18            THE COURT:  Okay.  So, I just have a case backed up

19   behind you.  So I just want to let them know fairly what's

20   going on.  So, I'm sure we'll be in touch, but right now that

21   17(c) subpoena's still very much alive you're telling me?

22            MR. GELB:  We -- it is, your Honor, relative to --

23   we're not waiving that issue as well.

24            THE COURT:  Okay.  Was there anything else that needed

25   to be discussed at this point?

1          MR. KOSTO:  Not from the government, your Honor.

2     Thank you.

3          THE COURT:  All right.

4          MR. FICK:  I don't believe so, your Honor.  Thank you.

5          THE COURT:  All right.  Thank you.

6          So we have finished this hearing at this point, and

7     we'll see you in September.  I guess that's it right now.

8          THE CLERK:  Judge, Mr. -- Mr. Gelb's case,

9     Mr. Harville, they have a pretrial conference scheduled for

10    Thursday, May 19th, at 2:30.  That's --

11         THE COURT:  So that's really helpful.  I'm on trial in

12    the morning so it has to be in the afternoon, but -- so we'll

13    hold it then.  And I guess I did say -- I forgot one key thing,

14    do you want sentencing in person?

15         MR. FICK:  Yes, your Honor, I mean, our intention at

16    this time absent some dramatic change and circumstance would be

17    to do the sentencing in person.

18         THE COURT:  I -- I like that actually.  I prefer that.

19         MR. FICK:  Yes.

20         THE COURT:  I think -- so -- and also to make sure

21    that the victims know.  You say they're on the phone or some

22    are on the phone as to whether or not they want to say

23    anything.

24         MR. KOSTO:  The victims intend to speak at sentencing.

25    They prefer the sentencing to take place in person, and the

1    government does as well.

2            THE COURT:  Yes, I think we're all on the same page

3    there.  It's much easier.  This feels -- you know, I just see a

4    little tiny box with Mr. Baugh in it, so I prefer to -- it

5    feels more -- I feel like I'm more connected to what's going on

6    when we're all in person.  So unless somebody has a major COVID

7    outbreak, that's what I plan to do.

8            Thank you.

9            MR. FICK:  Thank you, your Honor.

10           THE COURT:  Okay.  Thank you.  And we'll be seeing you

11   soon, Mr. Gelb.

12           MR. GELB:  Thank you, your Honor.

13           MR. KOSTO:  Thank you, your Honor.

14           THE COURT:  All right.  We'll stand in recess.  Thank

15   you.

16           THE CLERK:  Thank you, everybody.

17           THE COURT:  And I accept the plea.  Thank you.

18           THE CLERK:  Thanks.

19           (At 11:21 a.m., court was adjourned.)

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3              I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript is a true and accurate

5    transcription of my stenographic notes before the Honorable

6    Patti B. Saris, to the best of my skill, knowledge, and

7    ability.

8

9

10       /s/ Marianne Kusa-Ryll                    05-09-22

11       Marianne Kusa-Ryll, RDR, CRR                Date

12       Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25