UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JIM BAUGH<br><br>Defendant | 1:20-CR-10263-PBS |

MOTION FOR CONTINUED SEALING OF DOCKET NO. 227-1

In a letter of contrition that he filed in connection with his sentencing, Docket No. 227-1 ("the Document"), defendant Jim Baugh disclosed classified information without authorization. Pursuant to Local Rule 7.2(d), the United States respectfully requests that the Court order the Clerk of Court to replace the Document with a redacted version of it that removes the classified information the Document contained, and to maintain that redacted version under seal. The government requests this relief to protect national security interests, which are described in the government's accompanying *ex parte*, *in camera* submission. The proposed relief simultaneously preserves the public's access to sentencing information, which will remain available in the form of Baugh's sentencing memorandum itself, others' letters in support of him, and the sentencing hearing transcript—each of which amply reflects the non-classified portions of the Document. Continued sealing of the Document would also be consistent with how the Court and the parties have treated the same document in the related civil matter of *Steiner v. eBay*, No. 1:21-cv-11181 (D. Mass.). Defendant takes no position on the relief requested in this motion.

1

## Background

**I.      Proceedings in This Matter**

On September 29, 2022, the Court sentenced Baugh to 57 months in prison, following his guilty plea to several federal crimes arising out of a harassment and intimidation campaign targeting David and Ina Steiner, a Natick couple. (Docket No. 235). In connection with his sentencing, on September 27, 2022, Baugh filed a memorandum on the public docket in this case. (Docket No. 227). That memorandum attached several letters of support, including a letter Baugh wrote that contained classified information (*i.e.*, the Document). Baugh did not seek the government's consent to file that information on the public docket, nor did the government ever authorize the disclosure of that classified information. Upon discovering the filed classified information, a Department of Justice Classified Information Security Officer ("CISO") contacted the Court on September 30, 2022, and the Document was then temporarily sealed and removed from the Court's docket to prevent the further unauthorized disclosure of the classified information. Baugh's sentencing memorandum and the other letters of support that he attached to his memorandum remained available to the public, and they continue to be publicly available today.

On December 9, 2022, the government filed an unopposed motion for continued sealing, requesting that the Court permit it time to "file a status report setting forth any proposed resolution" or "file any motions necessary to protect further against the disclosure of classified information." Unopposed Mot. for Continued Sealing at 4, Docket No. 245. The Court allowed that motion without opposition on January 3, 2023, Docket No. 246, and the government now files this motion in compliance with the Court's order.

## II. Proceedings in the Related Civil Matter of *Steiner v. eBay*

Separately, and prior to Baugh's sentencing in this matter, David and Ina Steiner sued eBay, Baugh, and nine other named defendants in federal district court on July 21, 2021, seeking money damages for the harm the Steiners suffered. *Steiner v. eBay*, No. 1:21-cv-11181-DPW, Compl., Docket No.1 (D. Mass. July 21, 2021). At that time, the *Steiner* matter was assigned to the Honorable Douglas P. Woodlock. The government is not a party to the civil matter and takes no position on the merits of Plaintiffs' claims. Between October 29, 2021 and November 29, 2021, eBay and some of the other defendants filed motions to dismiss the case, and briefing on those motions completed on June 25, 2022. After Baugh filed his sentencing memorandum in this matter, however, the Steiners filed a Motion for Leave to File Supplement to Plaintiffs' Consolidated Opposition to Defendants' Motion to Dismiss on September 29, 2022. *Steiner* Docket No. 144. That filing attached Baugh's sentencing memorandum along with its corresponding attachments, including the Document. Then, after the *Steiner* Court granted the Steiners' motion for leave to file, *Steiner* Docket No. 145 (Sept. 30, 2022), the Steiners filed their Supplemental Opposition to Defendants' Motions to Dismiss on October 1, 2022, *Steiner* Docket No. 146. That filing also attached Baugh's sentencing memorandum with its corresponding attachments, including the Document. *Steiner* Docket Nos. 146-1, 146-2.

On October 4, 2022, the government became aware that the Steiners' filings contained the same document (and the same classified information) that Baugh had filed in this matter, and the two filings (at Docket Nos. 144 and 146) were placed under seal in their entireties until the government could confer with the parties in that matter and propose a plan to the *Steiner* Court for how to handle the Document's filing in the civil case. The government also began to develop a proposal for a protective order in that matter to ensure that classified information remains protected

throughout the discovery process, should the case proceed to discovery, and until the conclusion of that matter. Over the course of a month, government counsel at the Department of Justice met and conferred with the twelve parties in the civil matter, including traveling from Washington, D.C. to Boston for an in-person meeting with Plaintiffs' counsel on November 17, 2022.

The product of these discussions was a negotiated resolution whereby the government filed a consent motion proposing that the entirety of Docket Nos. 144 and 146 be unsealed, except the attached Document, filed at Docket Nos. 144-2 and 146-2. The government proposed "that those documents remain under seal . . . until such time as the government moves for a protective order and th[e] Court rules on the matter." *Steiner* Docket No. 165 at 3. The *Steiner* Court issued an order implementing the government's proposal on December 20, 2022. *Steiner* Docket No. 166. In accordance with the *Steiner* Court's order, the government prepared a redacted version of the Document and circulated it to the parties on December 30 to be substituted in place of the version containing classified information and to the *Steiner* Court to be substituted on the docket, still under seal. Then, on January 4, 2023, Judge Woodlock denied all of the pending motions to dismiss without prejudice and ordered Plaintiffs to file an amended complaint by February 15, 2023, should they choose to do so. *Steiner* Docket No. 167. The *Steiner* court also directed the transfer of the *Steiner* matter to this Court, "with her consent, pursuant to Local Rule 40.1(i)(1)," having found it to be "[i]n the interests of justice and to further the efficient performance of the business of this court." *Id.*

**Legal Standard**

"[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). However, "[t]his presumptive right of access attaches [only] to those materials 'which properly come before the court in the course of an adjudicatory proceeding and which are relevant to that adjudication.'" *In re Providence J. Co., Inc.*, 293 F.3d 1, 9 (1st Cir. 2002) (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412–13 (1st Cir.1987)). And "[t]hough the public's right of access to such materials is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access. It follows that when a party requests a seal order, . . . a court must carefully balance the competing interests that are at stake in the particular case." *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998). "The trial court enjoys considerable leeway in making decisions of this sort." *Id.* It is "a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

**Argument**

The First Circuit has held that "sentencing memoranda" and "sentencing letters submitted by third parties on the defendants' behalf" are "judicial documents subject to the common law presumption of public access." *United States v. Kravetz*, 706 F.3d 47, 57 (1st Cir. 2013). The First Circuit has never specifically ruled on whether that presumption applies to a letter written by the defendant himself, however, and has also maintained that "[t]hough the public's right of access is vibrant, it is not unfettered. Important countervailing interests can, in given instances, overwhelm the usual presumption and defeat access." *Id.* at 59 (quoting *Siedle*, 147 F.3d at 10). Here, the harm to U.S. national security that would occur should the Court order either a redacted

5

or unredacted version of the Document to be filed publicly significantly outweighs any relevance of the Document to the now-concluded proceedings in this matter. Moreover, any Court order to file either a redacted or unredacted version of the Document publicly would be inconsistent with Judge Woodlock's prior ruling on the Document in the parallel civil case, which remains subject to ongoing proceedings concerning an eventual protective order.

I.   **The Document Has Limited Relevance.**

"[T]he common-law right of access extends [only] to 'materials on which a court relies in determining the litigants' substantive rights.'" *In re Providence J. Co., Inc.*, 293 F.3d at 9–10 (quoting *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir.1986)). "In cases considering the common law right, [the First Circuit] has often used a definition of a 'judicial record' which refers to 'materials on which a court relies in determining the litigants' substantive rights.'" *In re Bos. Herald, Inc.*, 321 F.3d 174, 189 (1st Cir. 2003). Thus, the term "judicial record" and the presumptive public right of access attaching to it, applies only to "the record on which a judge actually decides the central issues in a case." *Id.*

Although the Document is likely a judicial record—it was among the many materials the Court had before it when imposing its sentence—it is of limited relevance today to this matter, which is all but complete.

First, the information in the Document was irrelevant to whether Baugh's conduct met the elements of the offenses with which the government charged him. Baugh pled guilty on April 25, 2022, Docket No. 201—nearly a year ago—and has admitted to undertaking a campaign of stalking and abuse targeting the Steiners, *see generally* Docket No. 227.[1]

---

[1] While the criminal case was pending, the Court ruled in an earlier discovery dispute that information like the particular classified information the Government now seeks to protect had no

Moreover, to the extent that Baugh wanted the Court to consider the information contained in the Document, he directed the Court to that information in his sentencing memorandum, to which the Document was attached.  Mr. Baugh's sentencing memorandum references a variety of non-classified information that appears in his letter of contrition, including his allegations regarding pressures he faced from eBay executives, Docket No. No. 227 at 4; the fact of his prior government service, *id.* at 4, 7; and his experience with alcoholism and corresponding treatment, *id.* at 21, among other things.  The information in the Document is therefore mostly duplicative of the information in the publicly-filed sentencing memorandum.  Baugh also spoke on the record regarding his contrition, which reflects another place that the public can access the non-classified content of the Document.  And the Court explained the reasons for its sentence on the docket in the publicly accessible transcript of the sentencing hearing.  *See* Docket No. 239.

The non-classified content of the Document is thus amply available to the public.  Where the Court has now sentenced Baugh to 57 months in prison; where Baugh has not appealed; and where he has in fact reported to a BOP facility in Alabama to begin serving his sentence, this matter is largely concluded.  Under these circumstances, there is less reason for the Document itself to be publicly accessible, particularly, as discussed below, because it contains protected national security information.

## II.   The Document Should be Redacted and Sealed to Protect Classified National Security Information.

"It is uncontested . . . that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied

---

bearing on the underlying case. *See* Memo. and Order at 24, Docket No. 122 ("[I]t is unlikely that Baugh's prior [alleged government involvement] . . . would enable him to significantly 'alter the quantum of proof' on his intent to harass or intimidate the victims or to place them under surveillance with such intent." (citations omitted)).

where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598; *see also Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 70 (1st Cir. 2011), abrogated on other grounds by *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) ("The presumption favoring public access, which extends to both civil and criminal trials, is not inviolate, and may on some occasions be overcome by competing interests" (citation omitted)); *Siedle*, 147 F.3d at 10; *United States v. Salemme*, 985 F. Supp. 193, 195 (D. Mass. 1997). "When addressing a request to unseal, a court must carefully balance the presumptive public right of access against the competing interests that are at stake in a particular case, keeping in mind that 'only the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access.'" *Kravetz*, 706 F.3d at 59 (quoting *In re Providence Journal*, 293 F.3d at 10) (citation omitted).

"[N]o governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). Courts have found it appropriate to seal criminal case materials to protect national security. *See United States v. Vinas*, No. 08-CR-823 (NGG), 2017 WL 2462503, at *2 (E.D.N.Y. June 6, 2017) (continued sealing of redacted portions of a sentencing memorandum was warranted, "as the national security interests implicated by the redactions to [a classified submission] constitute 'higher values' sufficient to outweigh the presumption of public access"); *see also United States v. Aref*, 533 F.3d 78, 82 (2d Cir. 2008) (redaction for "higher values" justified on a showing that information sought would "impair identified national interests"); *United States v. Moussaoui*, 65 F. App'x 881, 887 (4th Cir. 2003) (unpublished) ("At the outset, we note that there can be no doubt that the Government's interest in protecting the security of classified information is a compelling one"). Courts in the First Circuit have additionally held that materials in criminal matters may properly be sealed to (1) protect the

privacy of parties and third parties, *Standard Fin. Mgmt. Corp.*, 830 F.2d at 411; (2) prevent prejudicial pretrial publicity, *Salemme*, 985 F. Supp. at 195; and (3) stop impairing law enforcement or reducing judicial efficiency, *id.*  The protection of national security information is certainly on par with—if not greater than—these considerations.

The government has lodged an *ex parte* under seal declaration explaining the reasoning for its determination that unsealing the Document in either redacted or unredacted form would harm national security.[2]  The government's *ex parte* submission contains classified national security information and is submitted solely for the Court's *ex parte*, *in camera* review.  The First Circuit has expressly endorsed the practice of filing of materials for *ex parte*, *in camera* review under similar circumstances.  *United States v. Tsarnaev*, 968 F.3d 24, 94 (1st Cir. 2020) ("a judge may act in camera and with the benefit of only the prosecution's views, like when there is a need to stop disclosure of sensitive information — for example (and without limitation), material that could damage national security . . . ."), *rev'd on other grounds*, 142 S. Ct. 1024 (2022).  Courts in civil cases have also considered classified submissions *ex parte*, *in camera*.  *See, e.g.*, *Tabbaa v. Chertoff*, 509 F.3d 89, 93 n.1 (2d Cir. 2007) (reviewing *ex parte* and *in camera* classified information pertaining to the reasons for border inspection); *Bassiouni v. FBI*, 436 F.3d 712, 722 n.7 (7th Cir. 2006) (conducting *ex parte*, *in camera* review of classified FBI declaration); *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) ("[T]he court has inherent authority to review classified material *ex parte*, *in camera* as part of its judicial review function."); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (holding that the Due Process Clause does not prohibit designation for sanctions on the basis of classified information submitted

---

[2] The government has lodged its classified submission *ex parte*, *in camera*, with the Department of Justice's CISO, who will make it available to the Court for review at the Court's convenience.

9

only for *ex parte* and *in camera* review) (citing *People's Mojahedin Org. of Iran v. Dep't of State*, 327 F.3d 1238, 1242 (D.C. Cir. 2003)); *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) (same).  The First Circuit has also noted that "[b]ecause, as the government notes, such motions [to seal] frequently discuss in some detail the material sought to be sealed, leave of court may be requested to file the text of the motion and any supporting materials under seal pending the district court's disposition of the motion."  *Kravetz*, 706 F.3d at 60 (citations omitted).

"[I]n assessing the Government's claim that disclosure may harm national security, courts must exercise the traditional 'reluctan[ce] to intrude upon the authority of the Executive in military and national security affairs.'"  *United States v. Zubaydah*, 142 S. Ct. 959, 967 (2022) (alteration in original) (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).  The responsible executive officials possess "the necessary expertise" to make the required "[p]redictive judgment" about risks to national security.  *Egan*, 484 U.S. at 529 (citing *CIA v. Sims*, 471 U.S. 159, 170 (1985)). And the Supreme Court has further recognized that "when it comes to collecting evidence and drawing factual inferences [concerning national security], the lack of competence on the part of the courts is marked."  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010) (quotations marks omitted).  Courts therefore afford "the utmost deference" to the Executive's assessment of potential national security harms.  *See Egan*, 484 U.S. at 529–30 (recognizing the Government's "compelling interest in withholding national security information from unauthorized persons" and stating that the "authority to protect such information falls on the President as head of the Executive Branch and as Commander in Chief").

The government's declaration explains the "important countervailing interests" in this case that "overwhelm the usual presumption."  *See Kravetz*, 706 F.3d at 59.  The declaration also explains why the continued sealing of the Document, even after redaction to remove classified

information, is consistent with significant national security interests of the United States. This is so, as the declaration explains, because the classified information was temporarily available on the public docket due to Baugh's unauthorized filing. In short, under the circumstances described in the declaration, there is no less restrictive alternative that will simultaneously provide greater access to the Document and protect against serious damage to the national security of the United States.

### III. The Redacted Document Should be Sealed to Accord with the *Steiner* Court's Ruling on the Same Document.

As noted above, Judge Woodlock already approved the same approach for handling the classified information contained in the Document as the government proposes here, at least until such time as this Court rules on a protective order in that case. Specifically, Judge Woodlock ordered the government to provide a version of the Document to the parties and to the Court that redacts the classified information and that the redacted version of the Document remain under seal. *Steiner* Docket No. 166. That proposal and order was the product of lengthy discussions with the twelve parties in that matter concerning how to protect the classified information in the Document while also permitting the parties to use the unclassified information in that case. If this Court were to unseal the Document in either redacted or unredacted form, the actions taken in the *Steiner* case to protect the classified information would be undone, as would further efforts to implement a protective order in *Steiner* concerning the Document.

### Conclusion

The government accordingly and respectfully requests that the Court permit it to file, under seal, a version of the Document that redacts the classified information contained within it, and also order that the redacted version of the Document remain under seal on the Court's docket until further Order of the Court. A proposed order is attached. Should the Court grant this motion, the

government will provide a copy of the under seal redacted version to both the Court and Defendant. Should the Court consider denying this motion, the government respectfully requests that the Court stay its order at least until such time as a protective order is proposed in the parallel *Steiner* civil matter to permit the Court to consider the impact of its order on both cases, as well as further briefing in that case.

                                Respectfully submitted,

                                RACHAEL S. ROLLINS
                                United States Attorney

By:   */s/ Seth B. Kosto*
        SETH B. KOSTO
        Assistant United States Attorney
        (617) 748-3230

January 23, 2023